**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

|  |  |  |
|---|---|---|
| THE UNITED STATES OF AMERICA | : | |
| | : | Crim. No. 3:92CR68 |
| v. | : | |
| | : | |
| JAMES H. ROANE, JR. | : | |

**APPENDIX VOL. IV**

**App. 0398-0464**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION



FEB 1 6 1993

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

UNITED STATES OF AMERICA )
)
v. )   Criminal Case No. 3:92CR68-03
)
JAMES H. ROANE, JR. )
  a.k.a. "J.R." )
)

## SPECIAL FINDINGS

### I.  Statutory Aggravating Factors:

**Category One:**   (21 U.S.C. § 848(n)(1))

WE, THE JURY, FIND as follows:

1A.   That defendant JAMES H. ROANE, JR., intentionally killed the victim of the capital crime.

    Proven to the jury's unanimous satisfaction, beyond a reasonable doubt:

    As to Douglas Moody ................... __Yes__
                                            (Yes or No)

    As to Peyton Maurice Johnson ......... __Yes__
                                            (Yes or No)

    As to Louis J. Johnson, Jr. .......... __Yes__
                                            (Yes or No)

1B.  That defendant JAMES H. ROANE, JR., intentionally inflicted serious bodily injury which resulted in the death of the victim of the capital crime.

Proven to the jury's unanimous satisfaction, beyond a reasonable doubt:

As to Douglas Moody ..................... __Yes__ .
(Yes or No)

As to Peyton Maurice Johnson .......... __Yes__ .
(Yes or No)

As to Louis J. Johnson, Jr. ........... __Yes__ .
(Yes or No)

1C.  That defendant JAMES H. ROANE, JR., intentionally engaged in conduct intending that the victim of the capital crime be killed, or that lethal force be employed against the victim, which resulted in the death of the victim.

Proven to the jury's unanimous satisfaction, beyond a reasonable doubt:

As to Douglas Moody ..................... __Yes__ .
(Yes or No)

As to Peyton Maurice Johnson .......... __Yes__ .
(Yes or No)

As to Louis J. Johnson, Jr. ........... __Yes__ .
(Yes or No)

1D.  That defendant JAMES H. ROANE, JR., intentionally engaged in conduct which defendant ROANE knew would create a grave risk of death to a person, other than one of the participants in the offense, and that such conduct resulted in the death of the victim of the capital crime.

Proven to the jury's unanimous satisfaction, beyond a reasonable doubt:

As to Douglas Moody ..................... __Yes__ .
(Yes or No)

As to Peyton Maurice Johnson .......... __Yes__ .
(Yes or No)

As to Louis J. Johnson, Jr. ........... __Yes__ .
(Yes or No)

2

App.0399

Jurors:    At this point, review your findings on the Category One aggravating factors as to each individual victim. Each victim represents a separate capital crime. If, as to any victim, you have <u>not</u> found one of the Category One aggravating factors proven to your unanimous satisfaction, beyond a reasonable doubt, you must now complete Section A of the Decision Form for defendant JAMES H. ROANE, JR., that relates to that victim.

    If, as to one or more victims, you <u>have</u> found a Category One aggravating factor proven to your unanimous satisfaction, continue to the Category Two factors on the following page.

8

App.0400

**Category Two:** (21 U.S.C. §§ 848(n)(2)-(12))

WE, THE JURY, find as follows:

2A. That defendant JAMES H. ROANE, JR., committed the killing of the victim of the capital crime after substantial planning and premeditation.

   Proven to the jury's unanimous satisfaction,
      beyond a reasonable doubt:

   As to Douglas Moody .................... ___Yes___.
   (Yes or No)

   As to Peyton Maurice Johnson ......... ___Yes___.
   (Yes or No)

   As to Louis J. Johnson, Jr. .......... ___Yes___.
   (Yes or No)

**Jurors:** At this point, again review your findings as to each individual victim. If, as to any victim, you now have not found proven, to your unanimous satisfaction, both one of the Category One factors and one of the Category Two factors, you must complete Section A of the decision for JAMES H. ROANE, JR., that relates to that victim, if you have not already done so.

   If, however, you have found both a Category One factor and a Category Two factor proven to your unanimous satisfaction as to one or more victims (i.e., one or more capital crimes), continue your deliberations with regard to those particular capital crimes by proceeding to the section on the next page dealing with nonstatutory aggravating factors.

4

App.0401

## II.  Nonstatutory Aggravating Factors:

WE, THE JURY, FIND as follows:

1. That defendant JAMES H. ROANE, JR., committed multiple murders.

   Proven to the jury's unanimous satisfaction,
   beyond a reasonable doubt:

   _____Yes_____
   (Yes or No)

2. That defendant JAMES H. ROANE, JR., has a substantial criminal history.

   Proven to the jury's unanimous satisfaction,
   beyond a reasonable doubt:

   _____Yes_____
   (Yes or No)

3. That defendant JAMES H. ROANE, JR., was knowingly and willfully a member of a conspiracy which had as one of its goals the murder of individuals other than those for which the defendant was charged.

   Proven to the jury's unanimous satisfaction,
   beyond a reasonable doubt:

   _____Yes_____
   (Yes or No)

Jurors:  Regardless of your findings as to these nonstatutory aggravating factors, proceed to the next section concerning mitigating factors.

5

App.0402

## III.  Mitigating Factors:

WE, THE JURY, FIND as follows:

Jurors:   Consideration of the following mitigating factors is specifically provided for by statute.

1.   That defendant JAMES H. ROANE, JR.'s capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was significantly impaired, regardless of whether the capacity was so impaired as to constitute a defense to the charge(s).

Number of jurors who so find,
by a preponderance of the evidence:        _____ ⌀ _____
                                                (Number)

2.   That defendant JAMES H. ROANE, JR., is punishable as a principal (as defined in section 2 of Title 18 of the United States Code) in the offense(s), which was (were) committed by another, but defendant JAMES H. ROANE, JR.'s participation was relatively minor, regardless of whether the participation was so minor as to constitute a defense to the charge(s).

Number of jurors who so find,
by a preponderance of the evidence:        _____ ⌀ _____
                                                (Number)

3.   That defendant JAMES H. ROANE, JR., could not reasonably have foreseen that his conduct in the course of the commission of the murder(s) would cause, or would create a grave risk of causing, death to any person.

Number of jurors who so find,
by a preponderance of the evidence:        _____ ⌀ _____
                                                (Number)

4.   That defendant JAMES H. ROANE, JR., was youthful, although not under the age of 18.

Number of jurors who so find,
by a preponderance of the evidence:        _____ ⌀ _____
                                                (Number)

6

App.0403

5. That defendant JAMES H. ROANE, JR., did not have a significant prior criminal record.

Number of jurors who so find,
by a preponderance of the evidence: _____∅_____
(Number)

6. That defendant JAMES H. ROANE, JR., committed the offense(s) under severe mental or emotional disturbance.

Number of jurors who so find,
by a preponderance of the evidence: _____∅_____
(Number)

7. That another defendant or defendants, equally culpable in the crime(s), will not be punished by death.

Number of jurors who so find,
by a preponderance of the evidence: _____12_____
(Number)

8. That the victim(s) consented to the criminal conduct that resulted in his (their) deaths.

Number of jurors who so find,
by a preponderance of the evidence: _____12_____
(Number)

9. That the following other factors in the defendant's background or character mitigate against imposition of a death sentence:

Jurors: The following are nonstatutory mitigating factors.

a) That defendant JAMES H. ROANE, JR., was subjected to emotional, physical and sexual abuse, abandonment and neglect as a child, and was deprived of the parental guidance and protection that he needed.

Number of jurors who so find,
by a preponderance of the evidence: _____12_____
(Number)

b) That defendant JAMES H. ROANE, JR., suffers from neurological impairments which were identified and which could have been treated when he was a child or adolescent.

Number of jurors who so find,
by a preponderance of the evidence: _____10_____
(Number)

7

App.0404

c) That defendant JAMES H. ROANE, JR., suffers from brain dysfunction which has gravely impaired his ability to function in the absence of strong support and guidance.

Number of jurors who so find, by a preponderance of the evidence: _____5_____
(Number)

d) That defendant JAMES H. ROANE, JR., has developed a paranoid mental disorder as a result of his untreated neurological impairment.

Number of jurors who so find, by a preponderance of the evidence: _____∅_____
(Number)

e) That defendant JAMES H. ROANE, JR., has responded well to structured environments, and would likely make an adaptation to prison if he were sentenced to life imprisonment.

Number of jurors who so find, by a preponderance of the evidence: _____8_____
(Number)

f) That defendant JAMES H. ROANE, JR.'s full scale I.Q. is 85.

Number of jurors who so find, by a preponderance of the evidence: _____4_____
(Number)

g) That defendant JAMES H. ROANE, JR., grew up in an impoverished, violent and brutal environment, and was exposed to extreme violence as a child and throughout his life.

Number of jurors who so find, by a preponderance of the evidence: _____12_____
(Number)

h) That defendant JAMES H. ROANE, JR., if not sentenced to death, will be sentenced to life in prison without any possibility of parole.

Number of jurors who so find, by a preponderance of the evidence: _____12_____
(Number)

8

App.0405

**Jurors:**   If any juror or jurors find(s) that a mitigating factor not listed above has been proven to exist by a preponderance of the evidence, please identify that mitigating factor on the following page, together with the number of jurors who so find. Remember, however, that you need not be able to articulate a mitigating factor with specificity to consider it in your deliberations.

If additional space is needed, use the back of this page.

Factor: _____

_____

Number of jurors who so find,
by a preponderance of the evidence: _____
(Number)

Factor: _____

_____

Number of jurors who so find,
by a preponderance of the evidence: _____
(Number)

Factor: _____

_____

Number of jurors who so find,
by a preponderance of the evidence: _____
(Number)

Factor: _____

_____

Number of jurors who so find,
by a preponderance of the evidence: _____
(Number)

9

App.0406

Jurors:  You have completed the Special Findings as to defendant JAMES H. ROANE, JR., and must now begin the process of weighing the aggravating and mitigating factors to determine if the death penalty is justified as to this defendant. Remember, you are now considering only those capital crimes for which you have not already completed Section A of the Decision Form. Upon completing your deliberations as to the remaining capital crimes charged to this defendant, complete Section B, C or D of the Decision Form for each crime as appropriate.

The date and your foreperson's signature should appear below, certifying that these are your Special Findings as to defendant JAMES H. ROANE, JR.

_____          _____
FOREPERSON'S SIGNATURE                          2/16/93
                                                    DATE

10

App.0407

DG

UNITED STATES GOVERNMEN
M E M O R A N D U M

**FROM:**    U.S. Probation Office

**SUBJECT:**    <u>U.S. District Court Presentence Report</u>

**TO:**    _✓_ Defendant        Defendant's Name: <u>ROANE, James H.,</u>

_____ Defendant's Counsel

_____ U.S. Attorney

The attached presentence report is being provided as authorized
by Rule 32 of the Federal Rules of Criminal Procedure, as amended
effective December 1, 1989. You are permitted to keep your copy
of the report. This report is subject to revision prior to
sentencing and may or may not include an addendum.

## Guideline Sentencing

In accordance with the U.S. District Court policy, a party
disagreeing with factors or facts in the presentence report shall
forward a written statement to the Probation Office fifteen (15)
days prior to the sentencing date setting forth any such
disputes. It is the obligation of the complaining party to seek
resolution of disputed facts in conference with opposing counsel
and the United States Probation Officer.

Date:_____

Signature:_____

Name(print):_____

App.0408

IN UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

UNITED STATES OF AMERICA    )
    )
    vs.    )    PRESENTENCE INVESTIGATION REPORT
    )
James H. Roane, Jr.    )    Docket No.  3:92CR68-03
aka: "J.R."

---

Prepared for:    The Honorable James R. Spencer
    United States District Judge

Prepared by:    Daniel Guertler
    United States Probation Officer
    (804) 861-0100


Assistant U.S. Attorney:    Defense Counsel:

Howard C. Vick    David Baugh & Arnold Henderson
Main Street Centre, 18th Floor    223 South Cherry Street
600 East Main Street    Richmond, VA  23241
Richmond, VA  23219    (804) 643-8111
(804) 771-2186

Sentence Date:    May 18, 1993

Offense:    See page 1a


Plea:    Not Guilty

Jury Verdict:    Guilty on all counts on 2/3/93.

Mandatory Minimum:    See page 1a

Release Status:    Detained without bail since 2/3/92.

Detainers:    None

Codefendants:    See body of the report.

Related Cases:    See body of the report.

Date Report Prepared:    4/20/93    Date report Revised:

RE:    ROANE, James H., Jr.                                                1a
       aka:   "J.R."
       Docket No. 3:92CR68-03


**Offense:**    Count 1:  Conspiracy to Distribute in Excess of 50 grams of "Crack" Cocaine, in violation of 21 U.S.C., § 846, a Class A Felony (10 years to life, $4,000,000 fine, at least 5 years supervised release, and a $50 special assessment).

Count 2:  Continuing Criminal Enterprise, in violation of 21 U.S.C., § 848, a Class A Felony (20 years to life, $2,000,000 fine, $50 special assessment).

Counts 5, 8, & 11:  Murder in Furtherance of Continuing Criminal Enterprise, in violation of 21 U.S.C., § 848(e)(1)(A) & 18 U.S.C., § 2, a Class A Felony (Not less than 20 years, and which may be up to life imprisonment, or may be sentenced to death, $250,000 fine, $50 special assessment, each count).

Count 6:  Use of a Firearm in Relation to a Crime of Violence or a Drug Trafficking Crime, in violation of 18 U.S.C., § 924(c), a Class D Felony (5 years, $250,000 fine, $50 special assessment).

Counts 7, 10, 13, & 14:  Violent Crime in Aid of Racketeering, in violation of 18 U.S.C., § 1959(a)(1), a Class A Felony (Any term of years or for life, $250,000 fine, $50 special assessment on each count).

Counts 9, 12, & 15:  Use of a Firearm in Relation to a Crime of Violence or a Drug Trafficking Crime, in violation of 18 U.S.C., § 924(c), a Class C Felony (20 years consecutive, $250,000 fine, $50 special assessment, each count).

Count 16:  Violent Crime in Aid of Racketeering, in violation of 18 U.S.C., §1959(a)(3), a Class C Felony (20 years, $250,000 fine, $50 special assessment).

Count 32:  Possession with Intent to Distribute "Crack" Cocaine, in violation of 21 U.S.C., § 841(b)(1)(A)(ii), a Class B Felony (5-40 years, $2,000,000 fine, at least 4 years supervised release, and a $50 special assessment).


**Mandatory Minimum:**    Count 1:   10 years

Count 2:   20 years

Counts 5, 8, & 11:   20 years

Count 6:   5 years

Counts 9, 12, & 15:   20 years each count, consecutive to any other sentence (total 60 years)

Count 32:   5 years

RE:   ROANE, James H.                                                        1b
      aka:   "J.R."
      Docket No. 3:92CR68-03


## Identifying Data:


Date of Birth:        10/27/65
Age:                  27
Race:                 Black
Sex:                  Male

S.S.#:                ███████4306 (verified)
Other S.S.# Used:     ██████-4356
FBI#:                 757 510 DA4
USM#:                 32923-083
Other ID#:            SID: VA592700

Education:            8th grade
Dependents:           None (He has fathered 5 children, but doesn't
                      provide financial support)

Citizenship:          United States


Current Address:      United States Penitentiary
                      Lewisburg, Pennsylvania


Legal Address:        1184 St. Paul Street
                      Richmond, VA
                      (804) 788-4216

AKA:           "J.R."

RE:  ROANE, James H., Jr.                                          2
     aka:  "J.R."


**PART A.  OFFENSE**

    <u>Charge(s)</u>

1.  Richard Tipton, Cory Johnson, James H. Roane, Jr., Vernon Lance Thomas, Jerry R. Gaiters, Sterling Hardy, and Sandra Reavis were named in a 33-count Indictment, filed by an Eastern District of Virginia, Richmond Division, Grand Jury, on April 24, 1992.  A superseding Indictment was filed on May 18, 1992.  The purpose of the superseding Indictment was to clarify technical changes in the Indictment, as they pertained to violations of 18 U.S.C., § 1959 and 18 U.S.C., § 924(c).  A second superseding Indictment was filed on July 20, 1992.  The purpose of this Indictment was to add Vernon Lance Thomas as a defendant in Counts 24, 25, 26, 27, 28, 29, and 30.

