**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

**Richmond Division**

UNITED STATES OF AMERICA    )
                                )      Criminal Case No. 92CR68
v.                            )      **CAPITAL CASE**
                                )
RICHARD TIPTON, III.         )

**MOTION FOR THE IMPOSITION OF A REDUCED SENTENCE**
**UNDER SECTION 404 OF THE FIRST STEP ACT**

Pursuant to Section 404 of the First Step Act of 2018, the Defendant Richard

Tipton, III respectfully moves this Court to reduce his sentences for the interrelated

offenses charged in Counts 3, 24, 25, 32, and 33, as the statutory penalty for each

has been modified by the Fair Sentencing Act.  Following those modifications, Mr.

Tipton's death sentences rest upon predicate offenses that no longer authorize

capital punishment; he accordingly moves this Court to vacate those sentences.

Mr. Tipton further submits that this Court should reduce the terms of years

imposed for his non-capital convictions.  In support of this motion, Mr. Tipton

shows as follows:

## I.   FACTS AND ARGUMENT

### A. Mr. Tipton's Convictions and Sentencing.

On February 3, 1993, Mr. Tipton was convicted of the following offenses that fall within the purview of the First Step Act.[1]  Per Count 2 of his superseding indictment (attached as Ex. 1), Mr. Tipton was convicted of engaging in a continuing criminal enterprise ("CCE") in violation of 21 U.S.C. § 848(a), with the CCE defined as violations of "Title 21, United States Code, Section 841…including, but not limited to, those violations alleged in the instant indictment[.]"  Ex. 1 at 5-6.  The only two Section 841 violations alleged in the indictment, Counts 32 and 33, charged Mr. Tipton with "possessing with the intent to distribute a Schedule II narcotic controlled substance, that is, *fifty (50) grams or more*" of "cocaine base, commonly known as 'crack' or 'cook-em-up,'" as described in 21 U.S.C. § 841(b)(l)(A)(ii).  Ex. 1 at 21-22 (emphasis added).  Finally, Mr. Tipton was convicted of six violations of 21 U.S.C. § 848(e) for killings committed "while engaged in and working in furtherance of" this CCE—

[1]Mr. Tipton was also convicted of: conspiracy to "possess with the intent to distribute, and to distribute, a Schedule II narcotic controlled substance" in violation of 21 U.S.C. § 846 (Count 1); six counts of murder "to maintain or increase position in racketeering enterprise" in violation of 18 U.S.C. § 1959 (Counts 4, 21, 22, 23, 27, and 28); two counts of using a firearm in relation to a crime of violence or a drug trafficking crime, 21 U.S.C. § 924(c) (Counts 20 and 26); two counts of maiming "to maintain or increase position in racketeering enterprise" in violation of 18 U.S.C. § 1959 (Counts 29 and 30).  These convictions, which are now invalid, are discussed *infra*.

offenses for which the government sought the death penalty.  See Ex. 1 at 6-7, 13-15, 17-18 (Counts 3, 17, 18, 19, 24, and 25).

At the conclusion of the penalty phase, the jury recommended death sentences for three of Mr. Tipton's Section 848(e) offenses (Counts 3, 24 and 25); it recommended life sentences for the remaining three (17, 18, 19).  See Jury's Decision Form (attached as Ex. 2.)  This Court sentenced Mr. Tipton in accord with the jury's recommendation, imposing terms of imprisonment for the non-capital counts.  See Court's Judgment (attached as Ex. 3).

## B. The Fair Sentencing Act

In 2010, Congress enacted the Fair Sentencing Act, which recognized that federal drug statutes had imposed overly harsh penalties for cocaine-base offenses, with a disproportionate effect on African-American defendants.[2]  Congress accordingly adjusted the penalties for offenses involving cocaine base by increasing the threshold drug quantities required to trigger mandatory minimum sentences under 21 U.S.C. § 841(b)(1).[3]  Per those amendments, a violation of 21 U.S.C. § 841(a)(1) must now involve at least 280 grams of cocaine base—as

---

[2] *Dorsey v. United States*, 567 U.S. 260, 268-69 (2012).

