IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Richmond Division*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No. 3:92-cr-68 (DJN) |
| | ) | |
| JAMES ROANE, | ) | |
| | ) | |
| Defendant. | ) | |

## Government's Opposition to
## <u>Defendant's First Step Act Motion</u>

On July 22, 2020, defendant, James Roane, filed a motion to reduce his sentence under Section 404 of the First Step Act. (ECF No. 17.) Roane was convicted for his role in a drug organization that was responsible for numerous murders and maimings between January and February 1992. PSR ¶ 60. A jury found that Roane participated in four murders and ultimately imposed a death sentence.

The first murder in which Roane participated was of Douglas Moody on January 13, 1992. Moody was killed over a drug turf battle and was shot in the chest and lung and then stabbed eighteen times in the neck and chest. PSR ¶ 67. The second murder occurred on January 14, 1992, when Peyton Maurice Johnson, an associate of Moody's, was shot fifteen times in the head, chest, and legs. PSR ¶ 69. The third murder occurred on January 29, 1992, when Louis J. Johnson, Jr., was shot seven times, including gunshots to the head and chest. PSR ¶ 71. Johnson, a drug user, was seen as a threat to the drug organization. *Id*. Roane's fourth murder, on February 1, 1992, was not directly connected to the drug organization. Torrick Brown was believed to be dating Roane's girlfriend while Roane was in custody on state charges. PSR ¶ 79. Retaliating for that, Roane went to the residence where Brown was staying, shot him sixteen times, killing Brown, and shot Martha

McCoy six times. PSR ¶ 77. When Roane appeared at the door of the residence and began shooting, McCoy was feeding her three children, aged two to seven, at the kitchen table, and they saw Roane shoot their mother six times and shoot their uncle, Brown, sixteen times, murdering him. *Id.* The oldest of the children later identified Roane as the gunman. *Id.*

The murder of Brown and shooting of McCoy were not charged under 21 U.S.C. § 848(e). Rather, Roane was convicted for Brown's murder in count 14 under 18 U.S.C. § 1959(a)(1) and for shooting McCoy in count 16 under 18 U.S.C. § 1959(a)(6), assault resulting in serious bodily injury. Roane was convicted of the murders of Moody, Peyton Johnson, and Louis Johnson under 21 U.S.C. § 848(e)(1)(A) in counts 5, 8, and 11, and was also convicted of those same murders under § 1959(a)(1) in counts 7, 10, and 13. The jury imposed the death sentence for Roane's murder of Moody under § 848(e)(1)(A). Roane received life imprisonment for all of the other murder convictions.

In seeking a sentence reduction under § 404 of the First Step Act, Roane argues that his three convictions under § 848(e)(1)(A) in counts 5, 8, and 11 are "covered offenses." He also contends that his concurrent sentence on count 32, a drug offense that in the context of this case is essentially incidental, is also a covered offense. As to relief, he requests an evidentiary hearing in which this Court would impose a reduced sentence for counts 8, 11, and 32. As to count 5, the count on which a death sentence was imposed, he seeks a capital resentencing.

Roane's request should be denied. Globally, the penalties for trafficking in crack cocaine were changed because of findings like the U.S. Sentencing Commission's that "crack is associated with 'significantly less trafficking-related violence … than previously assumed.'" *Kimbrough v. United States*, 552 U.S. 85, 98 (2007). But Roane's particular case involved an extremely violent drug organization. His death sentence for Moody's murder and life sentences for the other murders

were driven by his violent acts, and the Fair Sentencing Act would not realistically have made any difference in this case if it had been in effect at the time that he was prosecuted. Under § 404(b), even when a defendant has a covered offense, the Court should assess a defendant's case "as if" the Fair Sentencing Act had applied. *See, e.g., United States v. Jones*, 962 F.3d 1290, 1303 (11th Cir. 2020). As discussed below, if the Fair Sentencing Act had been in effect at the time of Roane's prosecution, Roane would still have life sentences for all of the murder counts except count 5, and for count 5 he would still have a death sentence. Regardless of whether the "as if" provision in § 404(b) is treated as a matter of guiding judicial discretion or as a mandatory limit on sentence reductions, Roane's request should be denied. He seeks an unjustified windfall.

Moreover, in his § 404 motion, Roane seeks to contest his criminal liability for murdering Douglas Moody and resurrects challenges to that conviction that have been previously rejected. Not only does § 404 fail to provide a mechanism for overturning a conviction, but also Roane's continuing denial that he murdered Moody shows no genuine remorse or rehabilitation. Section 404 is not a substitute for 28 U.S.C. § 2255, and in addition, at a sentencing, "[a] guilty verdict, not set aside, binds the sentencing court to accept the facts necessarily implicit in the verdict." *United States v. Curry*, 461 F.3d 452, 461 (4th Cir. 2006) (quoting *United States v. Weston*, 960 F.2d 212, 218 (1st Cir. 1992)). Similarly, the Supreme Court has embraced this same principle in capital sentencings. *See, e.g., Oregon v. Guzek*, 546 U.S. 517 (2006). Roane offers no persuasive basis for this Court to reduce his sentence for intentionally killing multiple people. Nothing he offers in mitigation outweighs the gravity of his criminal conduct—conduct so serious that a jury imposed the highest sentence available under the law.

Roane's requested sentence reduction also falters on legal grounds too. Roane is mistaken that his convictions under § 848(e)(1)(A) should be deemed a "covered offense" under § 404(a) of

3

the First Step Act. His convictions under § 848(e)(1)(A) are not covered offenses. *See United States v. Snow*, 967 F.3d 563 (6th Cir. 2020). In labeling § 848(e)(1)(A) as a covered offense, Roane seeks not a sentence reduction, but rather elimination of criminal liability for a drug-related murder, as *Snow* explains. As the Tenth Circuit has likewise said, "Unlike a direct appeal of a conviction, which challenges the underlying conviction, a motion brought under the 2018 FSA only challenges the sentence—the length of incarceration." *United States v. Mannie*, – F.3d –, 2020 WL 4810084, at *6 (10th Cir. Aug. 18, 2020). The result Roane seeks cannot be squared with the text of § 404, which includes no provision for eliminating criminal liability, and would be inconsistent with the Savings Statute, 1 U.S.C. § 109, which operates as a background provision to preserve criminal liability, including for death sentences. *See, e.g., United States v. Stitt*, 552 F.3d 345, 353–55 (4th Cir. 2008).

