IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Richmond Division*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No. 3:92-cr-68 (DJN) |
| | ) | |
| RICHARD TIPTON, III, | ) | |
| | ) | |
| Defendant. | ) | |

**Government's Opposition to
Defendant's First Step Act Motion**

Richard Tipton was convicted in February 1993 for his role in a drug organization that was responsible for numerous murders and maimings. A jury found that Tipton participated in six murders and convicted him of, among other things, six counts of violating 21 U.S.C. § 848(e)(1)(A). The jury ultimately imposed a death sentence on three of these murders.

In the first of these murders, which occurred in early January 1992, and was charged as Count 3, Tipton brutally killed Douglas Talley, a colleague in the drug trade whom Tipton suspected of being a snitch. PSR ¶ 68. Talley's murder lasted no longer than five minutes, yet left him with eighty-four stab wounds. *United States v. Tipton*, 90 F.3d 861, 868 (4th Cir. 1996).

The second, third, and fourth murders occurred on February 1, 1992, and were charged in Counts 17, 18, and 19. These murders began with a drug debt owed by Dorothy Mae Armstrong and ended in her death by gunfire. PSR ¶ 86. Two other individuals, Bobby Long and Anthony Carter were also murdered during this attack, *Tipton*, 90 F.3d at 869, likely because they witnessed Armstrong's murder, PSR ¶ 88.

The fifth and sixth murders, charged in Counts 24 and 25, occurred on February 19, 1992, and resulted in the deaths of Curtis Thorne and Linwood Chiles. Tipton, along with codefendant

Cory Johnson, shot Chiles at close range after instructing him to place his head on the steering wheel of his car. *Tipton*, 90 F.3d at 869; *United States v. Roane*, 378 F.3d 382, 389 n.6 (4th Cir. 2004). Tipton and Johnson also murdered Thorne by gunfire; his body was later found on the ground outside the rear passenger door of Chiles' car. *Id.*; PSR ¶ 93. Two other passengers in the car, Gwen and Priscilla Greene, were also shot, likely due to being in the wrong place at the wrong time. PSR ¶ 93.

A jury convicted Tipton of all six § 848(e)(1)(A) murders discussed above, as well as eight counts of committing violent crimes in aid of racketeering activity under 18 U.S.C. § 1959, of which two counts (Counts 29 and 30) related to the maiming of Gwen and Priscilla Greene during the aforementioned attack.

Tipton's convictions and sentences have withstood the test of direct appeal and collateral review. *See, e.g.*, *Tipton*, 90 F.3d at 870–903; *Roane*, 378 F.3d at 395–407. On July 31, 2020, Tipton, filed a motion to reduce his sentence under § 404 of the First Step Act. (ECF No. 24.) In seeking a sentence reduction under § 404, Tipton argues that his six convictions under § 848(e)(1)(A) (Counts 3, 17, 18, 19, 24, and 25) are "covered offenses." He also contends that his concurrent sentences on Counts 32 and 33, drug offenses that in the context of this case are essentially incidental, are also covered offenses. As to relief, Tipton requests vacatur of his sentences on Counts 3, 24, and 25 and an evidentiary hearing regarding the imposition of new sentences for both the capital and non-capital § 848(e) convictions.

Tipton's requests should be denied. Globally, the penalties for trafficking in crack cocaine were changed because of findings like the U.S. Sentencing Commission's that "crack is associated with significantly less trafficking-related violence … than previously assumed." *Kimbrough v. United States*, 552 U.S. 85, 98 (2007) (internal quotation marks and citation omitted). But Tipton's

particular case involved an extremely violent drug organization. His death sentences for the murders of Douglas Talley, Curtis Thorne, and Linwood Chiles, and life sentences for the other murders, were driven by his violent acts, and the Fair Sentencing Act would not realistically have made any difference in this case if it had been in effect at the time he was prosecuted. Under § 404(b), even when a defendant has a covered offense, the Court should assess a defendant's case "as if" the Fair Sentencing Act had applied. *See, e.g.*, *United States v. Jones*, 962 F.3d 1290, 1303 (11th Cir. 2020). As discussed below, if the Fair Sentencing Act had been in effect at the time of Tipton's prosecution, he would still have life sentences for all of the murder counts, except Counts 3, 24, and 25, for which he would still have received death sentences. Regardless of whether the "as if" provision in § 404(b) is treated as guiding judicial discretion or as a mandatory limit on sentence reductions, Tipton's request should be denied. He seeks an unjustified windfall. Tipton offers no persuasive basis for this Court to reduce his sentence for intentionally killing numerous people. Nothing he offers in mitigation outweighs the gravity of his criminal conduct—conduct so serious that a jury imposed the highest sentence available under the law.

Tipton's requested sentence reduction also falters on legal grounds. Tipton is mistaken that his convictions under § 848(e)(1)(A) should be deemed "covered offenses" under § 404(a) of the First Step Act. His convictions under § 848(e)(1)(A) are not covered offenses. *See United States v. Snow*, 967 F.3d 563 (6th Cir. 2020). In labeling § 848(e)(1)(A) a covered offense, Tipton seeks not a sentence reduction, but rather elimination of criminal liability for a drug-related murder, as *Snow* persuasively explains. As the Tenth Circuit has likewise observed, "[u]nlike a direct appeal of a conviction, which challenges the underlying conviction, a motion brought under the 2018 FSA only challenges the sentence—the length of incarceration[.]" *United States v. Mannie*, – F.3d –, 2020 WL 4810084, at *6 (10th Cir. Aug. 18, 2020). The result Tipton seeks cannot be squared

3

with the text of § 404, which includes no provision for eliminating criminal liability, and would be inconsistent with the Savings Statute, 1 U.S.C. § 109, which operates as a background provision to preserve criminal liability, including for death sentences. *See, e.g.*, *United States v. Stitt*, 552 F.3d 345, 353–55 (4th Cir. 2008).

