**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

|  |  |  |
|---|---|---|
| THE UNITED STATES OF AMERICA | : | |
| | : | Crim. No. 3:92CR68 |
| v. | : | |
| | : | |
| JAMES H. ROANE, JR. | : | |
| | : | |

**REPLY IN SUPPORT OF MOTION FOR IMPOSITION
OF A REDUCED SENTENCE PURSUANT TO
SECTION 404 OF THE FIRST STEP ACT**

James H. Roane, Jr., through counsel, hereby files the instant Reply to the Government's

Response to his Motion for Imposition of a Reduced Sentence Pursuant to Section 404 of the

First Step Act (hereinafter Motion).  The Government's arguments in opposition to Mr. Roane's

Motion are unavailing.  For the reasons set forth herein and in his Motion, Mr. Roane is eligible

for resentencing consideration on Counts 5, 8, 11, and 32 under Section 404 of the First Step

Act, and this Court should grant a resentencing hearing.

I.    **The Government's Arguments against Eligibility Are Unavailing**

A. **Mr. Roane's § 848(e)(1)(A) Convictions Rest on a Violation of § 841(b)(1)(A)**

The Government argues that Mr. Roane's convictions under § 848(e)(1)(A) are not a

"covered offense" because they rest on a continuing criminal enterprise, rather than a

§ 841(b)(1)(A) violation, as predicate.  Resp. at 17.  The Government is incorrect.  As the

Government elsewhere notes, the Fourth Circuit on appeal vacated Mr. Roane's Count One

§ 846 conviction for conspiracy to distribute cocaine as being a lesser included offense of his

convictions under § 848.  Resp. at 8 (citing *United States v. Tipton*, 90 F.3d 861, 891, 903 (4th

Cir. 1996)).  Under *Blockburger*, this finding means that Mr. Roane's convictions under

§ 848(e)(1)(A) necessarily encompassed all the elements of his § 846 conviction.  *See*

*Blockburger v. United States*, 284 U.S. 299, 304 (1932) ("[T]he test to be applied to determine

whether there are two offenses or only one, is whether each provision requires proof of a fact

which the other does not.").  Mr. Roane's § 846 conviction, in turn, was based on a conspiracy to

violate § 841(b)(1)(A).  App. 0374 (Count One of the indictment, charging Mr. Roane with

conspiracy to "possess with the intent to distribute, and to distribute . . . at least fifty (50) grams

or more of a mixture or substance described in Title 21, United States Code, Section

841(b)(1)(A)(ii), which contains cocaine base").  Thus Mr. Roane's § 848(e)(1)(A) convictions

did indeed rest on proof of a violation of § 841(b)(1)(A).

Moreover, under the law of the case, the continuing criminal enterprise (Count Two) was

itself based on a series of violations of § 841(b)(1)(A).  *Tipton*, 90 F.3d, 884 (Count 2 "identified

and incorporated by reference all violations of 21 U.S.C. § § 841 and 846 charged against the

appellants elsewhere in the indictment. . . . , including the conspiracy charged [under § 846] in

Count 1 [and] the drug distribution jointly charged [under § 841(b)(1)(A)] in Count 32."); *see*

*also* App. 0378 (Count Two, charging Mr. Roane with "engag[ing] in a Continuing Criminal

Enterprise, that is, . . . violat[ing] Title 21, United States Code, Section 841 and 846," as "part of

a continuing series of violations").  In other words, Mr. Roane's § 848(e)(1)(A) convictions

rested either on a conspiracy to violate § 841(b)(1)(A) via Count One, or on a series of

§ 841(b)(1)(A) violations via Count Two.

In similar cases, the Government has agreed that "covered offenses" under the First Step

Act include those that were indirectly modified by sections 2 and 3 of the Fair Sentencing Act

because they rested on a violation of § 841(b)(1)(A). *See, e.g.*, United States' Mot. to Remand at 8, *United States v. Maupin*, No. 19-6817 (4th Cir. Aug. 29, 2019), ECF No. 26 (agreeing that RICO conviction was a "covered offense" under the First Step Act where "defendant's statutory maximum was increased to life as a result of racketeering activity involving cocaine base that would no longer carry a maximum penalty of life imprisonment"); *United States v. Davis*, 2020 WL 1131147, at *2 (W.D. Va. Mar. 9, 2020) ("The government acknowledges that the defendant is eligible for a sentence reduction under the 2018 FSA for . . . Count Two due to § 848's requirement of a § 841(b)(1)(A) violation.").

