**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **Case No. 3:92CR68 (DJN)** |
| | **:** | **CAPITAL CASE** |
| **COREY JOHNSON** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

**REPLY IN SUPPORT OF MOTION FOR A RECONSIDERATION OF SENTENCE
HEARING PURSUANT TO THE FIRST STEP ACT OF 2018**

David E. Carney, VA Bar # 43914
Donald P. Salzman*
Lotus D. Ryan, VA Bar # 71425
Skadden, Arps, Slate, Meagher & Flom, LLP
1440 New York Avenue, NW
Washington, DC 20005
Ph: (202) 371-7246
Fax: (202) 661-8295
Email: david.carney@skadden.com


Alexander C. Drylewski*
Judith A. Flumenbaum*
Skadden, Arps, Slate, Meagher & Flom, LLP
One Manhattan West
New York, NY 10001
Telephone: (212) 735-3000

*Admitted Pro Hac Vice


*Counsel for Corey Johnson*

**TABLE OF CONTENTS**

I.      Mr. Johnson's Convictions Are Covered Offenses Subject to Reconsideration by a
        Sentencing Jury. .......................................................................................................................1

        A.      Mr. Johnson's Convictions Under 21 U.S.C. § 848 Rest on Violations of
                21 U.S.C. § 841(b)(1)(A), Which Is a Covered Offense ........................................1

        B.      The Government Is Not Helped by the Out-of-Circuit Cases It Cites....................3

        C.      Mr. Johnson Is Entitled to Have His Capital Sentences Reconsidered by a
                Jury............................................................................................................................6

II.     Mr. Johnson's Mitigation Evidence Is Properly Considered by This Court or the
        Resentencing Jury .......................................................................................................................8

III.    The First Step Act and Fair Sentencing Act Were Intended to Correct Racial
        Disparities in Sentencing, as Exemplified by This Case ...................................................12

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Andrews v. United States*, 373 U.S. 334 (1963)..............................................................................7

*Blockburger v. United States*, 284 U.S. 299 (1932)........................................................................2

*Eddings v. Oklahoma*, 455 U.S. 104 (1982) ...................................................................................9

*Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612 (2018)....................................................................8

*Kimbrough v. United States*, 552 U.S. 85 (2007) .........................................................................12

*Lockett v. Ohio*, 438 U.S. 586 (1978) .............................................................................................9

*Richardson v. United States*, 526 U.S. 813 (1999) .......................................................................13

*Skipper v. South Carolina*, 476 U.S. 1 (1986) ...............................................................................9

*United States v. Brown*, No. 3:08-CR-00011-1, 2020 WL 3106320 (W.D. Va. June 11,
      2020) ....................................................................................................................................1, 2, 5

*United States v. Chambers*, 956 F.3d 667 (4th Cir. 2020)..........................................................9, 10

*United States v. Davis*, No. 5:93-cr-30025, 2020 WL 1131147 (W.D. Va. Mar. 9, 2020),
      *appeal filed*, No. 20-6383 (4th Cir. Mar. 20, 2020)..............................................................6

*United States v. Gravatt*, 953 F.3d 258 (4th Cir. 2020)...............................................................4, 8

*United States v. Guerrero*, 813 F.3d 462 (2d Cir. 2016) ...............................................................4

*United States v. NJB*, 104 F.3d 630 (4th Cir. 1997) ......................................................................2

*United States v. Snow*, 967 F.3d 563 (6th Cir. 2020).....................................................................5

*United States v. Stitt*, 459 F.3d 483 (4th Cir. 2006)....................................................................7, 8

*United States. v. Stitt*, 552 F.3d 345 (4th Cir. 2008).....................................................................8

*United States v. Tipton*, 90 F.3d 861 (4th Cir. 1996)..................................................................2, 3

*United States v. Webster*, 639 F.2d 174 (4th Cir. 1981) ..............................................................13

*United States v. Wirsing*, 943 F.3d 175 (4th Cir. 2019)................................................................4

*Wiggins v. Smith*, 539 U.S. 510 (2003)..........................................................................................9

ii

*Woodson v. North Carolina*, 428 U.S. 280 (1976) ...........................................................................9

## STATUTES

18 U.S.C. § 3553............................................................................................................... passim

18 U.S.C. § 3594..........................................................................................................................8

21 U.S.C. § 841................................................................................................................. passim

21 U.S.C. § 846............................................................................................................................2, 3

