# EXHIBIT C

MR. HENDERSON:  Judge, in light of the order the Court sent, I have previously made arrangements to have a hearing in Richmond at 9 o'clock in the morning.  I don't know that I will be able to be here by 9:30.

MR. WHITE:  We really don't have that more to pick.

THE COURT:  We can do it without you.  I think we will be fine.  62.  We might get enough.

(Proceedings adjourned at 6:31 p.m.)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

-----------------------------------------

UNITED STATES OF AMERICA,

                              Plaintiff;

    v.                              CRIMINAL ACTION
                                      92CR68
RICHARD TIPTON, CORY JOHNSON,
JAMES H. ROANE, JR., AND
SANDRA REAVIS,
                              Defendants.

-----------------------------------------
                    VOLUME III

```
                         January 13, 1993
                         Richmond, Virginia
                            10:00 a.m.

BEFORE:            HONORABLE JAMES R. SPENCER
                   United States District Judge


APPEARANCES:      HOWARD C. VICK, JR., ESQ.
                  WILLIAM H. PARCELL, III, ESQ.
                  Office of the United States Attorney;
                       Counsel for Government;

                  ROBERT P. GEARY, ESQ.
                  ERIC D. WHITE, ESQ.
                       Counsel for Defendant Tipton;
                  CRAIG S. COOLEY, ESQ.
                  JOHN F. McGARVEY, ESQ.
                       Counsel for Defendant Johnson;
                  DAVID P. BAUGH, ESQ.
                  ARNOLD R. HENDERSON, V, ESQ.
                       Counsel for Defendant Roane;
                  ROBERT J. WAGNER, ESQ.
                       Counsel for Defendant Reavis.
                     JEFFREY B. KULL
                  OFFICIAL COURT REPORTER.
```

0671

(January 13th, 1993 at 9:35 a.m.  United States versus Richard Tipton, et al., the third day of trial.)

(A juror entered Chambers.)

THE COURT:  This is Ava K. Holloway.

BY THE COURT:

Q    Ms. Holloway, just have a seat.  Ms. Holloway, I have got to ask you a few questions.  And before I ask these questions of you, I need to give you some information.  What I want you to understand is that this is a trial that could possibly proceed in two stages.  The first stage is when the government would put on its evidence in an attempt to prove the defendants guilty beyond a reasonable doubt.  Now, you would listen to all of that evidence, I would advise you as to the law, the jury would go out and decide whether or not the defendants are guilty or not guilty.  That's the first stage.

The second stage is if you all were to find the defendants guilty of certain of these charges, then we would proceed to a sentencing or penalty phase.  This is the second stage.  This is when the government would have the opportunity to present or bring to your attention aggravating evidence, try to convince you that the death penalty is appropriate in

0672

this case.  The defense would have the opportunity to

Mr. Gaiters being a capital defendant.

MR. COOLEY:  That might be true of the government.  His actions qualify him is what I said, Judge, and that's evidence.

THE COURT:  I think that's fair.

MR. COOLEY:  Sterling Hardy is another one of the government's bounty hunters.  In his opening statement, Mr. Vick said, "not an angel of a man." That is truly a masterful understatement.  The information is that Sterling Hardy participated in the events of these killings.  The government's information is that Sterling Hardy personally directed the killing of Linwood Chiles.  Sterling Hardy, by his actions, is subject to the potential of capital punishment.  But no more.  No more.  Because he is a bounty hunter who has joined the team.

There are 30 other felons, convicted or admitted, also looking for their reward, their silver, their money, their immunity, their 5K.  They will allege that these young folks, all of these young folks, are members of an ongoing Continuing Criminal Enterprise and that they reaped substantial income.  But the evidence will belie that, ladies and gentlemen.  Cory Johnson came to Richmond in October of 1991, October of 1991, for the first time.  Cory knew Richard Tipton, but he never met James Roane until December or later, December of 1991 or later. Cory owned no car.  You are not going to hear any witness testify Cory had a car.  Cory had owned no truck.  He had no BMW, no Mercedes.  He didn't even have a 1979 Pontiac.  He had no vehicle.  Cory, I think you will hear, owned no house, couldn't rent an apartment, generally lived with four, five, sometimes seven and eight other folks in an apartment.  Cory, the evidence will show, had no bank account, no substantial cash holdings.  Cory had no flashy clothes, no jewelry.  Cory had not even small assets, much less substantial assets, as the government alleges and must prove to establish the Continuing Criminal Enterprise.

MR. VICK:  That's a misstatement, also.  We need not prove substantial assets.  We need only prove there was substantial income, money generated.

THE COURT:  That is correct.  The objection will be sustained.

BY MR. COOLEY:

Q    I apologize.  That's correct.  The evidence will show, ladies and gentlemen, that Cory Johnson was not a member of a Continuing Criminal Enterprise.  The evidence from the bounty hunters will suggest that Cory was involved in some street-level sales.  But a kingpin?  Never.  A manager?  Never.  Supervisor?