**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

**Richmond Division**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal Case No. 92CR68 |
| v. | ) | **CAPITAL CASE** |
| | ) | |
| RICHARD TIPTON, III. | ) | |

**DEFENDANT TIPTON'S REPLY IN SUPPORT
OF HIS MOTION FOR REDUCED SENTENCES
UNDER SECTION 404 OF THE FIRST STEP ACT**

Defendant Richard Tipton, III, by and through undersigned counsel,

respectfully submits the following reply in support of his motion for reduced

sentences for the interrelated offenses charged in Counts 3, 24, 25, 32, and 33.[1]

The Government's Opposition provides no authority for precluding reconsideration

of Mr. Tipton's sentences for those counts, which include his sentences of death, as

each charged him with offenses "covered" by the First Step Act of 2018.

---

[1]Counts 3, 24, and 25 each charged crimes pursuant to 21 U.S.C. §841(e)(1)(a) and 18 U.S.C. §2.  Counts 32 and 33 each charged crimes pursuant to 18 U.S.C. §841(a)(1) and 18 U.S.C. §2).  The Government concedes that Mr. Tipton is "likely eligible for a sentence modification on Counts 32 and 33." ECF 54 at 17, n. 2.

## I.    ARGUMENT

### A. The Government's Opposition Relies Upon An Erroneous Reading And Inapposite Authority

The Government devotes the bulk of its Opposition to arguing that Mr.

Tipton's convictions under § 848(e)(1)(A) are not "covered offenses" under §

404(a) of the First Step Act.[2]  The Government notes that "§ 848(e)(1)(A) has

three prongs," only one of which "requires proof of a violation § 841(b)(1)(A),"

while the other two require only that "the murder be in relation to a continuing

criminal enterprise under 21 U.S.C. § 848[.]"  ECF at 12.  The Government then

argues that because "Tipton was convicted in Count 2 of engaging in a continuing

criminal enterprise," his § 848(e)(1)(A) convictions "rested on those findings," and

he "did not sustain criminal liability under § 848(e)(1)(A) by having the

government rely on the prong requiring a § 841(b)(1)(A) violation." *Id.*

---

[2]The Government argues almost in passing that this Court should not modify Mr. Tipton's sentences even if it recognizes that his offenses are "covered" by the First Step Act.  ECF at 9.  The Government relies on the Fourth Circuit's decision in *United States v. Wirsing* to argue that "relief may be denied to 'defendants who almost certainly would not have faced a different sentence if they had been charged, convicted, and sentenced after the Fair Sentencing Act.'" *Id.* (quoting 943 F.3d 175, 179 (4th Cir. 2019)).  Mr. Tipton fits within that category, the Government asserts, because the amount of crack cocaine attributed to him by the *PSR* "far exceeded the new 280-gram threshold imposed by the Fair Sentencing Act." *Id.* at 9-19 (citing PSR ¶ 57). But the Government's own authority defeats that argument. *Wirsing* holds that this Court may not make its own finding of a drug quantity unless the defendant admitted to a specific amount in a plea statement or a special jury verdict specified the amount distributed. *Wirsing*, 943 F.3d at 181.  Mr. Tipton made no such statement, and his jury entered no such verdict; a PSR substitutes for neither.

2

The opinion of the Fourth Circuit on direct appeal demonstrates that the Government is wrong.  In that decision, the Fourth Circuit vacated Mr. Tipton's conviction of conspiracy to distribute cocaine in violation of § 846—a charge detailed in Count One of his indictment.  The Circuit so decided because it concluded that Mr. Tipton's § 846 conspiracy conviction was *a lesser included offense* of his convictions under § 848.  *United States v. Tipton*, 90 F.3d 861, 891, 903 (4th Cir. 1996).  In keeping with Supreme Court precedent, the Circuit could not have so ruled unless it determined that *all of the elements* of his § 846 conspiracy conviction were necessarily encompassed by the elements of his § 848(e)(1)(A) convictions.  *See Blockburger v. United States*, 284 U.S. 299, 304 (1932) ("[T]he test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.").