2.  Count 1 charges that from January 1989 until the filing of the Indictment, the above-named defendants Conspired to Possess with the Intent to Distribute and to Distribute at least  50 Grams or More  of Cocaine Base, in  violation  of 21 U.S.C., § 846.

3.  Count  2  charges  that  from  at  least  January  1991  and continuously thereafter, up to and including the date of the filing of the Indictment, defendants Richard Tipton, Cory Johnson, James H. Roane, Jr., and Vernon Lance Thomas engaged in  a  Continuing  Criminal  Enterprise,  in  violation  of 21 U.S.C., § 848.

4.  Count 3 charges that on or about January 5, 1992, Richard Tipton caused the intentional killing of Douglas A. Talley, in violation of 21 U.S.C., § 848(e)(1)(A) and 18 U.S.C., § 2.

5.  Count 4 charges that on or about January 5, 1992, Richard Tipton committed a Violent Crime in Aid of Racketeering, the murder of Douglas Talley, in violation of 18 U.S.C., § 1959 and § 2.

6.  Count 5 charges that on or about January 13, 1992, defendants Richard Tipton and James H. Roane, Jr., while engaged in and working in furtherance of a Continuing Criminal Enterprise, caused the intentional killing of Douglas Moody, in violation of 21 U.S.C., § 848(e)(1)(A) and 18 U.S.C., § 2.

7.  Count 6 charges that on or about January 13, 1992, defendants Richard Tipton and James H. Roane, Jr., used a firearm in relation to a crime of violence or drug trafficking crime, in violation of 18 U.S.C., § 924(c) and § 2.

8.  Count 7 charges that on or about January 13, 1992, defendants Richard Tipton and James H. Roane, Jr., committed a Violent Crime in Aid of Racketeering, the murder of Douglas Moody, in violation of 18 U.S.C., § 1959 and § 2.

RE:   ROANE, James H., Jr.                                                    3
      aka:  "J.R."

9.    Count 8 charges that on or about January 14, 1992, defendants James H. Roane, Jr., and Cory Johnson, while working in furtherance of a Continuing Criminal Enterprise, caused the intentional killing of Peyton Maurice Johnson, in violation of 21 U.S.C., § 848(e)(1)(A) and 18 U.S.C., § 2.

10.   Count 9 charges that on or about January 14, 1992, defendants James H. Roane, Jr., and Cory Johnson used a firearm in relation to a crime of violence or drug trafficking crime, in violation of 18 U.S.C., § 924(c) and § 2.

11.   Count 10 charges that on or about January 14, 1992, James H. Roane, Jr., and Cory Johnson caused a Violent Crime in Aid of Racketeering, the murder of Peyton Maurice Johnson, in violation of 18 U.S.C., § 1959 and § 2.

12.   Count 11 charges that on or about January 29, 1992, Richard Tipton, James H. Roane, Jr., Cory Johnson, and Vernon Lance Thomas, in furtherance of a Continuing Criminal Enterprise, caused the intentional killing of Louis J. Johnson, Jr., in violation of 21 U.S.C., § 848(e)(1)(A) and 18 U.S.C., § 2.

13.   Count 12 charges that on or about January 29, 1992, Richard Tipton, James H. Roane, Jr., Cory Johnson, and Vernon Lance Thomas used a firearm in relation to a crime of violence or drug trafficking crime, in violation of 18 U.S.C., § 924(c) and § 2.

14.   Count 13 charges that on or about January 29, 1992, Richard Tipton, James H. Roane, Jr., Cory Johnson, and Vernon Lance Thomas committed a Violent Crime in Aid of Racketeering, the murder of Louis J. Johnson, Jr., in violation of 18 U.S.C., § 1959 and § 2.

15.   Count 14 charges that on or about February 1, 1992, Richard Tipton, James H. Roane, Jr., Cory Johnson, Vernon Lance Thomas, and Sterling Hardy committed a Violent Crime in Aid of Racketeering, the murder of Torrick Brown, Jr., in violation of 18 U.S.C., § 1959 and § 2.

16.   Count 15 charges that on or about February 1, 1992, Richard Tipton, James H. Roane, Jr., Cory Johnson, Vernon Lance Thomas, and Sterling Hardy used a firearm in relation to a crime of violence or drug trafficking crime, in violation of 18 U.S.C., § 924(c) and § 2.

17.   Count 16 charges that on or about February 1, 1992, Richard Tipton, James H. Roane, Jr., Cory Johnson, Vernon Lance Thomas, and Sterling Hardy committed a Violent Crime in Aid of Racketeering, assault upon Martha McCoy, in violation of 18 U.S.C., § 1959 and § 2.

RE:   ROANE, James H., Jr.                                        4
      aka:   "J.R."

18.   Count 17 charges that on or about February 1, 1992, Richard Tipton, Cory Johnson, and Jerry Gaiters caused the murder of Bobby Long, in furtherance of a Continuing Criminal Enterprise, in violation of 21 U.S.C., § 848(e)(1)(A) and 18 U.S.C., § 2.

19.   Count 18 charges that on or about February 1, 1992, Richard Tipton, Cory Johnson, and Jerry Gaiters caused the murder of Anthony Carter, in furtherance of a Continuing Criminal Enterprise, in violation of 21 U.S.C., § 848(e)(1)(A) and 18 U.S.C., § 2.

20.   Count 19 charges that on or about February 1, 1992, Richard Tipton, Cory Johnson, and Jerry Gaiters caused the intentional killing of Dorothy Mae Armstrong, in furtherance of a Continuing Criminal Enterprise, in violation of 21 U.S.C., § 848(e)(1)(A) and 18 U.S.C., § 2.

21.   Count 20 charges that on or about February 1, 1992, Richard Tipton, Cory Johnson, and Jerry Gaiters used a firearm in relation to a crime of violence or drug trafficking crime, in violation of 18 U.S.C., § 924(c) and § 2.

22.   Count 21 charges that on or about February 1, 1992, Richard Tipton, Cory Johnson, and Jerry Gaiters committed a Violent Crime in Aid of Racketeering, the murder of Bobby Long, in violation of 18 U.S.C., § 1959 and § 2.

23.   Count 22 charges that on or about February 1, 1992, Richard Tipton, Cory Johnson, and Jerry Gaiters committed a Violent Crime in Aid of Racketeering, the murder of Anthony Carter, in violation of 18 U.S.C., § 1959 and § 2.

24.   Count 23 charges that on or about February 1, 1992, Richard Tipton, Cory Johnson, and Jerry Gaiters committed a Violent Crime in Aid of Racketeering, the murder of Dorothy Mae Armstrong, in violation of 18 U.S.C., § 1959 and § 2.

25.   Count 24 charges that on or about February 19, 1992, defendants Richard Tipton, Vernon Lance Thomas, and Cory Johnson caused the murder of Curtis Thorne, in furtherance of a Continuing Criminal Enterprise, in violation of 21 U.S.C., § 848(e)(1)(A) and 18 U.S.C., § 2.

26.   Count 25 charges that on or about February 19, 1992, Richard Tipton, Vernon Lance Thomas, and Cory Johnson caused the murder of Linwood Chiles, in furtherance of a Continuing Criminal Enterprise, in violation of 21 U.S.C., § 848(e)(1)(A) and 18 U.S.C., § 2.

27.   Count 26 charges that on or about February 19, 1992, Richard Tipton, Vernon Lance Thomas, and Cory Johnson used a firearm in relation to a crime of violence or drug trafficking crime, in violation of 18 U.S.C., § 924(c) and § 2.

RE:    ROANE, James H., Jr.                                          5
       aka:   "J.R."

28.    Count 27 charges that on or about February 19, 1992, Richard
       Tipton, Vernon Lance Thomas, and Cory Johnson committed a
       Violent Crime in Aid of Racketeering, the murder of Curtis
       Thorne, in violation of 18 U.S.C., § 1959 and § 2.

29.    Count 28 charges that on or about February 19, 1992, Richard
       Tipton, Vernon Lance Thomas, and Cory Johnson committed a
       Violent Crime in Aid of Racketeering, the murder of Linwood
       Chiles, in violation of 18 U.S.C., § 1959 and § 2.

30.    Count 29 charges that on or about February 19, 1992, Richard
       Tipton, Vernon Lance Thomas, and Cory Johnson caused a
       Violent Crime in Aid of Racketeering, the maiming of
       Priscilla Green, in violation of 18 U.S.C., § 1959 and § 2.

31.    Count 30 charges that on or about February 19, 1992, Richard
       Tipton, Vernon Lance Thomas, and Cory Johnson caused a
       Violent Crime in Aid of Racketeering, the maiming of
       Gwendolyn Green, in violation of 18 U.S.C., § 1959 and § 2.

32.    Count 31 charges that on or about January 15, 1992, Cory
       Johnson knowingly and intentionally distributed a substance
       which contained cocaine base, in violation of 21 U.S.C.,
       § 841(a)(1) and 18 U.S.C., § 2.  The actual amount of crack
       distributed was one tenth of an ounce.

33.    Count 32 charges that on or about February 2, 1992, Richard
       Tipton, Cory Johnson, Sterling Hardy, Vernon Lance Thomas,
       James H. Roane, Jr., and Jerry Gaiters did knowingly and
       intentionally possess with the intent to distribute more than
       50 grams of a substance containing cocaine base, in violation
       of 21 U.S.C., § 841(a)(1) and 18 U.S.C., § 2.  The actual
       amount of crack confiscated was 18.83 grams.

34.    Count 33 charges that on or about April 10, 1992, Richard
       Tipton did knowingly and intentionally possess with the
       intent to distribute more than 50 grams of a substance
       containing cocaine base, in violation of 21 U.S.C.,
       § 841(a)(1) and 18 U.S.C., § 2.  The actual amount of crack
       confiscated was 3.2 grams.

## Conviction(s)

35.    On February 3, 1993, James H. Roane, Jr., was convicted, by
       a jury, on all counts of the Indictment in which he was
       named.  The jury then recommended that the defendant be
       sentenced to death on Count 5 of the Indictment, and life in
       prison on Counts 8 and 11 of the Indictment.  A presentence
       report was ordered, and sentencing is scheduled for May 18,
       1993.

RE:  ROANE, James H., Jr.                                                    6
     aka:  "J.R."


### Substantial Assistance

36.  Assistant United States Attorney Howard C. Vick has advised
     that he does not intend to make a substantial assistance
     motion, pursuant to 18 U.S.C., § 3553(e), or 5K1.1 of the
     Guideline Manual.


### Codefendants-Related Cases

37.  **Richard Tipton - 3:92CR68-01**
     This defendant was charged in Counts 1 through 7, 11 through
     30, 32, and 33 of the Indictment.  From January 11, 1993, to
     February 2, 1993, this matter was heard by a jury.   On
     February 3, 1993, the jury found him guilty as charged in
     Counts 1 through 4, 17 through 30, 32, and 33.   The jury
     found him not guilty as charged in Counts 5 through 7 and 14
     through 16.   The Court dismissed Counts 11, 12, and 13, on a
     Government motion, on January 28, 1993.

38.  Count 1 charged him with Conspiracy to Possess with the
     Intent to Distribute and to Distribute at least 50 Grams of
     Cocaine Base.   Count 2 charged him with Operating a
     Continuing Criminal Enterprise.   Counts 3, 17, 18, 19, 24,
     and 25 charged him with Murder in Furtherance of a Continuing
     Criminal Enterprise.   Counts 4, 21, 22, 23, 27, 28, 29, and
     30 charged him with Violent Crimes in Aid of Racketeering.
     Counts 20 and 26 charged him with Use of a Firearm in
     Relation to a Crime of Violence or Drug Trafficking Crime.
     Counts 32 and 33 charged him with Possession with Intent to
     Distribute Crack.

39.  Sentencing has been scheduled for May 18, 1993.  It is noted
     that the jury recommended a sentence of death with respect to
     Counts 3, 24, and 25, and life imprisonment with respect to
     Counts 17, 18, and 19.


40.  **Cory Johnson - 3:92CR68-02**
     This defendant was charged in Counts 1, 2, and 8 through 32
     of the Indictment.   From January 11, 1993, to February 2,
     1993, this matter was heard by a jury.  On February 3, 1993,
     the jury found him guilty as charged on all counts.  Count 1
     charged him with Conspiracy to Possess with the Intent to
     Distribute and to Distribute at least 50 Grams of Cocaine
     Base.   Count 2 charged him with Operating a Continuing
     Criminal Enterprise.   Counts 8, 11, 17, 18, 19, 24, and 25
     charged him with Murder in Furtherance of a Continuing
     Criminal Enterprise.   Counts 9, 12, 15, 20, and 26 charged
     him with Use of a Firearm in Relation to a Crime of Violence
     or Drug Trafficking Crime.   Counts 10, 13, 14, 16, 21, 22,
     23, 27, 28, 29, and 30 charged him with Violent Crimes in Aid
     of Racketeering.   Count 31 charged him with Distribution of

RE:  ROANE, James H., Jr.                                              7
     aka:  "J.R."


Crack.  Count 32 charged him with Possession with Intent to
Distribute Crack.  Sentencing has been scheduled for May 18,
1993.  It is noted that the jury recommended a sentence of
death, with respect to the seven counts of Murder in
Furtherance of a Continuing Criminal Enterprise.


41.  **Vernon Lance Thomas - 3:92CR68-04**
     This defendant has been charged in Counts 1, 2, 11 through
     16, 24 through 30, and 32 of the Indictment.  Count 1 charges
     him with Conspiracy to Possess with the Intent to Distribute
     and to Distribute at least 50 Grams of Cocaine Base.  Count
     2 charges him with Operating a Continuing Criminal
     Enterprise.  Counts 11, 24, and 25 charge him with Murder in
     Furtherance of a Continuing Criminal Enterprise.  Counts 12,
     15, and 26 charge him with Use of a Firearm in Relation to a
     Crime of Violence or Drug Trafficking Crime.  Counts 13, 14,
     16, 27, 28, 29, and 30 charge him with Violent Crimes in Aid
     of Racketeering.  Count 32 charges him with Possession with
     Intent to Distribute Crack.  A jury trial is scheduled to
     begin on April 26, 1993.


42.  **Jerry R. Gaiters - 3:92CR68-05**
     This defendant was charged in Counts 1, 17 through 23, and 32
     of the Indictment.  Count 1 charged him with Conspiracy to
     Possess with the Intent to Distribute and to Distribute at
     least 50 Grams of Cocaine Base.  Counts 17, 18, and 19
     charged him with Murder in Furtherance of a Continuing
     Criminal Enterprise.  Count 20 charged him with Use of a
     Firearm in Relation to a Crime of Violence or Drug
     Trafficking Crime.  Counts 21, 22, and 23 charged him with
     Violent Crimes in Aid of Racketeering.  Count 32 charged him
     with Possession with Intent to Distribute Crack.  This
     defendant entered a plea of guilty to all counts on June 12,
     1992, through a written Plea Agreement.  No sentencing date
     has been scheduled.


43.  **Sterling Hardy - 3:92CR68-06**
     This defendant was charged in Counts 1, 14 through 16, and 32
     of the Indictment.  Count 1 charged him with Conspiracy to
     Possess with the Intent to Distribute and to Distribute at
     least 50 Grams of Cocaine Base.  Counts 14 and 16 charged him
     with Violent Crimes in Aid of Racketeering.  Count 15 charged
     him with Use of a Firearm in Relation to a Crime of Violence
     or Drug Trafficking Crime.  Count 32 charged him with
     Possession with Intent to Distribute Crack.  This defendant
     entered a plea of guilty to Counts 1, 14, 15, and 16 on
     July 28, 1992.  As part of a written Plea Agreement, Count 32
     will be dismissed.  No sentencing date has been scheduled.

RE:   ROANE, James H., Jr.                                              8
      aka:   "J.R."

44.   **Sandra Reavis - 3:92CR68-07**
      This defendant was charged in Count 1 of the Indictment with
      Conspiracy to Possess with the Intent to Distribute and to
      Distribute at least 50 Grams of Cocaine Base.   From
      January 11, 1993, to February 2, 1993, this matter was heard
      by a jury.   On February 3, 1993, the jury found her guilty as
      charged in Count 1 of the Indictment.   On April 14, 1993, she
      was sentenced to serve 192 months and ordered to be on
      supervised release for 5 years upon her release.