[3] Fair Sentencing Act of 2010, Pub. L. No. 111-220, § 2, 124 Stat. 2372, 2372 (2010).

opposed to the 50 grams required when Mr. Tipton was sentenced—in order to trigger the highest penalty ranges of 10 years to life imprisonment.[4]

## C. The First Step Act

On December 21, 2018, Congress enacted the First Step Act. Section 404 of that act authorizes relief for any defendant convicted of a "covered offense"—an offense with statutory penalties that "were modified by section 2 or 3 of the Fair Sentencing Act of 2010" and was "committed before August 3, 2010," the effective date of the Fair Sentencing Act. First Step Act of 2018, S. 3747, 115th Cong. § 404(a) (2018). Upon a "motion of the defendant," this Court may "impose a reduced sentence as if Sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." *Id.* at § 404(b).1

## D. Mr. Tipton's Offenses Fall Within the First Step Act's Purview

The Fair Sentencing Act modified the statutory penalties for Mr. Tipton's Section 841(a)(1) and 848 convictions. At the time of his sentencing, his Section 841(a)(1) convictions for possessing with intent to distribute more than fifty grams of crack were punishable under § 841(b)(1)(A), which imposed a mandatory minimum of ten years' incarceration and a maximum penalty of life imprisonment. Were he sentenced today, however, that quantity would authorize punishment

---

[4] 21 U.S.C. § 841(b)(1)(A)(iii) (and "at least 5 years" of supervised release, or "at least 10 years" with the § 851 enhancement).

under § 841(b)(1)(B) only, which carries a five-year mandatory minimum penalty and a statutory maximum of forty years.

This shift from § 841(b)(1)(A) to § 841(b)(1)(B) is significant, as only a crime punishable under the former provision can serve as the necessary predicate for imposing a sentence of death for a Section 848 conviction. Section 848(e)(1)(A) provides:

> any person engaging in or working in furtherance of a continuing criminal enterprise, or any person engaging in an offense punishable *under section 841(b)(1)(A) of this title . . .* who intentionally kills or counsels, commands, induces, procures, or causes the intentional killing of an individual and such killing results, shall be sentenced to any term of imprisonment, which shall not be less than 20 years, and which may be up to life imprisonment, *or may be sentenced to death*.

848(e)(1)(A) (emphases added). While Mr. Tipton's Section 841(a)(1) convictions as charged would have qualified as "offense[s] punishable under section 841(b)(1)(A)" at the time of his 1993 trial, today, under the Fair Sentencing Act, they would not. Accordingly, Mr. Tipton could no longer be sentenced to death for any of his Section 848 convictions.

### E. Mr. Tipton Is Eligible For Resentencing

Because the statutory penalties for Mr. Tipton's Section 841(a)(1) and 848 convictions were thus modified by the Fair Sentencing Act, those convictions are "covered offenses" subject to resentencing under the First Step Act. Sections 2 and 3 of the Fair Sentencing Act expressly modify Section 841(a). And while the

FSA did not directly amend Section 848, the Government has conceded elsewhere that Section 848 convictions are "eligible for a sentence reduction under the 2018 FSA…due to § 848's requirement of a § 841(b)(1)(A) violation." *United States v. Davis*, 2020 WL 1131147, at \*2 (W.D. Va. Mar. 9, 2020); see also *United States v. Brown*, 2020 WL 3106320 at \*4 (W.D. Va. June 11, 2020) ("As to whether any of the penalties for § 848 have been modified by the Fair Sentencing Act, the parties do not disagree."); and United States' Mot. to Remand at 8, *United States v. Maupin*, No. 19-6817 (4th Cir. Aug. 29, 2019), ECF No. 26. Courts have consistently agreed that Section 848 convictions are covered offenses. See, e.g., *United States v. Davis*, 2020 WL 1131147, at \*2 (W.D. Va. Mar. 9, 2020) ("[A] defendant's § 848(e)(1)(A) conviction is a covered offense because it relies on the drug quantity thresholds set by § 841 and, therefore, requires a jury finding that the defendant committed a murder in furtherance of a drug conspiracy to sell 280 or more grams of cocaine base."); *United States v. Brown*, 2020 WL 3106320, at \*4 (W.D. Va. June 11, 2020); Order at 5, *United States v. Kelly*, No. 2:94-CR-163 (E.D. Va. June 5, 2020); *Wright v. United States*, 425 F. Supp. 3d 588, 598 (E.D. Va. 2019); Order at 1, *United States v. Groves*, No. 5:94-CR-97 (E.D.N.C. Nov. 21, 2019); *United States v. Dean*, 2020 WL 2526476, at \*3 (D. Minn. May 18, 2020); *United States v. Jimenez*, 2020 WL 2087748, at \*2 (S.D.N.Y. Apr. 30, 2020); Order at 4, *United States v. Hines*, No. 5:94-CR-150 (N.D.N.Y. Nov. 8,

2019), ECF No. 607; Order at 4, *United States v. Walker*, No. 5:95-CR-101 (N.D.N.Y. Oct. 25, 2019), ECF No. 620; Order at 4, *United States v. Robinson*, No. 98-CR-60 (E.D. Wis. Sept. 27, 2019), ECF No. 606.