Moreover, *Snow* considered and rejected the best-case scenario for finding § 848(e)(1)(A) a covered offense. As the Fourth Circuit has explained, § 848(e)(1)(A) has three prongs. *United States v. Hager*, 721 F.3d 167, 179–80 (4th Cir. 2013) (citing *United States v. Aguilar*, 585 F.3d 652, 657 (2d Cir. 2009)). Only one of those prongs requires proof of a violation 21 U.S.C. § 841(b)(1)(A), an offense that might have been modified by the Fair Sentencing Act. The other two prongs of § 848(e)(1)(A) require that the murder be in relation to a continuing criminal enterprise under 21 U.S.C. § 848 and do not require proof of a violation of § 841(b)(1)(A). Notably, Roane was separately convicted in count 2 of a continuing criminal enterprise, and his § 848(e)(1)(A) convictions rested on those findings. *United States v. Tipton*, 90 F.3d 861, 887 (4th Cir. 1996). Roane did not receive criminal liability under § 848(e)(1)(A) by having the government rely on the prong requiring a § 841(b)(1)(A) violation. But as *Snow* persuasively explains, even if Roane's § 848(e)(1)(A) convictions had depended on a violation of § 841(b)(1)(A), those offenses

4

still would not be covered offenses.

Roane's argument that § 404 provides an avenue for a capital resentencing is also legally untenable. Section 404 specifically provides for a sentence reduction by a court, but by statute and constitutional command, the death sentence must be imposed by a jury. Under § 848(i), a capital sentencing procedure that is saved by the Savings Statute, as *Stitt* held, a court must conduct a capital sentencing before a jury. And if the jury returns a death sentence, the court must impose a death sentence.  "Upon the recommendation that the sentence of death be imposed, the court shall sentence the defendant to death." 21 U.S.C. § 848(l). This more specific provision about a death sentence governs over the more general provisions of § 404. "A party seeking to suggest that two statutes cannot be harmonized, and that one displaces the other, bears the heavy burden of showing 'clearly expressed congressional intention' that such a result should follow." *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1624 (2018). The most natural reading of § 404 is that it does not displace the provisions governing capital sentencings and does not disturb a death sentence, which must be imposed by a jury, not a court. Section 404 simply does not permit a court to upset a death sentence.

These points also fit with the background rule, accepted by every circuit to address the question, that a § 404 motion does not trigger a *de novo* resentencing and instead is a limited proceeding. *See, e.g., United States v. Smith*, 958 F.3d 494, 499 (6th Cir. 2020) ("Our sister circuits have likewise held that the First Step Act authorizes a limited sentencing modification, not a full resentencing.") (citing *United States v. Curry*, 792 F. App'x 267, 268 (4th Cir. 2020); *United States v. Hamilton*, 790 F. App'x 824, 826 (7th Cir. 2020); *United States v. Williams*, 943 F.3d 841, 843 (8th Cir. 2019)); *see also United States v. Denson*, 963 F.3d 1080, 1086–87 (11th Cir. 2020); *United States v. Jackson*, 945 F.3d 315, 321 (5th Cir. 2019).

## Procedural History

### A.    Roane is indicted, convicted, and sentenced.

On July 20, 1992, Roane, along with six others, was charged as part of a 33-count indictment with:

- Conspiracy to possess with intent to distribute and to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. § 846 (Count 1);

- Engaging in a continuing criminal enterprise, in violation of 21 U.S.C. § 848(a) (Count 2);

- Capital murder in furtherance of a criminal enterprise, in violation of 21 U.S.C. § 848(e) and 18 U.S.C. § 2 (Counts 5, 8, and 11);

- Commission of violent crimes in aid of racketeering activity, in violation of 18 U.S.C. § 1959 (Counts 7, 10, 13, 14, and 16);

- Use of a firearm in relation to a crime of violence or a drug-trafficking offense, in violation of 18 U.S.C. § 924(c) (Counts 6, 9, 12, and 15); and

- Possession with intent to distribute of cocaine base, in violation of 21 U.S.C. § 841(a)(1) (Count 32).

(Second Superseding Indictment.) These charges stemmed from Roane's leadership role, along with Cory Johnson and Richard Tipton, in a continuing criminal enterprise, the "New York Boyz," that trafficked large quantities of cocaine in the Richmond, Virginia area between 1990 and 1992.

The facts relevant to the instant motion were summarized by the Fourth Circuit on direct appeal as follows:

> During the period of the conspiracy's operation, its "partners", including appellants, obtained wholesale quantities of powdered cocaine from suppliers in New York City, converted it by "cooking" into crack cocaine, then packaged it, divided it among themselves, and distributed it through a network of 30–40 street level dealers, "workers." Typically, the appellants and their other partners in the conspiracy's operations took two-thirds of the proceeds realized from street-level sales of their product.
>
> *        *        *
>
> Over a short span of time in early 1992, Tipton, Cory Johnson, and Roane were variously implicated in the murders of ten persons within the Richmond area—all

6

in relation to their drug-trafficking operation and either because their victims were suspected of treachery or other misfeasance, or because they were competitors in the drug trade, or because they had personally offended one of the "partners."

*       *       *

On the evening of January 13, 1992, Tipton and Roane went to the apartment of Douglas Moody, a suspected rival in their drug-trafficking area, where Tipton shot Moody twice in the back. After Moody fled by jumping through a window, both Tipton and Roane pursued. Roane, armed with a military-style knife retrieved from an apartment where the knife was kept for co-conspirator Curtis Thorne, caught up with Moody in the front yard of the apartment where he stabbed him eighteen times, killing him.

*United States v. Tipton*, 90 F.3d 861, 868 (4th Cir. 1996).

In February 1993, Roane was convicted by a jury of all three capital murders under § 848(e) (Counts 5, 8, and 11); conspiracy to possess cocaine base with the intent to distribute under § 846 (Count 1); engaging in a continuing criminal enterprise under § 848(a) (Count 2); committing violent crimes in aid of racketeering activity under § 1959 (Counts 7, 10, 13, 14, and 16); using a firearm in relation to a crime of violence or a drug-trafficking offense under § 924(c) (Counts 6, 9, 12, and 15); and one count of possession of cocaine base with the intent to distribute under § 841(a)(1) (Count 32). (Verdict Form); *See Tipton*, 90 F.3d at 870. Following a penalty hearing on the capital murder counts, the jury recommended that Roane be sentenced to death for one of the three murders for which he was convicted under § 848(e), the Count 5 murder of Douglas Moody. *Id*.

In accordance with the jury's recommendation, the Honorable James R. Spencer, then the presiding district judge, sentenced Roane to death. *Id*. The jury also sentenced Cory Johnson to death on all seven of the § 848(e)(1)(A) murders on which he had been convicted and sentenced Tipton to death for three of the six § 848(e)(1)(A) murders for which he was convicted. *Id*.

After sentencing, Judge Spencer refused, however, to orders the defendants' execution on

7

the grounds that Congress neither authorized the means by which the death sentences were to be carried out nor authorized the Attorney General to implement regulations to that effect. *Id*.

All three defendants appealed their convictions and sentences and the government cross-appealed Judge Spencer's stay of execution of the death sentences. *Id*. The Fourth Circuit affirmed the defendants' convictions and sentences, with the exception of the Count One § 846 cocaine conspiracy, which it vacated as being a lesser included offense of the § 848 continuing criminal enterprise convictions. *Id*. at 891, 903. As to Judge Spencer's refusal to execute the defendants' death sentences, the Fourth Circuit reversed the district court's order and "remand[ed] with instructions to enter appropriate orders for the executions in accordance with regulation promulgated by the Attorney General." *Id*. at 903.