Moreover, the Sixth Circuit in *Snow* considered and rejected the best-case scenario for finding § 848(e)(1)(A) a covered offense. As the Fourth Circuit has explained, § 848(e)(1)(A) has three prongs. *United States v. Hager*, 721 F.3d 167, 179–80 (4th Cir. 2013) (citing *United States v. Aguilar*, 585 F.3d 652, 657 (2d Cir. 2009)). Only one of those prongs requires proof of a violation 21 U.S.C. § 841(b)(1)(A), an offense that might have been modified by the Fair Sentencing Act. The other two prongs of § 848(e)(1)(A) require that the charged murder be in relation to a continuing criminal enterprise under 21 U.S.C. § 848 and do not require proof of a violation of § 841(b)(1)(A). Notably, Tipton was separately convicted in Count 2 of engaging in a continuing criminal enterprise, and his § 848(e)(1)(A) convictions rested on those findings. *See Tipton*, 90 F.3d at 887. Tipton did not incur criminal liability under § 848(e)(1)(A) by having the government rely on the prong requiring a § 841(b)(1)(A) violation. But as *Snow* persuasively explains, even if Tipton's § 848(e)(1)(A) convictions had depended on a violation of § 841(b)(1)(A), those offenses still would not be covered offenses under the First Step Act.

Tipton's argument that § 404 provides an avenue for a resentencing is also legally untenable. Section 404 specifically provides for a sentence reduction by a court, but by statute and constitutional command, the death sentence must be imposed by a jury. Under 21 U.S.C. § 848(i), in a capital sentencing procedure that is saved by the Savings Statute, as *Stitt* held, a court must conduct a capital sentencing before a jury. And if the jury returns a death sentence, the court must impose that sentence. "Upon the recommendation that the sentence of death be imposed, the court

shall sentence the defendant to death." 21 U.S.C. § 848(l). This more specific provision about a death sentence governs over the more general provisions of § 404. "A party seeking to suggest that two statutes cannot be harmonized, and that one displaces the other, bears the heavy burden of showing 'clearly expressed congressional intention' that such a result should follow." *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1624 (2018). The most natural reading of § 404 is that it does not displace the provisions governing capital sentencings and does not disturb a death sentence, which must be imposed by a jury, not a court. Section 404 simply does not permit a court to upset a death sentence.

These points also fit with the background rule, accepted by every circuit to address the question, that a § 404 motion does not trigger a *de novo* resentencing and is instead a limited proceeding. *See, e.g.*, *United States v. Easter*, – F.3d –, 2020 WL 5525395, at *7 (3d Cir. Sept. 15, 2020) ("We also hold, however, that Easter is not entitled to a plenary resentencing hearing"); *United States v. Smith*, 958 F.3d 494, 499 (6th Cir. 2020) ("Our sister circuits have likewise held that the First Step Act authorizes a limited sentencing modification, not a full resentencing." (citing *United States v. Curry*, 792 F. App'x 267, 268 (4th Cir. 2020)); *United States v. Foreman*, 958 F.3d 506, 508 (6th Cir. 2020) ("[N]othing in the First Step Act entitles a defendant to a plenary resentencing."); *United States v. Hamilton*, 790 F. App'x 824, 826 (7th Cir. 2020); *United States v. Williams*, 943 F.3d 841, 843 (8th Cir. 2019)); *see also United States v. Denson*, 963 F.3d 1080, 1086–87 (11th Cir. 2020); *United States v. Jackson*, 945 F.3d 315, 321 (5th Cir. 2019).

### Procedural History

#### A.    Tipton is indicted, convicted, and sentenced.

On July 20, 1992, Tipton, along with six others, was charged as part of a 33-count indictment with:

- Conspiracy to possess with intent to distribute and to distribute 50 grams or

more of cocaine base, in violation of 21 U.S.C. § 846 (Count 1);

- Engaging in a continuing criminal enterprise, in violation of 21 U.S.C. § 848(a) (Count 2);

- Capital murder in furtherance of a criminal enterprise, in violation of 21 U.S.C. § 848(e) and 18 U.S.C. § 2 (Counts 3, 5, 11, 17, 18, 19, 24, 25);

- Commission of violent crimes in aid of racketeering activity, in violation of 18 U.S.C. § 1959 (Counts 4, 7, 13, 14, 16, 21, 22, 23, 27, 28, 29, 30);

- Use of a firearm in relation to a crime of violence or a drug-trafficking offense, in violation of 18 U.S.C. § 924(c) (Counts 12, 15, 20, 26); and

- Possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1) (Counts 32, 33).

(Second Superseding Indictment.) These charges stemmed from Tipton's leadership role, along with Cory Johnson and James Roane, in a continuing criminal enterprise, the "New York Boyz," that trafficked large quantities of cocaine in the Richmond, Virginia area between 1990 and 1992.

The facts relevant to the instant motion were summarized by the Fourth Circuit on direct appeal as follows:

Tipton, Roane, and Cory Johnson were principal "partners" in a substantial drug-trafficking conspiracy that lasted from 1989 through July of 1992. The conspiracy's operations began in Trenton, New Jersey where Johnson and Tipton, both from New York City, became members. In August of 1990, the conspiracy expanded its operations to Richmond, Virginia where Roane joined the conspiracy in November of 1991. The Trenton-based operation came to an end on June 4, 1991 when police confiscated a large quantity of crack cocaine and firearms. In late 1991, the conspiracy's operations were expanded from the Central Gardens area of Richmond to a second area in Richmond called Newtowne.

During the period of the conspiracy's operation, its "partners", including appellants, obtained wholesale quantities of powdered cocaine from suppliers in New York City, converted it by "cooking" into crack cocaine, then packaged it, divided it among themselves, and distributed it through a network of 30–40 street level dealers, "workers." Typically, the appellants and their other partners in the conspiracy's operations took two-thirds of the proceeds realized from street-level sales of their product.

Over a short span of time in early 1992, Tipton, Cory Johnson, and Roane were variously implicated in the murders of ten persons within the Richmond area—all

6

in relation to their drug-trafficking operation and either because their victims were suspected of treachery or other misfeasance, or because they were competitors in the drug trade, or because they had personally offended one of the "partners."

On January 4, 1992, Tipton and Roane drove Douglas Talley, an underling in disfavor for mishandling a drug transaction, to the south side of Richmond. Once there, Roane grabbed Talley from the rear while Tipton stabbed him repeatedly. The attack lasted three to five minutes and involved the infliction of eighty-four stab wounds to Talley's head, neck, and upper body that killed him.