Even if this Court were to find that Mr. Roane's § 848(e)(1)(A) convictions do not rest on a violation of § 841(b)(1)(A)—which they do—Mr. Roane's § 848(e)(1)(A) convictions would still be "covered offenses" under the First Step Act because § 848 as a whole constitutes an indivisible covered offense. *See, e.g.*, *Brown*, 2020 WL 3106320, at *4 (citing *United States v. Smith*, 954 F.3d 446, 450 (1st Cir. 2020)). In *Brown*, the Court explained that under § 848, the most "straightforward" understanding is that the "statute of conviction is § 848 as a whole, particularly given the brief nature of the statute and its focus on one type of unlawful activity: continuing criminal enterprises related to controlled substances," while the specific subsections set forth the penalties. *Id.* With respect to § 848(e) specifically, the Court noted that that subsection "even begins with the phrase 'In addition to the other penalties set forth in this section.'" *Id.* Based on this analysis, the Court concluded that "because at least one of the penalties [included in § 848] was modified by Section 2 or 3 of the Fair Sentencing Act, . . . Defendant is eligible for resentencing under the First Step Act." *Id.* (citing *United States v. Smith*, 954 F.3d 446, 450 (1st Cir. 2020)).

3

**B. The Government's Position Is Inconsistent with Holdings from within This Circuit**

In arguing that Mr. Roane's § 848 convictions are not covered under the First Step Act, the Government concedes that its position is out of step with the holdings of other courts in this Circuit. Resp. at 18 n.6. Instead, the Government relies on two cases from the Second and Sixth Circuits, which Mr. Roane addresses in turn.

The Government cites *United States v. Guerrero*, 813 F.3d 462 (2d Cir. 2016), a pre-First Step Act case, for the proposition that because Mr. Roane possessed the requisite quantity of crack under § 841(b)(1)(a) at the time the § 848 offense was committed, his liability under § 848(e)(1)(a) is unchanged (Resp. at 19-20). *Guerrero* is inapposite. In that case, the defendant was convicted prior to, but sentenced after, the enactment of the Fair Sentencing Act, and argued on appeal for vacatur of his conviction based on retroactivity of the Fair Sentencing Act, which was prospective only. *Id.* at 464-65. *Guerrero* does not address, and bears no relevance to, a court's "covered offense" determination for purposes of resentencing under the First Step Act.

Moreover, the Government's position is inconsistent with the remedial purpose of the First Step Act, which was based on the recognition that sentences for crack offenses prior to enactment of the Fair Sentencing Act were too severe. *See, e.g.*, *United States v. Gravatt*, 953 F.3d 258, 260 (4th Cir. 2020). Congress enacted the Fair Sentencing Act "in response to extensive criticism about the disparity in sentences between crack cocaine offenses and powder cocaine offenses." *Id.* (quoting *United States v. Black*, 737 F.3d 280, 282 (4th Cir. 2013)). Congress in turn enacted the First Step Act to address "disparities between sentences for crack cocaine offenses and powder cocaine offenses [that] remained for defendants sentenced before

. . . the effective date of the Fair Sentencing Act." *Id.*; *see also United States v. Wirsing*, 943 F.3d 175, 186 (4th Cir. 2019) ("Congress's clear intent was to apply the Fair Sentencing Act to pre-Fair Sentencing Act offenders."). The Government's reliance on *Guerrero* is thus not only inapposite but also inconsistent with the legislative purpose of the statute.

The Government also relies on *United States v. Snow*, 2020 WL 4345157 (6th Cir. July 29, 2020), to argue that § 848(e)(1)(A) is not a "covered offense" under the First Step Act because it constitutes a separate offense, not a sentencing enhancement, and thus under the  Fair Sentencing Act modifications, Mr. Roane would be subject not to a lower sentencing range but to vacatur of his conviction. Resp. at 20-21. First, the Government's position that § 848(e)(1)(A) constitutes a separate offense is unpersuasive. *See, e.g.*, *United States v. Brown*, 2020 WL 3106320, at *4 (W.D. Va. June 11, 2020) (explaining that under § 848, the most "straightforward" understanding is that the "statute of conviction is § 848 as a whole," while the specific subsections set forth the penalties) (citing *United States v. Smith*, 954 F.3d 446, 450 (1st Cir. 2020))).