21 U.S.C. § 848................................................................................................................. passim

21 U.S.C. § 848(*l*) (1988) ...................................................................................................7, 8

Anti-Drug Abuse Act of 1986, Pub. L. No. 99-570, 100 Stat. 3207 ...........................................6, 7

Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372 ...................................... passim

First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194................................................ passim

## OTHER AUTHORITIES

United States' Motion to Remand, *United States v. Maupin*, No. 19-6817 (4th Cir. Aug. 29, 2019), ECF No. 26 ....................................................................................................6

iii

The Government's Opposition to Defendant's Motion for a Reconsideration of Sentence Hearing Pursuant to the First Step Act (the "Opposition") fails to provide a basis to deprive Mr. Johnson of the statutory relief afforded by the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. The charges for which Mr. Johnson received his death sentences are covered offenses, and he is entitled to have his sentences reconsidered by a jury. As Mr. Johnson has highlighted for this Court, he has substantial evidence, including his unblemished 27-year record of incarceration, to put before a sentencer that demonstrates a life sentence is sufficient, and not more than necessary, to meet the purposes of 18 U.S.C. § 3553(a)(2). Accordingly, Mr. Johnson is eligible for reconsideration of his sentences on Counts 2, 8, 11, 17-19, 24, 25, 31, and 32 pursuant to Section 404 of the First Step Act, and he respectfully asks this Court to grant him a capital resentencing hearing before a jury.

**I.     Mr. Johnson's Convictions Are Covered Offenses Subject to Reconsideration by a Sentencing Jury.**

**A. Mr. Johnson's Convictions Under 21 U.S.C. § 848 Rest on Violations of 21 U.S.C. § 841(b)(1)(A), Which Is a Covered Offense**

No matter how one looks at Mr. Johnson's convictions under § 848(e), they are covered offenses under the First Step Act. As Mr. Johnson noted in his initial Memorandum in Support of Motion for Reconsideration of Sentence Hearing Pursuant to the First Step Act of 2018 ("Memorandum"), the Western District of Virginia, this Court's sister jurisdiction, concluded that § 848 as a whole is a covered offense. *See United States v. Brown*, No. 3:08-cr-00011-1, 2020 WL 3106320, at *4 (W.D. Va. June 11, 2020) (Section 848 is a covered offense *in toto* "because at least one of the penalties . . . was modified by Section 2 or 3 of the Fair Sentencing

Act.").  The Government has not appealed that decision.  Nor has the Government addressed

*Brown* in its Opposition and has, therefore, waived its opportunity to do so.[1]

Instead, while recognizing that § 848(e) may specifically rest on a § 841(b)(1)(A)

predicate, the Government nevertheless argues that Mr. Johnson's § 848(e) convictions are not

covered offenses because they rest on an alternative basis: a continuing criminal enterprise

("CCE").  Opposition at 13-14.  The Government's argument, however, is no more than a sleight

of hand because, as the Fourth Circuit's opinion on Mr. Johnson's direct appeal makes clear, his

CCE convictions rest on § 841(b)(1)(A) offenses.  *United States v. Tipton*, 90 F.3d 861, 891, 903

(4th Cir. 1996).

In that opinion, as the Government acknowledges, Opposition at 9, the Fourth Circuit

vacated Count 1—conspiracy to distribute cocaine in violation of 21 U.S.C. § 846—on the basis

that Count 1 was a lesser included offense of each of Mr. Johnson's § 848 charges.  *Tipton*, 90

F.3d at 891, 903.  The conspiracy charged in Count 1 was, in turn, based upon violations of §

841(b)(1)(A).  *See* Second Superseding Indictment at 2, Docket Entry 115 (Count 1 alleges Mr.

Johnson did "possess with the intent to distribute, and to distribute . . . at least fifty (50) grams or

more of a mixture or substance described in Title 21, United States Code, Section

841(b)(1)(A)(ii), which contains cocaine base.").  To have Count 1 be a lesser included offense

of the § 848 offenses, all of the elements of Count 1 must have also been elements of § 848.

*Blockburger v. United States*, 284 U.S. 299, 304 (1932).  ("[T]he test to be applied to determine

---

[1]  Without directly addressing *Brown*, the Government cites *United States v. NJB*, 104 F.3d 630
(4th Cir. 1997), for the proposition that § 848(e) is a separate offense, and not an integral part
of an indivisible § 848 statute.  Opposition at 13.  This argument gets the Government
nowhere.  In *Brown*, the court found that § 848(a), which does not itself specifically mention
§ 841(b)(1)(A), was nevertheless a covered offense.  Therefore, consistent with *Brown*,
criminality under § 848(e) *does* specifically rest on violations of § 841(b)(1)(A).