The record in this case establishes unequivocally that Mr. Tipton's § 846 conviction was based on a conspiracy to violate *§ 841(b)(1)(A).*  That is clear from his indictment, which charges him with conspiracy to "possess with the intent to distribute, and to distribute…at least fifty (50) grams or more of a mixture or substance described in Title 21, United States Code, *Section 841(b)(1)(A)(ii),* which contains cocaine base."  It is also clear from the instructions given his jury, which stated that, in order to convict Mr. Tipton of the § 846 conspiracy charged in

3

Count One, they "*must find* beyond a reasonable doubt that the conspiracy distributed or possessed with intent to distribute, or attempted to possess with intent to distribute *at least 50 grams or more of crack cocaine.*"  T. 3203-3204 (emphases added).  Moreover, the Circuit also found that Count Two "identified and incorporated by reference all violations of 21 U.S.C. § § 841 and 846 charged against the appellants elsewhere in the indictment. . . . , including the conspiracy charged [under § 846] in Count 1 [and] the drug distribution jointly charged [under § 841(b)(1)(A)] in Count 32".  *Tipton*, 90 F.3d, 884.  *See also* Count Two of superseding indictment, charging Mr. Tipton with "engag[ing] in a Continuing Criminal Enterprise, that is, . . . violat[ing] Title 21, United States Code, Section 841 and 846" as "part of a continuing series of violations."  In sum, then, Mr. Tipton's § 848(e)(1)(A) convictions rested upon a conspiracy to violate § 841(b)(1)(A), as charged in Count One, and on violations of § 841(b)(1)(A), as charged in Count Two.  Accordingly, the law of the case demonstrates that his § 848(e)(1)(A) convictions are premised upon violations of § 841(b)(1)(A) and, accordingly, covered offenses.

Indeed, in similar cases, the Government has conceded that offenses that rest upon violations of § 841(b)(1)(A) are "covered offenses."  *See, e.g.*, United States' Mot. to Remand at 8, *United States v. Maupin*, No. 19-6817 (4th Cir. Aug. 29, 2019), ECF No. 26 (agreeing RICO conviction was "covered offense" under the

First Step Act where "defendant's statutory maximum was increased to life as a result of racketeering activity involving cocaine base that would no longer carry a maximum penalty of life imprisonment"); *United States v. Davis*, Case No. 5:93CR30025-003, 2020 WL 1131147, at *2 (W.D. Va. Mar. 9, 2020) ("The government acknowledges that the defendant is eligible for a sentence reduction under the 2018 FSA for...Count Two due to § 848's requirement of a § 841(b)(1)(A) violation.").

Moreover, even if this Court were to conclude that Mr. Tipton's § 848(e)(1)(A) convictions did not rest upon violations of § 841(b)(1)(A), those convictions would still be "covered offenses" because—as recognized by the Western District of Virginia, this Court's sister jurisdiction--§ 848 *as a whole* constitutes an indivisible covered offense. *United States v. Brown*, No. 3:08-CR-00011-1, 2020 WL 3106320 *4 (W.D. Va. June 11, 2020). In *Brown*, the Court held that the most "straightforward" understanding of § 848 is that the "statute of conviction is § 848 as a whole, particularly given the brief nature of the statute and its focus on one type of unlawful activity"—specifically, "continuing criminal enterprises related to controlled substances" —while subsections such as, *inter alia*, § 841(e) "set forth the penalties for specific types of violative conduct." *Brown*, 2020 WL 3106320 at *4 (citing *United States v. Smith*, 954 F.3d 446, 450 (1st Cir. 2020)). The Court noted this as to § 848(e) *specifically*, observing that it

5

"even begins with the phrase 'In addition to the other penalties set forth in this section.'" *Id.* Accordingly, the Court concluded that the Defendant was eligible for resentencing under the First Step Act "because at least one of the penalties [included in § 848] was modified by Section 2 or 3 of the Fair Sentencing Act[.]" *Id.* The Government has neither appealed that decision nor addressed it in its Opposition to Mr. Tipton's motion.[3]

### B. The Government's Position Finds No Support Inside or Outside this Circuit

The Government acknowledges that the district courts within this circuit have rejected its argument that § 848 convictions are not covered offenses. ECF 54 at 13, n. 1. In the face of this contrary authority, the Government tries to change the subject, misrepresenting the relief that Mr. Tipton seeks so that it can argue that his motion is foreclosed by the holdings of two cases from the Second and Sixth Circuit, respectively. None of these arguments is availing.