## Offense Conduct

45.   **NOTE:**  Unless otherwise stated, the following information is
      based totally on the Government's set of facts.  Counsel for
      defendants Tipton, Johnson, and Roane did not permit the
      Probation Officers to discuss the offense conduct with their
      respective clients.   Defendants Gaiters and Hardy entered
      pleas of guilty to various counts of the 33-count Indictment,
      and admitted the facts of the case against them at the time
      of entering their pleas.   Defendant Sandra Reavis was only
      charged in Count 1 of the Indictment and was found guilty, by
      the jury, as to Count 1.   The case against defendant Vernon
      Lance Thomas is pending.   The following information was
      obtained by interviewing Assistant United States Attorney
      Howard C. Vick, Jr., and City of Richmond Police Detective
      Ralph Fleming.

## Synopsis of the Case

46.   The genesis of this case occurred in approximately January of
      1989.  Richard Tipton and Cory Johnson were part of a loosely
      organized group of drug dealers in New York, known as the New
      York Boyz.   Richard Tipton and Cory Johnson eventually
      relocated to Trenton, New Jersey, where they began to sell
      crack cocaine.

47.   On June 4, 1991, a search warrant was executed at a residence
      on Martin Luther King, Jr., Boulevard in Trenton, New Jersey,
      known to be the residence of Vernon Lance Thomas and Cory
      Johnson.  These defendants were not at the residence when the
      police arrived, but Government witness Greg Scott was home,
      and he was arrested and charged with drug possession.  Based
      on this raid, it is thought the defendants decided to
      relocate their operation of drug distribution to Richmond.

48.   In approximately November 1991, Richard Tipton and Cory
      Johnson moved the base of their operation to Richmond,
      Virginia.   Prior to this date, Richard Tipton had begun
      selling drugs in the Central Gardens neighborhood in
      Richmond.  Upon Cory Johnson's arrival, Richard Tipton and
      Cory Johnson expanded their area, to include what is known as
      the Newtowne section of the City of Richmond.

RE: ROANE, James H., Jr.                                                9
    aka: "J.R."

49.    From November 1991 until the spring of 1992, Richard Tipton, Cory Johnson, James H. Roane, Jr., Jerry Gaiters, Sterling Hardy, and Sandra Reavis conspired with each other, and others, to distribute at least 50 grams of crack cocaine. It is alleged that Vernon Lance Thomas also participated in the conspiracy.

50.    The defendants' source of cocaine was in New York City. Cocaine was brought from New York City to Richmond, Virginia, by Richard Tipton and Cory Johnson, where it was further distributed by street level dealers. Assistant U.S. Attorney Vick states that, conservatively, these defendants were responsible for purchasing an estimated 42.5 kilograms of cocaine on a wholesale basis (an average of one half kilogram every two weeks). This cocaine was subsequently converted into cocaine base (crack) and distributed during the course of the conspiracy.

51.    According to a local agent for the Drug Enforcement Administration, cocaine powder sold on a wholesale basis would be at least 50 percent pure. Using this estimate of purity, the cocaine powder believed to have been gotten in New York could have been converted to approximately 18.49 kilograms of cocaine base.

52.    The formula for calculating cocaine base weight from powder cocaine is as follows:

       Cocaine Powder (Hydrochloride)
       Weight X Purity Percentage Less 13% = Base Weight
       (The 13% loss represents the weight loss during the cooking process, attributed to the removal of the hydrochloride)

53.    In this case, 42.5 kilograms of powder cocaine X 50% purity reduces to 21.25 kilograms of 100% pure cocaine powder. This, in turn, reduces by 13% or 18.49 kilograms of cocaine base.

54.    Evidence would indicate the base of the group's operation was a single family dwelling located at 1212 West Moore Street, Richmond, Virginia. Police believe the former occupant of the residence, Tony Stokes, was a drug user who owed a drug debt to the defendants. When Mr. Stokes was unable to pay his debt, he vacated his residence, which became "a safe house" for several of the defendants. Drugs were sometimes kept at this location, as well as at a house on Norton Street that was often frequented by James H. Roane, Jr.. There did not appear to be a primary "stash house" where drugs were stored, nor was there a primary "cooking" location where the cocaine was converted to crack.

RE:    ROANE, James H., Jr.                                                10
       aka:   "J.R."

55.    The residence at 1212 West Moore Street was not utilized by all defendants. As a "safe house", the residence was not normally used as a point of drug distribution, where customers would frequent the house. Detective Fleming advised that defendants Roane and Johnson discouraged traffic at the house.

56.    As stated previously, the Government can only estimate the total amount of drugs distributed by this group of defendants, as actual seizures of drugs were rare. Count 32 of the Indictment charged all defendants, but Sandra Reavis, with Possession with the Intent to Distribute Cocaine Base. Richmond City Police Officers executed a search warrant at the West Moore Street address on February 2, 1992, and confiscated 120 ziplock plastic bags containing cocaine base, with a total weight of 18.83 grams.

57.    Government witness Maurice Saunders was arrested twice (April 30, 1990, and May 31, 1991) in Henrico County, Virginia, with cocaine in his possession, which he claims he received from defendant Richard Tipton. The total amount of seizure in these two cases was 1.33 grams.

58.    Lastly, on April 10, 1992, a search warrant was executed at 411 East 15th Street, Richmond, Virginia, in which 3.2 grams of crack cocaine were found. This seizure constitutes Count 33 of the Indictment. An occupant of the residence claimed the drugs were Richard Tipton's.

59.    With these three exceptions, there are no other known drug seizures, and the information as to the amounts distributed by the defendants came from the testimony of Government witnesses Maurice Saunders, Charles Townes, Denise Berkley, Robert Davis, and Greg Scott.

60.    In addition to the drug distribution, the Government also charged that there were ten murders, two maimings, and one assault committed between January 5, 1992, and February 19, 1992. The only defendant not charged with any of the violent crimes was Sandra Reavis. Some of the victims were killed because they were believed to be competitors in the drug trade, some were killed because they happened to be in the wrong place at the wrong time, and others were killed because they were believed to be cooperating with the police, or because they knew too much about the group's activities.

## Circumstances Pertaining to Counts 2 Through 33

61.    **Count 2** - Defendants Tipton, Johnson, and Roane were found guilty of Count 2. Vernon Lance Thomas is pending trial. The Indictment charges that from at least January 1991 and continuously thereafter, up to and including the date of the

RE: ROANE, James H., Jr.                                                11
    aka:  "J.R."

filing of the Indictment, the defendants engaged in a Continuing Criminal Enterprise. The defendants have been convicted of committing a series of violations of the drug laws, in concert with at least five other persons, with respect to whom they occupied positions of either organizer, supervisor, or manager.

62.  **Counts 3 and 4** charged Richard Tipton with the murder of Douglas A. Talley in Furtherance of a Continuing Criminal Enterprise, and with Committing a Violent Crime in Aid of Racketeering. The defendant was convicted as charged.

63.  On January 5, 1992, police received a call that a man was found hanging out of a vehicle located in the 200 block of East 13th Street. When police arrived, they found the victim, Douglas A. Talley, hanging out the left front door, and he appeared to have been stabbed several times in the back of the neck. The medical examiner determined that the cause of death was multiple stab wounds to the head and neck. Mr. Talley had been stabbed 81 times. The deceased was reportedly killed because Mr. Tipton thought Mr. Talley was "a snitch." Mr. Talley had previously made drug buying trips to New York, in the capacity of a driver. Mr. Tipton was linked to the crime by a fingerprint of his found on the car.

64.  **Counts 5, 6, and 7** charged defendants Richard Tipton and James H. Roane, Jr., with the murder of Douglas Moody in Furtherance of a Continuing Criminal Enterprise, Use of a Firearm in Relation to a Crime of Violence, and a Violent Crime in Aid of Racketeering. Mr. Tipton was acquitted, by the jury, of all three counts. Mr. Roane was found guilty, by the jury, of all three counts.

65.  On January 13, 1992, a resident of 810 North Harrison Street, Richmond, Virginia, heard a noise outside her home in the alley that runs beside her house. She looked out the window and observed a man standing over top another man stabbing him in the back. After stabbing the man, the suspect ran east in the alley and across the street. The witness went outside and provided aid to the victim until the fire department arrived.

66.  Another witness testified that she, the victim, and another individual were in an apartment when two individuals, one of them James H. Roane, Jr., came to the apartment. The witness stated that three of the individuals went into a bedroom and began playing a tape, but she could not make out what they were saying. Shortly thereafter, she left the apartment with two of the individuals, and was standing outside when she heard shots inside the apartment. The victim jumped through a window and ran toward the alley. Mr. Roane went after the victim and began stabbing the victim.

RE:  ROANE, James H., Jr.                                                    12
     aka:  "J.R."

67.  The medical examiner's report revealed the cause of death to be stab wounds to the neck and chest, and a gunshot wound to the chest and lung.  The victim was reportedly killed over a drug turf battle, and because he was thought to be a physical threat to Tipton and Johnson.  Priscilla Green claimed to have provided the knife to Roane and to have disposed of it after the murder.

68.  **Counts 8, 9, and 10** charged James H. Roane, Jr., and Cory Johnson with the murder of Peyton Maurice Johnson in Furtherance of a Continuing Criminal Enterprise, Use of a Firearm in Relation to a Crime of Violence, and Violent Crime in Aid of Racketeering.  Both defendants were found guilty, by the jury, of all three counts.

69.  On January 14, 1992, the victim, Peyton Maurice Johnson, went to an after-hours club on West Clay Street in Richmond, Virginia.  The operator of the club stated that, just prior to the murder, James H. Roane, Jr., and an unknown male came into the club, stayed a short time, and then left.  Minutes later, Cory Johnson and an unknown male entered the club, pulled out weapons, and shot the victim.  The operator of the club stated that he ran into another room, attempting to get out of the line of gunfire.  The medical examiner's report listed the cause of death as gunshot wounds to the head, chest, and legs.  The victim sustained a total of 15 gunshot wounds.  The victim was reportedly killed, because he was an associate of Douglas Moody.

70.  **Counts 11, 12, and 13** charged defendants Richard Tipton, James H. Roane, Jr., Cory Johnson, and Vernon Lance Thomas with the murder of Louis J. Johnson, Jr., in Furtherance of a Continuing Criminal Enterprise, Use of a Firearm in Relation to a Crime of Violence, and a Violent Crime in Aid of Racketeering.  The charges against defendant Tipton were dismissed.  Defendants Roane and Johnson were found guilty, by the jury, of these three counts.  The charges against defendant Thomas are pending.

71.  On January 29, 1992, police went to the 900 block of Kinney Street, in response to shots being fired.  The body of the victim, Louis J. Johnson, Jr., was found in the street with several gunshot wounds to the head and body.  A witness stated he heard four or five shots, and then saw two males enter a car and leave the scene at a high rate of speed.  The medical examiner's report listed the cause of death as multiple gunshot wounds to the head and chest.  The victim had been shot seven times.  Mr. Johnson, a drug user, was seen as a threat to members of the group.

RE:  ROANE, James H., Jr.                                        13
     aka:  "J.R."

72.    **Counts 14 and 15** charged defendants Richard Tipton, James H. Roane, Jr., Cory Johnson, Vernon Lance Thomas, and Sterling Hardy with the murder of Torrick Brown, Jr., and the Use of a Firearm in Relation to a Crime of Violence. Defendant Tipton was found not guilty, by the jury, as to both counts. Defendants Johnson and Roane were found guilty, by the jury, of both counts. Defendant Hardy entered a plea of guilty, through a written Plea Agreement, to both counts. The charge against defendant Thomas is pending.

73.    **Count 16** charged defendants Richard Tipton, James H. Roane, Jr., Cory Johnson, Vernon Lance Thomas, and Sterling Hardy with Committing Assault Resulting in Serious Bodily Injury to Martha McCoy. Defendant Tipton was found not guilty, by the jury, of this count. Defendants Roane and Johnson were found guilty, by the jury, of this count. The case against defendant Thomas is pending. Defendant Hardy entered a plea of guilty, through a written Plea Agreement, to this count.

74.    Martha McCoy advised the police that she was feeding her three children at a kitchen table, on the evening of February 1, 1992, when a knock came at the door. Her half brother, Torrick Brown, was in another room watching television. As Ms. McCoy got to the door, Mr. Brown was about five feet behind her. She asked who was at the door, and the man stated, "James." Ms. McCoy opened the door and saw James H. Roane, Jr.. Two other males were behind him dressed in dark clothes with hoods on their heads. Ms. McCoy then noticed that Mr. Roane had a gun, and she tried to close the door. Before she could close the door, Mr. Roane began to shoot towards Ms. McCoy and Mr. Brown. Ms. McCoy jumped over a couch to protect herself, and saw her half brother fall to the floor on his back, while James H. Roane, Jr., continued to shoot his gun. The three children, who ranged in age from seven years to two years, remained at the kitchen table and observed the shooting of their mother and uncle. The oldest of the children also identified Mr. Roane as the gunman.

75.    After she was shot, Ms. McCoy gathered her children into a back room and told them to get dressed. She then left her apartment, got into Mr. Brown's car, and tried to start it so she could leave the area. The car engine stalled. The children got out of the car and began to shout for help. A neighbor telephoned police, and an ambulance unit responded and transported Ms. McCoy to the hospital.

76.    It was learned later that Linwood Chiles drove Johnson and Thomas to the apartment of Roane's girlfriend, who lived in the same neighborhood as Ms. McCoy. Hardy drove a second car, unaccompanied, to the scene and acted in the capacity of a backup getaway driver.

RE:   ROANE, James H., Jr.                                              14
      aka:   "J.R."

77.   The medical examiner determined that Torrick Brown died as
      the result of gunshot wounds to the chest and abdomen.  Mr.
      Brown was shot 16 times.  Ms. McCoy was shot 6 times.

78.   Based on additional investigation, a search warrant was
      obtained and executed at 1212 West Moore Street, where it was
      believed Mr. Roane was staying.  Mr. Roane was arrested at
      the address, along with Sterling Hardy and Vernon Lance
      Thomas.  Also found at the address, on February 2, 1992, were
      drugs and three firearms.  Ballistic tests confirmed that two
      of the guns were used in the murder of Mr. Brown and the
      assault on Ms. McCoy.

79.   The apparent motive in this case was defendant Roane's
      retaliation against victim Torrick Brown, who was believed to
      have been dating Mr. Roane's girlfriend while Mr. Roane was
      in custody on a State criminal charge.

80.   **Counts 17, 18, 19, 20, 21, 22, and 23** charged defendants
      Richard Tipton, Cory Johnson, and Jerry Gaiters with causing
      the murder of Bobby Long, Anthony Carter, and Dorothy Mae
      Armstrong in Furtherance of a Continuing Criminal Enterprise,
      Using a Firearm in Relation to a Crime of Violence, and
      Committing Violent Crimes in Aid of Racketeering.  Defendants
      Tipton and Johnson were found guilty, by the jury, as to all
      seven counts, and defendant Jerry Gaiters entered a plea of
      guilty, through a written Plea Agreement, to all seven
      counts.

81.   Dorothy Mae Armstrong was defendant Jerry Gaiter's cousin.
      She was also the sister of victim Bobby Lee Long.
      Ms. Armstrong was reportedly killed, because she owed a drug
      debt to defendants Tipton and Johnson and because "she knew
      too much" about the activities of these two defendants.

82.   According to a witness, Ms. Armstrong was hiding out at her
      brother's home on East Clay Street, until she could get her
      money straight, which she owed to defendants Tipton and
      Johnson, for drugs.  When defendants Tipton and Johnson
      learned Ms. Armstrong's whereabouts, they went to the address
      at East Clay Street, accompanied by defendant Gaiters, on the
      evening of February 1, 1992. As Mr. Gaiters was known to Ms.
      Armstrong, he went to a side door and knocked until Bobby
      Long came to respond to the knock.  Mr. Long allowed Mr.
      Gaiters into the home and was attempting to close the door,
      when Cory Johnson shoved it open, ran past him, and shot
      Dorothy Mae Armstrong as she was coming down the hallway
      towards Jerry Gaiters and Bobby Long.  Mr. Long ran out the
      back door and fell to the ground.  A witness stated that he
      saw Cory Johnson standing over Bobby Long shooting him.
      Another person in the home, who was in a back room while the
      shooting was going on, advised police that the third victim,
      Anthony Carter, was sitting in a chair, in the kitchen,
      asleep.