Moreover, the relevant inquiry for determining whether an offense is a "covered offense" must disregard any quantities of crack cocaine actually proven in Mr. Tipton and focus instead on the statute of conviction. *Wirsing*, 943 F.3d at 185-86 ("*all* defendants who are serving sentences for violations of 21 U.S.C. § 841(b)(1)(A)(iii) and (B)(iii), and who are not excluded pursuant to the expressed limitations in § 404(c) of the Act, are eligible to move for relief under that Act" (emphasis added)); see also *United States v. Jackson*, 2020 WL 3563995, at *7 (3d Cir. July 1, 2020) ("§ 404 eligibility turns on a defendant's statute of conviction, not on his possession of a certain quantity of drugs"); *United States v. Shaw*, 957 F.3d 734, 735 (7th Cir. 2020) ("To determine whether a defendant is eligible for a reduced sentence under the First Step Act, a court needs to look only at a defendant's statute of conviction, not to the quantities of crack involved in the offense.").

## II.   THIS COURT SHOULD CONDUCT A HEARING TO CONSIDER SECTION 3553(A)'S SENTENCING FACTORS

As Mr. Tipton has established eligibility under the First Step Act, Section 404 requires a "complete review on the merits," Pub. L. No. 115-391, § 404(c) (2018), which includes weighing the sentencing factors codified in 18 U.S.C. §

3553(a). *Shaw*, 957 F.3d at 742 (the record must show that district court "considered the arguments presented" and "accounted for the 18 U.S.C. § 3553(a) factors."); *United States v. Boulding*, 960 F.3d 774, 776 (6th Cir. 2020) ("an eligible defendant is entitled to an accurate amended guideline calculation and renewed consideration of the 18 U.S.C. § 3553(a) factors"); *United States v. Smith*, 959 F.3d 701, 703 (6th Cir. 2020) (same).

§ 3553(a) states that a court "shall impose a sentence sufficient, but not greater than necessary," to comply with its purposes.  It directs the Court to consider "the nature and circumstances of the offense and the history and characteristics of the defendant." § 3553(a)(1).[5]  It identifies:

> [T]he need for the sentence imposed…to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational

---

[5]While Mr. Tipton contends that his Section 848(e) convictions are no longer capital crimes, this duty is only underscored by the many holdings of Supreme Court requiring a sentencer to consider, as a mitigating factor, "any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Lockett v. Ohio*, 438 U.S. 586, 604 (1978);  see also *Woodson v. North Carolina*, 428 U.S. 280, 304 (1976) ("the fundamental respect for humanity underlying the Eighth Amendment requires consideration of the character and record of the individual offender and the circumstances of the particular offense."); (sentencer must consider, as a mitigating factor, "any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death."); see also *Eddings v. Oklahoma*, 455 U.S. 104, 117 (1982).

training, medical care, or other correctional treatment in the most effective manner.

*Id.*

Critically here, § 3553(a) also directs the Court to consider "the kinds of sentence and the sentencing range established" for the categories of offense committed and "the kinds of sentences *available*."—which, in Mr. Tipton's case, requires acknowledging that a sentence of death would *not* be available for his Section 848(e) convictions. *Id.* (emphasis added.)

Mr. Tipton will present argument and evidence in support of the following points.

## A. Mr. Tipton is Not Eligible for a Sentence of Death

Because Mr. Tipton's § 841(a)(1) convictions are no longer punishable under § 841(b)(1)(A), they cannot support the sentences of death under § 848(e)(1)(A) imposed for Counts 3, 24, and 25.

As the Supreme Court held in *Apprendi v. New Jersey*, any factor that increases the maximum potential sentence for an offense is an *element* of that offense that must be alleged in the indictment, presented to the jury and found beyond a reasonable doubt. 530 U.S. 466, 490 (2000). Following *Apprendi*, "in order to authorize the imposition of a sentence exceeding the maximum allowable without a jury finding of a specific threshold drug quantity, the specific threshold quantity must be treated as an element [of the offense], *i.e.*, charged in the

9

indictment and proved to the jury beyond a reasonable doubt." *United States v. Promise*, 255 F.3d 150, 156-57 (4th Cir. 2001) (footnote omitted).