### B.      Roane's First Petition under 28 U.S.C. § 2255

Following the Fourth Circuit's decision, Roane sought relief from the district court under 28 U.S.C. § 2255. As relevant here, Roane's two central claims for relief were that trial counsel was ineffective for failing to adequately investigate and defend against the Moody-murder-charge and that he was actually innocent of the murder.

In support of his claims, Roane proffered as follows:

(1) Demetrius Rowe, a purported eyewitness to Moody's murder, stated that the murder was committed by Johnson and Tipton, but that Roane was not present at the murder;

(2) Rowe had not seen Denise Berkley [a witness who testified at trial that she saw Roane murder Moody] on the evening of the Moody murder and had only seen "Pepsi" Greene [another eye-witness] "much earlier" in the evening, "before the murder occurred";

(3) Roane had informed defense counsel before trial that he was at a Richmond motel at the time Moody was killed and that a woman named Carmella Cooley could account for his presence at the motel;

(4) Defense counsel interviewed, but did not call as a witness, the woman identified by Roane, and attempted to obtain, without success, corroborating motel

records; and

(5) Roane's § 2255 investigator found a receipt from a Howard Johnson motel in Richmond, showing that a "Larry Chiles," who lived at 1016 Clay Street, checked into the motel for an overnight stay on the night of Moody's murder (January 12, 1992), and that "Linwood Chiles" had checked into the same motel for an overnight stay on January 2, 1992.

On June 21, 2002, Judge Spencer conducted an evidentiary hearing on Roane's two habeas claims, at which Roane, Reavis, and Rowe testified. *See United States v. Roane*, 378 F.3d 382, 393 (4th Cir. 2004). On May 1, 2003, Judge Spencer issued an opinion denying Roane's actual innocence claim and granting his ineffective assistance of counsel claim. *Id.* at 393-95. In doing so, Judge Spencer vacated Roane's convictions and sentences on Counts 5, 6, and 7, the three counts related to the Moody murder.

In his opinion, Judge Spencer found that the following facts had been established at trial:

(1) Denise Berkley testified that on the night of the Moody murder, she watched Roane stab Moody "18 or 19 times" while Moody pleaded for his life; that she then saw Sandra Reavis, Roane, Curt Thorne, Linwood Chiles, and Priscilla "Pepsi" Greene leave the scene of the murder in Chiles's station wagon; and that Roane took the knife he used to stab Moody and gave it to Pepsi Greene, asking her to get rid of it;

(2) Pepsi Greene testified that she heard two or three shots and then saw Roane and Tipton exit the house from which the shots were fired; that Roane then directed her to get him a knife; and that later that night, Roane returned the knife, then covered with blood, and told her to get rid of it; and

(3) Robert Davis testified that, immediately following the Moody murder, he saw Tipton and Roane by the steps near his house and heard them stating, "Yeah, I got him, I got him … we can't stay out here, man. This is hot anyway."

*Roane*, 378 F.3d at 393.[1] Judge Spencer found the testimony of these witnesses to be "credible and … corroborated by the physical evidence of murder including the autopsy and the crime scene

---

[1] These factual findings as well as a substantial portion of the ensuing background are derived from the Fourth Circuit's opinion in *United States v. Roane*, 378 F.3d 382 (4th Cir. 2004).

9

video[,]" and that Greene's testimony was "particularly compelling." *Id*.

Judge Spencer also found that Gina Taylor's trial testimony concerning her observation of Moody's murder less compelling. He found that Taylor's trial testimony that Roane was not involved in Moody's murder was undermined by the fact that she could not identify the assailant's face or gender, was evasive on cross-examination, and had "kind of" dated Tipton. *Id*.

As to Roane's proffered alibi, Judge Spencer found that he had advised his attorney that:

(1) He did not participate in the murder of Moody;

(2) On January 12, 1992—the night of the murder—he was in a Howard Johnson hotel room with codefendant Sandra Reavis;

(3) He and Reavis were driven to the hotel by Linwood Chiles;

(4) Carmella Cooley accompanied them to the hotel;

(5) Chiles had registered and paid cash for the hotel room; and

(6) Defense Attorney David Baugh "was convinced that Roane did not participate in the Moody murder" and that the hotel was a "couple of miles from where Douglas Moody was murdered."

*Roane*, 378 F.3d at 393-94. Judge Spencer then addressed defense attorney Baugh's investigation into Roane's alibi, making the following findings:

(1) Baugh interviewed Cooley, who said that she had once accompanied Roane and Reavis to the Howard Johnson but could not verify the date;

(2) Baugh concluded that Cooley's ignorance of the date and apparent hostility would make her a bad witness;

(3) Baugh contacted the hotel seeking records of Linwood Chiles renting a room on January 12, 1992;

(4) When the hotel manager advised that there were no such records, Mr. Baugh went to the hotel and personally sought to locate such records;

(5) Baugh limited his search to the name "Linwood Chiles," and searched only for records of January 12, 1992; and

10

(6) Baugh found no records of Linwood Chiles being registered at the hotel on January 12, 1992.

*Roane*, 378 F.3d at 394. In assessing the sufficiency of defense attorney Baugh's pretrial investigation, Judge Spencer found that:

(1) An investigator hired by Roane's habeas corpus lawyer went to the Howard Johnson and looked through boxes of occupancy records for three hours;

(2) The investigator found a card with the name "Chiles, Linwood" from the night of January 2, 1992, and a card with the name "Chiles, Larry" from the night of January 12, 1992;

(3) In his trial preparation, Baugh could have subpoenaed the Howard Johnson records, or he could have devoted more effort to searching for them;

(4) If Baugh had utilized the subpoena process or searched more diligently, he could have located the records found by the investigator; and

(5) Roane was amenable to testifying in his own defense but was advised by Baugh not to testify unless his alibi defense could be objectively corroborated.

*Id*. Based on these findings, Judge Spencer concluded that Roane's counsel was constitutionally deficient in his investigation of Roane's alibi defense. *Id*.

As to Roane's actual innocence claim, Judge Spencer found, in relevant part, that:

(1) "Roane's new evidence fails to demonstrate that no reasonable juror would have convicted Roane of the offenses related to the murder of Douglas Moody";

(2) That the testimony of which Roane's "assertion of innocence relies"—namely, the testimony of Demetrius Rowe, Sandra Reavis, and himself—was not "particularly trustworthy";

(3) "Rowe's testimony appears to be a fabrication and would carry no exculpatory weight with a reasonable juror";

(4) "[T]he only impact Rowe's testimony would have upon a reasonable juror would be to view with greater skepticism Roane's proffered alibis";

(5) While Reavis and Roane's testimony generally lined up with regards to Roane's alibi, "acceptance of Roane's alibi would turn primarily on whether a juror believed the naked testimony of Reavis and Roane that they did not leave

11

the hotel room until after Moody had been killed";

(6) "A reasonable juror would regard with skepticism Reavis' testimony because she was Roane's lover and his lackey in the criminal enterprise and two witnesses had placed her at the murder scene in the company of Roane";