On the evening of January 13, 1992, Tipton and Roane went to the apartment of Douglas Moody, a suspected rival in their drug-trafficking area, where Tipton shot Moody twice in the back. After Moody fled by jumping through a window, both Tipton and Roane pursued. Roane, armed with a military-style knife retrieved from an apartment where the knife was kept for co-conspirator Curtis Thorne, caught up with Moody in the front yard of the apartment where he stabbed him eighteen times, killing him.

On the night of January 14, 1992, Roane, Cory Johnson, and a third person retrieved a bag of guns that they had left at an apartment earlier that day. Roane then located Peyton Johnson, another rival drug dealer, at a tavern. Shortly after Roane left the tavern, Cory Johnson entered with another person and fatally shot Peyton Johnson with a semi-automatic weapon.

*          *          *

In late January, 1992, after being threatened by Cory Johnson for not paying for a supply of crack cocaine, Dorothy Armstrong went to live with her brother, Bobby Long. On February 1, Cory Johnson learned from Jerry Gaiters the location of Long's house. Thereafter, Tipton and an unidentified "young fellow" picked up Gaiters and Cory Johnson who were then driven by Tipton to a house where the group obtained a bag of guns. After dropping off the unidentified third party, the group proceeded to Long's house. Upon arriving at Long's house, Cory Johnson and Gaiters got out of the car and approached the house. While Tipton waited in the car, Cory Johnson and Gaiters went to the front door. When Long opened the door, Cory Johnson opened fire, killing both Dorothy Armstrong and one Anthony Carter. Bobby Long fled out the front door, but was fatally shot by Cory Johnson in the front yard.

In early February 1992, Cory Johnson began to suspect that Linwood Chiles was cooperating with the police. On February 19, 1992, Johnson borrowed Valerie Butler's automobile and arranged to meet with Chiles. That night, Chiles, Curtis Thorne, and sisters Priscilla and Gwen Greene met Cory Johnson and drove off together in Chiles's station wagon. Chiles parked the car in an alley, and Tipton soon drove in behind it in another car, got out, and came up alongside the stationwagon. With Tipton standing by, Cory Johnson told Chiles to place his head

7

on the steering wheel and then shot Chiles twice at close range. Additional shots were fired, killing Thorne and critically wounding both of the Greene sisters. The autopsy report indicated that Thorne had been hit by bullets fired from two different directions.

*Tipton*, 90 F.3d at 868–69.

In February 1993, a jury convicted Tipton of six capital murders under § 848(e) (Counts 3, 17, 18, 19, 24, 25); conspiracy to possess cocaine base with the intent to distribute under § 846 (Count 1); engaging in a continuing criminal enterprise under § 848(a) (Count 2); committing violent crimes in aid of racketeering activity under § 1959 (Counts 4, 21, 22, 23, 27, 28, 29, 30); using a firearm in relation to a crime of violence or a drug-trafficking offense under § 924(c) (Counts 20, 26); and possession of cocaine base with the intent to distribute under § 841(a)(1) (Counts 32, 33). (Judgment). Following a penalty hearing on the capital murder counts, the jury recommended that Tipton be sentenced to death for three of the six murders for which he was convicted under § 848(e) (Counts 3, 24, 25). *See Tipton*, 90 F.3d at 870.

In accordance with the jury's recommendation, the Honorable James R. Spencer, then the presiding district judge, sentenced Tipton to death. *Id.* The jury also sentenced Cory Johnson to death on all seven of the § 848(e)(1)(A) murders for which he had been convicted, and sentenced Roane to death for one of the three § 848(e)(1)(A) murders for which he was convicted. *Id.*

After sentencing, Judge Spencer refused, however, to order the defendants' execution on the grounds that Congress neither authorized the means by which the death sentences were to be carried out nor authorized the Attorney General to implement regulations to that effect. *Id.*

All three defendants appealed their convictions and sentences and the government cross-appealed Judge Spencer's stay of execution of the death sentences. *Id.* The Fourth Circuit affirmed the defendants' convictions and sentences, with the exception of the Count One § 846 cocaine conspiracy, which it vacated as being a lesser included offense of the § 848 continuing criminal

8

enterprise convictions. *Id.* at 891, 903. As to Judge Spencer's refusal to execute the defendants' death sentences, the Fourth Circuit reversed and "remand[ed] with instructions to enter appropriate orders for the executions in accordance with regulation promulgated by the Attorney General." *Id.* at 903.

### B.    Tipton's post-conviction litigation.

Following the Fourth Circuit's decision, Tipton sought relief from the district court under 28 U.S.C. § 2255. The district court dismissed or denied all of Tipton's claims and he appealed. *See Roane*, 378 F.3d at 389.

On appeal, Tipton claimed that (1) the district court erred by (a) not properly instructing the jury regarding the unanimity requirement of § 848(e), as well as by committing other instructional errors; (b) improperly adjudicating his discovery request at the § 2255 stage and by awarding summary judgment; and (c) denying his request to interview jurors; (2) that his trial was tainted by prosecutorial misconduct because the government knowingly introduced perjured testimony and withheld certain exculpatory evidence; (3) that his death sentences were constitutionally invalid under the Fifth Amendment because the indictment failed to allege the statutory aggravating factors under 21 U.S.C. § 848(n)(1)-(12); (4) that the prosecution discriminated against women in the jury selection process; and (5) that his counsel was ineffective for failing to (a) further investigate his alleged gang activities in New York and New Jersey; (b) request a voir dire inquiry on whether prospective jurors had a tendency to favor the death penalty; (c) present mitigating evidence regarding prison conditions; (d) present an adequate defense as to the murders of Douglas Talley (Count 3), Linwood Chiles (Count 24) and Curtis Thorne (Count 25); (e) present an adequate case-in-mitigation; and (f) request certain unanimity instructions. *Id.* at 395–96 & n.8.

The Fourth Circuit rejected each argument in a lengthy opinion. *Id.* at 396–407.