But more importantly, Mr. Roane has not argued that the Fair Sentencing Act modifications to § 841(b)(1)(A) render him not guilty under § 848(e)(1)(A), or that his convictions under that statute should be vacated. He simply argues that his convictions are "covered offenses" under the First Step Act because they are based on violations of § 841(b)(1)(A)—which was modified by the Fair Sentencing Act—and thus his sentences are subject to reconsideration. This is precisely what the First Step Act contemplates. Indeed, after reconsideration, the sentencer may reimpose the same sentence, as Mr. Roane's convictions would remain intact. *See* Pub. L. No. 115-391, § 404(c) (2018) ("Nothing in this section shall be

construed to require a court to reduce any sentence pursuant to this section.").  The

Government's reliance on *Snow* is thus also unpersuasive.

### C.  The Government's Arguments Respecting Capital Resentencing Are Unavailing

The Government, citing *United States v. Stitt*, 552 F.3d 345 (4th Cir. 2008), agrees that

resentencing in a capital case must be done by a jury.  Resp. at 5.  However, the Government

argues that because the First Step Act speaks in terms of a "court" engaging in reconsideration of

a defendant's sentence, capitally-sentenced movants cannot be eligible for resentencing under the

First Step Act.

Contrary to the Government's position, the *Stitt* opinions stand for the opposite

proposition—capital resentencing can, and must, be done by a jury in the First Step Act context.

An earlier decision in *Stitt* addressed the relief available for capital litigants under 28 U.S.C.

§ 2255.  *United States v. Stitt*, 459 F.3d 483, 486-87 (4th Cir. 2006) (*Stitt IV*).  *Stitt IV*

demonstrates that, when a statute provides relief applicable to both non-capital and capital

defendants, the courts have the equitable obligation to shape relief for the capital defendants

notwithstanding that the express statutory language provides a mechanism for relief to only non-

capital defendants.  *See id.* at 485 (holding that because *Andrews v. United States*, 373 U.S. 334,

339 (1963), required resentencing before a grant of relief pursuant to § 2255 could be appealed

in a non-capital case, the same requirement necessarily applied in a capital case). When a court

does so, it must fashion the remedy to comport with established principles of Eighth Amendment

jurisprudence and statutory provisions that reflect those principles—by empaneling a jury to

resentence.  Thus, although the First Step Act speaks in terms of a "court" engaging in

reconsideration of an eligible movant's sentence, applying this provision to a capital litigant, a

jury must be empaneled to engage in the necessary sentencing determination. *See, e.g.*, *Stitt IV* at 485.

The Government points to nothing in the statute itself or in the legislative history to suggest that capital cases were meant to be excluded from the First Step Act. The purpose of the statute was to provide for resentencing consideration for defendants sentenced under a regime that was found to have sentenced too harshly those defendants convicted of crack-related offenses. *See, e.g.*, *Gravatt*, 953 F.3d at 260. Under the holding of *Stitt IV*, and absent any evidence of legislative intent to the contrary, the First Step Act should not be read to exclude covered capital offenses from resentencing consideration.

## II.    Mr. Roane's Proffered Evidence Is Relevant to the 18 U.S.C. § 3553(a) Sentencing Factors

The Government devotes several pages of its response to contesting a "free-standing" innocence claim that Mr. Roane has not raised. Resp. at 24-29. Mr. Roane has proffered evidence of his innocence for consideration under the 18 U.S.C. § 3553(a) sentencing factors. Mot. at 7. The Government elsewhere concedes as much. Resp. at 14. (Mr. Roane "argues that the circumstances of the offense militate in favor of a reduced sentence.").

Notably, apart from arguing that Mr. Roane's nonexistent "free-standing" innocence claim is procedurally barred, the Government does not respond to any of Mr. Roane's other evidence proffered in support of resentencing. The Government does not challenge, for instance, that Mr. Roane suffered chronic sexual abuse as a child or that he suffers from brain damage— likely the result of his mother's drinking during pregnancy—that left him functioning at a

capacity that was "equivalent to that of an adult with mental retardation,"[1] at the time of the

crimes of which he was convicted.  Nor does the Government respond to proffered evidence of

Mr. Roane's exemplary disciplinary record in the 28 years he has been incarcerated, his personal

transformation since, or to the fact that several of the convictions that were considered by the

jury in sentencing him to death were improperly charged.  Mr. Roane's proffered evidence is

relevant to the § 3553(a) sentencing factors and should be considered by this Court and, in the

case of his Count 5 conviction, by a jury.  *See, e.g.*, *United States v. Chambers*, 956 F.3d 667,

674 (4th Cir. 2020) (holding that the § 3553(a) sentencing factors apply in the First Step Act

resentencing context).