*(cont'd)*

2

whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.").

The direct appeal opinion further underscores that Mr. Johnson's CCE violation in Count 2 was based on a series of violations of § 841.[2] *Tipton*, 90 F.3d at 884.[3] In other words, the Fourth Circuit has specifically determined that the CCE conviction, on which Mr. Johnson's § 848(e) offenses were based were, in turn, based on drug distribution offenses charged under § 841(b)(1)(A). Thus, it is the law of this case that § 841(b)(1)(A) offenses were the predicates for the § 848(e) offense, which the Government is not free to dispute. Accordingly, Mr. Johnson's § 848(e) convictions are covered offenses.

**B. The Government Is Not Helped by the Out-of-Circuit Cases It Cites**

While conceding that its position in this case does not align with the holdings of courts within the Fourth Circuit, Opposition at 14 n.1, the Government seeks to persuade this Court with out-of-circuit authority that § 848(e) is not a covered offense. The Government lacks any convincing basis for asking this Court to disregard relevant and well-reasoned authority for two inapposite cases from the Second and Sixth Circuit.

---

[2]    The Government does not dispute that Mr. Johnson's convictions for possession with intent to distribute in violation of § 841(a)(1)—Counts 31 and 32 of the indictment—are covered offenses. Opposition at 18 n.2.

[3]    As the Fourth Circuit explained in its direct appeal opinion, Count 2 "identified and incorporated by reference all violations of 21 U.S.C. §§ 841 and 846 charged against the appellants elsewhere in the indictment . . . , including the conspiracy charged [under § 846] in Count 1 [and] the drug distribution jointly charged [under § 841(b)(1)(A)] in Count 32." *Id.*; *see also* Second Superseding Indictment at 6, Docket Entry 115 (Count Two charges Mr. Johnson with "engag[ing] in a Continuing Criminal Enterprise, that is, . . . violat[ing] Title 21, United States Code, Section 841 and 846" as "part of a continuing series of violations.").

*(cont'd)*

3

The Government cites *United States v. Guerrero*, 813 F.3d 462 (2d Cir. 2016), for the proposition that because Mr. Johnson possessed the requisite quantity of crack under § 841(b)(1)(a) at the time the § 848 offense was committed, his liability under § 848(e)(1)(a) is unchanged.  Opposition at 15-16.[4]  However, *Guerrero*, which predates the First Step Act, is inapposite.  In *Guerrero*, the defendant was convicted prior to, but sentenced after, the enactment of the Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372, and argued on appeal for vacatur of his conviction based on retroactivity of the Fair Sentencing Act, which was prospective only.  *Id.* at 464-65.  *Guerrero* does not address, and bears no relevance to, a court's "covered offense" determination for purposes of resentencing under the First Step Act.

Moreover, the Government's position is inconsistent with the remedial purpose of the First Step Act, which was based on the recognition that sentences for crack offenses prior to enactment of the Fair Sentencing Act were too severe.  *See, e.g.*, *United States v. Gravatt*, 953 F.3d 258, 260 (4th Cir. 2020).  Congress enacted the Fair Sentencing Act "in response to extensive criticism about the disparity in sentences between crack cocaine offenses and powder cocaine offenses."  *Id.* (quoting *United States v. Black*, 737 F.3d 280, 282 (4th Cir. 2013)).  Congress also enacted the First Step Act to address "disparities between sentences for crack cocaine offenses and powder cocaine offenses [that] remained for defendants sentenced before . . . the effective date of the Fair Sentencing Act."  *Id.*; *see also Wirsing*, 943 F.3d at 186 ("Congress's clear intent was to apply the Fair Sentencing Act to pre-Fair Sentencing Act

---

[4]   The Fourth Circuit has held that—in the absence of a plea statement or special jury verdict specifying the amount of a drug that was distributed—a court may not make its own finding, regardless of the evidence presented by the Government at trial.  *United States v. Wirsing*, 943 F.3d 175, 181 (4th Cir. 2019).  There was no such special jury verdict in Mr. Johnson's case.