The Government first cites the Second Circuit's 2016 decision in *United States v. Guerrero*—which it characterizes, revealingly, as "a similar attempt to

---

[3]While never mentioning *Brown*, the Government cites *United States v. NJB*, 104 F.3d 630 (4th Cir. 1997), to assert that § 848(e) is a "separate substantive offense," rather than a penalty provision within an indivisible § 848 statute, and is therefore severable from its predicates. ECF 54 at 12. This argument ignores *Brown*'s holding that § 848(a), which makes no specific mention of § 841(b)(1)(A), was nevertheless a covered offense. Per *Brown*, then, criminality under § 848(e) does specifically rest on violations of § 841(b)(1)(A).

obtain relief under the Fair Sentencing Act from an § 848(e) *conviction.*" ECF 54 at 14 (citing 813 F.3d 462 (2nd Cir. 2016) (emphasis added). *Guerrero*, the Government argues, establishes that Mr. Tipton's "liability" under § 848(e)(1)(a) is unchanged because he possessed the quantity of crack cocaine required by § 841(b)(1)(a) at the time of his § 848 offenses.  ECF 54 at 14.  No matter how the Government stretches *Guerrero*, however, it does not fit Mr. Tipton's motion.  As the Government acknowledges, the defendant in *Guerrero* was convicted prior to the enactment of the Fair Sentencing Act but was sentenced after it took effect. *Guerrero*, 813 F.3d at 464–65.  After the Supreme Court held that the Fair Sentencing Act "applied retroactively to defendants who committed crack cocaine offenses before [its enactment], but who were not sentenced until after that date," the defendant sought the *vacatur of his conviction*, arguing that the Government, which had proven only the lesser amount required before the Fair Sentencing Act, had "failed to establish *an element* of the charged murder offense[.]"  *Id.* at 465 (emphasis added).

The Government conflates "liability" and "conviction" to obscure the fact that *Guerrero* speaks to none of the questions before this Court.  In the first place, Mr. Tipton does not seek the *vacatur* of his convictions under § 848(e); as the very

caption of his motion states, he seeks *reduced sentences* only.  ECF 24 at 1.[4]

Accordingly, *Guerrero* is fundamentally inapposite.  Secondly, *Guerrero* has—and

given the date of its issuance, could have—no relevance for the question of

whether § 848 is a "covered offense" under the First Step Act.

The Government next argues that § 848(e)(1)(A) is not a "covered offense"

by citing the Sixth Circuit's decision in *United States v. Snow.* ECF 54 at 15-16

(citing 967 F.3d 563, 564 (6th Cir. 2020)).  In *Snow*, the defendant challenged his §

848(e)(1)(A) conviction on the ground that it required "an offense punishable

under section 841(b)(1)(A)" as a predicate, "and thus partly incorporates the

elements of the latter subsection."  *Snow*, 967 F.3d at 564.  The § 841(b)(1)(A)

offense in *Snow* was "a conspiracy to distribute at least 50 grams of cocaine base—

the minimum amount then required to trigger [its] penalties," but now well below

the "threshold quantity" of 280 grams required by the Fair Sentencing Act.  *Id.*

The Sixth Circuit denied relief, reasoning that 848(e) could not be a covered

---

[4] The Government's argument also subverts the purpose of the First Step Act, which was enacted "in response to extensive criticism about the disparity in sentences between crack cocaine offenses and powder cocaine offenses," and in recognition that that sentences for crack cocaine were, prior to the enactment of the Fair Sentencing Act, too severe. *United States v. Gravatt*, 953 F.3d 258, 260 (4th Cir. 2020)(citing *United States v. Black*, 737 F.3d 280, 282 (4th Cir. 2013).  The First Step Act exists to empower Courts to address "disparities between sentences for crack cocaine offenses and powder cocaine offenses [that] remained for defendants sentenced before . . . the effective date of the Fair Sentencing Act." *Id.*; *see also Wirsing*, 943 F.3d at 186 ("Congress's clear intent was to apply the Fair Sentencing Act to pre-Fair Sentencing Act offenders.").

offense because, "*going forward*, a defendant cannot be convicted under §
848(e)(1)(A) for murder while engaged in a conspiracy to distribute less than 280
grams," and the First Step Act contemplated only the modification and not
"the *elimination* of a sentence, as would be required here." *Snow*, 967 F.3d at 565
(emphasis added).