RE:  ROANE, James H., Jr.                                                    15
     aka:  "J.R."

83.    It is believed that the only reason Bobby Long and Anthony
       Carter were shot, was because they would have been witnesses
       to the shooting of Dorothy Mae Armstrong.  Mr. Johnson was
       the gunman, Mr. Tipton the lookout, and Mr. Gaiters was used
       to gain access to the home.

84.    The medical examiner's report revealed that Anthony Carter
       died of gunshot wounds to the neck and spinal cord.  He had
       been shot twice.  Dorothy Mae Armstrong died as the result of
       gunshot wounds to the abdomen.  Bobby Long died as the result
       of a gunshot wound to the head.

85.    **Counts 24, 25, 26, 27, 28, 29, and 30** charged defendants
       Richard Tipton, Vernon Lance Thomas, and Cory Johnson with
       the murder of Curtis Thorne and Linwood Chiles in Furtherance
       of a Continuing Criminal Enterprise, the Use of a Firearm in
       Relation to a Crime of Violence, Violent Crimes in Aid of
       Racketeering, and the maiming of Priscilla Green and
       Gwendolyn Green.  Defendants Tipton and Johnson were found
       guilty, by a jury, as to all seven counts.  The charges
       against Vernon Lance Thomas are pending.

86.    On February 19, 1992, Richmond City Police were summoned to
       the 1100 block of Stony Run Drive.  The first officer to
       arrive on the scene observed a station wagon parked against
       the right curb facing north, with no lights on, and the rear
       passenger door open.  One of the victims, a male, was lying
       on the ground outside the rear passenger door.  One of the
       female victims was found near the curb, several feet in front
       of the vehicle.  While looking inside the vehicle, the
       officer noticed a female in the passenger side of the front
       seat, slumped to her left over a male victim who was sitting
       behind the steering wheel slumped to his right.  All victims
       appeared to have gunshot wounds.

87.    Victims Linwood Chiles and Curtis Thorne were pronounced dead
       at the scene.  Victims Priscilla Green and Gwendolyn Green
       were transported to a local hospital for medical treatment.

88.    The medical examiner's report listed the cause of death for
       Linwood Chiles as a gunshot wound to the head.  It is noted
       that Mr. Chiles was out on bond, as the result of his arrest
       several weeks earlier in which he was charged with the murder
       of Torrick Brown.  It is believed that Mr. Chiles was
       murdered because defendant Tipton thought Mr. Chiles was "a
       snitch."  The medical examiner listed the cause of death for
       Curtis Thorne as gunshot wounds to the head with hemorrhage.
       It is believed that the maiming of Priscilla Green and
       Gwendolyn Green (who are sisters) occurred because they were
       in the wrong place at the wrong time and in the company of
       Mr. Chiles.  Mr. Thorne owed a drug debt.

RE:   ROANE, James H., Jr.                                                   16
      aka:   "J.R."

89.   **Count 31** charged Cory Johnson with Distributing One Tenth of an Ounce of Cocaine Base to Robert Davis, in exchange for Davis wiping fingerprints off the gun used in the murder of Peyton Maurice Johnson, which occurred on January 14, 1992.

90.   **Count 32** charged Richard Tipton, Cory Johnson, Sterling Hardy, Vernon Lance Thomas, James H. Roane, Jr., and Jerry Gaiters with Possession with the Intent to Distribute Cocaine Base on February 2, 1992. Defendants Tipton, Johnson, and Roane were found guilty, by the jury, in this count. The case against Sterling Hardy was dismissed. Jerry Gaiters entered a plea of guilty to this offense, as part of a written Plea Agreement. The charge is pending against defendant Thomas.

91.   After the murder of Torrick Brown and the assault of Martha McCoy on February 1, 1992, police obtained a search warrant for 1212 West Moore Street, as it was believed that Mr. Roane was residing at that address. The warrant was executed on February 2, 1992. During a search of the premises, 120 ziplock plastic bags of crack (18.83 grams) were found.

92.   **Count 33** charged Richard Tipton with Possession with the Intent to Distribute Cocaine Base on April 10, 1992. A total of 3.2 grams of cocaine base were recovered at a home located at 411 East 15th Street on April 10, 1992. Witnesses stated the drugs found at this location were the property of defendant Tipton.

**Victim Impact**

93.   There are several categories of victims in this case. The first apparent category is the 10 murder victims. Surviving family members of Louis J. Johnson, Jr., Linwood Chiles, and Curtis Thorne were contacted by phone to obtain any statement they wished to make, regarding the death of their family member.

94.   Mr. Johnson's father stated that he is in shock over the death of his son, and cannot stop thinking about it. He also stated that he would have an easier time accepting his son's death, if the death had been the result of an accident, rather than the result of violence. Mr. Johnson is disabled and counted on his son to assist him in running errands.

95.   Mr. Chiles' wife was contacted and stated that she is glad the trial is over. Mr. Chiles is survived by his wife and son.

96.   Curtis Thorne's mother stated the loss of her son has created a hardship on her. She is separated from her husband, in poor health, and depended on her son for assistance. She stated that a day does not go by that she does not think about her son and the tragic way in which he died.

RE:  ROANE, James H., Jr.                                               17
     aka:  "J.R."

97.   Douglas Moody, Anthony Carter, Bobby Long, and Dorothy Armstrong have no known immediate survivors. Douglas Talley is survived by his mother, ex-wife, and a child. Peyton Maurice Johnson is survived by his mother. Martha McCoy, the sister of Torrick Brown, was not contacted.

98.   The second category of victims involves those who were injured but have survived. Martha McCoy was shot in her home in front of her three children. Priscilla Green and Gwendolyn Green were also shot and are recuperating. An older sister of the Greens was contacted, and she stated that the family is suffering financially and emotionally as a result of the harm done to the Green sisters. Priscilla Green reportedly has short-term memory loss and requires assistance to deal with this. Gwendolyn Green needs 24 hour care. The family is not able to afford this medical treatment, and they have utilized a rotating schedule trying to care for Gwendolyn.

99.   An employee of the financial records office at the Medical College of Virginia verified that Gwendolyn Green's hospital bill was $101,773.17, Priscilla Green's hospital bill was $167,000, and Martha McCoy's hospital bill was $9,800. Dorothy Mae Armstrong died at the hospital; however, her hospital bill was not available. The Green sisters continue to need ongoing medical care. There is also certain to be a psychological impact on Ms. McCoy's children, Ms. McCoy, and the Green sisters, which cannot be evaluated.

100.  The third category of victims involves those individuals who have had to be relocated through the Federal Witness Protection Program for their own safety. There are at least 11 witnesses who have been placed in the program, at a great expense to the Government, to protect them from any harm that may be posed by their testifying at the trial of these defendants.

101.  Society, in general, is always a victim in a case like this. Neighborhoods are affected. People do not feel safe in their homes or on the streets. Lives are altered when people choose to use drugs and create a market for sellers, such as some of these defendants.

102.  Restitution is appropriate for certain counts of the Indictment, per 18 U.S.C., § 3663. Restitution is not considered to be obtainable in this case, per 18 U.S.C., § 3663(d), as the fashioning of an order of restitution would be unduly complicated and prolong the sentencing process.

**Adjustments for Vulnerable, Official, or Restrained Victim**

103.  Not applicable.

RE:    ROANE, James H., Jr.                                            18
       aka:    "J.R."


### Adjustment for Role in the Offense

104.   Richard Tipton, Cory Johnson, and Vernon Lance Thomas are
       seen as being equally culpable.  All three defendants are
       believed to have been involved in the conspiracy, since its
       inception in 1989.  Vernon Lance Thomas was arrested on
       February 2, 1992, during the execution of the search warrant
       at 1212 West Moore Street.  He has remained incarcerated
       since that date.  It is not clear at this time if Mr. Thomas
       effectively withdrew from the conspiracy at the time of his
       incarceration, as he has not been tried yet, with respect to
       this Federal case.

105.   Defendants Richard Tipton, Cory Johnson, and James H. Roane,
       Jr., have all been convicted of Count 2 of the Indictment
       charging them with Operating a Continuing Criminal
       Enterprise.  The fact that they have been convicted of this
       offense makes it clear that they were organizers, if not
       necessarily managers or leaders, of the conspiracy.

106.   Richard Tipton appears to have initiated the move of Cory
       Johnson and Vernon Lance Thomas to Richmond, Virginia, from
       Trenton, New Jersey.  Mr. Tipton had full knowledge of the
       drug distribution activities of the group and was known to
       have a cocaine source in New York City, New York.
       Mr. Tipton, accompanied by others, made car trips to New
       York, on cocaine purchasing runs.  While he was not an active
       street dealer, Tipton did distribute drugs to others, such as
       Maurice Saunders who was a street dealer.  Mr. Tipton also
       was aware of the violence prevalent in this group, as he has
       been convicted of assisting in several of the murders.

107.   It is Detective Fleming's opinion that Cory Johnson was the
       leader of this group of defendants.  Mr. Tipton was seen as
       being irrational and impulsive at times, and Mr. Johnson was
       more in control.  Mr. Johnson was also well aware of the drug
       distribution and the violence associated with this group.  He
       has been convicted of several of the murders.

108.   James H. Roane, Jr., is considered to be the local connection
       utilized by Richard Tipton and Cory Johnson to enter into the
       Richmond drug trade.  Mr. Roane joined the conspiracy in
       November 1991 and remained involved in the conspiracy until
       April 1992.  Mr. Roane was brought into the operation as an
       equal partner, once the move was made to Richmond.  Mr. Roane
       knew the local drug dealers and their geographical
       boundaries.  He was used to help Richard Tipton and Cory
       Johnson infiltrate the local market, as they were not known
       by the local street dealers.  Mr. Roane had full knowledge of
       the drug operation, and he participated in some of the
       violence associated with this group.

109.   Vernon Lance Thomas is still pending trial, and the true
       extent of his involvement is not presently known.


App.0428

RE:  ROANE, James H., Jr.                                    19
     aka:  "J.R."

110.  Jerry R. Gaiters is a local, occasional, street level dealer and a heavy user of crack. He is known to have sold drugs for Cory Johnson and Richard Tipton. Mr. Gaiters did not become involved in the conspiracy until November 1991. His involvement ceased in February 1992 when he was arrested. Mr. Gaiters did not appear to have full knowledge of the entire drug distribution side of this case. Mr. Gaiters was utilized in setting up the murder of his cousin, Dorothy Mae Armstrong.

111.  Sterling Hardy was a friend of James H. Roane, Jr.. When Sterling Hardy was released from jail and on State parole, he was befriended by James Roane. Cory Johnson gave Sterling Hardy a small amount of cocaine, for being a friend of James Roane. Mr. Hardy gave this cocaine to Denise Berkley, who gave him $5. He did not ask to be reimbursed for this crack cocaine. While Mr. Hardy was aware that some of the other defendants were distributing drugs, he does not appear to have been directly involved in the distribution of the group's drugs. Mr. Hardy did drive for members of the group on occasion, and appears to have had knowledge of some of the group's violence. Of all the defendants, he is certainly the least knowledgeable and the least culpable. His involvement in the conspiracy would not have begun until November 1991.

112.  Sandra Reavis was brought into the conspiracy, as she was one of James H. Roane, Jr.'s girlfriends. Sandra Reavis became involved in the conspiracy in November 1991. According to Detective Fleming, Sandra Reavis had full knowledge of the group's drug activities and the violence associated with the murder of Douglas Moody.

113.  Sandra Reavis was a regular user of heroin and also distributed cocaine for Tipton, Johnson, and Roane. Sandra Reavis was known to have wired money to New York, which was used to post bail for Cory Johnson when he was arrested under an alias name. Sandra Reavis also worked in concert with Valerie Butler (Cory Johnson's girlfriend), in picking up drugs for distribution in Richmond.

114.  Most of the defendants were arrested on or about April 10, 1992. Ms. Reavis was not arrested until April 18, 1992. A search warrant was executed at a residence on 15th Street, Richmond, Virginia, on April 10, 1992, which resulted in a drug confiscation. The drugs were said to belong to Richard Tipton. Sometime between April 10, 1992, and April 18, 1992, Ms. Reavis and Valerie Butler went to the 15th Street address in an attempt to retrieve the drugs; however, they had already been taken during the execution of the search warrant.

### Adjustment for Obstruction of Justice/Reckless Endangerment

115.  Not applicable.

RE:   ROANE, James H., Jr.                                          **20**
      aka:   "J.R."

### Adjustment for Acceptance of Responsibility

116.  The defendant's attorney, David Baugh, advised that he did not want the defendant to be questioned about his involvement in any of the offenses, because of the appeal process. Therefore, pursuant to 3E1.1 of the Guideline Manual, the defendant has failed to demonstrate an acceptance of personal responsibility for his criminal conduct.

### Offense Behavior Not Part of Relevant Conduct

117.  Not applicable.


## PART B.   CRIMINAL HISTORY

### Juvenile Adjudications

| Date of Referral/Age | Charge/Jurisdiction | Date Sentence Imposed/Disposition |
|---|---|---|
| 118. | | |
| 07-23-75 (age 9) | Sodomy<br><br>Juvenile Ct. Richmond, VA | Resolved at Intake |

Court records reflect that the defendant approached the victim, who was six years old, and told him that if he would take his penis into his mouth and suck it, the defendant would give him his orange juice and cookies. The victim took the defendant's penis into his mouth and sucked it, but the defendant did not give him the orange juice and cookies.  When the defendant was interviewed by juvenile authorities, he admitted to the offense and stated that another boy put him up to it. The victim's mother told juvenile authorities that she did not want the case brought into court, because of the age of her child.  Therefore, it was handled through intake.

| | | |
|---|---|---|
| 119. | | |
| 01-16-76 (age 10) | Breaking & Entering<br><br>Juvenile Ct. Richmond, VA | 02-13-76  Resolved at Intake |
| 120. | | |
| 05-24-76 (age 10) | Breaking & Entering<br><br>Juvenile Ct. Richmond, VA | 10-07-76  Resolved at Intake |

RE:  ROANE, James H., Jr.                                              21
     aka:  "J.R."


          Records reflect that the defendant and two other
          individuals broke into the Federal Paperboard Company
          and stole two six-packs of coke.

121.
     03-24-77          Shoplifting          05-16-77  Resolved at
     (age 11)                               Intake
                       Juvenile Ct.
                       Richmond, VA

          Records reflect that the defendant and two other
          individuals stole $1.50 worth of gum from Food Fair
          Market in Richmond, Virginia.

122.
     04-17-78          1) Grand             06-19-78  1 & 2)
     (age 12)          Larceny             Sentenced to the State
                       (auto)              Board of Corrections,
                       2) Shop-            suspended, and placed on
                       lifting (aid        indefinite probation.
                       & abet)

                       Juvenile Ct.
                       Richmond, VA

          Juvenile records reflect that the defendant's initial
          adjustment to probation supervision was unsatisfactory.
          He missed appointments, had new arrests, and had
          difficulties with his temper.  However, in May 1979,
          his attitude and adjustment improved significantly.
          His probation was successfully terminated in September
          1979.

123.
     11-03-78          Breach of           Resolved.  No response
     (age 13)          Peace               from the complainant.

                       Juvenile Ct.
                       Richmond, VA

          Juvenile records reflect that the defendant was
          fighting on a GRTC bus, and when police arrived, he
          reportedly made obscene remarks.

124.
     03-26-79          Trespassing         Dismissed
     (age 13)
                       Juvenile Ct.
                       Richmond, VA

RE:    ROANE, James H., Jr.                                                22
       aka:   "J.R."

Records reflect that the defendant refused to leave school grounds after being requested to do so, and when police arrived, he hit an officer on the chest and arm. The principal advised juvenile authorities that he did not want to pursue the trespassing charge.