At the time of Mr. Tipton's convictions, the threshold drug quantity required to establish a conviction under 21 U.S.C. §841(b)(1)(A) was more than 50 grams of cocaine base.  The Fair Sentencing Act, however, has moved that threshold. In order to sustain a conviction under that provision today, the Government must prove that the defendant possessed with the intent to distribute *more than 280 grams* of a substance containing cocaine base.  A count alleging a drug quantity of "more than 50 grams of cocaine base," as charged in Mr. Tipton's indictment, would now fall under21 U.S.C. § 841(b)(1)(B)(iii), which has a threshold of at least 28, but less than 280, grams of a substance containing cocaine base.  The sentencing range for that offense is a mandatory minimum of five years in prison and a statutory maximum of 40 years in prison.[6] *More importantly, however, a conviction under 21 U.S.C. §841(b)(1)(B) does not serve as a predicate offense for the imposition of a death sentence under 21 U.S.C. 848(e).*

---

[6]Because drug quantity is an element of the offense, in order to sustain a conviction under 21 U.S.C. § 841(b)(1)(A) or § 841(b)(1)(B), the jury must make a specific finding that the government has proven beyond a reasonable doubt the amount and type of drug.  Here, the jury did not make a finding on drug quantity. Thus, the Court was authorized to impose only a sentence between 0 and 20 years. See 21 U.S.C. § 841 (b)(1)(C).  See also, *United States v. Cheese*, ___ F.Supp.3d ___, 2020 WL 3618987 at *8 (D. MD. July 2, 2020) (The jury did not determine the quantity of drugs . . . [t]herefore the statutory range . . . is 0-30 years . . . *See* 21 U.S.C. § 841(b)(1)(C).")

As a death sentence is no longer available for Mr. Tipton's Section 848(e) convictions, this Court should resentence him to a lesser sentence within the current and corrective statutory range. As the Supreme Court has held, "because there is a qualitative difference between death and any other permissible form of punishment, 'there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case.'" *Zant v. Stephens*, 462 US 862, 884-85 (1983) (quoting *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976)).  Allowing Mr. Tipton's death sentences to stand when they rest upon predicate offenses that were disproportionately punished for improper and discriminatory reasons cannot comport with those requirements.

### B. The Currently Applicable Statutory Ranges Are Lower than When Mr. Tipton Was Sentenced

As the mandatory minimum sentences for Mr. Tipton's Section 841(a)(1) convictions are lower now than at the time of his sentencing, this Court should modify his sentences.  In 1993, the sentencing range for Mr. Tipton's Section 841(a)(1) convictions was ten years to life imprisonment.  On Count 32, this Court sentenced him to forty years; on Count 33, to twenty years.  See Ex. 3 at 2.  Today, however, the sentencing range for these convictions is five to forty years.  Mr. Tipton's sentences for Counts 32 and 33 were at the midpoint and low end of the 1993 guidelines, respectively; they are now at the maximum and the midpoint. This Court should reduce Mr. Tipton's sentences accordingly.

11

This Court should also reduce the life sentences imposed for Mr. Tipton's Section 848(e) convictions as charged in Counts 17, 18, and 19. The Government sought the death penalty for each of these counts, but the jury declined to impose that maximum available punishment.  Now that none of Mr. Tipton's Section 848(e) offenses can support a death sentence, these counts, which received a lesser sentence at trial, should not carry the maximum available punishment allowed by the Fair Sentencing Act.

## C. Mr. Tipton's History and Characteristics

Section 3553(a)(1) directs a sentencing court to consider "the history and characteristics of the defendant."  This charge mirrors Supreme Court precedent requiring consideration of "any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Lockett*, 438 U.S. at 604 (emphasis added).  Those "mitigating factors" can and must include anything "stemming from the diverse frailties of humankind," *Woodson v. North Carolina*, 428 U.S. 280, 304 (1976).

As discussed *infra*, the evidence presented at Mr. Tipton's penalty phase, while incomplete, established several statutory mitigating factors stemming from his impoverished and abusive childhood that are relevant for Section 3553(a)(1). Mr. Tipton will present and expand upon that evidence at a hearing on this motion, but proffers the following herein.

12

Mr. Tipton was born to a drug-addicted mother who abused heroin throughout her pregnancy with him.  His parents fought constantly and moved the family from home to home until his father abandoned them after savagely beating his mother.  His mother's extended family threw them out over his mother's continuing drug abuse and insistence on bringing men home.  His mother ultimately took up with another violent heroin addicts; their fights frequently led to one or another being hospitalized.  Mr. Tipton, who was himself brutally and regularly beaten by his mother, would often try to intervene to protect her from her boyfriend, suffering further abuse in the process.

The family lived in the Washington Heights section of Manhattan, which, due to its ready access to neighboring states and the emergence of crack cocaine, was the murder capital of New York and the largest retail drug market in the world. [7]  Mr. Tipton both witnessed and suffered the violence as gangs organized on racial lines began to target him and his friends, forcing them to fight every day just to go to the school or the store.