(7) "Such skepticisms would be further deepened in light of the late hour of Reavis' testimony and her inability to recall when she first told someone that she was at the hotel with Roane when Doug Moody was murdered.";

(8) "Roane's self-serving testimony of an alibi unsupported by a credible, unbiased witness or firm objective proof is not the sort of evidence one would deem inherently reliable or trustworthy";

(9) "Roane's thin alibi, even when coupled with Gina Taylor's testimony, and the evidence suggesting third parties wished to do Moody harm, is not sufficiently compelling to preclude many a reasonable juror from finding Roane guilty of murdering Moody in light of the formidable direct and circumstantial evidence of Roane's guilt"; and

(10)   "Three credible witnesses placed Roane at or around the scene of the murder: Robert Davis testified that he saw Tipton and Roane in the vicinity of the murder shortly after the murder; Denise Berkley gave a detailed account of the events leading up to the murder and actually saw Roane stab Moody; and Pepsi Greene's compelling testimony largely corroborated the details of Berkley's account and placed the bloody murder weapon in Roane's hand immediately following the slaying."

(Roane Op. 11-13).[2]

The government appealed the district court's ineffective assistance of counsel ruling and

Roane cross-appealed on several issues but not the denial of his actual innocence claim. *Roane*,

378 F.3d at 389, 395 & n.3. The Fourth Circuit affirmed on all the grounds raised by Roane and

reversed the district court's grant of relief based on ineffective assistance of counsel. Applying

*Strickland v. Washington*, 466 U.S. 668 (1984), the Fourth Circuit held as follows:

Baugh's performance was constitutionally reasonable and thorough. He interviewed Carmella Cooley, who could not remember when she stayed at a hotel with Roane. He called the hotel and requested records of Linwood Chiles from the only relevant night-the night of the murder. And when that search was not fruitful, he went to the hotel and searched for the records himself. Only after this final step

---

[2] Internal citations have been omitted from the quoted portions of Judge Spencer's opinion.

12

in his investigation did Mr. Baugh turn to and focus on Roane's misidentification defense. In these circumstances, we decline to act as a Monday-morning quarterback and second-guess Mr. Baugh's efforts, simply because we are now armed with more information and the benefit of hindsight.

*Id.* at 411. In so holding, the Fourth Circuit "reverse[ed] the vacatur of Roane's convictions and sentences on Counts Five, Six, and Seven." *Id.*

### C.      Roane's Second § 2255 Petition

On August 6, 2009, Roane filed an application in the Fourth Circuit under 28 U.S.C. § 2244 seeking authorization to file a successive § 2255 petition. *See In re James Roane, Jr.*, No. 09-8, ECF No. 2-1. Cross-referencing his attached successive § 2255 petition, Roane asserted he had made a prima facie showing of actual innocence and was therefore entitled to file a successive § 2255 petition. *Id.* at 5-6. In support of this claim, Roane proffered that new evidence had emerged that would demonstrate that an individual named Keith Barley killed Douglas Moody. This evidence would include:

(1) "[A] disinterested eyewitness who will testify that she saw Keith Barley, not Mr. Roane, kill Mr. Moody";

(2) "[T]hree witnesses, including Mr. Barley's best friend, who will testify that Mr. Barley confessed to them that he killed Mr. Moody because Mr. Moody owed Mr. Barley money for drugs"; and

(3) "[A] witness who will testify that Mr. Barley, with gun in hand, kicked in a door looking for Mr. Barley an hour before the killing, seeking to collect on a drug debt; and several witnesses who will testify that Mr. Barley was a violent drug dealer who worked as an 'enforcer' for drug dealer Peyton Maurice Johnson."

*Id.* at 6. Roane also stated that his proffer would establish that "the three government trial witnesses who connected Mr. Roane to the Moody murder are incredible and could not have been testifying truthfully." *Id.* In support of this assertion, Roane offered "strong new impeachment information for each witness, and objective scientific and factual evidence establishing that these witnesses could not have been telling the truth when they implicated Mr. Roane in the Moody murder." *Id.*

13

Roane also continued to dispute that Douglas Moody was a drug dealer, and that therefore, his capital convictions under § 848(e) were improperly predicated. *Id.* at 7. In conjunction with his application to the Fourth Circuit, Roane filed a Joint Appendix containing declarations by Gina Taylor, Lloyd McDAniels, Willie Coley, Richard Coles, Amiee Coley, Ronita Holman, Harold Coles, Jeanette Pauley, Keith Ross, Wanda Wright, Marcella Fierro, Robert, Tressel, Carmella Coley[3], Jerry Gaiters, and Earl Granger, as well as a "statement" by Priscilla Greene. *See In re James Roane, Jr.*, No. 09-8, ECF No. 2-3.[4]

On July 13, 2010, the Fourth Circuit denied Roane's request for authorization to file a successive § 2255 petition because he had failed to make the requisite showing under § 2255(h)(1). *See* Order, *See In re James Roane, Jr.*, No. 09-8, ECF No. 24.

### D.      Roane's Motion under § 404(b) of the First Step Act

On July 22, 2020, Roane filed the instant motion for a sentence modification under § 404(b) of the First Step Act. (ECF No. 17.) In his motion, Roane advances several arguments. First, he argues that his capital murder convictions under § 848(e) (Counts 5, 8, and 11) and his cocaine distribution conviction (Count 32) are "covered offenses" under § 404(b) of the First Step Act. (*Id.* at 2-5.) Next, he argues that the circumstances of the offense militate in favor of a reduced sentence. Specifically, he alleges that "eyewitness, forensic, and alibi evidence establishes that Mr. Roane did not kill Mr. Moody." *Id.* at 8. As explained subsequently in his motion, Roane asserts that several witnesses "confirm" that Keith Barley murdered Douglas Moody, no physical evidence supports the government's theory that Roane killed Moody, and that he has an alibi that

---

[3] Carmella Coley is sometimes referred to as Carmella Cooley in prior pleadings and opinions in this case.

[4] Roane's underlying successive § 2255 petition also made a number of additional arguments which will be referenced below.

he was not present at Moody's murder because "he was several miles away at a Richmond hotel." *Id.* at 9-16. Roane also asserts that the 18 U.S.C. § 3553(a) factors militate in favor of a sentence reduction. *Id.* 17-40.[5]

As forms of relief, Roane seeks an "evidentiary hearing regarding imposition of a reduced sentence on Counts 8, 11, and 32 pursuant to section 404 of the First Step Act" and a "resentencing hearing before a jury on Count 5." *Id.* at 53.