9

### C.      Tipton's motion under § 404(b) of the First Step Act.

On July 31, 2020, Tipton filed the instant motion for a sentence modification under § 404(b) of the First Step Act. (ECF No. 24.) In his motion, Tipton advances one overarching argument: that his murder convictions under § 848(e) (Counts, 3, 24, and 25), and his cocaine distribution convictions (Count 32 and 33) are "covered offenses" under § 404(b) of the First Step Act, and that, consequently, he is no longer eligible for the death penalty and instead, is eligible for a resentencing.  (*Id.* at 4-9.). Tipton also seeks resentencing on the § 848(e) convictions for which he received a term of life imprisonment (Counts 17, 18, and 19). (*Id.* at 12.). Tipton also seeks vacatur of his sentences on Counts 3, 24, and 25 and an evidentiary hearing regarding the imposition of new sentences for both the capital and non-capital § 848(e) convictions. (*Id.* at 25.)

### Argument

As outlined above, Tipton's convictions for capital murder in furtherance of a criminal enterprise under § 848(e) (Counts 3, 17, 18, 19, 24, and 25) are not covered offenses under § 404(b) of the First Step Act. For this reason, he is not entitled to a modification of his death sentence under the Act. Moreover, even assuming Tipton's death sentences could be reduced, this Court should exercise its discretion under the First Step Act and deny his motion. *See* First Step Act § 404(c) ("Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section."). A district court is "not obligated to reduce [the defendant's] sentence at all." *United States v. Jackson*, 952 F.3d 492, 502 (4th Cir. 2020). For example, the Fourth Circuit has recognized that relief may be denied to "defendants who almost certainly would not have faced a different sentence if they had been charged, convicted, and sentenced after the Fair Sentencing Act." *United States v. Wirsing*, 943 F.3d 175, 179 (4th Cir. 2019) (citing *United States v. Peters*, 843 F.3d 572, 577, 581 (4th Cir. 2016)). Even when a defendant has a covered offense, a court

10

may consider the drug quantities involved in the offense "in evaluating [the defendant's] motion on the merits." *United States v. Gravatt*, 953 F.3d 258, 264 (4th Cir. 2020). The drug quantities in this case far exceeded the new 280-gram threshold imposed by the Fair Sentencing Act. For Tipton in particular, the PSR attributed him with 18.49 kilograms of crack. *See* PSR ¶ 57; *see also id.* at 37.

In seeking relief under the First Step Act for his six § 848(e) convictions, three of which resulted in the imposition of the death penalty, Tipton fails to show that they are covered offenses, and offers no support for his theory that he is entitled to a new sentencing proceeding on Counts 3, 24, and 25.

## I.    Tipton's murder convictions under § 848(e) are not covered offenses under § 404(b) of the First Step Act.

The First Step Act provides that a sentencing court "may … impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed." First Step Act § 404(b), 132 Stat. at 5222. Under the First Step Act, a "covered offense" is "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010, that was committed before August 3, 2010." *Id.* § 404(a), 132 Stat. at 5222.

As noted above, for an offense to qualify as "covered" under § 404(b), its statutory penalties must have been modified by the Fair Sentencing Act. *See Wirsing*, 943 F.3d at 180 ("On its face, the First Step Act allows the retroactive application of the modifications to penalties that Congress enacted in the Fair Sentencing Act."). The statutory penalties for a violation of § 848(e), however, were not changed by the Fair Sentencing Act. The penalties under § 848(e), remain, both before and after the Fair Sentencing Act, 20 years to life imprisonment or death. *See* § 848(e)(1)(A).  Neither the Fair Sentencing Act nor the First Step Act altered this scheme.

11

Because the plain language of the First Step does not encompass convictions under § 848(e), those offenses are not "covered offenses" under the First Step Act. Although the bare text of the Act bars relief, further support is found for excluding § 848(e) from § 404(b)'s coverage in the operation of the statute itself. In *United States v. NJB*, 104 F.3d 630 (4th Cir. 1997), the Fourth Circuit held that § 848(e) is a separate substantive offense, and not just a penalty enhancement. *Id.* at 633.  Section 848(e) is therefore separable from its underlying "predicates," whether they be acts "in furtherance of a continuing criminal enterprise" or "offense[s] punishable under section 841(b)(1)(A)[.]" *See* § 848(e)(1)(A). In the context of a § 848(e)(1)(A) prosecution, these predicates function as elements which must be found by a jury. As such, it is impossible for them to be "statutory penalties for which were modified . . . the Fair Sentencing Act of 2010." First Step Act § 404(a), 132 Stat. at 5222.

Moreover, § 848(e)(1)(A) has three prongs. *Hager*, 721 F.3d at 179–80 (citing *Aguilar*, 585 F.3d at 657). Only one of those prongs requires proof of a violation § 841(b)(1)(A), while the other two prongs of § 848(e)(1)(A) require that the murder be in relation to a continuing criminal enterprise under 21 U.S.C. § 848 and do not require proof of a violation of § 841(b)(1)(A). Tipton was convicted in Count 2 of engaging in a continuing criminal enterprise, and his § 848(e)(1)(A) convictions rested on those findings. *See Tipton*, 90 F.3d at 887 ("The Government's evidence expressly linked each of the nine § 848(e) murders of which the appellants were severally convicted to a furtherance of the CCE's purposes: either silencing potential informants or witnesses, eliminating supposed drug trafficking rivals, or punishing underlings for various drug-trafficking misfeasances."). Tipton did not sustain criminal liability under § 848(e)(1)(A) by having the government rely on the prong requiring a § 841(b)(1)(A) violation.