### III.    The First Step Act and Fair Sentencing Act Were Intended to Correct Racial Disparities in Sentencing, as Exemplified by This Case

Finally, the Government argues that the penalties for crack-related offenses were

amended based on a realization that crack is associated with less violence than previously

thought, and that this rationale undermines Mr. Roane's request for resentencing consideration

on his § 848 convictions.  Resp. at 2.  This assertion distorts the real reason that the First Step

Act, and the Fair Sentencing Act before it, were enacted—to ameliorate the wildly disparate

racial impact of the previous sentencing guidelines pertaining to crack versus powder cocaine.

At the time Mr. Roane was sentenced in this case, the sentencing disparity between crack

and powder cocaine was 100-to-1.  *See Gravatt*, 953 F.3d at 260.  This disparity fell most

heavily on African American defendants.  *See, e.g.*, *Kimbrough v. United States*, 552 U.S. 85, 98

(2007) (noting Sentencing Commission's finding that "[a]pproximately 85 percent of defendants

---

[1] App. 0722.

convicted of crack offenses in federal court are black; thus the severe sentences required by the 100-to-1 ratio are imposed primarily upon black offenders" (internal quotations omitted)) .

The Fair Sentencing Act of 2010 was enacted to ameliorate this disparity.  As Senator Dick Durbin explained at the time of the Act's passage,

> Disproportionately, African Americans who are addicted use crack cocaine.  The use of powder cocaine is spread across the population among Whites, Hispanics, and others.  So the net result of this was that the heavy sentencing we enacted years ago took its toll primarily in the African-American community.  It resulted in the incarceration of thousands of people because of this heavy sentencing disparity and a belief in the African-American community that it was fundamentally unfair.  It was the same cocaine, though in a different form, and they were being singled out for much more severe and heavy sentences.  This debate went on and on and on.  African Americans make up about 30 percent of crack users in America, but they make up more than 80 percent of those who have been convicted of Federal crack offenses. . . . The bipartisan U.S. Sentencing Commission and the Judicial Conference of the United States support reducing this disparity.  According to the Sentencing Commission, this would better reduce the gap in sentencing between blacks and whites than any other single policy change, and it would dramatically improve the fairness of the Federal sentencing system.

156 Cong. Rec. S1681-82 (2010) (statement of Sen. Dick Durban); *see also id.* at S1682 (statement of Sen. Patrick Leahy) ("The racial imbalance that has resulted from the cocaine sentencing disparity disparages the Constitution's promise of equal treatment for all Americans.").

The First Step Act, in turn, built on the goals of the Fair Sentencing Act by allowing for resentencing consideration for those who were sentenced under the previous, racially disparate sentencing regime.  Senator Chuck Grassley, a co-sponsor of the First Step Act, explained following the Act's passage that it "eliminates the disparity in sentences for crack and powder cocaine offenses, which disproportionately impacts communities of color."  164 Cong Rec S7838 (2018) (statement of Sen. Chuck Grassley); *see also id.* at S7841 (statement of Sen. Dick

9

Durbin) ("The majority-majority-of users of narcotics and dealers of narcotics are White. Seventy-five percent of those who are convicted and sent to prison for crimes related to drug dealing and use are African American and Latino.").  Indeed, the demographics of those who have received relief under the First Step Act bear this out: of the roughly 2000 people whose sentences were reduced within the first year of the Act's passage, 91% were African American. *One Year After the First Step Act: Mixed Outcomes*, The Sentencing Project, https://www.sentencingproject.org/publications/one-year-after-the-first-step-act/ (last visited Oct. 1, 2020).