4

offenders."). Thus, the Government's reliance on *Guerrero* is both misplaced and inconsistent with the legislative purpose of the statute.

Next, the Government relies on *United States v. Snow*, 967 F.3d 563 (6th Cir. 2020), to argue that § 848(e)(1)(A) is not a "covered offense" because it constitutes a separate offense, not a sentencing enhancement, and thus under the Fair Sentencing Act modifications, Mr. Johnson would be subject to a vacatur of his conviction instead of a lower sentencing range. As an initial point, the Government's position that § 848(e)(1)(A) constitutes a separate offense is unpersuasive. *See, e.g.*, *Brown*, 2020 WL 3106320, at *3-4 (explaining that the most "straightforward" understanding of § 848 is that the "statute of conviction is § 848 as a whole," with the specific subsections setting forth the penalties) (citing *United States v. Smith*, 954 F.3d 446, 450 (1st Cir. 2020))).

Most importantly, Mr. Johnson has not argued that the Fair Sentencing Act modifications to § 841(b)(1)(A) render him not guilty under § 848(e)(1)(A) or that his convictions should be vacated under the First Step Act. Mr. Johnson simply argues that his convictions are "covered offenses" under the First Step Act because they are based on violations of § 841(b)(1)(A)— which the Fair Sentencing Act modified—and thus his sentences are subject to reconsideration, just as the First Step Act contemplates. Indeed, after considering the necessary sentencing factors, the sentencer may impose the same sentence that Mr. Johnson currently has, or a reduced sentence, if that reduced sentence is "sufficient, but not more than necessary" to effectuate the goals described in 18 U.S.C. § 3553. *See* Pub. L. No. 115-391, § 404(c), 132 Stat. 5194, 5222 (2018) ("Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section."). Thus, the Government's reliance on *Snow* is also unpersuasive.

Furthermore, the Government has conceded in similar cases that "covered offenses" include those that were indirectly modified by sections 2 and 3 of the Fair Sentencing Act because they rested on a violation of § 841(b)(1)(A). *See, e.g.*, United States' Mot. to Remand at 8, *United States v. Maupin*, No. 19-6817 (4th Cir. Aug. 29, 2019), ECF No. 26 (agreeing that RICO conviction was a "covered offense" under the First Step Act because the violation rested on a predicate offense involving the distribution of crack cocaine); *United States v. Davis*, No. 5:93-cr-30025, 2020 WL 1131147, at *2 (W.D. Va. Mar. 9, 2020) ("The government acknowledges that the defendant is eligible for a sentence reduction under the 2018 FSA for . . . Count Two due to § 848's requirement of a § 841(b)(1)(A) violation."), *appeal filed*, No. 20-6383 (4th Cir. Mar. 20, 2020).

### C.  Mr. Johnson Is Entitled to Have His Capital Sentences Reconsidered by a Jury

The Government's contention that the First Step Act is inapplicable to capital offenses lacks merit.

First, the Government spends several pages of its Opposition attacking a position that Mr. Johnson has not taken in this litigation—that the "First Step Act permits courts[5] to disturb jury-imposed death sentences as an exercise of discretion under § 404(b)." Opposition at 18-20.  In opposition to Mr. Johnson's request for resentencing, the Government contends that the "First Step Act did not displace § 848(e)'s detailed provisions concerning imposition of the death penalty." *Id.* at 18.  Mr. Johnson, though, has not argued that any of these detailed provisions are displaced by the First Step Act.  To the contrary, because Mr. Johnson's § 848(e) offenses are covered offenses for purposes of the First Step Act, he requests jury consideration consistent with the provisions of the Anti-Drug Abuse Act of 1986, Pub. L. No. 99-570, 100 Stat. 3207 (the

---

[5]    The Government here apparently means a district court judge.

"ADAA").  Specifically, the applicable ADAA provisions state that: (1) a sentencing jury must be impaneled pursuant to § 848(i); (2) the sentencing jury receives aggravating and mitigating evidence pursuant to § 848(j); and (3) the sentencing jury determines whether a sentencing reduction from death to life imprisonment is appropriate, consistent with the provisions of § 848(k).  If the sentencing jury determines that a reduction to a life sentence is appropriate, a court must impose the sentence determined by the jury pursuant to § 848(*l*) (1988) (repealed 2006).