Again, the First Step Act does not permit vacating or addressing the validity
of past *convictions*. The First Step Act entitles a defendant convicted of a covered
offense to have the sentence imposed for that conviction re-examined—no more,
no less. The Act neither anticipates nor provides that a modification of the
sentence imposed for a covered offense would at all alter the defendant's
conviction for that offense. The Sixth Circuit's reasoning would result in offenses
that expressly turn on drug quantities being treated as if they were not "covered
offenses"—particularly in cases in which the minimum amount was proven—as
there, too, "going forward" such a conviction would no longer be possible. That
would defeat the express purpose of the First Step Act.

The Government's purpose in tendering this out-of-circuit authority is the
same: to suggest that granting Mr. Tipton sentencing relief would be tantamount to
vacating his convictions. But that argument depends upon misrepresenting the
nature of Mr. Tipton's motion, as *Snow* is shaped by the prospect of a far broader
relief than he has sought here. Mr. Tipton has never asked this Court to vacate his

§ 848 convictions or suggested that they carry no liability.  While he contends that his sentences of death rest upon predicate offenses that would not authorize capital punishment if prosecuted today, he has cited that as a reason *to impose a lesser sentence*, not to remove any altogether.

Further, *Snow* does not grapple with the discretion inherent in the operation of the First Step Act; it seems to assume that the resentencing court would be bound by whatever sentence could or could not be imposed were the defendant convicted today.  One misreading of the act begets another, as its conclusion that § 848 is not a covered offense appears motivated by its distaste for the consequences that it has exaggerated through that misunderstanding.

Moreover, attempting to defeat Mr. Tipton's motion requires the Government to argue with itself.  Again, the Government has already conceded in similar cases that "covered offenses" include those that were indirectly modified by sections 2 and 3 of the Fair Sentencing Act because they rested on a violation of § 841(b)(1)(A).  *See* discussion of the Government's filings in *Maupin* and *Davis*, *supra* at 4.

In short, the Government's arguments turn on putting words in Mr. Tipton's mouth.  He asks that his sentences for the interrelated and covered offenses charged in Counts 3, 24, 25, 32, and 33, be reconsidered and reduced, as the statutory penalty for each has been modified by the Fair Sentencing Act; he does

not ask that his convictions for these offenses be vacated.  In short, he seeks sentencing relief for "covered" offenses, which is precisely what the First Step Act contemplates.

### C. Mr. Tipton Does Not Oppose Capital Resentencing By A Jury

Mr. Tipton has asked that his death sentences, imposed for covered offenses, be reconsidered pursuant to the provisions of the First Step Act.  The Government argues at length that the "First Step Act did not displace § 848(e)'s detailed provisions concerning imposition of the death penalty," in an evident attempt to persuade this Court that it cannot merely substitute a lesser sentence in place of Mr. Tipton's death sentence without the involvement of a jury.  ECF 54 at 17-19; *see, e.g.*, *id.* at 19 (First Step Act does not "permit[] courts to disturb jury imposed death sentences as an exercise of discretion under § 404(b).")  As Mr. Tipton's prayer for relief notes, however, he does not insist upon that; he accepts that the vacatur of his death sentences is merely a precondition to their reconsideration. ECF 24 at 25.  As his § 848(e) offenses are "covered" by the First Step Act, however, he requests jury consideration consistent with the provisions of the Anti-Drug Abuse Act of 1986, Pub. L. No. 99-570, 100 Stat. 3207, which provides: (1) that a sentencing jury be empaneled pursuant to § 848(i); (2) that the sentencing jury receives aggravating and mitigating evidence, pursuant to § 848(j); and (3) that the sentencing jury determines whether the reduction of Mr. Tipton's

sentences is appropriate, in keeping with the considerations and provisions of §

848(k).  Were the sentencing jury to determine that a reduction was appropriate,

this Court would impose the sentence determined by the jury pursuant to § 848(l)

(1988) (repealed 2006).

Moreover, the Government errs to the extent that it suggests that the First

Step Act does not authorize resentencing in capital cases.  The Government points

to nothing in the plain language or legislative history of the First Step Act that

expresses the intent to exclude capital cases from relief.  Nor can the Government

offer case law or statutory provisions establishing that defendants are not entitled

to a jury resentencing for a capital offense "covered" under the First Step Act.  On

the contrary—and as the Fourth Circuit has recognized— when Congress confers

rights upon all criminal defendants through a statute whose language provides an

express mechanism for relief to non-capital defendants alone, the courts must craft

relief for capital defendants using established equitable principles.  *United States v.*

*Stitt*, 459 F.3d 483, 485 (4th Cir. 2006) ("*Stitt IV*") (where *Andrews v. United*

*States*, 373 U.S. 334 (1963), required resentencing before § 2255 relief could be

appealed in non-capital case, same requirement necessarily applied in capital case).