125.

| 02-02-81 (age 15) | Breaking & Entering | 06-04-81  Suspended; commitment to State Bureau of Corrections, |
| | Juvenile Ct. Richmond, VA | placed on indefinite probation. |

The defendant and two other individuals broke into the YMCA located at 6 N. 5th Street, Richmond, Virginia. He was arrested on February 2, 1981, and remained in jail until May 14, 1981. At that time, he was transferred to the Juvenile Detention Center, and remained incarcerated until his court date on June 4, 1981.

126.

| 08-12-81 (age 15) | Probation Violation | Returned to the Adventure Bound Program |
| | Juvenile Ct. Richmond, VA | |

After being placed on probation for Breaking and Entering, the defendant was placed at a residential facility, Adventure Bound, in Charlottesville, Virginia, on July 28, 1991. On August 11, 1991, the program called the defendant's Probation Officer and reported numerous problems with the defendant, including leaving the facility and going to a party, hitting a peer, and destroying property. A Probation Violation Hearing was held, and Adventure Bound agreed to allow the defendant to return to their program. On September 10, 1981, after returning to the program, Adventure Bound contacted Roane's Probation Officer and advised that he had become involved in some fights. On September 16, 1981, the defendant's mother had a meeting with him and program officials. After this time, the defendant's behavior improved and he was released from the program on January 13, 1982.

RE:  ROANE, James H., Jr.                                          23
     aka:  "J.R."

127.

| 02-01-82 (age 16) | Carrying a Concealed Weapon (gun) | 06-21-82  Committed to the State Bureau of Corrections. |
|---|---|---|
| | Juvenile Ct. Richmond, VA | |

Records reflect that the defendant was observed, by a Richmond Police Officer, with a .22 caliber revolver in his right front pocket.

128.

| 02-02-82 (age 16) | Probation Violation | 06-21-82  Committed to the State Bureau of Corrections. |
|---|---|---|
| | Juvenile Ct. Richmond, VA | |

On June 4, 1981, the defendant had been placed on probation for a charge of breaking and entering. On February 25, 1982, the defendant was put in the detention home because it was reported that he had become heavily involved in drug use, and family members found needle marks on his arms. He was also, reportedly, associating with drug dealers and not keeping his curfew.

On July 7, 1982, the defendant was placed at Bon Air Learning Center and then transferred to Beaumont Learning Center on July 26, 1982. On November 4, 1982, the defendant was sent to Exodus House, a halfway house in the Richmond area, for a 30 day trial visit. He was subsequently placed in the program, and on January 25, 1983, he was placed in the outreach part of the program and was able to reside with family members. The defendant was released from aftercare supervision, effective July 18, 1983. According to juvenile records, the defendant had not used the services provided to him to the fullest extent, but it was felt that further supervision would serve no useful purpose.

Adult Criminal Convictions

| Date of Referral/Age | Charge/ Jurisdiction | Date Sentence Imposed/ Disposition |
|---|---|---|

129.

| 08-01-86 (age 20) | Possession of Marijuana | 09-02-86  30 days jail, suspended for 3 years good behavior. $100 |
|---|---|---|
| | District Ct. Henrico Co., VA | fine, $110 costs. (Attorney - Raymond Carpenter) |

RE:   ROANE, James H., Jr.                                                    24
      aka:   "J.R."

130.

| 06-21-88 | 1) Assault | 08-15-88  1) 90 days |
| (age 22) | 2) Assault | jail, 60 days suspended, |
| | | 3 years unsupervised |
| | District Ct. | probation, $100 fine, |
| | Richmond, VA | $126 costs. |
| | | 2) 60 days jail, |
| | | suspended, 3 years |
| | | unsupervised probation, |
| | | $126 costs. |

Court records reflect that the victim of both offenses
was Robyn Cooper, who has three children with the
defendant.  These offenses occurred on April 10, 1988
and April 23, 1988.  The defendant was represented by
the Public Defender's Office.

131.

| 07-11-88 | Assault | 09-01-88  12 months |
| (age 22) | | jail, suspended for 3 |
| | District Ct. | years good behavior, |
| | Richmond, VA | $175 costs. |

The defendant was represented by a court appointed
attorney.  On November 18, 1988, the defendant was
referred to the Richmond CDI program to complete
community service hours, in lieu of the fines and
costs.  Roane failed to perform any community service
hours and missed several office appointments with his
case manager.  On December 16, 1988, he failed to
appear in court and a capias was issued for his arrest,
which was executed on July 11, 1990.  The defendant was
represented on all charges by Attorney Lett.

132.

| 07-15-88 | Felonious | 09-14-88  Guilty of |
| (age 22) | Assault | unlawful wounding, 5 |
| | | years penitentiary, |
| | Circuit Ct. | suspended, indefinite |
| | Richmond, VA | probation, pay |
| | | restitution to the |
| | | victim. |

Records reflect that this offense occurred on July 15,
1988, and the victim was Iris Smith.  The defendant cut
Mrs. Smith on the hand and arm with a broken bottle.
He was represented by Attorney John Jones.

RE:   ROANE, James H., Jr.                                              25
      aka:  "J.R."

133.

| 07-18-88 (age 22) | Rape | 10-13-88  Reduced to trespassing, 12 months jail, suspended. |
| | Circuit Ct. Richmond, VA | |

Court records reveal that this offense occurred on July 13, 1988, and the victim was Robyn Cooper. The defendant was represented by Attorney Theodore Tondrowski.

134.

| 06-01-90 (age 24) | Grand Larceny (auto) | 07-24-90  Convicted of Unauthorized Use of an Auto.    5 years penitentiary, suspended, indefinite probation. |
| | Circuit Ct. Richmond, VA | |

Court records reveal that the defendant borrowed a 1976 Ford automobile from Frederick Braxton, on May 27, 1990.  He failed to return the car when he promised, and Braxton made several attempts to contact Roane but was unsuccessful.  The defendant was represented by Attorney Cynthia Payne.

135.

| 06-01-90 (age 24) | 1) Threaten Bodily Harm (offense date 01-17-90) Victim - Cherrie Smith | 07-11-90  1) 12 months jail, suspended. |
| | 2) Assault (offense date 09-08-89) Victim - Iris Smith | 2) 12 months jail, suspended. |
| | 3) Breaking & Entering (offense date 11-29-89) Victim - Iris Smith | 3) Reduced to Trespassing, 12 months jail, suspended. |
| | 4) Failure to pay fines | 4) 60 days jail, suspended. |
| | District Ct. Richmond, VA | |

RE:   ROANE, James H., Jr.                                             26
      aka:  "J.R."

136.
        06-01-90          Probation              06-18-90  5 years
        (age 24)          Violation              penitentiary, 3 years
                          (Unlawful              suspended, indefinite
                          Wounding               probation upon release.
                          conviction)

                          Circuit Ct.
                          Richmond, VA

        Records reflect that the defendant was placed on
        supervised probation for his conviction of Unlawful
        Wounding on September 14, 1988.  In December 1988, the
        defendant was given a job referral and told to check
        into it and contact the Probation Officer the following
        week.  The defendant failed to contact the Probation
        Officer, and he absconded from supervision.  He was a
        fugitive until June 1, 1990, when he was arrested on
        other charges, and the capias for the Probation
        Violation was executed.  The defendant was represented
        by Attorney Harry Johnson.  The defendant was in
        custody from June 1, 1990, until he was paroled on
        November 18, 1991.  Institutional records reflect that
        the defendant's adjustment while incarcerated was
        satisfactory.

137.
        07-11-90          Show Cause             07-11-90  12 months jail
        (age 24)          (Failure to
                          Appear on
                          12/16/88)

                          District Ct.
                          Richmond, VA

        The defendant was represented by Attorney Lett.

138.
        05-18-92          Parole                 No action taken.  Parole
        (age 26)          Violation              terminated, effective
                                                 02-05-93.
                          Department of
                          Corrections
                          Richmond, VA

        A Parole Violation warrant was requested as a result of
        the defendant's arrest for the present offenses.  The
        Parole Board decided to terminate supervision instead
        of proceeding with a revocation hearing, because of the
        defendant's numerous charges in Federal Court.

RE:  ROANE, James H., Jr.                                              27
     aka:  "J.R."

139.
     05-22-92          Probation              02-04-93  Dismissed
     (age 26)          Violation
                  (2 counts)

                  Circuit Ct.
                  Richmond, VA

The defendant was on probation supervision for his
conviction of Unlawful Wounding, as well as
Unauthorized Use of an Automobile.  The probation began
on November 18, 1991.  As a result of his Federal
charges, the State Probation Officer submitted a
Probation Violation Report to each court.  However,
both courts chose to take no action because of the
defendant's numerous convictions in Federal Court on
February 3, 1993, and the anticipated sentence.

## Excluded Convictions - Traffic Infractions

| Date of Referral/Age | Charge/ Jurisdiction | Date Sentence Imposed/ Disposition |
|---|---|---|

140.
     09-27-85          Defective              12-09-85  Conviction
     (age 19)          Equipment

                  District Ct.
                  Richmond, VA

141.
     07-25-86          Drive without          08-21-86  Conviction
     (age 20)          a license

                  District Ct.
                  Richmond, VA

142.
     10-31-86          Driving Under          01-12-87  30 days in
     (age 21)          Revocation or          jail, 24 days suspended,
                  Suspension            $200 fine.

                  District Ct.
                  Richmond, VA

RE:  ROANE, James H., Jr.                                                    28
     aka:  "J.R."


## Other Criminal Conduct

143.  Not applicable.


## Pending Charges

144.  Not applicable.


## Other Arrests

| Date of Referral/Age | Charge/ Jurisdiction | Date Sentence Imposed/ Disposition |
|---|---|---|
| 145. | | |
| 03-28-85 (age 19) | Aid & Abet in Prostitution<br><br>District Ct. Richmond, VA | Not guilty |
| 146. | | |
| 08-15-88 (age 22) | Failure to Appear<br><br>District Ct. Richmond, VA | 08-19-88  Dismissed |
| 147. | | |
| 06-16-89 (age 23) | Possession of Cocaine<br><br>District Ct. Richmond, VA | Nolle Prossed |
| 148. | | |
| 06-01-90 (age 24) | 1) Grand Larceny 2) Assault 3) Malicious Property Damage 4) Breaking & Entering<br><br>District Ct. Richmond, VA | 07-11-90  1-4) Dismissed |

RE:  ROANE, James H., Jr.                                              29
     aka:   "J.R."

149.

| 02-02-92 (age 26) | 1) Attempted Murder 2) Use of a Firearm 3) Possession of Cocaine with intent to Distribute 4) Conspiracy to Distribute Cocaine 5) Possession of a Firearm while in Possession of Cocaine District Ct. Richmond, VA | 04-01-92 Prossed | 1-5) Nolle |

These charges represent the same offense conduct as the Federal charges in which the defendant has been convicted.

150.

| 02-05-92 (age 26) | 1) Felonious Assault 2) Murder 3) Use of a Firearm in Commission of a Felony (2 counts) 4) Possession of Firearm by a Convicted Felon District Ct. Richmond, VA | 07-20-92 Prossed | 1-4) Nolle |

These charges represent offense conduct which resulted in the defendant's Federal charges.

151.

| 04-10-92 (age 26) | Threaten Bodily Harm District Ct. Richmond, VA | 04-27-92 | Not Guilty |

RE:   ROANE, James H., Jr.                                                30
      aka:   "J.R."

152.

| 06-05-92 | 1) Assault | 07-31-92  1 & 2) |
| (age 26) | 2) Threaten | Dismissed |
|  | Bodily Harm |  |

District Ct.
Richmond, VA


### Career Offender - Criminal Livelihood - Armed Career Criminal

153.   Not applicable.


## PART C.   OTHER PERTINENT SENTENCING FACTORS

### Personal History

154.   Records reflect that James H. Roane, Jr., aka "J.R.", age 27, was born on October 27, 1965, in Richmond, Virginia.  He is the fourth of six children born to Jeanette Jones Roane and James H. Roane, Sr..  Their relationship began in 1962 when the defendant's father was 17 and his mother was 14.  They had two children almost immediately (twins) and, subsequently, married on May 19, 1964, two weeks prior to the birth of their third child.  When the defendant was born, his mother was 17 and his father was 20.  In September 1966, when the defendant was less than one year old, his father left the family, and, thereafter, he was reared by his mother.

155.   Throughout the defendant's childhood, he was raised in Government subsidized housing, and the family lived at poverty level.  They were supported primarily through Aid to Dependent Children and food stamps, although his mother did work from time to time.  The defendant never developed a close relationship with his father, and he did not have a positive male role model throughout most of his life.  However, when he was 13 years old he was involved in a volunteer program, through the juvenile court, and was paired with an adult male.  This relationship lasted a little over a year and appeared to be beneficial to the defendant.

156.   While living in Government housing, several inspections made of the residence indicated that his mother had difficulty maintaining the residence in a neat and livable condition.  There was a smell of urine in the residence, dishes were not washed, and the walls were dirty.  The housing authority continued to follow up on this matter until it was resolved.  In addition, the defendant's mother had difficulty paying rent and received numerous late notices.

RE:   ROANE, James H., Jr.                                                31
      aka:   "J.R."

157.   Shortly after the defendant entered public schools, he began having problems and was referred on numerous occasions for educational and psychological testing, as a result of his poor grades and behavior problems. At times, he was placed in special education classes, but he continued to have problems throughout his education. He left school while in the 10th grade and, although he enrolled in the GED program, he never completed it. After leaving high school, the defendant continued to reside in the Richmond area, but his employment history has been sporadic.

## Parents and Siblings

158.   The defendant's father, James Henry Roane, Sr., age 48, resides in Richmond, Virginia. Records reflect he has a prior record, including a conviction for Malicious Wounding and Robbery that occurred in 1978. He served approximately 9 years of a 30 year sentence. He provided little or no financial support for the family after he abandoned them in 1966. After he was divorced from the defendant's mother, he did remarry; however, this marriage also ended in divorce, but not before his wife shot him for breaking into her residence. The defendant's mother, Jeanette Jones Roane, age 44, resides in Richmond, Virginia. She did not remarry after the divorce, but she did have a child in 1971 from another relationship. The defendant has five full siblings and one half sister: Ann Jones and Annette Jones, age 30, are twins and were born prior to the marriage of the defendant's parents; Florence Roane, age 28; Kathy and Kevin Roane (twins), age 26; and Keisha Roane, the defendant's half sister, age 21. Records reflect that Annette, Keisha, and Florence have had drug problems, and Kevin, Annette, and Kathy have criminal records.

## Marital History

159.   The defendant reported that he has never been married, but he does have five children from several relationships. Between 1983 and 1991, he reported that he lived with Robyn Cooper, age 27. Of this union, there were three children born: Randy Cooper, age 8; Brandon Cooper, age 6; and Brandale Cooper, age 3. All the children live with their mother.

160.   Between 1986 and 1989, the defendant reports he had a relationship with Anntenetta Monroe, age 25. They had one child as a result of this relationship: Antonio Monroe, age 5.

161.   Between 1987 and 1989, the defendant reports he lived with Iris Smith, age 30. They had one child as a result of their relationship: James Smith, age 4.

RE:  ROANE, James H., Jr.                                               32
     aka:  "J.R."

162.  Between November 1991 and December 1992, the defendant lived with Sandra Reavis, age 37, his codefendant.  He reported they have no children as a result of their relationship.

163.  From January 1993 to the present, the defendant has been involved with Jackie Denise Williams, age 24.  They have no children as a result of their relationship.

## Physical Condition

164.  James H. Roane, Jr., is a black male, approximately 6' tall, and weighs 150 pounds.  Records reflect that the defendant has never suffered from any serious illnesses, operations, or long-term hospital stays.  He did have a reactive TB test in June 1990 and was placed on medication for six months.  He also reported that he occasionally suffers from lower back pain.  Presently he reports he is in good health.

## Mental and Emotional Health

165.  In March 1972, when the defendant was six years old, he was referred to the Lor-Berg Family Guidance Clinic by Social Services, at the request of his mother.  The defendant had set four fires between the ages of four and six, and his mother became concerned.  Other than starting fires, there were no behavior problems indicated at the home or in school.  Educational testing revealed he was functioning in the high average range of intelligence; however, his memory for digits was poor and he had a learning problem.  As a result, he was feeling inadequate and inferior.  He was diagnosed as having a chronic brain syndrome and, though he was at least high average intelligence, it was felt he was going to have learning and behavioral problems.  Medication was recommended, as well as psychotherapy and placement of the defendant in a school for children with neurological handicaps, who have above average intelligence.