Mr. Tipton's mother often left her children unattended while scoring drugs, but continued to bring men home to smoke crack or shoot heroin, leaving their

---

[7]Nix, Crystal, "*Tales Of Two Precincts One Better, One Worse; The 34th: Murders Surge As Crack Spreads*," THE  NEW YORK TIMES, March 29, 1987, sec. Week in Review. http://www.nytimes.com/1987/03/29/weekinreview/tales-two-precincts-one-better-one-worse-34th-murders-surge-crack-spreads.html

apartment littered with drug paraphernalia and unconscious strangers. When one overdosed, Mr. Tipton's mother made him help her carry the body to another floor to avoid questions from the police. With his mother's addiction consuming what little money they had, there was no food in the apartment, and the utilities were often disconnected.

Mr. Tipton attempted to escape the chaos and abuse of his mother's home from an early age, but was rebuffed. When he was eleven, his grandparents invited his sister to come live with them. When he begged them to take him, too, they told him that he needed to be the man of the house and take care of his mother. As a teenager, he twice fled to Covenant House, a homeless shelter for teens, only to be returned to his mother's abuse and neglect.

Both of Mr. Tipton's sisters were ultimately taken in by their grandparents, who gave them a stable and supportive home. Both thrived, went to college, and had families and successful, productive careers. Mr. Tipton began drifting back and forth between Washington Heights and his father's home in Richmond, living on the streets. His combination of poverty and neglect left him particularly susceptible to ovations from neighborhood dealers. Before long, he was selling drugs. When Mr. Tipton was arrested for the crimes underlying this motion, he was only twenty-one years old.

14

While Mr. Tipton is criminally responsible for the crimes he has committed, no assessment of his "history and characteristics" could be complete without including his deplorable upbringing and the lifetime of trauma and physical and psychological insults it inflicted upon him.

**D. Other Convictions That Influenced Mr. Tipton's Sentences Are Invalid.**

Mr. Tipton was convicted of additional counts that, while not the subject of this motion, have been vacated or otherwise invalidated.   In considering whether to reduce Mr. Tipton's sentences, this Court must account for the effect of these improper convictions on the original sentencing determinations.

1.  Mr. Tipton's Section 848(a) Conspiracy Conviction Was Vacated.

Mr. Tipton was convicted of conspiracy to possess cocaine base with intent to distribute in violation of 21 U.S.C. § 846 (Count 1) and engaging in a continuing criminal enterprise ("CCE") in violation of 21 U.S.C. § 848(a) (Count 2).   On appeal, however, the Fourth Circuit vacated Mr. Tipton's Section 846 conspiracy conviction as violating the Constitution's double jeopardy clause, as it "is a lesser included offense within the § 848 CCE as charged."  *United States v. Tipton*, 90 F.3d 861, 891 (4th Cir. 1996).  Mr. Tipton should be resentenced without the influence of this superadded, unconstitutional conviction on the sentencing decision.

2.  Mr. Tipton's Section 924(c) Convictions Are Invalid

Mr. Tipton was also convicted of two counts of using a firearm in relation to a crime of violence or a drug trafficking crime in violation of 21 U.S.C. § 924(c).[8] The Supreme Court's decision in *United States v. Davis*, __ U.S. __, 139 S. Ct. 2319 (2019), however, has rendered those Section 924(c) convictions unconstitutional.

Before *Davis*, § 924(c) included two alternative clauses defining "crime of violence." The first, § 924(c)(3)(A), is commonly referred to as the "force" or "elements" clause and applies to any felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." The second, § 924(c)(3)(B), was commonly referred to as the "residual clause" and applied to any felony "that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." *Davis*, however, held that § 924(c)(3)'s residual clause is void for vagueness, violates the Due Process Clause, and, accordingly, unconstitutionally imposed criminal punishment. 139 S. Ct. 2319 (2019).

Absent § 924(c)'s residual clause, none of Mr. Tipton's convictions under that statute can stand. To remain valid, a § 924(c) conviction predicated upon a

---

[8]Counts 20 and 26.

16

crime of violence must have a predicate offense which satisfies the elements-based, categorical approach required by § 924(c)(3)(a)'s "force" or "elements" clause. In assessing whether a predicate offense meets those requirements, a reviewing court applies the categorical approach, which asks only "whether the statutory elements of the offense necessarily require the use, attempted use, or threatened use of physical force." *United States v. Simms*, 914 F.3d 229, 233 (4th Cir. 2019) (*en banc*) *cert. denied*, 140 S. Ct. 304 L.Ed. 2d (2019). Moreover, the requirements of § 924(c) cannot be satisfied unless the record established with "certainty" that the defendant was "necessarily" convicted of an offense that qualifies as a "crime of violence." *Shepard v. United States*, 544 U.S. 13, 21 (2005). Accordingly, in cases where the record does not establish which of multiple offenses the jury might have found as the predicate, the § 924(c) conviction cannot be sustained if even *one* of the possible predicates is not categorically a crime of violence.