**Argument**

As already outlined above, Roane's convictions for capital murder in furtherance of a criminal enterprise under § 848(e) (Counts 5, 8, and 11) are not covered offenses under § 404(b) of the First Step Act. For this reason, he is not entitled to a modification of his death sentence under the Act. Moreover, even assuming Roane's death sentence could be reduced, this Court should exercise its discretion under the First Step Act and deny his motion. *See* First Step Act § 404(c) ("Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section."). A district court is "not obligated to reduce [the defendant's] sentence at all." *United States v. Jackson*, 952 F.3d 492, 502 (4th Cir. 2020). For example, the Fourth Circuit has recognized that relief may be denied to "defendants who almost certainly would not have faced a different sentence if they had been charged, convicted, and sentenced after the Fair Sentencing Act." *United States v. Wirsing*, 943 F.3d 175, 179 (4th Cir. 2019) (citing *United States*

---

[5] Roane's motion asserts that his remaining convictions are invalid under the Supreme Court's decision in *United States v. Davis*, 139 S. Ct. 2319 (2019). Roane's application for a successive § 2255 petition on this issue is currently pending before the Fourth Circuit and therefore, the government does not address these arguments. *See In re James Roane, Jr.*, No. 20-7, ECF No. 2. The government has opposed relief in the Fourth Circuit, *id.* at ECF No. 8, and the Fourth Circuit recently placed the case in abeyance pending its decision in *United States v. Taylor*, No. 19-7616, which is scheduled for oral argument on September 10, 2020.

15

*v. Peters*, 843 F.3d 572, 577, 581 (4th Cir. 2016)). Even when a defendant has a covered offense, a court may consider the drug quantities involved in the offense "in evaluating [the defendant's] motion on the merits." *United States v. Gravatt*, 953 F.3d 258, 264 (4th Cir. 2020). The drug quantities in this case far exceeded the new 280-gram threshold in the Fair Sentencing Act. PSR ¶¶ 50, 51. For Roane in particular, the PSR attributed him with 1.19625 kilograms of crack.

In seeking relief under the First Step Act for his three § 848(e) convictions, one of which resulted in the imposition of the death penalty, Roane fails to show that they are covered offenses, and Roane offers no support for his theory that he is entitled to a new capital sentencing proceeding on Count 5.

As for Roane's claims of actual innocence, they have been raised previously and rejected by either Judge Spencer or the Fourth Circuit. A § 404 motion does not provide a mechanism for relitigating issues already rejected on direct appeal and in his prior § 2255s.

## I.    Roane's murder convictions under § 848(e) are not covered offenses under § 404(b) of the First Step Act.

The First Step Act provides that a sentencing court "may … impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed." First Step Act § 404(b), 132 Stat. at 5222. Under the First Step Act, a "covered offense" is "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010, that was committed before August 3, 2010." *Id*. § 404(a), 132 Stat. at 5222.

As noted above, for an offense to qualify as "covered" under § 404(b), its statutory penalties must have been modified by the Fair Sentencing Act. *See United States v. Wirsing*, 943 F.3d 175, 180 (4th Cir. 2019) ("On its face, the First Step Act allows the retroactive application of the modifications to penalties that Congress enacted in the Fair Sentencing Act."). The statutory

16

penalties for a violation of § 848(e), however, were not changed by the Fair Sentencing Act. The penalties under § 848(e), remain, both before and after the Fair Sentencing Act, 20 years to life imprisonment or death. *See* § 848(e)(1)(A). Neither the Fair Sentencing Act nor the First Step Act altered this scheme.

Because the plain language of the First Step does not encompass convictions under § 848(e), those offenses are not covered offenses under the First Step Act. Although the bare text of the Act bars relief, further support is found for excluding § 848(e) from § 404(b)'s coverage in the operation of the statute itself. In *United States v. NJB*, 104 F.3d 630 (4th Cir. 1997), the Fourth Circuit held that § 848(e) is a separate substantive offense, and not just a penalty enhancement. *Id.* at 633. Section 848(e) is therefore separable from its underlying "predicates," whether they be acts "in furtherance of a continuing criminal enterprise" or "offense[s] punishable under section 841(b)(1)(A)[.]" *See* § 848(e)(1)(A).

Moreover, § 848(e)(1)(A) has three prongs. *United States v. Hager*, 721 F.3d 167, 179–80 (4th Cir. 2013) (citing *United States v. Aguilar*, 585 F.3d 652, 657 (2d Cir. 2009)). Only one of those prongs requires proof of a violation 21 U.S.C. § 841(b)(1)(A), while the other two prongs of § 848(e)(1)(A) require that the murder be in relation to a continuing criminal enterprise under 21 U.S.C. § 848 and do not require proof of a violation of § 841(b)(1)(A). Roane was convicted in count 2 of a continuing criminal enterprise, and his § 848(e)(1)(A) convictions rested on those findings. *United States v. Tipton*, 90 F.3d 861, 887 (4th Cir. 1996). Roane did not receive criminal liability under § 848(e)(1)(A) by having the government rely on the prong requiring a § 841(b)(1)(A) violation.

The predicate facts required to find a violation of § 848(e) are akin to elements of the crime, and even though § 848(e) references § 841(b)(1)(A), a defendant is only eligible for a § 404(b)

17

reduction if the *penalties* for his offense of conviction have been modified by the Fair Sentencing Act. Here, the Fair Sentencing Act did no such thing. *See United States v. Guerrero*, 813 F.3d 462, 464-65 (2d Cir. 2016) ("The [Fair Sentencing] Act makes no mention of § 848(e)(1)(A)."); *see also United States v. Spearman*, No. 91-CR-50013-01 (BAF), 2020 WL 4390632, at *5 (E.D. Mich. Aug. 1, 2020) ("The § 848(e)(1)(A) drug-related murder convictions … likewise have nothing to do with drug quantities, and the statutory penalty (twenty years to life) has not been changed by the Fair Sentencing Act or the First Step Act."); *United States v. Martinez*, No. 06 CR. 987-1 (DC), 2020 WL 4226639 (S.D.N.Y. July 23, 2020) (after the First Step Act, "Count Two -- the [§ 848(e)(1)(A)] murder count -- still carries a mandatory minimum sentence of twenty years") (Chin, J.,); *United States v. Potts*, 389 F. Supp. 3d 352, 356 (E.D. Pa. 2019) ("The Fair Sentencing Act made many changes to elements of various crack offenses, but it did not amend the text of § 848(e)."); *United States v. Valentine*, No. 06-CR-580 (JSR), 2019 WL 3242494, at *1 (S.D.N.Y. July 2, 2019) ("[T]he Fair Sentencing Act … did not modify the sentences for the [§ 848(e)(1)(A)] murder … crimes to which defendant pled guilty").[6]

To be sure, Section 2 of the Fair Sentencing Act modified the statutory penalties for crack cocaine offenses by increasing the quantity of crack cocaine necessary to trigger the minimums— "raising the amount from 15 grams to 28 grams for the 5–year minimum sentence, and from 50 grams to 280 grams for the 10–year minimum sentence." *United States v. Black*, 737 F.3d 280, 282 (4th Cir. 2013). And of course, § 404 of the First Step Act "makes retroactive the provisions of the Fair Sentencing Act of 2010 that reformed crack cocaine sentencing." *United States v. Woodson*, 962 F.3d 812, 813 (4th Cir. 2020). But none of these amendments altered § 848(e)'s

---

[6] The government recognizes that since the passage of the First Step Act, several district courts have held otherwise. *See* ECF No 17 at 5. For the reasons appearing below, the government respectfully maintains that these cases are wrongly decided.

penalty scheme. It may be the case that the Fair Sentencing Act indirectly limited the number of defendants who can be charged with § 848(e) offenses by increasing the threshold amounts of crack cocaine required under § 841(b)(1)(A), but even assuming the truth of the latter does not render § 848(e) a covered offense under the First Step Act.