The predicate facts required to find a violation of § 848(e) are akin to elements of the crime,

and even though § 848(e) references § 841(b)(1)(A), a defendant is only eligible for a § 404(b) reduction if the *penalties* for his offense of conviction have been modified by the Fair Sentencing Act. Here, the Fair Sentencing Act did no such thing. *See United States v. Guerrero*, 813 F.3d 462, 464–65 (2d Cir. 2016) ("The [Fair Sentencing] Act makes no mention of § 848(e)(1)(A)."); *see also United States v. Spearman*, No. 91-CR-50013-01 (BAF), 2020 WL 4390632, at *5 (E.D. Mich. Aug. 1, 2020) ("The § 848(e)(1)(A) drug-related murder convictions … likewise have nothing to do with drug quantities, and the statutory penalty (twenty years to life) has not been changed by the Fair Sentencing Act or the First Step Act."); *United States v. Martinez*, No. 06 CR. 987-1 (DC), 2020 WL 4226639 (S.D.N.Y. July 23, 2020) (after the First Step Act, "Count Two -- the [§ 848(e)(1)(A)] murder count -- still carries a mandatory minimum sentence of twenty years") (Chin, J.,); *United States v. Potts*, 389 F. Supp. 3d 352, 356 (E.D. Pa. 2019) ("The Fair Sentencing Act made many changes to elements of various crack offenses, but it did not amend the text of § 848(e)."); *United States v. Valentine*, No. 06-CR-580 (JSR), 2019 WL 3242494, at *1 (S.D.N.Y. July 2, 2019) ("[T]he Fair Sentencing Act … did not modify the sentences for the [§ 848(e)(1)(A)] murder … crimes to which defendant pled guilty").[1]

To be sure, § 2 of the Fair Sentencing Act modified the statutory penalties for crack cocaine offenses by increasing the quantity of crack cocaine necessary to trigger the minimums—"raising the amount from 15 grams to 28 grams for the 5–year minimum sentence, and from 50 grams to 280 grams for the 10–year minimum sentence." *United States v. Black*, 737 F.3d 280, 282 (4th Cir. 2013). And of course, § 404 of the First Step Act "makes retroactive the provisions of the Fair Sentencing Act of 2010 that reformed crack cocaine sentencing." *United States v. Woodson*, 962

---

[1] The government recognizes that since the passage of the First Step Act, several district courts have held otherwise. *See* ECF No. 24 at 5-7. For the reasons appearing in this section, the government respectfully maintains that these cases are wrongly decided.

13

F.3d 812, 813 (4th Cir. 2020). But none of these amendments altered § 848(e)'s penalty scheme. It may be the case that the Fair Sentencing Act indirectly limited the number of defendants who can be charged with § 848(e) offenses by increasing the threshold amounts of crack cocaine required under § 841(b)(1)(A), but even assuming the truth of the latter does not render § 848(e) a covered offense under the First Step Act.

The Second Circuit has rejected a similar attempt to obtain relief under the Fair Sentencing Act from an § 848(e) conviction. In *United States v. Guerrero*, 813 F.3d 462 (2d Cir. 2016), the defendant argued that the Fair Sentencing Act compelled vacatur of his § 848(e) conviction because after the Act's passage, "§ 848(e)(1)(A)'s drug trafficking element required the jury to find that the conspiracy involved at least 280 grams of crack cocaine" and "[b]ecause only a quantity of 50 grams was alleged and proved, … the Government failed to establish an element of the charged murder offense[.]" *Id.* at 465. The Second Circuit rejected this argument, holding as follows:

> A defendant may be convicted under § 848(e)(1)(A) if he was engaged in a drug trafficking offense punishable under § 841(b)(1)(A) at the time he committed intentional murder. The crime is complete at the time of the murder, *see* 21 U.S.C. § 848(e)(1)(A), and it is as of that time that the statute's drug trafficking element is measured. Here, Guerrero committed the murders in September 1994, at which time the threshold quantity of crack cocaine necessary under § 841(b)(1)(A) was 50 grams or more. The jury's finding that Guerrero had been engaged in a conspiracy to distribute 50 grams or more of crack cocaine at the time he intentionally killed Ortega and Garrido therefore satisfied the drug trafficking element of the § 848(e)(1)(A) murder offense. There was no error in the indictment, the instructions, or the verdict.

> \*       \*       \*

> No other conclusion flows from the FSA, a sentencing statute principally designed to increase threshold quantities of drugs necessary to trigger certain enhanced penalty schemes, to remove certain mandatory minimum sentences, and to direct the promulgation of new Sentencing Guidelines.

14

*Id.* As in *Guerrero*, Tipton's convictions under § 848(e)(1)(A) were complete the day his six murders occurred "and it is as of that time that the statute's drug trafficking element is measured." Neither the Fair Sentencing Act nor the First Step Act counsel otherwise, *see id.* at 466 ("Because the FSA did not expressly extinguish any criminal liability under § 848(e)(1)(A), the law's enactment did not retroactively invalidate Guerrero's conviction."), and there is no reason to believe that Congress, through statutes aimed at remedying disparities between cocaine base and powder cocaine, *see Gravatt*, 953 F.3d at 260, intended to absolve murders from criminal liability, to say nothing of vacating lawfully imposed death sentences. *Cf.* ECF No. 24 at 25 (requesting resentencing hearing on Counts 3, 24, and 25).

The only court of appeals to have considered the eligibility of a § 848(e) conviction under the First Step Act has held that it is not a "covered offense" under § 404(b). In *United States v. Snow*, 967 F.3d 563 (6th Cir. 2020), the defendant argued that the Fair Sentencing Act's increase of the threshold amount of crack cocaine under § 841(b)(1)(A) to 280 grams "combined with § 848(e)(1)(A)'s requirement of an offense punishable under § 841(b)(1)(A), qualifies his § 848(e)(1)(A) conviction as a "covered offense," making him eligible for a First Step Act sentence reduction." *Id.* at 564. The Sixth Circuit disagreed, holding "that the First Step Act's text and structure do not support extending resentencing relief to Snow's § 848(e)(1)(A) conviction." *Id.*

*Snow* first noted that "[i]n run-of-the-mill First Step Act cases, applying the Fair Sentencing Act retroactively requires only a change in degree: adjusting from a previous and higher statutory sentencing range to a new and lower one." *Id.* at 565. "Thus," the court continued, "in such cases, it makes sense to say that the Fair Sentencing Act 'modified' the statutory penalties. But the same is not true of Snow's § 848(e)(1)(A) conviction for murder while engaged in a conspiracy to distribute at least 50 grams of cocaine base." *Id.* This was so,

the court held, because

> [t]he Fair Sentencing Act did not reduce the sentencing range that applies to a conviction with those elements. Instead, after the Fair Sentencing Act, those elements no longer amount to an offense under § 848 at all and there is no applicable statutory sentencing range. The elimination of statutory penalties cannot be called a "modification" of statutory penalties without putting great strain on the ordinary meaning of the word "modify." This strongly suggests that Snow's § 848(e)(1)(A) conviction cannot be considered a covered offense as defined in § 404(a) of the First Step Act.