The race disparities under pre-reform, 1990s-era sentencing laws are borne out in Mr. Roane's case.  Mr. Roane, having grown up in Gilpin Court in Richmond, surrounded by drug use, and having been subjected to years of chronic sexual abuse, unsurprisingly became a drug addict, and sold drugs to support his addiction.[2]  The continuing criminal enterprise statute "is sometimes called 'the kingpin statute' because it is designed to apply to ringleaders of large-scale illegal narcotics operations."  *United States v. Webster*, 639 F.2d 174, 180 (4th Cir. 1980); *see also Richardson v. United States*, 526 U.S. 813, 819 (1999).  However, during the eleven weeks that Mr. Roane was involved in the continuing criminal enterprise at issue in this case, his life bore little resemblance to what constitutes a "drug kingpin" lifestyle in the popular imagination.  Unlike his co-defendants who regularly traveled to New York and New Jersey,[3] Mr. Roane never ventured outside of Virginia.[4]  His social network consisted mostly of street-

---

[2]*See* App. 1030 (recording Mr. Roane's pre-CCE drug abuse); TR 1/22/93 at 2185, 2238 (describing Mr. Roane's drug use during the CCE); App. 0753-54 (noting Mr. Roane's participation in Narcotics Anonymous after arrest on CCE offenses).

[3]*See, e.g.*, NT 1/18/20 at 1164-66; *id*. at 1198; NT 1/20/93 at 1690-92; *id*. at 1740.
[4]NT 6/21/02 at 29.

level drug sellers.  He subsisted on cheap Chinese take-out meals and Burger King.[5]  He drove a used, fourteen-year-old Buick.  Mr. Roane did not own a home, let alone a mansion.  At various times, he stayed in a rooming house his father owned, or with girlfriends, or in budget motels.[6]  He did not have jewelry or diamonds, or wear designer clothes.[7]  He lived such a transient, drug abusing life-style that he had few personal belongings.  His sister Florence recalls him not having even a toothbrush.[8]  By the start of trial, the PSI reported that he had "no known assets," and was "unable to pay the minimum fine."[9]  Against this backdrop, Mr. Roane's prosecution as a "drug kingpin" reflects the over-sentencing for pre-Fair Sentencing Act crack offenses that the First Step Act was designed to correct.  *See Kimbrough*, 552 U.S. at 98 (noting Commission's finding that the former "crack/powder disparity is inconsistent with the 1986 Act's goal of punishing major drug traffickers more severely than low-level dealers" because "[d]rug importers and major traffickers generally deal in powder cocaine, which is then converted into crack by street-level sellers").  Resentencing in this case is thus consistent with the policy goals of the First Step Act.

## IV.   REQUEST FOR RELIEF

For the reasons set forth herein and in his Motion for a Reduced Sentence, Mr. Roane respectfully requests that this Court:

(1) Find that Mr. Roane's convictions under Counts 5, 8, 11, and 32 are covered offenses under Section 404 of the First Step Act;

---

[5] NT 6/21/02 at 32-33.
[6] NT 6/21/02 at 27-28, 42.
[7] NT 1/20/93 at1744; NT 2/2/93 at 3146 (Defense closing argument).
[8] App. 0843.
[9] App. 0444.

11

(2) Grant an evidentiary hearing regarding imposition of a reduced sentence on Counts 8,

   11, and 32;

(3) Order a resentencing hearing before a jury on Count 5; and

(4) Grant any other relief to which he may be entitled.


                                          Respectfully Submitted,

                                          /s/ Joanne Heisey
                                          Joanne Heisey
                                          Assistant Federal Defender
                                          Federal Community Defender Office
                                          for the Eastern District of  Pennsylvania
                                          601 Walnut Street, Suite 545 West
                                          Philadelphia, PA 19106
                                          (215) 928-0520
                                          Joanne_Heisey@fd.org

                                          /s/ Matthew Engle
                                          Matthew Engle
                                          Bernadette Donovan
                                          Donovan & Engle
                                          1134 East High St. Unit A
                                          Charlottesville, VA 22902
                                          (800) 428-5214
                                          matthew@donovanengle.com
                                          bernadette@donovanengle.com

                                          Counsel for James H. Roane, Jr.


Dated: October 2, 2020

## CERTIFICATE OF SERVICE

I, Joanne Heisey, hereby certify that on this 2nd day of October 2020, I submitted the

foregoing Motion for filing with service to:

Richard D. Cooke
United States Attorney for the Eastern District of Virginia
919 E. Main St.
Suite 1900
Richmond, VA  23219


/s/ Joanne Heisey
Joanne Heisey