Contrary to the Government's claim, the First Step Act does not bar resentencing in capital cases.  The Fourth Circuit has recognized that when Congress passes a law that confers rights on capital and noncapital defendants and the wording of the law fails to consider the special and necessary aspects of capital jurisprudence, courts have an obligation to shape equitable relief for the capital defendants notwithstanding that the express statutory language of a statute only provides a mechanism for relief to non-capital defendants.  *United States v. Stitt*, 459 F.3d 483, 485 (4th Cir. 2006) ("*Stitt IV*") (holding that because *Andrews v. United States*, 373 U.S. 334 (1963), required resentencing before a grant of relief pursuant to § 2255 could be appealed in a non-capital case, the same requirement necessarily applied in a capital case).  In other words, capital resentencing can, and must, be done by a jury pursuant to the First Step Act notwithstanding the Government's contention that the First Step Act does not apply to capital cases.

The Government points to nothing in the plain language of the First Step Act or in the legislative history to suggest that capital cases were meant to be excluded from relief.  Nor does the Government offer statutory or case law support to establish that capital defendants are not entitled to a jury resentencing under the First Step Act.  The purpose of the statute is to provide

7

for resentencing consideration for defendants sentenced under a regime that sentenced too harshly those defendants convicted of crack-related offenses. *See, e.g.*, *Gravatt*, 953 F.3d at 260. Under the holding of *Stitt IV*, and absent any evidence of legislative intent to the contrary, the First Step Act should not be read to exclude covered capital offenses or capitally-sentenced prisoners from resentencing consideration.

In this regard, the Government fails the tests of two of the cases upon which it relies. Opposition at 5 (citing *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612 (2018)), 18-19 (citing *United States v. Stitt*, 552 F.3d 345 (4th Cir. 2008) ("*Stitt V*")).  First, the Government, and not Mr. Johnson, seeks to suggest that the First Step Act and § 848(*l*) (1988) (repealed 2006) (and 18 U.S.C. § 3594) cannot be harmonized.  Given this, it is the Government's "heavy burden" to show that Congress intended the disharmony, *Epic Sys.*, 138 S. Ct. at 1624, and the Government fails to carry the burden.  Second, the Government, not Mr. Johnson, is resisting the effort to empanel a new sentencing jury, despite the fact that such a result is consistent with the First Step Act and compelled by § 848(*l*) (1988) (repealed 2006) (and § 3594).  The Government's approach in Mr. Johnson's case is the same flawed approach that led the Fourth Circuit to reverse in *Stitt IV*, and Mr. Johnson respectfully suggests this Court should reject the Government's position here.

## II.   Mr. Johnson's Mitigation Evidence Is Properly Considered by This Court or the Resentencing Jury

In its Opposition, the Government misapprehends Mr. Johnson's purposes in highlighting his mitigation evidence.  The First Step Act and the Fourth Circuit's cases interpreting and implementing the Act make clear that once a defendant has demonstrated he or she has committed a covered offense, that defendant is entitled to have a sentencer consider all evidence going to "the nature and circumstances of the offense and the history and characteristics of the

8

defendant," 18 U.S.C. § 3553(a)(1), to determine a sentence that is "sufficient, but not greater than necessary" to effectuate the purposes of § 3553(a)(2). *United States v. Chambers*, 956 F.3d 667, 674-75 (4th Cir. 2020) ("[T]here are generally no limitations on the types of character and background information a court may consider.").

In his initial Memorandum, Mr. Johnson sketched out four categories of evidence he intends to put before a sentencer to make this determination. Each of the four categories Mr. Johnson highlighted is an appropriate factor for a sentencer to consider, and these categories have also long been recognized as relevant to capital sentencing determinations. Capital sentencing determinations "require that the sentencer . . . not be precluded from considering *as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Lockett v. Ohio*, 438 U.S. 586, 604 (1978) (emphasis in original). "A process that accords no significance to relevant facets of the character and record of the individual offender or the circumstances of the particular offense excludes from consideration in fixing the ultimate punishment of death the possibility of compassionate or mitigating factors stemming from the diverse frailties of humankind." *Woodson v. North Carolina*, 428 U.S. 280, 304 (1976). While individualized sentencing in non-capital cases reflects "simply enlightened policy," in capital cases, "the fundamental respect for humanity underlying the Eighth Amendment" makes such consideration "constitutionally indispensable." *Id.* The Supreme Court has long held that this includes consideration of a defendant's age, difficult family history, and emotional disturbance, *Eddings v. Oklahoma*, 455 U.S. 104, 113 (1982), his record as a well-behaved and well-adjusted prisoner, *Skipper v. South Carolina*, 476 U.S. 1, 4-5 (1986), and his disadvantaged background and diminished mental capacity, *Wiggins v. Smith*, 539 U.S. 510, 512-13 (2003).