The purpose of the First Step Act is to provide reconsideration of the

sentences imposed upon defendants pursuant to a regime that punished those

convicted of crack-related offenses with excessive harshness.  *See, e.g.*, *Gravatt*,

953 F.3d at 260. Per *Stitt IV* and in the absence of contrary legislative intent, the act should not be read as excluding capital offenses "covered" by its provisions; it should be read to require that an appropriate remedy, consistent with capital jurisprudence, be provided.

The very precedent on which the Government relies underscores this point. The Government cites *Epic Systems Corp. v. Lewi*s for the proposition that "[a] party seeking to suggest that two statutes cannot be harmonized, and that one displaces the other, bears the heavy burden of showing 'clearly expressed congressional intention' that such a result should follow." ECF 54 at 5, 17-18 (citing 138 S. Ct. 1612, 1624 (2018)). It is the Government, of course, that seeks to suggest that the First Step Act cannot be harmonized with § 848(l) (1988) (repealed 2006) and 18 U.S.C. § 3594. Yet the Government cannot, and does not, point to any expression of congressional intent that even approaches that "heavy burden."

The Government also cites *United States v. Stitt* ("*Stitt V*") to argue that "sentencing provisions are saved as part of the prosecution of a penalty even when a later change alters the availability of a particular sentence"; accordingly, this Court  should "continue to apply the original sentencing provisions" of §§ 848(g)-(r) despite their subsequent repeal. ECF 54 at 18 (citing 552 F.3d 345 (4th Cir.

13

2008).  Again, Mr. Tipton does not oppose his resentencing by a jury pursuant to those provisions.

### D. Mr. Tipton Has Made No "Improper" Arguments

The Government accuses Mr. Tipton of raising arguments "improperly" or "improvidently brought in a First Step Act motion."  ECF 54 at 19.  The Government refers to Mr. Tipton's detailing how he was "convicted of additional counts that, while not the subject of this motion, have been vacated or otherwise invalidated," and urging this Court, "[i]n considering whether to reduce Mr. Tipton's sentences," to "account for the effect of these improper convictions on the original sentencing determinations."  ECF 24 at 15-25.  Mr. Tipton has not argued that the First Step Act entitles him to any relief from those convictions; in anticipation of his sentences being re-examined, he has argued that they, and their prejudicial effects, should be excluded from consideration in any resentencing.

### E.  A Sentence of Less Than Death Is Not Out of Reach

The Government also suggests that Mr. Tipton's case is too aggravated to justify revisiting his death sentences, claiming that "the nature and circumstances of [his] offenses could hardly be worse."  EECF 54 at 21-22.  But there are numerous examples of federal capital juries returning life sentences in

14

exceptionally aggravated cases.[5]  Accordingly, the Government's suggestion that a

lesser sentence is necessarily out of reach is not well-taken.