166.  On July 5, 1973, when the defendant was seven years old, he was referred again to the Lor-Berg Family Guidance Clinic.  Testing revealed that the defendant's verbal IQ was 77 and his performance IQ was 96, with a full scale IQ of 85.

167.  In October 1980, when the defendant was 14 years old, he was referred to Dr. William Lordi, a psychiatrist, on an emergency basis.  The defendant had become physically and verbally aggressive, which had escalated over the years, and he had become physical with an assistant principal at the school he was attending.  Evaluation determined the defendant was suffering from organic brain syndrome with a primary learning disability with aggressivity and hyperactivity.  He was not considered to be psychotic.  Dr. Lordi recommended

RE:  ROANE, James H., Jr.                                              33
     aka:  "J.R."

that the defendant participate in a residential treatment program, which had an intensive program that would provide the defendant with medication for his learning disability and psychotherapy for his personal problems. He felt it was of paramount importance that the defendant get appropriate treatment immediately, intensively, and long enough to make a difference. It was his opinion that the defendant was potentially dangerous to himself and others, as well as to property. Dr. Lordi also recommended medication, along with the residential placement.

168.  In March 1982, when the defendant was 16, he was referred to the Memorial Guidance Clinic, by the Richmond Public Schools. The overall impression was that the defendant was chronically and significantly emotionally disturbed, and his disturbance was taking the primary form of developing a personality disorder. He was identified as significantly and seriously chronically depressed, and it was felt he was at serious risk to drift into further delinquent behavior and end up incarcerated. A recommendation was made for a special educational program, as well as long-term residential placement, because of the dysfunctional situation in the home.

### Substance Abuse

169.  The defendant reported that between the ages of 15 and 25, he was addicted to cocaine and heroin. He claimed that those addictions have been his greatest downfall. He also reported that he used marijuana from November 1991 to February 1992. He maintained that he has never had a problem with alcohol. In 1989, Roane reported he was involved in the Rubicon Drug program in Richmond, Virginia. He further stated that between March 1992 and January 1993, he was actively involved in an AA program at the Richmond City Jail.

### Educational and Vocational Skills

170.  The defendant attended public schools throughout his education and last attended Maggie Walker High School, where he quit while in the 9th grade. The defendant attended several schools specifically designed to deal with his learning and behavior problems. After leaving high school, the defendant enrolled in the GED program, but apparently never attended. He has not obtained his GED at this time.

### Employment Record

171.  The defendant reported that he has held three jobs. For approximately three months in 1989, the defendant reports he was employed for Eubanks & Son Concrete Works, Richmond, Virginia, where he was employed as a laborer earning $5 per hour. He advised he was laid off from this position.

RE:   ROANE, James H., Jr.                                                          **34**
      aka:   "J.R."

172.   In 1988, he stated he was employed for Church's Fried Chicken in Richmond, Virginia, for approximately one and one half months.  He was a cook earning $3.35 per hour, and stated he quit this job.

173.   Between 1986 an 1989, the defendant reported he was employed at Mise, Incorporated, a construction company in Richmond, Virginia.  He stated he was a laborer and his income varied, but it was above minimum wage.  He reported he was laid off from this employment.

### Military Service

174.   The defendant has never served in any branch of the United States Armed Services.

### Financial Condition – Ability to Pay

175.   The defendant has no known assets, and his only liability is court costs for his numerous criminal convictions.  The defendant is unable to pay the minimum fine, or an additional fine, in any amount sufficient to pay for the cost of incarceration or supervision.

## PART D.  SENTENCING OPTIONS

176.   **Total Offense Level:**   43

177.   **Criminal History Category:**   V

| | | | Statutory Provisions | Guideline Provisions |
|---|---|---|---|---|
| 178. | **Custody:** | Count 1: | 10 years to Life | Life |
| | | Count 2: | 20 years to Life | Life (concurrent) |
| | | Count 6: | 5 years (consecutive) | 5 years (consecutive) |
| | | Counts 7, 10, 13, & 14    : | Life, each count | Life, each ct. (concurrent) |
| | | Counts 9, 12, & 15: | 20 years, each (consecutive) | 20 years, each (consecutive) |
| | | Count 16: | 20 years | 20 years (concurrent) |
| | | Count 32: | 5-40 years | 40 years (concurrent) |

RE:  ROANE, James H., Jr.                                          35
     aka:  "J.R."

179.  Supervised      Count 1:      At least 5 years      3-5 years
      Release:
                      Count 2:      Not more than 5       3-5 years
                                    years

                      Counts 6,     Not more than 3       2-3 years,
                      9, 12, 15:    years, each count     each count

                      Counts 7,
                      10, 13,       Not more than 5       3-5 years,
                      14, & 16:     years, each count     each count

                      Count 32:     At least 4 years      3-5 years

180.  Probation:                    Not Authorized        Not Authorized
                                    on any count          on any count

181.  Fine:           Count 1:      $4,000,000            $25,000 -
                                                          $4,000,000
                                                          (combined)

                      Count 2:      $2,000,000            (combined)

                      Counts 6,
                      9, 12,
                      & 15    :     $250,000, each ct.    (combined)

                      Counts 7,
                      10, 13,
                      & 14    :     $250,000, each ct.    (combined)

                      Count 16:     $250,000              (combined)

                      Count 32:     $2,000,000            (combined)

182.  Restitution:                  Applicable            Applicable

183.  Special
      Assessment:                   $50 each count        $550
                                                          (combined)

184.  Denial of Federal
      Benefits:                     Applicable            Applicable

RE:  ROANE, James H., Jr.                                          36
     aka:  "J.R."

## PART E.   EX POST FACTO CONSIDERATIONS

185.  Guideline computations reflected in the presentence report
      and the worksheets incorporate guidelines in effect at the
      time of sentencing.  Guidelines in effect at the time of the
      commission of the offense remain the same.

                                Respectfully submitted,


                                Daniel Guertler
                                U.S. Probation Officer

DG/lln

Attachments

# WORKSHEET A (OFFENSE LEVEL)

Defendant ____James H. Roane, Jr.____    District/Office __ED/VA - Petersburg__

Docket Number (Year-Sequence-Defendant No.) _____3:92CR68-03_____

Count Number(s) __1 & 32__  U.S. Code Title & Section ____21:846____

____21:841(a)(1)____

Instructions for Items 1-5
Complete a separate Worksheet A for each count of conviction or stipulated offense before applying the multiple count rules in 3D1.2-3D1.3. Exceptions: Only a single Worksheet A is to be completed: (1) where the offense level for a group of closely related counts is based primarily on aggregate value or quantity (see 3D1.2(d)); (2) where there is a conspiracy, solicitation, or attempt and a substantive count that was the sole object of the conspiracy, solicitation, or attempt (see 3D1.2(a) and (b)).

1. **Offense Level** (See Chapter Two)
   Enter the sum of the base offense level and any specific offense characteristics from Chapter Two on the line provided below. Explain the basis for this determination and cite each applicable guideline section:

   | Guideline Number | Description | Level |
   |---|---|---|
   | 2D1.1(a)(3) & (c)(4) | Conspiracy to Distribute and Possession with intent to Distribute Cocaine Base (1.19625 kilos) | 36 (base) |

   Notes: __Roane was involved in the conspiracy from 11/18/91 until 2/3/92 (11 weeks). The drug amount is based on 108.75 grams of cocaine base being distributed every week.__

   Sum __36__

2. **Victim-Related Adjustments** (See Chapter Three, Part A) _____    _____
   Enter the specific section and adjustment applicable. If more than one section is applicable, list each section and enter the combined adjustment. If no adjustment is applicable, enter "0".

3. **Role in the Offense Adjustment** (See Chapter Three, Part B) __3B1.1(a)__    __4__
   Enter the specific section and adjustment applicable. If more than one section is applicable, list each section and enter the combined adjustment. If the adjustment reduces the offense level, enter a minus (-) sign in front of the adjustment. If no adjustment is applicable, enter "0".

4. **Obstruction Adjustment** (See Chapter Three, Part C) _____    _____
   Enter the specific section and adjustment applicable. If more than one section is applicable, list each section and enter the combined adjustment. If no adjustment is applicable, enter "0".

5. **Adjusted Offense Level**    __40__
   Enter the sum of items 1-4. If this worksheet does not cover all counts of conviction or stipulated offenses, complete Worksheet B. Otherwise, enter this result on Worksheet D, Item 1.

-------------------------------------------------------------------------------

____ Check this line if the defendant is convicted of a single count. In such case, Worksheet B need not be completed.

____ If the defendant has no criminal history, enter criminal history "I" here and on Item 4, Worksheet D. In such case, Worksheet C need not be completed.

App.0447

## WORKSHEET A (OFFENSE LEVEL)

Defendant _____James H. Roane, Jr._____    District/Office _ED/VA - Petersburg_

Docket Number (Year-Sequence-Defendant No.) _____3:92CR68-03_____

Count Number(s) ___2___    U.S. Code Title & Section ___21:848_____

Instructions for Items 1-5
Complete a separate Worksheet A for each count of conviction or stipulated offense before applying the multiple count rules in 3D1.2-3D1.3. Exceptions: Only a single Worksheet A is to be completed: (1) where the offense level for a group of closely related counts is based primarily on aggregate value or quantity (see 3D1.2(d)); (2) where there is a conspiracy, solicitation, or attempt and a substantive count that was the sole object of the conspiracy, solicitation, or attempt (see 3D1.2(a) and (b)).

1.  Offense Level (See Chapter Two)
    Enter the sum of the base offense level and any specific offense characteristics from Chapter Two on the line provided below. Explain the basis for this determination and cite each applicable guideline section:

| Guideline Number | Description | Level |
|---|---|---|
| 2D1.5(a)(1) & 2D1.1(c)(4) | Continuing Criminal Enterprise | 44 (base) |

Notes: _____

_____

                                                    Sum    44

2.  Victim-Related Adjustments (See Chapter Three, Part A)  _____    _____
    Enter the specific section and adjustment applicable. If more than one section is applicable, list each section and enter the combined adjustment. If no adjustment is applicable, enter "0".

3.  Role in the Offense Adjustment (See Chapter Three, Part B) _____    _____
    Enter the specific section and adjustment applicable. If more than one section is applicable, list each section and enter the combined adjustment. If the adjustment reduces the offense level, enter a minus (-) sign in front of the adjustment. If no adjustment is applicable, enter "0".

4.  Obstruction Adjustment (See Chapter Three, Part C)  _____    _____
    Enter the specific section and adjustment applicable. If more than one section is applicable, list each section and enter the combined adjustment. If no adjustment is applicable, enter "0".

5.  Adjusted Offense Level                                           _*43_
    Enter the sum of items 1-4. If this worksheet does not cover all counts of conviction or stipulated offenses, complete Worksheet B. Otherwise, enter this result on Worksheet D, Item 1.

    * NOTE:  See Chapter 5, Part A, Application Note #2.
------------------------------------------------------------------------
    ____    Check this line if the defendant is convicted of a single count. In such case, Worksheet B need not be completed.

    ____    If the defendant has no criminal history, enter criminal history "I" here and on Item 4, Worksheet D. In such case, Worksheet C need not be completed.

App.0448

## WORKSHEET A (OFFENSE LEVEL)

Defendant ___James H. Roane, Jr.___    District/Office ED/VA - Petersburg

Docket Number (Year-Sequence-Defendant No.) ___3:92CR68-03___

Count Number(s) _5, 8, 11_   U.S. Code Title & Section ___21:841(e)(1)(A)___

Instructions for Items 1-5
Complete a separate Worksheet A for each count of conviction or stipulated offense before applying the multiple count rules in 3D1.2-3D1.3. Exceptions: Only a single Worksheet A is to be completed: (1) where the offense level for a group of closely related counts is based primarily on aggregate value or quantity (see 3D1.2(d)); (2) where there is a conspiracy, solicitation, or attempt and a substantive count that was the sole object of the conspiracy, solicitation, or attempt (see 3D1.2(a) and (b)).

1. Offense Level (See Chapter Two)
   Enter the sum of the base offense level and any specific offense characteristics from Chapter Two on the line provided below. Explain the basis for this determination and cite each applicable guideline section:

   | Guideline Number | Description | Level |
   |---|---|---|
   | 2A1.1 | Murder (First Degree) | *43 (base) |

   Notes:    * Statute requires that the Court impose the recommendation of the jury for these counts of conviction. The jury recommended Death on Count 5 and Life on Counts 8 and 11.

   Sum _____

2. Victim-Related Adjustments (See Chapter Three, Part A)  _____  _____
   Enter the specific section and adjustment applicable. If more than one section is applicable, list each section and enter the combined adjustment. If no adjustment is applicable, enter "0".

3. Role in the Offense Adjustment (See Chapter Three, Part B) _____  _____
   Enter the specific section and adjustment applicable. If more than one section is applicable, list each section and enter the combined adjustment. If the adjustment reduces the offense level, enter a minus (-) sign in front of the adjustment. If no adjustment is applicable, enter "0".

4. Obstruction Adjustment (See Chapter Three, Part C)  _____  _____
   Enter the specific section and adjustment applicable. If more than one section is applicable, list each section and enter the combined adjustment. If no adjustment is applicable, enter "0".

5. Adjusted Offense Level  _____
   Enter the sum of items 1-4. If this worksheet does not cover all counts of conviction or stipulated offenses, complete Worksheet B. Otherwise, enter this result on Worksheet D, Item 1.

----

____ Check this line if the defendant is convicted of a single count. In such case, Worksheet B need not be completed.

____ If the defendant has no criminal history, enter criminal history "I" here and on Item 4, Worksheet D. In such case, Worksheet C need not be completed.

## WORKSHEET A (OFFENSE LEVEL)

Defendant _____ James H. Roane, Jr. _____    District/Office  ED/VA - Petersburg

Docket Number (Year-Sequence-Defendant No.) _____ 3:92CR68-03 _____

Count Number(s) 6, 9, 12,15    U.S. Code Title & Section ___ 18:924(c) ___

_____

Instructions for Items 1-5
Complete a separate Worksheet A for each count of conviction or stipulated offense before applying the multiple count rules in 3D1.2-3D1.3.  Exceptions: Only a single Worksheet A is to be completed: (1) where the offense level for a group of closely related counts is based primarily on aggregate value or quantity (see 3D1.2(d)); (2) where there is a conspiracy, solicitation, or attempt and a substantive count that was the sole object of the conspiracy, solicitation, or attempt (see 3D1.2(a) and (b)).

1.  **Offense Level** (See Chapter Two)
    Enter the sum of the base offense level and any specific offense characteristics from Chapter Two on the line provided below.  Explain the basis for this determination and cite each applicable guideline section:

| Guideline Number | Description | Level |
|---|---|---|
| 2K2.4(a) | Use of a Firearm in Relation to a Crime of Violence or Drug Trafficking Crime | * (base) |

Notes: *  Statute requires a five year consecutive sentence on Count 6 and 20 year consecutive sentences each on Counts 9, 12, and 15, for a total of 65 years.  These sentences must run consecutively to any other sentence.

Sum _____

2.  **Victim-Related Adjustments** (See Chapter Three, Part A)  _____   _____
    Enter the specific section and adjustment applicable.  If more than one section is applicable, list each section and enter the combined adjustment.  If no adjustment is applicable, enter "0".

3.  **Role in the Offense Adjustment** (See Chapter Three, Part B) _____   _____
    Enter the specific section and adjustment applicable.  If more than one section is applicable, list each section and enter the combined adjustment.  If the adjustment reduces the offense level, enter a minus (-) sign in front of the adjustment.  If no adjustment is applicable, enter "0".

4.  **Obstruction Adjustment** (See Chapter Three, Part C)  _____   _____
    Enter the specific section and adjustment applicable.  If more than one section is applicable, list each section and enter the combined adjustment.  If no adjustment is applicable, enter "0".

5.  **Adjusted Offense Level**   _____
    Enter the sum of items 1-4.  If this worksheet does not cover all counts of conviction or stipulated offenses, complete Worksheet B. Otherwise, enter this result on Worksheet D, Item 1.