At least two types of offenses charged as predicates for Mr. Tipton's § 924(c) counts–those pursuant to § 1959(a) and § 848(e)–cannot categorically qualify as "crimes of violence" absent the residual clause voided by *Davis*. Moreover, the record does not conclusively establish which of the many possible predicates listed were relied upon by the jury when convicting him of § 924(c)

17

violations.[9]  Finally, the record cannot establish with certainty whether § 848(e) was considered by the jury as a crime of violence or a drug trafficking charge, which prevents its use as an alternative predicate for the § 924(c) offenses.

Accordingly, following *Davis*, Mr. Tipton's § 924(c) convictions are legal nullities that were entered in excess of this Court's jurisdiction.  Mr. Tipton has moved the Fourth Circuit for authorization to file a successive motion pursuant to 28 U.S.C. § 2255 in this Court that will seek relief from these unconstitutional convictions; that pleading addresses these arguments in more detail.  Doc. 2-1, *In re Tipton*, USCA4 Appeal 20-10 (filed June 8, 2020).  On July 15, 2020, the Circuit ordered that motion placed in abeyance pending its upcoming decision in

---

[9]Mr. Tipton's Second Superseding Indictment offered multiple § 848(e) and § 1959 counts as the predicate offenses for his § 924(c) offenses.  See Exhibit 1. For the first, Count 20, the indictment cited: conspiracy, as charged in Count 1; the § 848(e) violations charged in Counts 17, 18, and 19; and the § 1959 violations charged in Counts 21, 22 and 23.  *Id.* at 15. For the second, Count 26, the indictment cited: conspiracy, again as charged in Count 1; § 848(e) violations as charged in Counts 24 and 25; § 1959 violations as charged in Counts 27 and 28; and the § 1959 maiming violations charged in Counts 29 and 30.  *Id.* at 15.

When instructing the jury as to the § 924(c) offenses, however, this Court made no reference to these predicates.  Tr. 3221-24.  Rather, it simply read the text of § 924(c)(1) to the jury, including a nearly verbatim recitation of its force and residual clauses.  *Id.*  Nor did this Court identify certain counts as drug trafficking crimes, merely stating generally that "[t]he offenses alleged . . . are crimes of violence *or* drug trafficking crimes."  Tr. 3223.  This Court repeatedly admonished the jury to refer to Mr. Tipton's verdict form to "assist" it in "giving individual consideration to each…count against him," T. 3219-22, but that form required no specific findings as to the predicate or § 924(c) offenses, directing the jury only to find Mr. Tipton "Guilty or Not Guilty."  See Verdict, attached as Ex. 4.

*United States v. Taylor*, No. 19-7616.  Doc. 19, USCA4 Appeal 20-10 (filed July 15, 2020).  *Taylor*, in turn, will address "whether an 18 U.S.C. § 924(c) conviction is subject to vacatur where the indictment charged multiple predicates, one of which is invalid."  Order, *United States v. Taylor*, No. 19-7616 (Feb. 12, 2020 4th Cir.)  Given the Fourth Circuit's recognition of its relevance for Mr. Tipton's challenge to his Section 924(c) convictions, he respectfully submits that this Court should reserve judgment upon his motion until *Taylor* has been decided.

   3.   Mr. Tipton's Section 1959 Convictions Were Improperly Charged and
        Are Invalid

   Mr. Tipton was convicted of six counts of murder "to maintain or increase position in racketeering enterprise"[10] and two counts of maiming "to maintain or increase position in racketeering enterprise," [11] all in violation of 18 U.S.C. § 1959.  Those counts each defined the racketeering enterprise as "dealing in narcotic or other dangerous drugs."  None identified a state or federal statute, and none referenced other counts in the indictment.

   When instructing the jury, however, this Court defined "racketeering activity" as "any act or threat involving *murder* or dealing in narcotic or other dangerous drugs."  T. 3221 (Emphasis added).  This instruction constructively

_____

   [10]Counts 4, 21, 22, 23, 27, and 28.

   [11]Counts 29 and 30.

19

amended the indictment.  None of the Section 1959 counts included murder in their definition of the racketeering enterprise.  Nor did they reference a statute or other count that otherwise defined the racketeering activities.  Based upon this Court's instruction, the jurors could have convicted Mr. Tipton of these Section 1959 offenses based upon conduct that *was not charged in the indictment*: an enterprise whose racketeering activity was murder.