The Second Circuit has rejected a similar attempt to obtain relief under the Fair Sentencing Act from an § 848(e) conviction. In *United States v. Guerrero*, 813 F.3d 462 (2d Cir. 2016), the defendant argued that the Fair Sentencing Act compelled vacatur of his § 848(e) conviction because after the Act's passage, "§ 848(e)(1)(A)'s drug trafficking element required the jury to find that the conspiracy involved at least 280 grams of crack cocaine" and "[b]ecause only a quantity of 50 grams was alleged and proved, … the Government failed to establish an element of the charged murder offense[.]" *Id*. at 465. The Second Circuit rejected this argument, holding as follows:

> A defendant may be convicted under § 848(e)(1)(A) if he was engaged in a drug trafficking offense punishable under § 841(b)(1)(A) at the time he committed intentional murder. The crime is complete at the time of the murder, *see* 21 U.S.C. § 848(e)(1)(A), and it is as of that time that the statute's drug trafficking element is measured. Here, Guerrero committed the murders in September 1994, at which time the threshold quantity of crack cocaine necessary under § 841(b)(1)(A) was 50 grams or more. The jury's finding that Guerrero had been engaged in a conspiracy to distribute 50 grams or more of crack cocaine at the time he intentionally killed Ortega and Garrido therefore satisfied the drug trafficking element of the § 848(e)(1)(A) murder offense. There was no error in the indictment, the instructions, or the verdict.

> \*       \*       \*

> No other conclusion flows from the FSA, a sentencing statute principally designed to increase threshold quantities of drugs necessary to trigger certain enhanced penalty schemes, to remove certain mandatory minimum sentences, and to direct the promulgation of new Sentencing Guidelines.

*Id*. As in *Guerrero*, Roane's conviction under § 848(e)(1)(A) was complete the day he murdered

Douglas Moody "and it is as of that time that the statute's drug trafficking element is measured." Neither the Fair Sentencing Act nor the First Step Act counsel otherwise, *see id*. at 466 ("Because the FSA did not expressly extinguish any criminal liability under § 848(e)(1)(A), the law's enactment did not retroactively invalidate Guerrero's conviction."), and there is no reason to believe that Congress, through statutes aimed at remedying disparities between cocaine base and powder cocaine, *see United States v. Gravatt*, 953 F.3d 258, 260 (4th Cir. 2020), intended to absolve murders from criminal liability, to say nothing of vacating lawfully imposed death sentences. *Cf*. ECF No. 17 at 53 (requesting "resentencing hearing before a jury on Count 5.").

The only court of appeals to have considered the eligibility of a § 848(e) conviction under the First Step Act has held that it is not a "covered offense" under § 404(b). In *United States v. Snow*, — F.3d —, 2020 WL 4345157, at *2 (6th Cir. July 29, 2020), the defendant argued that the Fair Sentencing Act's increase of the threshold amount of crack cocaine under § 841(b)(1)(A) to 280 grams "combined with § 848(e)(1)(A)'s requirement of an offense punishable under § 841(b)(1)(A), qualifies his § 848(e)(1)(A) conviction as a "covered offense," making him eligible for a First Step Act sentence reduction." *Id*. at *3. The Sixth Circuit disagreed, holding "that the First Step Act's text and structure do not support extending resentencing relief to Snow's § 848(e)(1)(A) conviction." *Id*.

*Snow* first noted that "[i]n run-of-the-mill First Step Act cases, applying the Fair Sentencing Act retroactively requires only a change in degree: adjusting from a previous and higher statutory sentencing range to a new and lower one." *Id*. "Thus," the court continued, "in such cases, it makes sense to say that the Fair Sentencing Act 'modified' the statutory penalties. But the same is not true of Snow's § 848(e)(1)(A) conviction for murder while engaged in a conspiracy to distribute at least 50 grams of cocaine base." *Id*. This was so,

20

the court held, because

> [t]he Fair Sentencing Act did not reduce the sentencing range that applies to a conviction with those elements. Instead, after the Fair Sentencing Act, those elements no longer amount to an offense under § 848 at all and there is no applicable statutory sentencing range. The elimination of statutory penalties cannot be called a "modification" of statutory penalties without putting great strain on the ordinary meaning of the word "modify." This strongly suggests that Snow's § 848(e)(1)(A) conviction cannot be considered a covered offense as defined in § 404(a) of the First Step Act.

*Id*. Continuing, the Sixth Circuit noted that § 404(b) of the Act confirmed its conclusion. As it reiterated, § 404(b) permits courts to "impose a reduced sentence" for a covered offense "'as if [the changes made by the Fair Sentencing Act] were in effect' when the offense was committed." *Id*. Revisiting the defendant's § 848(e)(1)(A) conviction under this rubric, however, would have resulted in the unusual step of eliminating the statutory penalties for his conviction. As *Snow* held,

> if the district court chose to revisit Snow's Count 2 sentence as if the Fair Sentencing Act were in effect, it would be unable to "impose" any sentence because, again, there would no longer be any statutory penalties prescribed for Snow's conviction. In other words, § 404(b) on its face presupposes that the district court may still impose some sentence even after applying the Fair Sentencing Act retroactively; it simply does not contemplate the elimination of a sentence, as would be required here.

*Id*. "In sum," the Sixth Circuit concluded the defendant's "§ 848(e)(1)(A) conviction is not a covered offense and he is ineligible for a reduction in his sentence for Count 2." *Id*.

The Sixth Circuit's holding accounts for both the text of the First Step Act as well § 404(b)'s actual, "real time" operation. This Court should adopt its reasoning.[7]

---

[7] Although Roane is likely eligible for a sentence modification on Count 32, a crack offense under § 841(a)(1), the Court need not reach this contention due to Roane's ineligibility for relief under the concurrently imposed death sentence under § 848(e). *See United States v. Charles*, 932 F.3d 153, 160 (4th Cir. 2019) ("[T]he [concurrent-sentence] doctrine still has continuing force as a species of harmless-error review where a defendant seeks to challenge the legality of a sentence that was imposed for a valid conviction, but where the challenged sentence runs concurrently with a valid sentence of an equal or greater duration.").

**II.     The First Step Act did not displace § 848(e)'s detailed provisions concerning imposition of the death penalty.**

Roane was convicted of three counts of capital murder in furtherance of a criminal enterprise, in violation of § 848(e) (Counts 5, 8, and 11) and was sentenced to death on Count 5. Roane was sentenced in accordance with the jury's recommendation pursuant to 21 U.S.C. § 848(l), *Tipton*, 90 F.3d at 870, a statutory provision which has since been repealed.