*Id*. Continuing, the Sixth Circuit noted that § 404(b) of the Act confirmed its conclusion. As it reiterated, § 404(b) permits courts to "impose a reduced sentence" for a covered offense "'as if [the changes made by the Fair Sentencing Act] were in effect' when the offense was committed." *Id*. Revisiting the defendant's § 848(e)(1)(A) conviction under this rubric, however, would have resulted in the unusual step of eliminating the statutory penalties for his conviction. As *Snow* held,

> if the district court chose to revisit Snow's Count 2 sentence as if the Fair Sentencing Act were in effect, it would be unable to "impose" any sentence because, again, there would no longer be any statutory penalties prescribed for Snow's conviction. In other words, § 404(b) on its face presupposes that the district court may still impose some sentence even after applying the Fair Sentencing Act retroactively; it simply does not contemplate the elimination of a sentence, as would be required here.

*Id*. "In sum," the Sixth Circuit concluded the defendant's "§ 848(e)(1)(A) conviction is not a covered offense and he is ineligible for a reduction in his sentence for Count 2." *Id*.

The Sixth Circuit's holding accounts for both the text of the First Step Act as well as

16

§ 404(b)'s actual, "real time" operation. This Court should adopt its reasoning.[2]

## II.   The First Step Act did not displace § 848(e)'s detailed provisions concerning imposition of the death penalty.

Tipton was convicted of six counts of capital murder in furtherance of a criminal enterprise, in violation of § 848(e) (Counts 3, 17, 18, 19, 24, and 25), and was sentenced to death on Counts 3, 24, and 25. Tipton was sentenced in accordance with the jury's recommendation pursuant to 21 U.S.C. § 848(l), *Tipton*, 90 F.3d at 870, a statutory provision which has since been repealed.

The Fourth Circuit has held that even in a case where a defendant obtains post-conviction relief from a faulty capital sentencing proceeding, courts are still obligated to follow the penalty scheme attendant to § 848(e) convictions, even if they have been repealed and replaced by the different procedures of the Death Penalty Act, 18 U.S.C.A. § 3591 *et seq*. ("FDPA"). *See United States v. Stitt*, 552 F.3d 345 (4th Cir. 2008). In *Stitt*, a defendant was convicted and sentenced to death under § 848(e)(1)(A). *Id*. at 352. The defendant obtained relief under § 2255 due to his defense attorney's conflict of interest during the penalty phase of his trial, which resulted in vacatur of his death sentence. *Id*. at 348. During the pendency of various appeals related to the case, Congress repealed §§ 848(g) through (r) and made § 848(e) convictions death penalty eligible in accordance with the FDPA. *Id*. 352. Given this change-in-law, the district court refused to empanel

---

[2] Although Tipton is likely eligible for a sentence modification on Counts 32 and 33, crack offenses under § 841(a)(1), the Court need not reach this contention due to Tipton's ineligibility for relief under the concurrently imposed death sentences under § 848(e). *See United States v. Charles*, 932 F.3d 153, 160 (4th Cir. 2019) ("[T]he [concurrent-sentence] doctrine still has continuing force as a species of harmless-error review where a defendant seeks to challenge the legality of a sentence that was imposed for a valid conviction, but where the challenged sentence runs concurrently with a valid sentence of an equal or greater duration."); *accord United States v. McCain*, – F.3d –, 2020 WL 5414850, at *5 (4th Cir. Sept. 10, 2020) ("Even assuming the district court plainly erred in not vacating McCain's Section 1512 conviction, he has not shown that the error affected his substantial rights. McCain received two concurrent life sentences: on Count One for violating Section 1512 and on Count Five for violating Section 924.").

a new sentencing jury under the relevant, but since-repealed, provisions of § 848, instead opting to resentence the defendant to life imprisonment without a jury. *Id*. at 351-52.

The government appealed and the Fourth Circuit reversed. In so holding, the Fourth Circuit held that the Savings Statute, 1 U.S.C. § 109, saved §§ 848(g) through (r) as applied to the defendant. *Stitt* first noted that "courts are in agreement that 'sentencing provisions' are saved as part of the 'prosecution' of a 'penalty' even when a later change alters the availability of a particular sentence." *Id*. at 354. As such, *Stitt* held that "we continue to apply the original sentencing provisions because the repeal of §§ 848(g)-(r) would have the effect of eliminating a previously-available sentencing option, a death sentence, at the resentencing." *Id*. *Stitt* also noted "that the penalty provided in § 848(e) cannot be fully preserved without also preserving the mechanisms for enforcing it, §§ 848(g)-(r). Indeed, the repealed portions of § 848 are a constitutionally required condition precedent to imposing § 848(e)'s penalty of a death sentence." *Id*. Concluding, the Fourth Circuit held that because the "'enforcing provisions' of § 848(g)-(r) are both akin to a 'sentencing provision' and also have a constitutionally mandated 'special relation to the accrued right,' the Savings Statute operates to save them against Stitt. And, § 848(i)(1)(B)(iv) provided for the empanelling of a sentencing jury in cases where the original death sentence was later vacated." *Id*.

Addressing the district court's assertion of equitable power to personally resentence the defendant, despite an earlier jury's imposition of the death penalty, *Stitt* held as follows:

> Section 848(i) provided that, if the Government files the appropriate death-eligibility notice (which it did in 1998), and if the defendant is found guilty of the death eligible offenses (which Stitt was in 1999), then "the judge who presided at the trial … *shall* conduct a separate hearing to determine the punishment to be imposed." 21 U.S.C.A. § 848(i)(1) (emphasis added). That hearing "*shall*" be conducted "before a jury impaneled for the purpose of the hearing if ... after initial imposition of a sentence under this section, redetermination of the sentence under this section is necessary." 21 U.S.C.A. § 848(i)(1)(B)(iv) (emphasis added). And,

18

if a jury recommends a sentence of death, "the court shall sentence the defendant to death." 21 U.S.C.A. § 848(l) (emphasis added). Given the repeated use of the term "shall," we believe it was not "appropriate" for the district court to forego empanelling a new penalty-phase jury.