9

While Mr. Johnson provided a description of his evidence to give this Court the flavor of the evidence he would present to a jury in his initial Memorandum, he highlights a few points about these categories in reply.

First, although much of the evidence Mr. Johnson has highlighted in his Memorandum was presented at trial, a resentencing decision must be based upon all of the evidence now available. *Chambers*, 956 F.3d at 675 ("Having concluded that the § 3553(a) factors apply in the § 404(b) context, post-sentencing evidence 'may be highly relevant to several of [those] factors.'") (quoting *Pepper v. United States*, 562 U.S. 467, 491 (2011)). This includes the fact, acknowledged by the Government, that he has a 27-year unblemished record in prison—stark evidence that he is not a danger in prison. Memorandum at 34-36; Opposition at 27.[6] At the time of his trial and initial penalty-phase hearing, the jury had no such evidence on which to base its sentencing decision, but this is often a powerful determiner of sentences for courts and juries.

Second and notably, the Government does not respond to most of Mr. Johnson's other evidence in support of imposing a reduced sentence after reconsideration of the § 3553 factors, including (1) the abuse and neglect he suffered at the hands of his caretakers; (2) his persistent school failure and inability to learn; (3) his mother's abandonment of him; (4) his discharge into the community after a residential stay without independent living skills or support; and (5) his vulnerability to being manipulated by others in light of his desire to be accepted. Memorandum at 13-33.

---

[6]   Section 3553(2)(C) states that a sentencer should consider the sentence sufficient "to protect the public from further crimes of the defendant." In its Opposition, the Government notes it "is not aware of any prison infractions related to Johnson." Opposition at 27 (observing also Mr. Johnson's participation in art, exercise, and general educational classes including water color, colored pencil, charcoal pencil, crochet, yoga, abdominal techniques, and GED courses).

10

Third, the Government comments only on the issue of Mr. Johnson's intellectual impairments, dismissing it on the basis that "a First Step Act motion is not a vehicle to raise arguments of a defendant's mental health at the time of his offense conduct and sentencing." Opposition at 22. Actually, the First Step Act is precisely a vehicle for presenting any and all evidence that would mitigate the sentence a defendant received, which includes arguments about his mental health and impairments. Whether or not Mr. Johnson will eventually be permitted to argue to a jury that, under current medical and legal standards, he should be deemed intellectually disabled, he is not making that argument here. He has only described in his First Step Act motion his history: as a child, teenager and young adult who was never able to read beyond a second- or third-grade level or to count money; soiled his bed until adolescence; was deemed by the professionals who ran the institutional home to which he was sent when his mother abandoned him to be among the most severely impaired special needs child they had ever worked with; was consistently in special education classes and was unable to pass school competency tests. Memorandum at 18-31. Section 3553(a)(1) specifically instructs a court to consider a defendant's history and Mr. Johnson's mental impairments are a critical aspect of his history.

Mr. Johnson acknowledges that the crimes he committed were extremely violent and caused great pain, and that for them he must never leave prison. However, across the country, prosecutors have chosen not to seek death, and courts and juries have determined not to impose death, on defendants who committed crimes that were equally aggravated. Memorandum at 36-38. This includes Mr. Johnson's own co-defendant, Vernon Lance Thomas, for whom the

11

Government itself withdrew its request for a death sentence despite his being guilty of four CCE murders,[7] presumably because of Mr. Thomas's own borderline intellectual disability.[8]

Mr. Johnson's struggles and impairments and his model incarceration history are highly relevant considerations to any decision about his sentence; he should not be foreclosed from raising any of them.

### III.     The First Step Act and Fair Sentencing Act Were Intended to Correct Racial Disparities in Sentencing, as Exemplified by This Case

Finally, the Government argues that penalties for crack-related offenses were changed because of findings that crack is associated with less violence than previously thought, and that this rationale undermines Mr. Johnson's request for reconsideration of his sentences for his § 848 convictions.  Opposition at 3.  However, the Government's reasoning warps the purpose of both the First Step Act and the Fair Sentencing Act, which were enacted to improve the vastly disparate racial impact of the previous sentencing guidelines pertaining to crack versus powder cocaine.[9]

These race disparities are evident in Mr. Johnson's case, which concluded 17 years prior to the passage of the Fair Sentencing Act.  The CCE statute pursuant to which he was prosecuted "is sometimes called 'the kingpin statute' because it is designed to apply to ringleaders of large-

---

[7]   Memorandum at 36-38.