---

[5]*See, e.g.*, *United States v. Naeem Williams*, D. HI No. 06-00079 (Defendant was convicted of beating to death his 5-year old daughter, whom he had routinely assaulted and tortured); *United States v. Larry Lujan*, D. NM No. 05-924, (Defendant convicted of kidnapping murder of a 16-year-old potential federal witness, whom he beat, forced to perform oral sex, and nearly decapitated with a meat cleaver; DNA also linked defendant to a double murder); *United States v. Steven Northington*, E.D. PA No. 2:07-CR-00550-RBS (Defendant convicted of arson that killed six people, including four children–ages 1, 10, 12 and 15; fire was set to retaliate against a federal informant); *United States v. Coleman Johnson*, W.D. VA No. 3:00CR00026 (Defendant convicted of using pipe bomb to kill pregnant ex-girlfriend to avoid having to pay child support); *United States v. Steven Green*, W.D. KY No. 5:06-CR-00019-TBR (Defendant convicted of murdering a family of four, including two children, and the rape and murder of their daughter); *United States v. Chevie Kehoe*, E.D. AR No. 97-243 (Defendant convicted of murdering of a family of three, including an 8-year old girl, in furtherance of a white supremacist racketeering; defendant disposed of victims by dumping them in a swamp); *United States v. Alexis Candelario-Santana*, D. PR No. 3:09-CR-00427-JAF (Defendant with 13 prior murder convictions convicted of another 20 murders, including the October 17, 2009 "Tombola Massacre," where eight people were killed and twenty wounded in a shooting at a bar); *United States v. Thomas Pitera*, E.D. NY No. 90-0424 (RR) (Defendant, a contract killer for the Mafia, convicted of six murders involving torture and dismembering); *United States v. Mohamed Rashed Daoud Al-'Owhali*, S.D. NY No. S6-98-cr-1023 (Defendant, an accomplice of Osama Bin Laden, convicted of organizing two bombings of American embassies in Africa, collectively killing 224 people and injuring more than 5,000); *United States v. Tommy Edelin*, D. D.C. No. 98-264 (Defendant ordered four murders as "drug kingpin" of DC-area gang known as the "1-5 Mob"; two victims were 14 and 19);  *United States v. Kenneth A. Tatum*, E.D. TX No. 2:99-CR-5 (Defendant, a member of the "Crips" gang, convicted of murdering three people, including a 63-year old retired minister; *United States v. Samuel Stephen Ealy*, W.D. VA No. 00-CR-104 (Defendant convicted of 1989 murder of a family of three); *United States v. Tyrone Williams*, S.D. TX No. 03-CR-221 (Defendant convicted of alien smuggling operation that led to 19 deaths of dehydration, overheating and suffocation in the back of the truck trailer he drove); *United States v. Zacarias Moussaoui*, E.D. VA No. 01-CR-455 (Defendant

15

## II.   CONCLUSION

For the reasons set forth herein and in his original motion, Mr. Tipton respectfully requests that this Court conclude that his convictions under Counts 3, 24, 25, 32, and 33 are covered offenses under Section 404 of the First Step Act and grant him reconsideration of his sentence in a manner consistent with capital jurisprudence.

---

conspired in the September 11, 2001, terrorist attacks on the World Trade Center and Pentagon, which killed more than 3,000); *United States v. John Richard Mayhew*, S.D. OH CR No. 0203-165 (Defendant murdered his ex-wife, her boyfriend, and his own 18-year old daughter, with whom he had incestuous relationship); *United States v. Michael Antonio Natson*, M.D. GA No. 4:05-CR-00021-CDL-GMF (Defendant, a military police officer, convicted of 2003 murder of a pregnant 23-year old Georgia Southern University student and leaving her remains in a remote part of Fort Benning, Georgia); *United States v. Jessie Con-Ui*, M.D. Pa. 13-CR-00123 (Defendant killed a federal correctional officer at the United States Penitentiary, while serving a life term for another murder).

Respectfully submitted on this, the 20th day of October, 2020.

*/s/Frederick R. Gerson*
Frederick R. Gerson
Durrette, Arkema, Gerson & Gill, PC
VSB #39968
Bank Of America Center
1111 East Main Street, 16th Floor
Richmond, VA 23219
fgerson@dagglaw.com

Stephen Northup
VSB #16547
Troutman Sanders LLP
P.O. Box 1122
Richmond, Virginia 23218-1122
(804) 697-1240
(fax) (804) 698-5120
steve.northup@troutmansanders.com

Gerald W. King, Jr.
Ga. Bar No. 140981
Jeffrey Lyn Ertel
Ga. Bar No. 249966
Federal Defender Program, Inc.
101 Marietta Street, Suite 1500
Atlanta, Georgia 30303
404-688-7530
(fax) 404-688-0768
Gerald_King@fd.org
Jeff_Ertel@fd.org

Admitted pro hac vice

Counsel for Richard Tipton, III.

17

## CERTIFICATE OF SERVICE

I certify that on this, the 20th day of October, 2020, the foregoing document

was served on all parties or their counsel of record though the CM/ECF system and

will be served electronically via email on the attorney listed below:

Richard Cooke, Esq.
U.S. Attorney's Office
Eastern District of Virginia
2100 Jamison Avenue
Alexandria, Virginia 22314
Richard.Cooke@usdoj.gov

This 20th day of October, 2020.

/s/Frederick R. Gerson
Frederick R. Gerson
Counsel for Richard Tipton, III