_____

____  Check this line if the defendant is convicted of a single count.  In such case, Worksheet B need not be completed.

____  If the defendant has no criminal history, enter criminal history "I" here and on Item 4, Worksheet D.  In such case, Worksheet C need not be completed.

App.0450

## WORKSHEET A (OFFENSE LEVEL)

Defendant __James H. Roane, Jr.__                    District/Office __ED/VA - Petersburg__

Docket Number (Year-Sequence-Defendant No.) ____3:92CR68-03____

Count Number(s) ___7___    U.S. Code Title & Section ____18:1959____    _____

                                                                        _____

Instructions for Items 1-5
Complete a separate Worksheet A for each count of conviction or stipulated offense before
applying the multiple count rules in 3D1.2-3D1.3. Exceptions: Only a single Worksheet A
is to be completed: (1) where the offense level for a group of closely related counts is
based primarily on aggregate value or quantity (see 3D1.2(d)); (2) where there is a
conspiracy, solicitation, or attempt and a substantive count that was the sole object of
the conspiracy, solicitation, or attempt (see 3D1.2(a) and (b)).

1.  **Offense Level** (See Chapter Two)
    Enter the sum of the base offense level and any specific offense characteristics from
    Chapter Two on the line provided below. Explain the basis for this determination and
    cite each applicable guideline section:

    | Guideline Number | Description | Level |
    |---|---|---|
    | 2E1.3(a)(2) & 2A1.1(a) | Violent Crime in Aid of Racketeering (Murder of Douglas Moody) | 43  (base) |

    Notes: _____

    _____

                                                                        Sum ___43___

2.  **Victim-Related Adjustments** (See Chapter Three, Part A)    _____    _____
    Enter the specific section and adjustment applicable. If more than
    one section is applicable, list each section and enter the combined
    adjustment. If no adjustment is applicable, enter "0".

3.  **Role in the Offense Adjustment** (See Chapter Three, Part B) _____    _____
    Enter the specific section and adjustment applicable. If more than
    one section is applicable, list each section and enter the combined
    adjustment. If the adjustment reduces the offense level, enter a
    minus (-) sign in front of the adjustment. If no adjustment is
    applicable, enter "0".

4.  **Obstruction Adjustment** (See Chapter Three, Part C)    _____    _____
    Enter the specific section and adjustment applicable. If more than
    one section is applicable, list each section and enter the combined
    adjustment. If no adjustment is applicable, enter "0".

5.  **Adjusted Offense Level**                                         ___43___
    Enter the sum of items 1-4. If this worksheet does not cover all
    counts of conviction or stipulated offenses, complete Worksheet B.
    Otherwise, enter this result on Worksheet D, Item 1.

----------------------------------------------------------------------

____    Check this line if the defendant is convicted of a single count. In such case,
        Worksheet B need not be completed.

____    If the defendant has no criminal history, enter criminal history "I" here and
        on Item 4, Worksheet D. In such case, Worksheet C need not be completed.

## WORKSHEET A (OFFENSE LEVEL)

Defendant _____James H. Roane, Jr._____     District/Office ED/VA - Petersburg

Docket Number (Year-Sequence-Defendant No.) _____3:92CR68-03_____

Count Number(s) __10__     U.S. Code Title & Section _____19:1959_____

_____

Instructions for Items 1-5
Complete a separate Worksheet A for each count of conviction or stipulated offense before applying the multiple count rules in 3D1.2-3D1.3. Exceptions: Only a single Worksheet A is to be completed: (1) where the offense level for a group of closely related counts is based primarily on aggregate value or quantity (see 3D1.2(d)); (2) where there is a conspiracy, solicitation, or attempt and a substantive count that was the sole object of the conspiracy, solicitation, or attempt (see 3D1.2(a) and (b)).

1.  **Offense Level (See Chapter Two)**
    Enter the sum of the base offense level and any specific offense characteristics from Chapter Two on the line provided below. Explain the basis for this determination and cite each applicable guideline section:

| Guideline Number | Description | Level |
|---|---|---|
| 2E1.3(a)(2) & 2A1.1(a) | Violent Crime in Aid of Racketeering (Murder of Peyton Maurice Johnson) | 43 (base) |

Notes: _____

_____

Sum __43__

2.  **Victim-Related Adjustments (See Chapter Three, Part A)** _____    _____
    Enter the specific section and adjustment applicable. If more than one section is applicable, list each section and enter the combined adjustment. If no adjustment is applicable, enter "0".

3.  **Role in the Offense Adjustment (See Chapter Three, Part B)** _____    _____
    Enter the specific section and adjustment applicable. If more than one section is applicable, list each section and enter the combined adjustment. If the adjustment reduces the offense level, enter a minus (-) sign in front of the adjustment. If no adjustment is applicable, enter "0".

4.  **Obstruction Adjustment (See Chapter Three, Part C)** _____    _____
    Enter the specific section and adjustment applicable. If more than one section is applicable, list each section and enter the combined adjustment. If no adjustment is applicable, enter "0".

5.  **Adjusted Offense Level** __43__
    Enter the sum of items 1-4. If this worksheet does not cover all counts of conviction or stipulated offenses, complete Worksheet B. Otherwise, enter this result on Worksheet D, Item 1.

----------------------------------------

____ Check this line if the defendant is convicted of a single count. In such case, Worksheet B need not be completed.

____ If the defendant has no criminal history, enter criminal history "I" here and on Item 4, Worksheet D. In such case, Worksheet C need not be completed.

## WORKSHEET A (OFFENSE LEVEL)

Defendant _____James H. Roane, Jr._____    District/Office  ED/VA - Petersburg

Docket Number (Year-Sequence-Defendant No.) _____3:92CR68-03_____

Count Number(s) ___13___    U.S. Code Title & Section ____18:1959____

Instructions for Items 1-5
Complete a separate Worksheet A for each count of conviction or stipulated offense before applying the multiple count rules in 3D1.2-3D1.3. Exceptions: Only a single Worksheet A is to be completed: (1) where the offense level for a group of closely related counts is based primarily on aggregate value or quantity (see 3D1.2(d)); (2) where there is a conspiracy, solicitation, or attempt and a substantive count that was the sole object of the conspiracy, solicitation, or attempt (see 3D1.2(a) and (b)).

1. **Offense Level** (See Chapter Two)
   Enter the sum of the base offense level and any specific offense characteristics from Chapter Two on the line provided below. Explain the basis for this determination and cite each applicable guideline section:

   | Guideline Number | Description | Level |
   |---|---|---|
   | 2E1.3(a)(2) & 2A1.2(a) | Violent Crime in Aid of Racketeering (Murder of Louis Johnson) | 43  (base) |

   Notes: _____

   _____

   Sum ___43___

2. **Victim-Related Adjustments** (See Chapter Three, Part A)  _____    _____
   Enter the specific section and adjustment applicable. If more than one section is applicable, list each section and enter the combined adjustment. If no adjustment is applicable, enter "0".

3. **Role in the Offense Adjustment** (See Chapter Three, Part B) _____    _____
   Enter the specific section and adjustment applicable. If more than one section is applicable, list each section and enter the combined adjustment. If the adjustment reduces the offense level, enter a minus (-) sign in front of the adjustment. If no adjustment is applicable, enter "0".

4. **Obstruction Adjustment** (See Chapter Three, Part C)  _____    _____
   Enter the specific section and adjustment applicable. If more than one section is applicable, list each section and enter the combined adjustment. If no adjustment is applicable, enter "0".

5. **Adjusted Offense Level**    ___43___
   Enter the sum of items 1-4. If this worksheet does not cover all counts of conviction or stipulated offenses, complete Worksheet B. Otherwise, enter this result on Worksheet D, Item 1.

--------------------------------------------------------------

____ Check this line if the defendant is convicted of a single count. In such case, Worksheet B need not be completed.

____ If the defendant has no criminal history, enter criminal history "I" here and on Item 4, Worksheet D. In such case, Worksheet C need not be completed.

## WORKSHEET A (OFFENSE LEVEL)

Defendant ____James H. Roane, Jr.____        District/Office ED/VA - Petersburg

Docket Number (Year-Sequence-Defendant No.) ____3:92CR68-03____

Count Number(s) __14__    U.S. Code Title & Section ____18:1959__

Instructions for Items 1-5
Complete a separate Worksheet A for each count of conviction or stipulated offense before applying the multiple count rules in 3D1.2-3D1.3. Exceptions: Only a single Worksheet A is to be completed: (1) where the offense level for a group of closely related counts is based primarily on aggregate value or quantity (see 3D1.2(d)); (2) where there is a conspiracy, solicitation, or attempt and a substantive count that was the sole object of the conspiracy, solicitation, or attempt (see 3D1.2(a) and (b)).

1.    Offense Level (See Chapter Two)
      Enter the sum of the base offense level and any specific offense characteristics from Chapter Two on the line provided below. Explain the basis for this determination and cite each applicable guideline section:

| Guideline Number | Description | Level |
|---|---|---|
| 2E1.3(a)(2) &<br>2A1.1(a) | Violent Crime in Aid of Racketeering<br>(Murder of Torrick Brown, Jr.) | 43 (base) |

Notes: _____

_____

                                                          Sum   __43__

2.    Victim-Related Adjustments (See Chapter Three, Part A)  _____    _____
      Enter the specific section and adjustment applicable. If more than one section is applicable, list each section and enter the combined adjustment. If no adjustment is applicable, enter "0".

3.    Role in the Offense Adjustment (See Chapter Three, Part B) _____    _____
      Enter the specific section and adjustment applicable. If more than one section is applicable, list each section and enter the combined adjustment. If the adjustment reduces the offense level, enter a minus (-) sign in front of the adjustment. If no adjustment is applicable, enter "0".

4.    Obstruction Adjustment (See Chapter Three, Part C)  _____    _____
      Enter the specific section and adjustment applicable. If more than one section is applicable, list each section and enter the combined adjustment. If no adjustment is applicable, enter "0".

5.    Adjusted Offense Level                                          __43__
      Enter the sum of items 1-4. If this worksheet does not cover all counts of conviction or stipulated offenses, complete Worksheet B. Otherwise, enter this result on Worksheet D, Item 1.

-----------------------------------------------------------------------------

____    Check this line if the defendant is convicted of a single count. In such case, Worksheet B need not be completed.

____    If the defendant has no criminal history, enter criminal history "I" here and on Item 4, Worksheet D. In such case, Worksheet C need not be completed.

## WORKSHEET A (OFFENSE LEVEL)

Defendant _____ James H. Roane, Jr. _____    District/Office __ED/VA - Petersburg__

Docket Number (Year-Sequence-Defendant No.) _____ 3:92CR68-03 _____

Count Number(s) __16__    U.S. Code Title & Section _____ 18:1959 _____

Instructions for Items 1-5

Complete a separate Worksheet A for each count of conviction or stipulated offense before applying the multiple count rules in 3D1.2-3D1.3. Exceptions: Only a single Worksheet A is to be completed: (1) where the offense level for a group of closely related counts is based primarily on aggregate value or quantity (see 3D1.2(d)); (2) where there is a conspiracy, solicitation, or attempt and a substantive count that was the sole object of the conspiracy, solicitation, or attempt (see 3D1.2(a) and (b)).

1.  **Offense Level (See Chapter Two)**
    Enter the sum of the base offense level and any specific offense characteristics from Chapter Two on the line provided below. Explain the basis for this determination and cite each applicable guideline section:

    | Guideline Number | Description | Level | |
    |---|---|---|---|
    | 2E1.3(a)(2) & 2A2.1(a)(1) | Violent Crime in Aid of Racketeering (Attempted Murder of Martha McCoy) | 28 | (base) |
    | 2A2.1(b)(1) | Victim sustained permanent life threatening injuries | 4 | |

    Notes: _____

    _____

                                                    Sum __32__

2.  **Victim-Related Adjustments (See Chapter Three, Part A)** _____    _____
    Enter the specific section and adjustment applicable. If more than one section is applicable, list each section and enter the combined adjustment. If no adjustment is applicable, enter "0".

3.  **Role in the Offense Adjustment (See Chapter Three, Part B)** _____    _____
    Enter the specific section and adjustment applicable. If more than one section is applicable, list each section and enter the combined adjustment. If the adjustment reduces the offense level, enter a minus (-) sign in front of the adjustment. If no adjustment is applicable, enter "0".

4.  **Obstruction Adjustment (See Chapter Three, Part C)** _____    _____
    Enter the specific section and adjustment applicable. If more than one section is applicable, list each section and enter the combined adjustment. If no adjustment is applicable, enter "0".

5.  **Adjusted Offense Level**                                    __32__
    Enter the sum of items 1-4. If this worksheet does not cover all counts of conviction or stipulated offenses, complete Worksheet B. Otherwise, enter this result on Worksheet D, Item 1.

----------------------------------------------------------------

    ____    Check this line if the defendant is convicted of a single count. In such case, Worksheet B need not be completed.

    ____    If the defendant has no criminal history, enter criminal history "I" here and on Item 4, Worksheet D. In such case, Worksheet C need not be completed.

WORKSHEET B (MULTIPLE COUNTS OR STIPULATION TO ADDITIONAL OFFENSES)

Defendant _____ James H. Roane, Jr. _____    Docket Number ___ 3:92CR68-03 ____

Note explaining grouping decision: ___ 1.  See 3D1.2(b) & 3D1.2(d) _____

_____

_____

Instructions for Items 1-5.

If the offense level for the Group is based primarily on aggregate value or quantity, or is the offense level for a count charging conspiracy and a substantive offense that was the sole object of the conspiracy, enter the adjusted offense level from Worksheet A. Otherwise, enter the adjusted offense level from Worksheet A for the count in the Group having the highest adjusted offense level (See 3D1.3).  List the count number(s) for each of the counts in the Group.

In determining the number of units to be assigned, count:

   * **One unit (1)** for the Count Group with the highest offense level;
   * **One unit (1)** for each additional Group equally serious or 1 to 4 levels less serious;
   * **One-half unit (1/2)** for each group 5 to 8 levels less serious;
   * **No increase** in units for each group 9 or more levels less serious.

1.  **Adjusted Offense Level for the First Group of Closely Related Counts**

    Count number(s): ___ 1, 2, 32 _____    __43__   __1__ (unit)

2.  **Adjusted Offense Level for the Second Group of Closely Related Counts**
    Count number(s): ___ 7 _____    __43__   __1__ (unit)

3.  **Adjusted Offense Level for the Third Group of Closely Related Counts**

    Count number(s): ___ 10 _____    __43__   __1__ (unit)

4.  **Adjusted Offense Level for the Fourth Group of Closely Related Counts**

    Count number(s): ___ 13 _____    __43__   __1__ (unit)

5.  **Adjusted Offense Level for the Fifth Group of Closely Related Counts**

    Count number(s): ___ 14 _____    __43__   __1__ (unit)

6.  **Total Units**                                                        __5__ (Total Units)

7.  **Increase in Offense Level Based on Total Units (see 3D1.4)**          __4__

          1 unit – no increase          3 units – add 3 levels
          1 1/2 units – add 1 level     4 or 5 units – add 4 levels
          2 units – add 2 levels        More than 5 – add 5 levels

    [except when the total number of units is 1 1/2, round up to the largest whole number]

8.  **Highest of the Adjusted Offense Levels From Lines 1-5 Above.**         __*__
                                                        *See Page 2

9.  **Combined Adjusted Offense Level (see 3D1.4)**

    Enter the sum of lines 7 and 8 here and on Worksheet D, Line 1.          __*__
                                                        *See Page 2

**WORKSHEET B (MULTIPLE COUNTS OR STIPULATION TO ADDITIONAL OFFENSES) – Pg. 2**

Defendant _____James H. Roane, Jr._____    Docket Number ____3:92CR68-03____

Note explaining grouping decision: _____

_____

_____

Instructions for Items 1-5.

If the offense level for the Group is based primarily on aggregate value or quantity, or is the offense level for a count charging conspiracy and a substantive offense that was the sole object of the conspiracy, enter the adjusted offense level from Worksheet A. Otherwise, enter the adjusted offense level from Worksheet A for the count in the Group having the highest adjusted offense level (See 3D1.3). List the count number(s) for each of the counts in the Group.

In determining the number of units to be assigned, count:

> * One unit (1) for the Count Group with the highest offense level;
> * One unit (1) for each additional Group equally serious or 1 to 4 levels less serious;
> * One-half unit (1/2) for each group 5 to 8 levels less serious;
> * No increase in units for each group 9 or more levels less serious.