As the Fourth Circuit has recognized, a jury instruction which "broadens the bases for conviction beyond those charged in the indictment" creates "a constructive amendment" or "fatal variance" which so alters the indictment as "to change the elements of the offense charged, such that the defendant is actually convicted of a crime other than that charged in the indictment." *United States v. Randall*, 171 F.3d 195, 203 (4th Cir. 1999) (internal quotations and citations omitted).  Where constructive amendment occurs, "it cannot be said with certainty that with a new basis for conviction added, [the defendant] was convicted solely on the charge made in the indictment the grand jury returned." *Stirone v. United States*, 361 U.S. 212, 217 (1960). As such, constructive amendment "destroy[s] the defendant's substantial right to be tried only on charges presented in an indictment returned by a grand jury." *United States v. Floresca*, 38 F.3d 706, 712 (4th Cir. 1994) (en banc) (quoting *Stirone*, 361 U.S. at 217) (emphasis in *Floresca*).

Because such constructive amendments "violate[] the Fifth Amendment

20

right to be indicted by a grand jury," *Randall*, 171 F.3d at 203, they "are erroneous per se and require reversal regardless of preservation." *United States v. Whitfield*, 695 F.3d 288, 309 (4th Cir. 2012) (quoting *United States v. Robinson*, 627 F.3d 941, 958 (4th Cir.2010)); see also *Floresca*, 38 F.3d at 712 (a constructive amendment is "not subject to review for harmlessness"); *Randall*, 171 F.3d at 203 (constructive amendment "is error per se, and must be corrected on appeal even when the defendant did not preserve the issue by objection."). "[E]ven if there was sufficient evidence to convict the defendant on the specific charges made out by the grand jury," reversal is required. *United States v. Nieves*, 108 F. App'x 790, 793 (4th Cir. 2004) (citing *Floresca*, 378 F.3d at 711).

Section 1959 is not a covered offense under the First Step Act, and Mr. Tipton has not challenged the constructive amendment of his Section 1959 counts on appeal or in post-conviction proceedings. When resentencing him on his covered offenses, however, this Court can and should consider how these clearly invalid convictions influenced the original sentencing decisions—including his jury's decision to sentence him to death.

4.   Discounting These Convictions Results in a Sentence of Less than Death

As the Supreme Court recognized in *United States v. Tucker*, "the real question" for Mr. Tipton is "whether the sentence" for those of his convictions that remain in place "might have been different if the [jury] had known that…[Mr.

21

Tipton's] previous convictions had been unconstitutionally obtained."  404 U.S. 443, 448 (1972).  In keeping with *Tucker,* courts have held that a defendant must be resentenced on any valid convictions "unless it can be ascertained from the record that a [jury's] sentence on a valid conviction was not affected" by invalid convictions.  *Bourgeois v. Whitley,* 784 F.2d 718, 721 (5th Cir. 1986); see also *Jerkins v. United States,* 530 F.2d 1203, 1204 (5th Cir. 1976) (same); *James v. United States,* 476 F.2d 936 (8th Cir. 1973) (same).  Given the fact that this same jury sentenced Mr. Tipton to death, that ascertaining must be guided by "[t]he fundamental respect for humanity underlying the Eighth Amendment's prohibition against cruel and unusual punishment gives rise to *a special need for reliability* in the determination that death is the appropriate punishment in any capital case." *Johnson v. Mississippi,* 486 U.S. 576, 584 (1988) (citation omitted) (emphasis added).  Indeed, because "[t]he decision to exercise the power of the State to execute a defendant is unlike any other decision citizens and public officials are called upon to make," the Supreme Court has made clear that "[t]he *possibility* that [a defendant's] jury conducted its task improperly certainly is great enough to require resentencing."  *Mills v. Maryland,* 486 U.S. 367, 383–84 (1988) (emphasis added).  In *Johnson*, that meant that the use of an invalid conviction in a capital sentencing determination was prejudicial and required the reversal of the

22

petitioner's death sentence because of the possibility that it had proved "decisive in the choice between a life sentence and a death sentence." 486 U.S. at 586.

There is more than a possibility here. The record shows that the Government's penalty phase case relied almost exclusively on evidence from the guilt-innocence phase of the trial. The Government "did not put on a great deal of evidence" during the penalty phase. T. 3883–3884, 3891, 3392–3893. Rather, it urged the jury to rely upon its findings "in your guilt phase verdict." T. 3893. Thus, the jury's decision to impose the death penalty was at least partially predicated upon the invalid convictions discussed *supra*. Given that, it is not merely possible, but likely, that these invalid convictions profoundly affected the jury's decision to impose a sentence of death.