The Fourth Circuit has held that even in a case where a defendant obtains post-conviction relief from a faulty capital sentencing proceeding, courts are still obligated to follow the penalty scheme attendant to § 848(e) convictions even if they have been repealed and replaced by the different procedures of the Death Penalty Act, 18 U.S.C.A. § 3591 *et seq*. ("FDPA"). *See United States v. Stitt*, 552 F.3d 345 (4th Cir. 2008). In *Stitt*, a defendant was convicted and sentenced to death under § 848(e)(1)(A). *Id*. at 352. The defendant obtained relief under § 2255 due to his defense attorney's conflict of interest during the penalty phase of his trial, which resulted in vacatur of his death sentence. *Id*. at 348. During the pendency of various appeals related to the case, Congress repealed §§ 848(g) through (r) and made § 848(e) convictions death penalty eligible in accordance with the FDPA. *Id*. 352. Given this change-in-law, the district court refused to empanel a new sentencing jury under the relevant, but since-repealed, provisions of § 848, instead opting to resentence the defendant to life imprisonment without a jury. *Id*. at 351-52.

The government appealed and the Fourth Circuit reversed. In so holding, the Fourth Circuit held that the Savings Statute, 1 U.S.C. § 109, saved §§ 848(g) through (r) as applied to the defendant. *Stitt* first noted that "courts are in agreement that 'sentencing provisions' are saved as part of the 'prosecution' of a 'penalty' even when a later change alters the availability of a particular sentence." *Id*. at 354. As such, *Stitt* held that "we continue to apply the original

22

sentencing provisions because the repeal of §§ 848(g)-(r) would have the effect of eliminating a previously-available sentencing option, a death sentence, at the resentencing." *Id*. *Stitt* also noted "that the penalty provided in § 848(e) cannot be fully preserved without also preserving the mechanisms for enforcing it, §§ 848(g)-(r). Indeed, the repealed portions of § 848 are a constitutionally required condition precedent to imposing § 848(e)'s penalty of a death sentence." *Id*. Concluding, the Fourth Circuit held that because the "'enforcing provisions' of § 848(g)-(r) are both akin to a 'sentencing provision' and also have a constitutionally mandated 'special relation to the accrued right,' the Savings Statute operates to save them against Stitt. And, § 848(i)(1)(B)(iv) provided for the empanelling of a sentencing jury in cases where the original death sentence was later vacated." *Id*.

Addressing the district court's assertion of equitable power to personally resentence the defendant, despite an earlier jury's imposition of the death penalty, *Stitt* held as follows:

> Section 848(i) provided that, if the Government files the appropriate death-eligibility notice (which it did in 1998), and if the defendant is found guilty of the death eligible offenses (which Stitt was in 1999), then "the judge who presided at the trial … *shall* conduct a separate hearing to determine the punishment to be imposed." 21 U.S.C.A. § 848(i)(1) (emphasis added). That hearing "*shall*" be conducted "before a jury impaneled for the purpose of the hearing if ... after initial imposition of a sentence under this section, redetermination of the sentence under this section is necessary." 21 U.S.C.A. § 848(i)(1)(B)(iv) (emphasis added). And, if a jury recommends a sentence of death, "the court shall sentence the defendant to death." 21 U.S.C.A. § 848(l) (emphasis added). Given the repeated use of the term "shall," we believe it was not "appropriate" for the district court to forego empanelling a new penalty-phase jury.

*Id*. at 355-56.

Given the First Step Act's text and animating purpose, *Gravatt*, 953 F.3d at 260, there is little indication that it was intended to override the § 848(e)'s more specific provisions addressing the imposition of death sentences. Relatedly, there is no evidence that the First Step Act permits courts to disturb jury-imposed death sentences as an exercise of discretion under § 404(b) and

23

Roane points to no statute or case providing as such. Roane's argument for a "hearing" on counts

8 and 11, and a "resentencing" before a jury on count 5, *see* ECF No. 17 at 53, should therefore be

rejected.

### III.    Roane's actual innocence arguments have been fully litigated and rejected by the prior presiding judge or the Fourth Circuit.

Given the nature of this case, and out of an abundance of caution, the government briefly

addresses Roane's claims of actual innocence. As a preliminary matter, it is not entirely clear if

Roane's claims of innocence are raised as free-standing claims for relief or are instead offered as

part of an argument under the § 3553(a) factors. In either case, they should be rejected for both

procedural reasons and on the merits.

To begin, the First Step Act permits sentence modifications under specified circumstances.

The Act is not a vehicle by which to raise perceived infirmities in a conviction. The reason for this

is brought into relief by this very case. Indeed, it would be fundamentally inconsistent for a Court

to adopt a defendant's actual innocence argument yet only modify his sentence under a statue, such

as the First Step Act, permitting only sentence modifications. Were the Court persuaded by

Roane's arguments as to his innocence, the proper remedy would be vacatur of the relevant

convictions, not a modification in sentence. But the First Step Act only permits sentence

modifications, and so Roane's actual innocence arguments are not properly raised under the Act.

Even if the Court were to somehow construe that portion of Roane's First Step Act motion

as a petition for relief under § 2255, Roane would still need prefilling authorization from the Fourth

Circuit to properly make such arguments. Given that such a motion would be Roane's third attempt

at habeas relief, he would need to satisfy either of the criteria in § 2255(h). *See In re Vassell*, 751

F.3d 267, 271 (4th Cir. 2014) ("Section 2255(h) requires a court of appeals considering whether

to authorize a second or successive § 2255 motion to follow the gatekeeping procedure 'provided

24

in section 2244.'"). Because Roane has not done so, his claims of actual innocence are improperly raised.

In addition to being improperly raised, Roan's actual innocence arguments have already been litigated and rejected by the prior presiding judge or the Fourth Circuit. As such, renewing these claims under the guise of a First Step Act motion affords Roane no basis for relief. Roane raised an actual innocence argument in his first § 2255 motion and Judge Spencer rejected it. Roane appealed several aspects of his § 2255 denial to the Fourth Circuit but failed to challenge Judge Spencer's rejection of his actual innocence claim. *See Roane*, 378 F.3d at 395 n.3 ("Roane does not appeal the court's rejection of his claim of actual innocence."). In that same appeal, the Fourth Circuit reversed the Judge Spencer's grant of habeas relief based on the adequacy of Roane's counsel's pretrial investigation. *Id*. at 409-411. After this unsuccessful first round of habeas proceedings, Roane sought authorization to file a successive § 2255 based on new evidence. *See In re James Roane*, Jr., No. 09-8, ECF No. 2-1. On July 13, 2010, the Fourth Circuit declined to grant such authorization, specifically noting that Roane had failed to make the requisite showing under § 2255(h)(1), which requires a second or successive § 2255 petition to be certified by the appellate court to contain "newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense[.]" *See* Order, *In re James Roane, Jr.*, No. 09-8, ECF No. 24.