*Id.* at 355-56.

Given the First Step Act's text and animating purpose, *Gravatt*, 953 F.3d at 260, there is little indication that it was intended to override the § 848(e)'s more specific provisions addressing the imposition of death sentences. Relatedly, there is no evidence that the First Step Act permits courts to disturb jury-imposed death sentences as an exercise of discretion under § 404(b) and Tipton points to no statute or case providing as such. Tipton's argument for a hearing on all six § 848(e) counts and vacatur of his death sentences should therefore be rejected.

### III.    Tipton's remaining arguments are improperly brought in a First Step Act motion.

Tipton raises three additional points which, although having no bearing on the instant motion, he nonetheless asks this Court to consider. Each should be rejected as improvidently brought in a First Step Act motion.

Tipton first notes that his conviction on Count 1 was vacated by the Fourth Circuit on direct appeal. (ECF No. 24 at 15.). He therefore asks to be resentenced "without the influence of this superadded, unconstitutional conviction on the sentencing decision." (*Id.*) Tipton also states that his § 924(c) convictions (Counts 20 and 26) are invalid in light of the Supreme Court's decision in *United States v. Davis*, 139 S. Ct. 2319 (2019). (*Id.* at 16-19.) And finally, Tipton claims that his eight convictions for committing violent crimes in aid of racketeering activity under § 1959 (Counts 4, 21, 22, 23, 27, 28, 29, and 30) were improperly charged and are therefore invalid. (*Id.* at 19-21.)

As noted above, each argument is either irrelevant to the Court's consideration of the instant motion or improperly raised through a First Step Act motion. With regards to Tiptons's

19

first argument, of course the government recognizes that the Fourth Circuit vacated his conviction on Count 1. This vacatur occurred in 1996 though, *see Tipton*, 90, F.3d at 891, and presumably resulted in little more than an amended judgment. The time has long-since-passed to seek any other type of relief from the Fourth Circuit's vacatur. And in any event, the likelihood that the elimination of a cocaine distribution conspiracy conviction would/will have any impact on Tipton's sentence is infinitesimal in light of the fact that he stands convicted of six murders.

As to Tipton's *Davis* argument, and as he himself recognizes, he is currently seeking authorization from the Fourth Circuit to even raise such a claim in the district court. Accordingly, even if a First Step Act motion was the proper forum to raise such a claim, it would make little sense to consider his *Davis* argument until after the Fourth Circuit actually authorizes it, to say nothing of its success on the merits. Because Tipton's application to file a successive § 2255 petition on this very issue is fully briefed and pending before the Fourth Circuit, the government does not address the merits of this claim herein. *See In re Richard Tipton*, No. 20-10, ECF Nos. 2, 7, 10, 13, 16.

Finally, Tipton's claims of instructional error have no place in a First Step Act motion. To begin, the First Step Act permits sentence modifications under specified circumstances. The Act is not a vehicle by which to raise perceived infirmities in a conviction. *See United States v. Moore*, – F.3d –, 2020 WL 5523205, at *5 (2d Cir. Sept. 15, 2020) ("By its express terms, [§ 404 of the First Step Act] does not require plenary resentencing or operate as a surrogate for collateral review, obliging a court to reconsider all aspects of an original sentencing."); *Mannie*, 2020 WL 4810084, at *6 ("Unlike a direct appeal of a conviction, which challenges the underlying conviction, a motion brought under the 2018 FSA only challenges the sentence—the length of incarceration"). If Tipton believed instructional error infected his eight § 1959 convictions, he should have raised

the argument on direct appeal or in a § 2255 motion. At this juncture, Tipton would need prefilling authorization from the Fourth Circuit to even raise such arguments before this Court. *See In re Vassell*, 751 F.3d 267, 271 (4th Cir. 2014) ("Section 2255(h) requires a court of appeals considering whether to authorize a second or successive § 2255 motion to follow the gatekeeping procedure 'provided in section 2244.'"). Because Tipton has not done so, his claims of instructional error are improperly raised in the instant motion.[3]

Ultimately, Tipton's motion offers no persuasive reason for reducing his sentence—even if a reduction were authorized—given the gravity of his crimes.  Even if the Fair Sentencing Act were applied, Tipton would still face statutory maximums of life for every count on which he received a death sentence for murder. His guideline range would remain unchanged at life imprisonment.  He would still be eligible for a death sentence, and the jury's decision to impose a death sentence on Counts 3, 24, and 25 would still stand.

## IV.     Response to the Court's September 2, 2020, Order.

On September 2, 2020, the Court ordered the government to provide its position with regards to Tipton's First Step Act motion. (*See* ECF No. 45.) As noted above, the government maintains that Tipton's death sentences cannot be reduced under § 404 of the First Step Act. His convictions under § 848(e) are not "covered offenses," and § 404 does not authorize a court to reduce the death sentences the jury imposed. Even if that were not the case, this Court should

---

[3] On direct appeal, the Fourth Circuit rejected an instructional error challenge brought by Tipton, Roane, and Johnson to their § 1959 convictions. The defendants argued that "the district court failed to differentiate between 'an enterprise engaged in racketeering activity' and the 'racketeering activity' in which it was engaged." *Tipton*, 90 F.3d at 888. The Fourth Circuit rejected the argument on plain error review, holding that "we are satisfied that, as the Government contends, the jury was adequately told that the elements were separate and distinct ones and that both must be proved. Viewed in total context, the two isolated references to 'racketeering activity' when 'enterprise engaged in racketeering activity' was appropriate must have been understood as short-hand references to the 'enterprise' itself." *Id.*

exercise its discretion under the First Step Act, *see* First Step Act § 404(c), and deny Tipton's request for a sentence reduction due to the serious nature of his offenses and the risk he poses to the public.

Tipton stands convicted of six murders under § 848(e). The details of the murders are distilled as follows:

- In early January 1992, Tipton brutally murdered Douglas Talley (Count 3) in an attack that despite lasting only three to five minutes, resulted in the infliction of eighty-four stab wounds to Talley's head, neck, and torso. *Tipton*, 90 F.3d at 868. When the police arrived at the scene, they found Talley dead and hanging out of the front door. PSR ¶ 68. Talley was murdered because Tipton believed him to be a "snitch." (*Id*.)