[8]   Mr. Thomas presented evidence to the Government pre-trial that he had an IQ of 71.  *Id.* at 36-37; Mem. Ex. 31, ECF No. 39-32.

[9]   At the time Mr. Johnson was sentenced in this case, the sentencing disparity between crack and powder cocaine fell most heavily on African-American defendants.  *See, e.g.*, *Kimbrough v. United States*, 552 U.S. 85, 98 (2007) (noting Sentencing Commission's finding that "[a]pproximately 85 percent of defendants convicted of crack offenses in federal court are black; thus the severe sentences required by the 100-to-1 ratio are imposed primarily upon black offenders" (citation omitted)).

scale illegal narcotics operations." *United States v. Webster,* 639 F.2d 174, 180 (4th Cir. 1981); *see also Richardson v. United States,* 526 U.S. 813, 819 (1999). Just as Mr. Johnson's motion does not impact the validity of his § 848 convictions, the racial injustice landscape for the Fair Sentencing Act and the First Step Act does not invalidate his § 848 drug kingpin convictions. However, the racial injustice backdrop is relevant to the sentencer because it provides context to understand Mr. Johnson's particular situation. For example, despite Mr. Johnson's involvement in drug distribution activities, he had no assets and was described as living in squalor during the period when he was engaged in drug trafficking, including in Trenton and in Richmond.

The Presentence Investigation Report (the "PSR") confirms that Mr. Johnson had a "net worth of zero and no liquid assets." PSR at 29. Indeed, Mr. Johnson's living conditions in Trenton, New Jersey, where he lived for the majority of the drug conspiracy, are described as a "'shack' that appeared to be a crack house," a "a real hovel" that was "old, dark, and dirty," that "was occupied at times by as many as 15-20 guys," and was "never very clean" with "Chinese take-out boxes [ ] strewn all over the house." Mem. Ex. 6, ECF No. 39-7; Mem. Ex. 16, ECF No. 39-17. Mr. Johnson had no car, no substantial jewelry and no items of substantial value, and he could not afford to rent an apartment, let alone own a home. 1/27/93 Tr. 2737:21-24, 2738:2-9 (identifying Mr. Johnson's "expensive" possessions as "Timberland boots and Guess jeans") (Ex. A); 6/1/93 Tr. 16:24 - 17:17 (Defense closing argument) (Ex. B); 1/13/93 Tr. 861:5-17 (Defense opening statement) (Ex. C). This is certainly mitigating evidence that a jury should consider when determining whether a sentence reduction is appropriate in Mr. Johnson's case, in addition to the compelling evidence regarding his childhood, upbringing, and mental capacity.

## CONCLUSION

For the reasons set forth above and in Mr. Johnson's Memorandum, Mr. Johnson respectfully requests that this Court conclude that his convictions under Counts 2, 8, 11, 17-19, 24, 25, 31, and 32 are covered offenses under Section 404 of the First Step Act and grant him a capital resentencing hearing.

Dated: October 8, 2020

Respectfully submitted,

/s/

David E. Carney, VA Bar # 43914
Donald P. Salzman*
Lotus D. Ryan, VA Bar # 71425
Skadden, Arps, Slate, Meagher & Flom, LLP
1440 New York Avenue, NW
Washington, DC 20005
Telephone: (202) 371-7246
Fax: (202) 661-8295
Email: david.carney@skadden.com

Alexander C. Drylewski*
Judith A. Flumenbaum*
Skadden, Arps, Slate, Meagher & Flom, LLP
One Manhattan West
New York, NY 10001
Telephone: (212) 735-3000

*Admitted Pro Hac Vice

*Counsel for Corey Johnson*

14

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of October 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send notification of such filing to all parties and counsel included on the Court's Electronic Mail notice list.

/s/
David E. Carney, VA Bar # 43914
Skadden, Arps, Slate, Meagher & Flom, LLP
1440 New York Avenue, NW
Washington, DC 20005
Telephone: (202) 371-7246
Fax: (202) 661-8295
Email: david.carney@skadden.com