1. **Adjusted Offense Level for the Sixth Group of Closely Related Counts**

   Count number(s): _____16_____    __32__   __0__ (unit)

2. **Adjusted Offense Level for the Second Group of Closely Related Counts**
   Count number(s): _____    _____   _____(unit)

3. **Adjusted Offense Level for the Third Group of Closely Related Counts**

   Count number(s): _____    _____   _____(unit)

4. **Adjusted Offense Level for the Fourth Group of Closely Related Counts**

   Count number(s): _____    _____   _____(unit)

5. **Adjusted Offense Level for the Fifth Group of Closely Related Counts**

   Count number(s): _____    _____   _____(unit)

6. **Total Units**                                                         __5__ (Total Units)

7. **Increase in Offense Level Based on Total Units (see 3D1.4)**          __5__

   | | |
   |---|---|
   | 1 unit – no increase | 3 units – add 3 levels |
   | 1 1/2 units – add 1 level | 4 or 5 units – add 4 levels |
   | 2 units – add 2 levels | More than 5 – add 5 levels |

   [except when the total number of units is 1 1/2, round up to the largest whole number]

8. **Highest of the Adjusted Offense Levels From Lines 1-5 Above, and From Lines 1-5 of the Previous Page.**    __43__

9. **Combined Adjusted Offense Level (see 3D1.4)**
   Enter the sum of lines 7 and 8 here and on Worksheet D, Line 1.    *43

*SEE CHAPTER 5, PART A, APPLICATION NOTE 2

## WORKSHEET C (CRIMINAL HISTORY)

Defendant _____ James H. Roane, Jr. _____   Docket Number _____ 3:92CR68-03 _____

Date Defendant Commenced Participation in Instant Offense _____ November 1991 _____
(Earliest Date of Relevant Conduct)

1. **3 POINTS** for each prior **ADULT** sentence of imprisonment exceeding **ONE YEAR** and **ONE MONTH** imposed within **15 YEARS** of the defendant's commencement of the instant offense **OR** resulting in incarceration during any part of that **15-YEAR** period. (See 4A1.1(a) and 4A1.2)

2. **2 POINTS** for each prior sentence of imprisonment of at least **60 DAYS** resulting from an offense committed **SUBSEQUENT** to the defendant's 18th birthday not counted under 4A1.1(a) imposed within **10 YEARS** of the instant offense; and

   **2 POINTS** for each prior sentence of imprisonment of at least **60 DAYS** resulting from an offense committed **PRIOR** to the defendant's 18th birthday not counted under 4A1.1(a) from which the defendant was released from confinement within **5 YEARS** of the instant offense. (See 4A1.1(a) and 4A1.2)

3. **1 POINT** for each prior sentence resulting from and offense committed **ON OR AFTER** the defendant's 18th birthday not included under 4A1.1(a) or 4A1.1(b) imposed within **10 YEARS** of the instant offense; and

   **1 POINT** for each prior sentence resulting from an offense committed **BEFORE** the defendant's 18th birthday not included under 4A1.1(a) or 4A1.1(b) imposed within **5 YEARS** of the instant offense. (See 4A1.1(c) and 4A1.2)

   **NOTE:** a maximum of **4 POINTS** may be imposed for the items in 3.

| Date of Imposition | Sentence Status* | Offense | Sentence | Release Date** | Criminal History Points |
|---|---|---|---|---|---|
| 09-02-86 | | Possession of Marijuana | 30 days jail, suspended | | 1 |
| 08-15-88 | | Assault | 90 days jail, 60 days suspended | | 1 |
| 08-15-88 | | Assault | 60 days jail, suspended | | 0 |
| 09-01-88 | | Assault | 12 months jail, suspended | | 1 |
| 09-14-88 06-18-90 | | Unlawful Wounding Probation Violation | 5 years, suspended 5 years, 3 years suspended | | 3 |
| 10-13-88 | | Trespassing | 12 months, suspended | | 0 |
| 07-11-90 | | Fail to Appear | 12 months jail | | 2 |
| 07-11-90 | | Assault | 12 months, suspended | | 0 |
| 07-11-90 | | Threaten Bodily Harm | 12 months, suspended | | 0 |
| 07-11-90 | | Trespassing | 12 months, suspended | | 0 |

\* Sentence status, juvenile (J) or adult (A), required on sentences if offense committed prior to age 18.

\** A release date is required in only three instances:

   1. When a sentence covered under 4A1.1(a) was imposed more than 15 years prior to the commencement of the instant offense but release from incarceration occurred within such 15-year period;

   2. When a sentence counted under 4A1.1(b) was imposed for an offense committed prior to age 18 and more than 5 years prior to the commencement of the instant offense, but release from incarceration occurred within such 5-year period; and

   3. When 4A1.1(e) applies because the defendant was released from custody within 2 years of the instant offense or was still in custody at the time of the instant offense.

**Total Criminal History Points** for 4A1.1(a), 4A1.1(b), and 4A1.1(c) (Items 1,2,3) ___*___

(SEE PAGE 1A)

## WORKSHEET C (CRIMINAL HISTORY), Page 1A

Defendant _____James H. Roane, Jr._____   Docket Number _____3;92CR68-03_____

Date Defendant Commenced Participation in Instant Offense _____November 1991_____
(Earliest Date of Relevant Conduct)

1. **3 POINTS** for each prior **ADULT** sentence of imprisonment exceeding **ONE YEAR** and **ONE MONTH** imposed within **15 YEARS** of the defendant's commencement of the instant offense **OR** resulting in incarceration during any part of that **15-YEAR** period. (See 4A1.1(a) and 4A1.2)

2. **2 POINTS** for each prior sentence of imprisonment of at least **60 DAYS** resulting from an offense committed **SUBSEQUENT** to the defendant's 18th birthday not counted under 4A1.1(a) imposed within **10 YEARS** of the instant offense; and

   **2 POINTS** for each prior sentence of imprisonment of at least **60 DAYS** resulting from an offense committed **PRIOR** to the defendant's 18th birthday not counted under 4A1.1(a) from which the defendant was released from confinement within **5 YEARS** of the instant offense. (See 4A1.1(a) and 4A1.2)

3. **1 POINT** for each prior sentence resulting from and offense committed **ON OR AFTER** the defendant's 18th birthday not included under 4A1.1(a) or 4A1.1(b) imposed within **10 YEARS** of the instant offense; and

   **1 POINT** for each prior sentence resulting from an offense committed **BEFORE** the defendant's 18th birthday not included under 4A1.1(a) or 4A1.1(b) imposed within **5 YEARS** of the instant offense. (See 4A1.1(c) and 4A1.2)

   **NOTE:** a maximum of **4 POINTS** may be imposed for the items in 3.

| Date of Imposition | Sentence Status* | Offense | Sentence | Release Date** | Criminal History Points |
|---|---|---|---|---|---|
| 07-11-90 | | Fail to Pay Fines | 12 months, suspended | | 0 |
| 07-24-90 | | Unauthorized Use of an Auto | 5 years, suspended; Indefinite Probation | | 1 |

\* Sentence status, juvenile (J) or adult (A), required on sentences if offense committed prior to age 18.

\*\* A release date is required in only three instances:

1. When a sentence covered under 4A1.1(a) was imposed more than 15 years prior to the commencement of the instant offense but release from incarceration occurred within such 15-year period;

2. When a sentence counted under 4A1.1(b) was imposed for an offense committed prior to age 18 and more than 5 years prior to the commencement of the instant offense, but release from incarceration occurred within such 5-year period; and

3. When 4A1.1(e) applies because the defendant was released from custody within 2 years of the instant offense or was still in custody at the time of the instant offense.

Total Criminal History Points for 4A1.1(a), 4A1.1(b), and 4A1.1(c) (Items 1,2,3) ___9___

App.0459

WORKSHEET C, Page 2

Defendant _____ James H. Roane, Jr. _____ Docket Number _____ 3:92CR68-03 _____

4. **2 POINTS** if the defendant committed the instant offense while under any criminal justice sentence (e.g., probation, parole, supervised release, imprisonment, work release, escape status). (See 4A1.1(d) and 4A1.2.) List the type of control and identify the sentence from which control resulted. Otherwise, enter 0 POINTS.          __2__

   __Indefinite Probation commenced 11-18-91.  Mandatory Parole 11-18-91 to 05-92.__

5. **2 POINTS** if the defendant committed the instant offense less than 2 YEARS after release from imprisonment on a sentence counted under 4A1.1(a) or (b) or while in imprisonment or escape status on such a sentence. However, enter only 1 POINT for this item if 2 points were added under 4A1.1(d). (See 4A1.1(e) and 4A1.2.) List the date of release and identify the sentence from which release resulted. Otherwise, enter 0 POINTS.          __1__

   __Released from Virginia Penitentiary 11-18-91.__

6. **1 POINT** for each prior sentence resulting from a conviction of a crime of violence that did not receive any points under 4A1.1(a),(b), or (c) because such sentence was considered related to another sentence resulting from a conviction of a crime of violence. Provided, that this item does not apply where the sentences are considered related because the offenses occurred on the same occasion. (See 4A1.1(f) and 4A1.2). Identify the crimes of violence and briefly explain why the cases are considered related.          _____

   **NOTE:** A maximum of 3 POINTS may be imposed for this item.

   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____
   _____

7. **Total Criminal History Points** (Sum of Items 1-6)          __12__

8. **Criminal History Category** (Enter here and on Worksheet D, Item 4)          __V__

| Total Points | Criminal History Category |
|---|---|
| 0 - 1 | I |
| 2 - 3 | II |
| 4 - 6 | III |
| 7 - 9 | IV |
| 10 - 12 | V |
| 13 or more | VI |

## WORKSHEET D (GUIDELINE WORKSHEET)

Defendant _____ James H. Roane, Jr. _____    District __ ED/VA - Richmond _____

Docket Number _____ 3:92CR68-03 _____

1. **Adjusted Offense Level** (From Worksheet A or B)                           _____43_____

   If worksheet B is required, enter the result from Worksheet B,
   Item 9. Otherwise, enter the result from Worksheet A, Item 5.

2. **Acceptance of Responsibility** (See Chapter Three, Part E)                  _____- 0_____

   If applicable, enter "2". If not applicable, enter "0".

3. **Offense Level Total** (Item 1 less Item 2)                                  _____43_____

4. **Criminal History Category** (From Worksheet C)                              _____V_____

   Enter the result from Worksheet C, Item 8.

5. **Career Offender/Criminal Livelihood/Armed Career Criminal**
   (See Chapter Four, Part B)

   a.  Offense Level Total                                                       _____N/A_____

       If the career offender provision (4B1.1), the criminal
       livelihood provision (4B1.3), or the armed career criminal
       provision (4B1.4) results in a higher offense level total
       than Item 3, enter the offense level total. Otherwise,
       enter "N/A".

   b.  Criminal History Category                                                _____N/A_____

       If the career offender provision (4B1.1) or the armed career
       criminal provision (4B1.4) results in a higher criminal history
       category than Item 4, enter the applicable criminal history
       category. Otherwise, enter "N/A".

6. **Guideline Range from Sentencing Table**                                    LIFE____

   Enter the applicable guideline range from Chapter Five, Part A.

7. **Restricted Guideline Range** (See Chapter Five, Part G)                     Count 16: 20 yrs.
                                                                                 Count 32: 5-40 yrs.

   If the statutorily authorized maximum sentence or the statutorily required
   minimum sentence restricts the range in Item 6 (see 5G1.1 - 1.2), enter
   the restricted guideline range or guideline sentence in the box provided.
   Otherwise, enter "N/A".

8. **Probation**

   a.  **Imposition of a Sentence of Probation** (Check the line applicable)

       _X_ 1.  Probation is not authorized by the guidelines (if the minimum of the
               guideline range is greater than six months). (If checked, go to Item 9).

       ___ 2.  Probation is authorized by the guidelines (if the minimum of the
               guideline range is zero months)(5B1.1(a)(1)).

       ___ 3.  Probation is authorized by the guidelines (if the minimum of the guideline
               range is one to six months), provided the court imposes a condition or
               combination of conditions requiring intermittent confinement, community
               confinement, or home detention satisfying the minimum of the guideline
               range (5B1.1(a)(2)).

App.0461

## WORKSHEET D, Page 2

Defendant _____James H. Roane, Jr._____     Docket Number _____3:92CR68-03_____

b. **Length of a Term of Probation** (See 5B1.2)

If probation is authorized, the guideline for the length of such term of probation is: (Check the line applicable).

_____1.   At least one year, but not more than five years (if the offense level total is 6 or more).

_____2.   No more than three years (if the offense level total is 5 or less).

c. **Conditions of Probation** (See 5B1.3) A defendant serving any term of probation shall not commit federal, state, or local crime. (See 18 U.S.C. 3563(a)(1)). In addition to standard conditions (1-13), list any applicable special conditions:

_____N/A_____

_____

9. **Sentences under 5C1.1(c)(3) and (d)(2)** (Check the line applicable)

__X__a.   The provisions of 5C1.1(c)(3) and (d)(2) are not applicable (if the minimum of the guideline range is zero or is greater than ten months). (If checked, go to Item 10).

_____b.   A sentence under 5C1.1(c)(3) or (d)(2) is authorized by the guidelines. The Court may impose a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention for imprisonment, provided that at least one-half of the minimum guideline range, but no less than one month, is satisfied by imprisonment.

10. **Supervised Release**

a. **Imposition and Length of a Term of Supervised Release** (See 5D1.1 and 5D1.2)

If a term of imprisonment of more than one year is imposed, the guidelines require a term of supervised release.

If a term of imprisonment of one year or less is imposed, the guidelines authorize but do not require a term of supervised release.

List the guideline and the length of any term of supervised release:

* 3-5 years for Class A or B felony (offenses with maximum term of imprisonment of 25 years or more).
* 2-3 years for Class C or D felony (offenses with maximum term of imprisonment of less than 25 years but 5 years or more).
* 1 year for Class E felony or Class A misdemeanor (offenses with maximum term of imprisonment of less than 5 years but more than 6 months).
* For statutorily required minimum terms of supervised release, refer to 5D1.2(a).

Count 1 - At least 5 yrs; Count 32 - At least 4 yrs.; Counts 2, 7, 10, 13, 14 - 3-5 years each; Count 16 - 2-3 years.

b. **Conditions of Supervised Release** (See 5D1.3) A defendant serving any term of supervised release shall not commit a federal, state, or local crime. (See 18 U.S.C. 3583(d).) In addition to standard conditions (1-13), list any applicable special conditions:

_____

_____

11. **Restitution** (See 5E1.1)

If an order of restitution is applicable, enter the amount. Otherwise enter "N/A".

_____N/A   See 5E1.1(b)_____

App.0462

WORKSHEET D, Page 3

Defendant _____James H. Roane, Jr._____  Docket Number _____3:92CR68-03_____

12. **Fines**

a. Fines for Individual Defendants (See 5E1.2)

|  |  | Minimum | Maximum |
|---|---|---|---|
| (1) | Aggregate dollar amount for counts with statutory maximum fines that exceed $250,000 |  | $ 4,000,000 |
| (2) | Fine Table: | $ 25,000 | $ 4,000,000 |
| (3) | Guideline Range for Fines: (determined by the minimum and greater maximum above) | $ 25,000 | $ 4,000,000 |

b. Cost of imprisonment $1,492.00/mo.    Cost of probation, supervised
(See 5E1.2(i))                           release                        $115.30/mo.

Drug/Alcohol        $172.33/mo.          Cost of community
                                         confinement                    $991.00/mo.

13. **Special Assessments.** (See 5E1.3)

Enter the total amount of special assessments required for all counts of conviction:

* $25, if the defendant is convicted of a misdemeanor.
* $50, if the defendant is convicted of a felony.

$ 550

14. **Additional Applicable Guidelines, Policy Statements, Statutory Provisions, and Aggravating and Mitigating Factors**

List any additional applicable guidelines, policy statements, and statutory provisions. Also list any applicable aggravating and mitigating factors that may warrant a sentence at a particular point within the applicable guideline range or outside the applicable guideline range. Attach additional sheets as required.

___N/A___

Completed by _____Daniel Guertler_____        Date ___4/16/93___

App.0463