For that sentence was not a foregone conclusion. The jury found a number of statutory mitigating factors that argued powerfully against a sentence of death. See Special Findings (Attached as Ex. 5) at 8-9. Mr. Tipton's jurors unanimously found that he has a full-scale I.Q. of 85, *id.* at 8, evidence of borderline intellectual functioning that is "inherently mitigating," *Tennard v. Dretke*, 542 U.S. 274, 287 (2004). The jurors also recognized Mr. Tipton's "troubled history," which the Supreme Court has repeatedly recognized as powerfully "relevant to assessing a defendant's moral culpability." *Wiggins v. Smith*, 539 U.S. 510, 513 (2003). They unanimously found that he "was introduced to addictive drugs and alcohol while

23

still a child," "grew up in an impoverished, violent and brutal environment, and was exposed to extreme violence as a child and throughout his life." Ex. 5 at 8-9. Moreover, ten jurors found Mr. Tipton's youth mitigating, along with his being "subjected to emotional and physical abuse and neglect as a child, and…deprived of the parental guidance and protection that he needed." *Id.* at 8. Ten jurors also noted Mr. Tipton's "frontal lobe brain dysfunction that went untreated when he was a child," while two-thirds of the jury agreed that he "is impulsive and is impaired in thinking about the consequences of his actions and in adjusting his thinking to changing events." *Id.* at 9. Such evidence of "cognitive impairment" and "diminished judgment and reasoning skills" has been recognized by the Supreme Court as "help[ing] the jury understand….horrendous acts[.]" *Sears v. Upton*, 561 U.S. 945, 951 (2010). Finally, eleven jurors agreed that "another defendant or defendants, equally culpable in the crime(s), will not be punished by death," and that the victims "consented to the criminal conduct that resulted in" their deaths—reflecting that nearly all of the jurors were engaged in a complicated assessment of culpability that might well have yielded a sentence of less than death. Ex. 5 at 8.

Given the breadth and power of mitigating evidence, the harm from the jury's consideration of these invalid criminal charges in sentencing Mr. Tipton should not be underestimated. In light of the Eighth Amendment's requirement of

24

reliability in capital sentencing, the "possibility" that the jury improperly relied upon the unconstitutional § 924(c) convictions in sentencing him to death requires that Mr. Tipton be resentenced.

## III.   CONCLUSION AND PRAYER FOR RELIEF

For all the reasons set forth above, Mr. Tipton respectfully requests the following relief:

a) That this Court vacate the sentences of death imposed for Counts 3, 24 and 25 and resentence Mr. Tipton to lesser sentences within the statutory range contemplated by the Fair Sentencing Act; or

b)  Alternatively, that this Court grant an evidentiary hearing in which Mr. Tipton can present evidence and argument in support of a reduced sentence as to those counts; and

c) That this Court grant an evidentiary hearing in which Mr. Tipton can present evidence and argument in support of a reduced sentence as to each of his non-capital "covered offenses";

d) That this Court grant any other relief to which Mr. Tipton may be entitled.

Respectfully submitted on this, the 31st day of July, 2020.

*/s/Frederick R. Gerson*
Frederick R. Gerson
VSB #39968
Durrette, Arkema, Gerson & Gill, PC
Bank Of America Center
1111 East Main Street, 16th Floor
Richmond, VA 23219
fgerson@dagglaw.com

Stephen Northup
VSB #16547
Troutman Sanders LLP
P.O. Box 1122
Richmond, Virginia 23218-1122
(804) 697-1240
(fax) (804) 698-5120
steve.northup@troutmansanders.com

Gerald W. King, Jr.
Ga. Bar No. 140981
Jeffrey Lyn Ertel
Ga. Bar No. 249966
Federal Defender Program, Inc.
101 Marietta Street, Suite 1500
Atlanta, Georgia 30303
404-688-7530
(fax) 404-688-0768
Gerald_King@fd.org
Jeff_Ertel@fd.org

Pro hac vice application forthcoming.

Counsel for Richard Tipton, III.

## CERTIFICATE OF SERVICE

I certify that on this, the 31st day of July, 2020, the foregoing document was served on all parties or their counsel of record though the CM/ECF system and will be served electronically and via email on the attorney listed below:

> Richard Cooke, Esq.
> U.S. Attorney's Office
> Eastern District of Virginia
> 2100 Jamison Avenue
> Alexandria, Virginia 22314
> Richard.Cooke@usdoj.gov

This 31st day of July, 2020.

> */s/Frederick R. Gerson*
> Frederick R. Gerson
> Counsel for Richard Tipton, III

27