Given that Roane now reasserts the same hodgepodge of actual innocence claims he raised in these prior proceedings, his innocence arguments should be deemed barred.  In addition to the text of § 404 not providing a mechanism for relief, Roane's claims would violate the law of the case doctrine or the mandate rule. As relevant here, "the mandate rule forecloses litigation of issues

25

. . . foregone on appeal or otherwise waived, for example because they were not raised in the district court." *United States v. Pileggi*, 703 F.3d 675, 679 (4th Cir. 2013) (internal quotation marks and citation omitted). Under this rule, "an issue that has been waived on an initial appeal is 'not remanded' to the district court even if other issues in the case are returned to the court below." *United States v. Perez*, 493 F. App'x 432, 434 (4th Cir. 2012) (citing *Doe v. Chao*, 511 F.3d 461, 465 (4th Cir. 2007)). "The mandate rule is a specific application of the law of the case doctrine that prohibits a lower court from reconsidering on remand issues laid to rest by a mandate of the higher court." *United States v. Alston*, 722 F.3d 603, 606 (4th Cir. 2013) (internal quotation marks omitted). As relevant here, the mandate rule "compels compliance on remand with the dictates of a superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court." *United States v. Susi*, 674 F.3d 278, 283 (4th Cir. 2012) (quoting *Bell*, 5 F.3d at 66-67). As such, "any issue conclusively decided by this [C]ourt on the first appeal is not remanded[.]" *Chao*, 511 F.3d at 465.

Roane's First Step Act motion asserts that "eyewitness, forensic, and alibi evidence establishes that Mr. Roane did not kill Mr. Moody." (ECF No. 17 at 8.) To that end, Roane states that several witnesses "confirm" that Keith Barley murdered Douglas Moody, no physical evidence supports the government's theory that Roane killed Moody, and that he "has an alibi" that he was not present at Moody's murder because "he was several miles away at a Richmond hotel." *Id.* at 9-16. Broadly construed, these claims can be broken up into three categories: (1) post-trial evidence indicating that Keith Barley killed Douglas Moody; (2) the government's lack of evidence demonstrating that Roane killed Moody; and (3) Roane's hotel-alibi defense. The government addresses each set of claims below.

Roane's First Step Act innocence claims include the following assertions as related to the

emergence of post-trial evidence:

     (1)  Keith Barley was looking for Douglas Moody prior to his murder;

     (2)  Since trial, Gina Taylor has declared that Keith Barley killed Moody;

     (3)  Barley killed Moody over a drug debt;

     (4)  Since trial, Lloyd McDAniels has declared that Barley confessed that he killed Moody; and

     (5)  Since trial, Willie Coley has declared that Barley confessed to Moody's murder over a drug debt.

(ECF No. 15 at 9-11.) All of these claims were raised in Roane's application to the Fourth Circuit for authorization to file a successive § 2255 petition, *see In re James Roane, Jr.*, No. 09-8, ECF No. 2-1 at 6, as well as in the underlying successive § 2255 itself, *see id.* ECF No. 2-2 at 5-10.

As related to the government's purported lack of physical evidence corroborating Roane's murder of Moody, the First Step Act motion states a follows:

     (1)  Priscilla Green's trial testimony concerning Moody's murder was not credible;

     (2)   Denise Berkley's trial testimony was inconsistent and not credible;

     (3)  The medical examiner who testified for the government at trial has since reviewed her reports, prior testimony, and video evidence and has concluded that the types of knives Roane was described to have been using by Greene and Berkley are inconsistent with the size of the stab wounds found on Moody's corpse; and

     (4)  The government's theory that Moody jumped out of a window prior to being stabbed has since been called into question by a forensic expert whose review of the crime scene evidence.

(ECF No. 15 at 11-16.) As to the first two claims regarding the credibility of Priscilla Green and Denise Berkley's trial testimony, Judge Spencer previously rejected this argument, which Roane raised as part of his first § 2255's actual innocence claim. As Judge Spencer wrote:

Three credible witnesses placed Roane at or around the scene of the murder: Robert Davis testified that he saw Tipton and Roane in the vicinity of the murder shortly

27

after the murder; Denise Berkley gave a detailed account of the events leading up to the murder and actually saw Roane stab Moody; and Pepsi Greene's compelling testimony largely corroborated the details of Berkley's account and placed the bloody murder weapon in Roane's hand immediately following the slaying.

(Roane Op. 12-13.) (internal citations omitted). Roane's third and fourth claims which, respectively, call into question the government's theory of the case based on a post-trial medical and forensic review of stab woods and broken window panes were raised in Roane's underlying successive § 2255 motion which he appended to his application to the Fourth Circuit for authorization to file a successive § 2255 petition. *See In re James Roane, Jr.*, No. 09-8, ECF No. 2-2 at 14-18.

And finally, as to Roane's alibi defense, his First Step Act motion provides the following three points of argument:

(1) Hotel receipts demonstrate that on the day of Moody's murder, "he was with Sandra Reavis in a hotel room that had been rented on his behalf by Linwood Chiles and Carmella Coley."

(2) Post-trial testimony and declarations by Reavis and Coley substantiate Roane's alibi; and

(3) The jury was deprived of this alibi evidence due to Roane's trial counsel's failure to "find and present it."

(ECF No. 15 at 16-17.) Roane's hotel alibi defense was the subject of extensive litigation during his first § 2255 proceeding. During the evidentiary hearing, Judge Spencer heard from Reavis and Roane and, in rejecting his actual innocence claim, ultimately concluded that "Roane's self-serving testimony of an alibi unsupported by a credible, unbiased witness or firm objective proof is not the sort of evidence one would deem inherently reliable or trustworthy." (Roane Op. 12.) As noted above, Roane did not appeal Judge Spencer's denial of his actual innocence claim. *Roane*, 378 F.3d at 395 n.3. As to Roane's assertion that the jury was deprived of this alibi evidence due to defense counsel's failure to "find and present it," Judge Spencer, as previously noted, rejected the

28

import of this defense, (*see* Roane Op. 11-13), and the Fourth Circuit held that his counsel was not ineffective in relation to his pretrial investigation, *see Roane*, 378 F.3d at 409-411.

As is evident, Roane has raised each and every one of his actual innocence claims in prior proceedings. Without exception, they have been rejected. A First Step Act motion is not an occasion to renew these arguments, and this Court should, accordingly, decline to entertain them.

Ultimately, Roane's motion offers no persuasive reason for reducing his sentence—even if a reduction were authorized—given the gravity of his crimes. Even if the Fair Sentencing Act were applied, Roane would still face statutory maximums of life for every count on which he received a life sentence for a murder. His guideline range would remain unchanged at life imprisonment. He would still be eligible for a death sentence, and the jury's decision to impose a death sentence on count 5 would still stand.

### Conclusion

For the reason explained above, the Court should deny the defendant's First Step Act motion.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

By:  _____/s/_____

Richard D. Cooke
Joseph Attias
Assistant United States Attorneys

**Certificate of Service**

I certify that on August 28, 2020, I filed electronically the foregoing with the Clerk of

Court using the CM/ECF system, which will serve all counsel of record.


By:                        /s/
                  Richard D. Cooke
                  Assistant United States Attorney

30