- In early February 1992, Tipton murdered Bobby Long, Anthony Carter, and Dorothy Mae Armstrong (Counts 17, 18, and 19). Armstrong was murdered because she owed a drug debt to Tipton and Johnson and because "she knew too much" about their activities. PSR ¶ 86. The pair located Armstrong at her home, where she was hiding until she could repay her debts, and while Tipton acted as lookout, Johnson burst through the side door and shot her. PSR ¶ 87; *Tipton*, 90 F.3d at 869. Carter and Long were also killed as part of this attack, likely because they witnessed the murder of Armstrong. PSR ¶ 88.

- In February 1992, Tipton murdered Curtis Thorne and Linwood Chiles (Counts 24 and 25). The murder involved Tipton and Johnson arranging to meet Thorne, Chiles, and Priscilla and Gwen Greene in an alley. Johnson then instructed Chiles to place his head on the steering wheel of his car and, with Tipton standing by, shot him at close range. *Tipton*, 90 F.3d at 869. Tipton also participated in this shooting. *Roane*, 378 F.3d at 389 n.6. Additional shots were fired at Thorne and the Greene sisters. *Id.* Thorne's autopsy report indicated that he had been hit by bullets from two different directions. *Id*. When police arrived at the scene, they found a male victim lying on the ground outside the rear passenger door and one of the Greene sisters on the curb several feet away. Chiles was found slumped over the steering wheel, with the other Greene sister to his right in the passenger seat. PSR ¶ 93. The Greene sisters were simply in the wrong place at the wrong time. (*Id*.)

Tipton was also convicted of two counts of committing violent crimes in aid of racketeering activity under § 1959 as related to the maiming of Gwen and Priscilla Greene (Counts 29 and 30).

As is evident, the nature and circumstances of Tipton's offenses could hardly be worse.

Tipton received numerous terms of life imprisonment and a death sentence on Counts 3, 24, and 25. There is every reason to believe that a defendant who plotted and participated in violent murders, and callously attacked unrelated bystanders, poses a serious risk to public safety. Tipton's murders were deliberate and premediated. The passage of time and new Congressional legislation cannot undo such grave acts. *See United States v. Umana*, 750 F.3d 320, 358 (4th Cir. 2014) (death penalty proportional to crime where defendant "killed two people in furtherance of a racketeering enterprise, … had killed before and posed a danger in the future.").

The Court also requested that the government provide the following information:

**A.  The number of months and years of supervised release that it considers appropriate;**

The government believes that a lifetime period of supervised release would be appropriate should the Court reduce Tipton's sentence.

**B.  The status of Tipton's educational and vocational training;**

Between 2001 and 2020, Tipton has taken numerous courses in prison, including:

1. Art courses (water color, colored pencil, charcoal pencil, and crochet);
2. Exercise courses (yoga, cardio, abdominals, cardio techniques, and wellness);
3. Nutrition courses (introduction to nutrition, nutrition and digestion, and "How we Eat"); and
4. General educational and vocational courses (Shakespeare's Comedies, 7 Ways to Save the World, Origins of Ancient Civilization, Basic Writing, Language, Art, and Reading, Everyday Math, Stress Management, Everyday Math, Anger Management, Owning Your Own Business, Learn a Living, Success on the Job, GED Self-Study, Legal Research, and Creative Writing).

**C.  The status of any treatment pertaining to substance abuse or physical/mental health;**

The government is not aware of any mental or substance abuse treatment, or any other treatment that is germane to the issues in this motion.

**D. Tipton's post-sentencing conduct:**

The following infractions appear on Tipton's inmate disciplinary record:

1. Being Unsanitary or Untidy (2016);
2. Disruptive Conduct (2015);
3. Threatening Bodily Harm (2015);
4. Disruptive Conduct (2014);
5. Refusing to Obey an Order (2014);
6. Threatening Bodily Harm and Destroying Property (2014);
7. Interfering with Security Devices (covering camera in cell) and Destroying Property (2014);
8. Refusing Work Assignment (2013);
9. Interfering with Security Devices and Refusing to Obey an Order (2010);
10. Interfering with Security Devices (covering camera in cell) (2010);
11. Refusing to Obey an Order (2010);
12. Possessing Unauthorized Item (razor blade) (2010);
13. Being Insolent to Staff Member (2009);
14. Assault without Serious Injury (bumped one officer in chest and struck other officer with shoulder) (2008);
15. Threatening Bodily Harm and Refusing to Obey and Order (2008);
16. Being Insolent to Staff Member (2008);
17. Lying or Falsifying Statement (2008);
18. Refusing Drug Alcohol Test (2006);
19. Refusing to Obey an Order and Being Insolent to Staff (2005);
20. Threatening Bodily Harm (2004);
21. Phone Abuse Criminal (instructed another individual to use physical force on witness to influence statement) (2004);
22. Phone Abuse/Disruptive Monitoring (became disruptive during hearing and was removed) (2003);
23. Threatening Bodily Harm (2002);
24. Refusing to Obey an Order and Being Insolent to Staff (2001);
25. Possessing Unauthorized Item and Destroying Property (2001);
26. Being Insolent to Staff Member (2001);
27. Destroying Property and Being Unsanitary or Untidy (2000);
28. Making Sexual Proposal/Threat (1999);
29. Destroying Property (1999);
30. Refusing to Obey an Order (1999); and
31. Refusing Work Assignment and Refusing to Obey an Order (1999).[4]

---

[4] Tipton's Inmate Disciplinary Record is attached as Exhibit A.

24

**Conclusion**

For the reasons explained above, the Court should deny Tipton's First Step Act motion.


Respectfully submitted,

G. Zachary Terwilliger
United States Attorney


By:  _____/s/_____

Richard D. Cooke
Joseph Attias
Assistant United States Attorneys

**Certificate of Service**

I certify that on September 21, 2020, I filed electronically the foregoing with the Clerk of

Court using the CM/ECF system, which will serve all counsel of record.

By:    _____/s/_____

Joseph Attias
Assistant United States Attorney