IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

UNITED STATES OF AMERICA,

    v.                                                                           Criminal No. 3:92cr68 (DJN)

JAMES H. ROANE, JR.,
        Defendant.

**MEMORANDUM OPINION**

Convicted serial killer James H. Roane, Jr. ("Defendant" or "Roane") comes before the Court with a Motion for Imposition of a Reduced Sentence Pursuant to Section 404 of the First Step Act (ECF No. 17) in a last ditch effort to avoid the just punishment imposed on him for his role in killing multiple people in furtherance of his drug enterprise. Defendant has challenged his convictions and sentences on numerous occasions throughout the years. But each time they survived appellate review. Defendant now seeks to latch onto laws passed to reduce the sentencing disparities between non-violent crack and powder cocaine offenses as a vehicle to reduce his sentences imposed for multiple drug-related murders. But those murders, and the statute under which a jury convicted Defendant for them, have nothing to do with the penalties for drug quantities that the First Step Act addressed. Because the First Step Act does not cover the offenses for which a jury convicted Defendant, the Court will deny his Motion.

**I.    BACKGROUND[1]**

**A.    Factual Background**

Defendant, along with Richard Tipton ("Tipton") and Cory Johnson ("Johnson")

---

[1]    The Court takes these background facts from the Fourth Circuit's opinion in *United States v. Roane*, 378 F.3d 382 (4th Cir. 2004), which recited the factual summary *in haec verba* from *United States v. Tipton*, 90 F.3d 861 (4th Cir. 1996), the opinion on the defendants' direct appeal.

(collectively, the "partners"), ran a substantial drug-trafficking conspiracy that lasted from 1989 through July of 1992. *Roane*, 378 F.3d at 389. The partners in the conspiracy obtained wholesale quantities of powder cocaine from suppliers in New York City, converted it into crack cocaine, divided it among themselves and then distributed it through a network of 30-40 street level dealers. *Id.* at 389-90. Typically, the partners took two-thirds of the proceeds realized from the street-level sales of their product. *Id.* at 390.

Over a short time in early 1992, the partners took part, in some form, in the murders of ten persons in the Richmond area. *Id.* These murders occurred "in relation to their drug-trafficking operation and either because their victims were suspected of treachery or other misfeasance, or because they were competitors in the drug trade, or because they had personally offended one of the 'partners.'" *Id.* The murders described below directly implicated Defendant.

On January 4, 1992, Roane and Tipton drove Douglas Talley, an underling in disfavor for mishandling a drug transaction, to the south side of Richmond. *Id.* Roane grabbed Talley and Tipton stabbed him repeatedly for three to five minutes. *Id.* Talley died from eighty-four stab wounds to his head, neck and upper body. *Id.*

On January 13, 1992, Roane and Tipton went to the apartment of Douglas Moody, a suspected rival in their drug-trafficking area, and Tipton shot Moody twice in the back. *Id.* Roane chased down the fleeing Moody and stabbed him eighteen times, killing him. *Id.*

On January 14, 1992, Roane and Johnson located Peyton Johnson, another rival drug dealer, at a tavern. *Id.* Shortly after Roane left the tavern, Cory Johnson entered and fatally shot Peyton Johnson. *Id.*

On January 29, 1992, Roane pulled his car around the corner of an alley, got out and shot

2

Louis Johnson, who had threatened one of the partners while acting as a bodyguard for a rival drug dealer. *Id.* Roane first shot Louis Johnson, and then Cory Johnson and Lance Thomas ("Thomas") got out of Roane's car and shot Louis Johnson again. *Id.* Louis Johnson died from these gunshot wounds. *Id.*

On February 1, 1992, Roane, Johnson and Thomas went to the apartment of Torrick Brown, who had given Roane trouble. *Id.* After the three men knocked on the apartment door, Brown's half-sister opened the door and summoned Brown. *Id.* The three men opened fire with semiautomatic weapons, killing Brown and critically wounding his half-sister. *Id.*

**B.    Verdict and Sentencing**

In January and February of 1993, United States District Judge James R. Spencer presided over the trial of Defendant and his co-conspirators. Defendant[2] faced capital murder charges for Murder in Furtherance of a Continuing Criminal Enterprise ("CCE") under 21 U.S.C. § 848(e)(1)(A) for three of these killings — Moody (Count Five), Peyton Johnson (Count Eight) and Louis Johnson (Count Eleven) (collectively, the "Capital Murder Counts" or "Capital Murder Convictions"). *Id.* at 391; (Second Superseding Indictment ("Indictment") (Dkt. No. 115) at 7-10). On February 3, 1993, the jury convicted him of all three Capital Murder Counts. 378 F.3d at 391. The jury also convicted Defendant of participating in a Conspiracy to Possess Cocaine Base with the Intent to Distribute, in violation of 21 U.S.C. § 846 (Count One), and engaging in a CCE, in violation of 21 U.S.C. § 848(a) (Count Two). *Id.*; (Indictment at 1-6.) Additionally, the jury convicted Defendant of five counts of Committing Acts of Violence in Aid of Racketeering ("VICAR"), in violation of 18 U.S.C. § 1959 (Counts Seven, Ten, Thirteen, Fourteen, Sixteen), and four counts of Using a Firearm in Relation to a Crime of Violence or a

---

[2]    The Court tried Roane, Tipton and Johnson along with four other defendants on a thirty-three-count superseding indictment.

Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c) (Counts Six, Nine, Twelve, Fifteen). 378 F.3d at 392; (Indictment at 8-13). Finally, the jury convicted Defendant of one count of Possession of Cocaine Base with the Intent to Distribute, in violation of 21 U.S.C. § 841(a)(1) (Count Thirty-Two (the "Drug Distribution Count" or the "Drug Distribution Conviction")). 378 F.3d at 392; (Indictment at 21). Defendant's First Step Act Motion pertains only to the Capital Murder Counts and the Drug Distribution Count.

On February 16, 1993, following a penalty hearing on the Capital Murder Counts, the jury recommended that Defendant be sentenced to death for the murder of Moody. 378 F.3d at 392. On June 1, 1993, pursuant to 21 U.S.C. § 848(l), the Court sentenced Roane to death for Count Five. *Id.* Relevant here, the Court also sentenced Defendant to life imprisonment for each of the Capital Murder Convictions that he did not receive a death sentence — Counts Eight and Eleven. *Id.* Defendant also received a life imprisonment sentence for the CCE conviction in Count Two, life sentences for Counts Seven, Ten, Thirteen and Fourteen, and a forty-year term of imprisonment on Count Thirty-Two, the Drug Distribution Count, all to run concurrently with the other sentences imposed. *Id.*; (Dkt. No. 594).[3] [4]

---

[3]    The jury convicted Richard Tipton of six counts of Murder in Furtherance of a CCE (Counts Three, Seventeen, Eighteen, Nineteen, Twenty-Four, Twenty-Five); one count of participating in a Conspiracy to Possess Cocaine Base with Intent to Distribute (Count One); one count of engaging in a CCE (Count Two); eight counts of VICAR (Counts Four, Twenty-One, Twenty-Two, Twenty-Three, Twenty-Seven, Twenty-Eight, Twenty-Nine, Thirty); two counts of Use of a Firearm in Relation to a Crime of Violence or Drug Trafficking Offense (Counts Twenty, Twenty-Six); and two counts of Possession with Intent to Distribute Crack Cocaine (Counts Thirty-Two, Thirty-Three). (Dkt. No. 592.)

The jury recommended a death sentence as to each of Counts Three, Twenty-Four and Twenty-Five. In addition to the death sentences, the Court sentenced Tipton to sentences of life imprisonment for Counts Two, Four, Twenty-One, Twenty-Two, Twenty-Three, Twenty-Seven and Twenty-Eight. Tipton received a sentence of forty years' imprisonment for Count Thirty-Two, thirty years' imprisonment for each of Counts Twenty-Nine and Thirty, twenty years' imprisonment for each of Counts Twenty-Six and Thirty-Three and five years' imprisonment for

4

The Court refused to order the execution on the grounds that Congress had neither directly authorized the means to carry out the death sentences, nor properly delegated to the Attorney General the authority to issue the implementing regulations that the Government invoked. *Id.* As a result, the Court stayed the execution of the death sentences until such time as Congress had authorized the means of execution. *Id.*

## C.    Post-Trial Proceedings

The defendants appealed their convictions and sentences and the Government cross-appealed the stay of the death sentences. *Id.* at 392. In a lengthy opinion, the Fourth Circuit analyzed and disposed of approximately sixty issues, including challenges by the defendants to aspects of the jury-selection process and both the guilt and penalty phases of the trial. *Tipton,* 90 F.3d 861. The Fourth Circuit rejected nearly all of the claims, affirming the convictions and sentences of all of the defendants, except that it vacated on double jeopardy grounds the drug conspiracy convictions under 21 U.S.C. § 846, finding that the CCE convictions in Count Two

---

Count Twenty. (Dkt. No. 592.)

[4]    The jury convicted Cory Johnson of seven counts of Murder in Furtherance of a CCE (Counts Eight, Eleven, Seventeen, Eighteen, Nineteen, Twenty-Four, Twenty-Five); one count of participating in a Conspiracy to Possess Cocaine Base with Intent to Distribute (Count One); one count of engaging in a CCE (Count Two); eleven counts of VICAR (Counts Ten, Thirteen, Fourteen, Sixteen, Twenty-One, Twenty-Two, Twenty-Three, Twenty-Seven, Twenty-Eight, Twenty-Nine, Thirty); five counts of Use of a Firearm in Relation to a Crime of Violence or Drug Trafficking Offense (Counts Nine, Twelve, Fifteen, Twenty, Twenty-Six); one count of Distribution of Crack Cocaine (Count Thirty-One); and one count of Possession with Intent to Distribute Crack Cocaine (Count Thirty-Two). (Dkt. No. 593.)

The jury recommended a death sentence for all seven of Johnson's capital convictions. In addition to the death sentences, the Court sentenced Johnson to sentences of life imprisonment for Counts Two, Ten, Thirteen, Fourteen, Twenty-One, Twenty-Two, Twenty-Three, Twenty-Seven and Twenty-Eight. Johnson received a sentence of forty years' imprisonment for Count Thirty-Two, thirty years' imprisonment for each of Counts Twenty-Nine and Thirty, twenty years' imprisonment for each of Counts Twelve, Fifteen, Sixteen, Twenty, Twenty-Six and Thirty-One and five years' imprisonment for Count 9. (Dkt. No. 593.)

precluded sentences for the drug conspiracy offenses. *Id.* at 903. Additionally, the Fourth Circuit vacated the stay of the death sentences and remanded for the executions to proceed in accordance with regulations promulgated by the Attorney General. *Id.* at 901-03.

Defendant continued to press his appeals. On June 1, 1998, Defendant filed a motion under 28 U.S.C. § 2255 to vacate and set aside his sentences. *Roane*, 378 F.3d at 392. Chief among his habeas claims, Defendant advanced an actual innocence claim with respect to the Moody murder and argued that his trial attorney had rendered ineffective assistance of counsel in his investigation and defense of the Moody murder charges. *Id.* at 393. The district court held an evidentiary hearing on the habeas claims before issuing an opinion denying Defendant's actual innocence claim, but granting his ineffective assistance of counsel claim. *Id.* Consequently, the district court vacated Defendant's convictions on the Moody murder charges — Counts Five (Murder in Furtherance of CCE), Six (Use of a Firearm in Relation to Crime of Violence or Drug Trafficking Crime) and Seven (VICAR). *Id.* at 394. The Government appealed the ineffective assistance of counsel ruling and Defendant cross-appealed certain claims resolved against him. *Id.* Notably, Defendant did not appeal the denial of his actual innocence claim. *Id.* at 394 n.3.

The Fourth Circuit ruled against Defendant on all accounts. Specifically, the court affirmed on all of the grounds raised by Defendant and reversed the grant of relief based on ineffective assistance of counsel. *Id.* at 408-12. In so ruling, it reversed the vacatur of Defendant's convictions on Counts Five, Six and Seven. *Id.* at 412.

In 2009, Defendant filed an application with the Fourth Circuit to file a successive § 2255 petition on actual innocence grounds. The Fourth Circuit denied his request. *In re James Roane, Jr.,* No. 09-8 (4th Cir.), ECF No. 24. On May 22, 2020, Defendant filed yet another

application with the Fourth Circuit for a successive § 2255 petition pursuant to the Supreme

Court's decision in *United States v. Davis*, 139 S. Ct. 2319 (2019). The application remains

pending, as the Fourth Circuit placed the case in abeyance pending its decision in *United States*

*v. Taylor*. *In re James Roane, Jr.*, No. 20-7 (4th Cir.), ECF Nos. 2, 18.[5]

### D.    Defendant's First Step Act Motion

On July 22, 2020, Defendant filed the instant motion under § 404 of the First Step Act,

asking the Court to reduce his sentences for the Capital Murder Counts and the Drug Distribution

Count. (Def.'s Mot. for Imposition of a Reduced Sentence Pursuant to Section 404 of the First

Step Act ("Def.'s Mot.") (ECF No. 17).) Defendant argues that these convictions constitute

covered offenses under the First Step Act, because the Fair Sentencing Act modified the

statutory penalties for §§ 841 and 848, and the First Step Act allows the Court to retroactively

impose those modified statutory penalties. (Def.'s Mot. at 2-5.) Defendant argues that the

statutory maximum under § 848 "was increased to a death sentence as a result of his possession

with intent to distribute cocaine base conviction that would no longer subject him to the death

penalty." (Def.'s Mot. at 3-4.) Further, Defendant claims that, because his Count Two CCE

conviction rested on his Drug Distribution Conviction, and his Capital Murder Convictions

---

[5]     On October 14, 2020, the Fourth Circuit decided *United States v. Taylor*, holding that attempted Hobbs Act robbery does not a "crime of violence" upon which a § 924(c) conviction can be predicated. __ F.3d __, 2020 WL 6053317, at *5 (4th Cir. Oct. 14, 2020). However, the Fourth Circuit has not yet ruled on Defendant's application to file a successive § 2255 petition.

In any event, *Taylor* has no impact on Defendant's First Step Act Motion. Neither the Capital Murder Convictions nor the Drug Distribution Convictions were predicated on an attempted robbery or, more generally, a crime of violence. Indeed, Defendant does not attack the counts at issue here in his proposed successive § 2255 petition. *In re James Roane, Jr.*, Case No. 20-7 (4th Cir.), ECF No. 2-2 (moving to vacate his convictions under 18 U.S.C. § 924(c) in Counts Six, Nine, Twelve and Fifteen). Although in his proposed § 2255 petition he argues that his Capital Murder Convictions cannot form the predicates for his § 924(c) convictions, he does not attack the convictions or sentences for the Capital Murder Counts. *Id.*

rested on his CCE conviction, then his Capital Murder Convictions must be covered offenses under the First Step Act. (Def.'s Reply in Supp. of Mot. for Imposition of a Reduced Sentence Pursuant to Section 404 of the First Step Act ("Def.'s Reply") (ECF No. 60) at 2-3.) At bottom, then, Defendant claims that his Drug Distribution Conviction pervades his Capital Murder Convictions, bringing his Capital Murder Convictions under the coverage of the First Step Act.

Because his convictions constitute covered offenses under the First Step Act, Defendant claims that this entitles him to "complete review on the merits," which includes a consideration of the sentencing factors in 18 U.S.C. § 3553(a). (Def.'s Mot. at 5.) To that end, Defendant devotes the bulk of his brief to arguing that the sentencing factors warrant a reduced sentence. Specifically, Defendant advances his actual innocence claim with respect to the murder of Douglas Moody, the subject of Count Five. (Def.'s Mot. at 9-16.) Further, Defendant argues that his history militates in favor of a sentence reduction, specifically his neglectful and abusive childhood. (Def.'s Mot. at 17-33.) Additionally, Defendant argues that he suffers from brain damage, warranting a reduced sentence. (Def.'s Mot. at 33-40.) Finally, Defendant argues that he has changed for the good in prison and his discipline record reflects good conduct over the course of his incarceration, weighing in favor of a sentence reduction. (Def.'s Mot. at 40-45.) Because some of his sentences warrant reduction, and his multiple sentences constitute a complete sentencing package, Defendant claims that the entire sentencing package contains fatal deficiencies. (Def.'s Mot. at 45-49.) To reach this conclusion, Defendant argues that several of his convictions are invalid, despite the Fourth Circuit only invalidating one conviction to date following multiple appeals. (Def.'s Mot. at 45-49.) Because these invalid convictions infect the entire sentencing package, Defendant argues that the Court must conduct a full and complete resentencing. (Def.'s Mot. at 50-52.) Accordingly, Defendant requests that the Court grant an

8

evidentiary hearing regarding the imposition of a reduced sentence on the Drug Distribution Conviction and the two Capital Murder Convictions that carry life sentences. (Def.'s Mot. at 53.) Additionally, Defendant asks the Court to order a resentencing hearing before a jury on Count Five — the Capital Murder Conviction for which he received the death penalty. (Def.'s Mot. at 53.)

On August 28, 2020, the Government filed its opposition to Defendant's Motion, primarily arguing that his convictions under § 848(e) do not constitute covered offenses and, therefore, the Court may not reduce his sentence. (Govt's Opp. to Def.'s First Step Act Mot. ("Govt's Resp.") (ECF No. 43).) On October 2, 2020, Defendant filed his reply, rendering this matter now ripe for review.

## II.    STATUTORY BACKGROUND

Defendant's motion relies on the interplay between three statutes, each of which plays a role in the Court's analysis. First, 18 U.S.C. § 3582(c)(1)(B) grants the Court the authority to consider modifying Defendant's sentence. Second, the Fair Sentencing Act provides the substantive relief sought in Defendant's motion. Third, the First Step Act allows the Court to apply the Fair Sentencing Act retroactively. Essentially, the Fair Sentencing Act altered the sentences applicable to certain offenses and the First Step Act provides the vehicle by which the Court may apply those altered sentences.

Neither party has identified any binding authority from the Fourth Circuit or the Supreme Court (or persuasive authority from other circuit courts) interpreting the relevant portions of these statutes and their interplay with each other as applied to these facts and counts of conviction. Thus, the Court must primarily engage in an exercise of statutory interpretation. "The starting point of any issue of statutory interpretation . . . is the language of the statute

9

itself." *United States v. Bly*, 510 F.3d 453, 460 (4th Cir. 2007). "We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) (citations omitted). Because none of the three statutes at issue suffers from ambiguity, and because their relationships to each other and the statutes under which the jury convicted Defendant lack ambiguity as well, the Court's analysis begins and ends with the text.

## A.     18 U.S.C. § 3582(c)(1)(B)

Courts operate under a "baseline rule of sentence finality," which states that "sentences may not be modified once imposed." *United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020). Congress has provided a "narrow exception to finality" in 18 U.S.C. § 3582(c)(1)(B). *United States v. Wirsing*, 943 F.3d 175, 184 (4th Cir. 2019). This statute provides that "[t]he court may not modify a term of imprisonment once it has been imposed except that, in any case, the court may modify an imposed term of imprisonment *to the extent otherwise expressly permitted by statute*." 18 U.S.C. § 3582(c)(1)(B) (emphasis added).

This general rule of finality guides the Court in its interpretation of the scope of the other specific statutes in this case. By the plain language of § 3582(c)(1)(B), the Court may modify Defendant's sentences only as *expressly permitted* by the Fair Sentencing Act and the First Step Act. *See Wirsing*, 943 F.3d at 184 ("The First Step Act thus fits under the narrow exception to finality provided in § 3582(c)(1)(B) because it expressly permits the court to modify a term of imprisonment." (quotations omitted)). Accordingly, the Court turns to those statutes.

## B.     The Fair Sentencing Act

The Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372 (2010), provided

10

the substantive change that Defendant claims entitles him to a reduction of his sentences for his murder convictions. The Fair Sentencing Act addressed a sentencing disparity between crack and powder cocaine offenses by increasing the amount of crack cocaine needed to trigger mandatory minimum sentences. *Wirsing*, 943 F.3d at 178. The disparity originated in a statute passed in 1986 titled the Anti-Drug Abuse Act of 1986. *Kimbrough v. United States*, 552 U.S. 85, 95 (2007) (citing Anti-Drug Abuse Act of 1986, Pub. L. No. 99-570, 100 Stat. 3207). The Anti-Drug Abuse Act introduced mandatory minimums for drug offenses tied to specific weights of particular drugs. Anti-Drug Abuse Act § 1002, 100 Stat. at 3207-2 to -4 (codified at 21 U.S.C. § 841(b)(1)). A defendant convicted of an offense involving 5 kilograms of cocaine or 50 grams of crack cocaine faced a ten-year mandatory minimum. *Id.* § 1002, 100 Stat. at 3207-2. Similarly, the statute mandated a five-year minimum sentence for a conviction of 500 grams or more of powder cocaine or 5 grams or more of crack cocaine. *Id.* § 1002, 100 Stat. at 3207-3. Thus, the Anti-Drug Abuse Act provided that "a drug trafficker dealing in crack cocaine [was] subject to the same sentence as one dealing in 100 times more powder cocaine." *Kimbrough*, 552 U.S. at 91.

This "100-to-1 ratio came under heavy criticism." *Wirsing*, 943 F.3d at 177 (citing *Dorsey v. United States*, 567 U.S. 260, 268 (2012) and *Kimbrough*, 552 U.S. at 97-100). Such criticism stemmed from the fact that "research showed the relative harm between crack and powder cocaine [was] less severe than 100 to 1." *Dorsey*, 567 U.S. at 268. Additionally, "the public had come to understand sentences embodying the 100-to-1 ratio as reflecting unjustified race-based differences." *Id.* Finally, the disparity "mean[t] that a major supplier of powder cocaine [could] receive a shorter sentence than a low-level dealer who b[ought] powder from the supplier but then convert[ed] it to crack." *Kimbrough*, 552 U.S. at 95.

11

In 2010, Congress passed the Fair Sentencing Act to reduce this disparity. *See United States v. Black*, 737 F.3d 280, 282 (4th Cir. 2013) ("Congress enacted the Fair Sentencing Act [] in response to extensive criticism about the disparity in sentences between crack offenses and powder cocaine offenses."). In § 2, the Fair Sentencing Act reduced the statutory minimums for crack cocaine offenses by increasing the quantity of crack cocaine necessary to trigger the minimums. *Id.* Specifically, Section 2 amended 21 U.S.C. § 841(b)(1) to raise the amount from 5 grams to 28 grams for the 5-year minimum, and from 50 grams to 280 grams for the 10-year minimum sentence. Fair Sentencing Act § 2, 124 Stat. at 2372 (codified at 21 U.S.C. § 841(b)(1)). Additionally, in Section 3, the Fair Sentencing Act eliminated the mandatory minimum sentence for "simple possession" of crack cocaine. *Id.* § 3, 124 Stat. at 2372 (codified at 21 U.S.C. § 844(a)).

Although the Fair Sentencing Act reduced the sentencing disparity in offenses involving the possession, production or distribution of crack cocaine, it did not amend the statutory penalties for violent crimes in furtherance of trafficking crack cocaine. On the contrary, rather than reducing the statutory penalties for violent drug offenses, Congress instructed the United States Sentencing Commission to amend the sentencing guidelines to increase the offense levels "if the defendant used violence, made a credible threat to use violence, or directed the use of violence during a drug trafficking offense." *Id.* § 5, 124 Stat. at 2373. Likewise, Congress directed the Sentencing Commission to increase the offense levels based on the defendant's role and other aggravating factors, including that the "defendant committed the drug trafficking offense as part of a pattern of criminal conduct engaged in as a livelihood." *Id.* at § 6, 124 Stat. at 2373-4. The statute's language clearly demonstrates Congress' intent to reduce the penalties for non-violent crack cocaine offenses without commensurate reductions for violent crack

12

cocaine offenses.

Later, the Supreme Court held that the new penalty provisions in the Fair Sentencing Act applied to all crack cocaine offenders sentenced on or after August 3, 2010, even for offenses committed before that date. *Dorsey*, 567 U.S. at 264. However, the modifications to the statutory minimum sentences did "not apply retroactively to defendants who both committed crimes and were sentenced for those crimes before August 3, 2010." *Black*, 737 F.3d at 287.

## C.    The First Step Act

In December 2018, Congress remedied the non-retroactivity of the Fair Sentencing Act with the passage of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. "On its face, the First Step Act allows the retroactive application of the modifications to penalties that Congress enacted in the Fair Sentencing Act." *Wirsing*, 943 F.3d at 180. Specifically, Section 404 made the Fair Sentencing Act's modifications to crack cocaine offenses retroactive for defendants convicted before its enactment.

Section 404 has three subsections. Subsection 404(a) defines which offenses the First Step Act's imposition of retroactivity covers:

> (a) DEFINITION OF COVERED OFFENSE.— In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (citation omitted), that was committed before August 3, 2010.

First Step Act, § 404(a), 132 Stat. at 5222. For those defendants sentenced for a covered offense, the next subsection provides how the Court may reduce that sentence:

> (b) DEFENDANTS PREVIOUSLY SENTENCED.— A court that imposed a sentence for a covered offense, may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (citations omitted) were in effect at the time the covered offense was committed."

*Id.* § 404(b), 132 Stat. at 5222. The final subsection of § 404 limits those defendants who may

13

bring a motion and makes clear that the Court retains discretion whether to grant a motion for a sentence reduction:

> (c) LIMITATIONS.— No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act (citations omitted) or if a previous motion made under this section to reduce the sentence was, after the date of the enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

*Id.* § 404(c), 132 Stat. at 5222. Thus, Section 404 of the First Step Act defines which sentences the Court may reduce and provides the procedure and authority to apply the Fair Sentencing Act's crack cocaine penalties retroactively for defendants who committed their covered offenses before August 3, 2010.

## III.   ANALYSIS

Defendant argues that the First Step Act grants the Court authority to modify his sentences for offenses committed under § 848(e) and § 841. The Court entertains this request for a modified sentence mindful of the "baseline rule of sentence finality," *Chambers*, 956 F.3d at 671, and that "[t]he law closely guards the finality of criminal sentences against judicial 'change of heart.'" *United States v. Goodwyn*, 596 F.3d 233, 235 (4th Cir. 2010); 18 U.S.C. §3582(b). Clearly, Defendant's desire to have the sentences reduced for his Capital Murder Convictions drives his request, so those offenses likewise will direct the Court's analysis. Thus, Defendant's motion first and foremost requires the Court to determine whether Defendant's convictions for Murder in Furtherance of a Continuing Criminal Enterprise, in violation of 21 U.S.C. § 848(e)(1)(A), constitute covered offenses under the First Step Act.

The Court must first address the threshold covered offense question, because "eligibility [for a sentence modification] turns on the proper interpretation of a 'covered offense.'" *Wirsing*,

14

943 F.3d at 185; *United States v. Gravatt*, 953 F.3d 258, 260 (4th Cir. 2020) ("[T]he existence of a 'covered offense' is a threshold requirement under the [First Step] Act."). By its own terms, the First Step Act defines a "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by Sections 2 or 3 of the Fair Sentencing Act of 2010." First Step Act, § 404(a), 132 Stat. 5222. Accordingly, eligibility turns on which statute Defendant violated and whether Section 2 or 3 of the Fair Sentencing Act modified the statutory penalties for that statute. *See United States v. Woodson*, 962 F.3d 812, 816 (4th Cir. 2020) (emphasizing that "covered offense" inquiry turns on change to statutory penalties for the defendant's statute of conviction). In conducting its covered offense inquiry, the Court first will analyze Defendant's particular convictions; then, it will conduct a textual analysis of the statute of those convictions; and, finally, it will analyze the potential application of Defendant's reading of the statute.

Because the Court ultimately finds that Defendant's Capital Murder Convictions do not constitute covered offenses, the Court will then determine whether Defendant's Drug Distribution Conviction nevertheless warrants a sentence reduction.

## A.    Defendant's Capital Murder Convictions under § 848(e).

Defendant argues that his Capital Murder Counts qualify as covered offenses under the First Step Act. In each of those counts, the jury convicted Defendant of violating 21 U.S.C. § 848(e)(1)(A). To determine whether Defendant's statute of conviction for these counts constitutes a covered offense, the Court will first examine which statutes the relevant provisions of the Fair Sentencing Act affected. Section 2 of the Fair Sentencing Act, titled "Cocaine Sentencing Disparity Reduction," amended 21 U.S.C. §§ 841(b)(1)(A)(iii), 841(b)(1)(B)(iii), 960(b)(1)(C) and 960(b)(2)(C). Additionally, Section 3 of the Fair Sentencing Act, titled "Elimination of Mandatory Minimum Sentences for Simple Possession," amended 21 U.S.C.

15

§ 844(a).  Thus, together, Sections 2 and 3 expressly affected three criminal statutes:  21 U.S.C. § 841(b)(1), 21 U.S.C. § 960(b) and 21 U.S.C. § 844(a).  Violations of these three statutes constitute "covered offenses" under § 404(a) of the First Step Act.  However, § 848 proves conspicuously absent from Sections 2 and 3 of the Fair Sentencing Act.  And for good reason:  as § 848 targets dangerous drug kingpins while the Fair Sentencing Act seeks to address the sentencing disparity between low-level crack dealers and large-scale powder cocaine distributors.

Given that § 3582(c)(1)(B) permits modifications to a sentence only when "expressly permitted" by statute or Rule 35, and only then "to the extent" that the statute expressly provides, this absence provides strong evidence that a violation of § 848(e)(1)(A) does not constitute a "covered offense."  18 U.S.C. § 3582(c)(1)(B); *see United States v. Johnson*, 529 U.S. 53, 58 (2000) ("When Congress provides exceptions in a statute, it does not follow that courts have authority to create others.  The proper inference . . . is that Congress considered the issue of exceptions and, in the end, limited the statute to the ones set forth.").  However, because some parts of the CCE statute reference the statutes that the Fair Sentencing Act did modify, the Court will make further inquiry into the question.  Armed with an understanding of what statutes the Fair Sentencing Act affected, the Court can now turn to an analysis of whether the Fair Sentencing Act affected the statutory penalties for Defendant's statute of conviction.  Specifically, the Court must identify with particularity Defendant's statute of conviction and then address Defendant's arguments as to why his particular convictions qualify as covered offenses.

i.      **Section 848(e)(1)(A) as a Standalone Offense Constitutes Defendant's Statute of Conviction.**

In identifying with particularity Defendant's statute of conviction, the Court must determine whether to analyze § 848 as a whole or specifically § 848(e)(1)(A) as Defendant's

statute of conviction. Indeed, the Court's review of § 848 and the relevant case law indicates that the Fair Sentencing Act potentially modified the sentencing penalties for some § 848 convictions, but not all. For the reasons stated below, the Court finds that § 848(e)(1)(A) constitutes Defendant's statute of conviction, rendering the case law regarding other sections of § 848 inapposite.

Section 848 penalizes engaging in a "continuing criminal enterprise," which occurs if:

(1) he violates a provision of this subchapter or subchapter II the punishment for which is a felony, and

(2) such violation is a part of a continuing series of violations of this subchapter or subchapter II—

(A) which are undertaken by such person in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management, and

(B) from which such person obtains substantial income or resources.

21 U.S.C. § 848(c). Section 848 contains three substantive provisions, each of which provides for its own criminal liability and penalties. 21 U.S.C. § 848(a), (b), and (e). Section 848(a) provides for a 20-year mandatory-minimum sentence for "any person who engages in a continuing criminal enterprise," and increases that mandatory-minimum to 30 years if the person has a previous drug conviction. 21 U.S.C. § 848(a). Section 848(b) mandates a life sentence for any principal of a sufficiently large continuing criminal enterprise, as measured in terms of either drug quantity or gross receipts. 21 U.S.C. § 848(b). Notably, the drug quantity necessary to trigger the mandatory life sentence hinges on the amount in 21 U.S.C. § 841(b)(1)(B). Thus, Section 2 of the Fair Sentencing Act may have an indirect effect on the statutory penalties of 21 U.S.C. § 848(b).

However, the possibility that the First Step Act may implicate § 848(b) does not help

17

Defendant, because the jury convicted Defendant of violating § 848(e). And under Fourth Circuit precedent, § 848(e) acts as an entirely self-contained subsection of the statute. *See United States v. NJB*, 104 F.3d 630, 635 (4th Cir. 1997) ("In sum, because § 848(e) clearly sets forth a separate substantive violent offense, the Government's certification of this fact did not constitute error."). Indeed, § 848(e)(1)(a) clearly defines the conduct that it prohibits and the penalties for violating it. Moreover, other provisions in a previous version of the statute referenced § 848(e) as a distinct offense, which the Fourth Circuit has determined "clearly expresses Congress' intent that § 848(e) be a separate crime." *Id.* at 633. Thus, for purposes of Defendant's First Step Act motion, the Court finds that § 848(e)(1)(A) — and not § 848 broadly — constitutes his statute of conviction.

Focusing then on Defendant's statute of conviction, the Court finds that § 848(e)(1)(A) does not constitute a covered offense within the meaning of the First Step Act. Section 848(e)(1)(A) provides that:

> any person engaging in or working in furtherance of a continuing criminal enterprise, or any person engaging in an offense punishable under section 841(b)(1)(A) of this title or section 960(b)(1) of this title who intentionally kills or counsels, commands, induces, procures, or causes the intentional killing of an individual and such killing results, shall be sentenced to any term of imprisonment, which shall not be less than 20 years, and which may be up to life imprisonment, or may be sentenced to death.

21 U.S.C. § 848(e)(1)(A). This statute clearly defines the conduct that it prohibits — killing in furtherance of any one of three distinct predicate offenses — and the statutory penalties for engaging in the prohibited conduct — death or life imprisonment with a mandatory minimum of 20 years' imprisonment. The Fair Sentencing Act did not change either. Accordingly, the Court starts with the premise that, on its face, neither sections 2 nor 3 of the Fair Sentencing Act directly altered the statutory penalties in § 848(e) and, therefore, the First Step Act does not directly apply. However, in arguing that his Capital Murder Convictions constitute covered

18

offenses, Defendant relies on the specific facts underlying his convictions.  Yet, the facts underlying Defendant's convictions cut against a finding that his Capital Murder Convictions constitute covered offenses under the First Step Act.

### ii.      Defendant's Conviction Under § 848(e)(1)(A) Did Not Directly Rely on a Violation of § 841(b)(1)(A).

Defendant argues that the First Step Act covers his convictions under § 848(e), because his "statutory maximum under § 848 was increased to a death sentence as a result of his possession with intent to distribute cocaine base conviction that would no longer subject him to the death penalty." (Def.'s Mot. at 3-4.)  Defendant further claims that "[b]ecause conviction of an offense punishable under § 841(b)(1)(A) is incorporated as an element of § 848(e)(1)(A), Mr. Roane's § 848 convictions would no longer be subject to the death penalty." (Def.'s Mot. at 4.)  In addition to the fact that his argument stretches the First Step Act well beyond Congress' intended reach, as discussed below, his argument plainly misstates the facts of his § 848(e)(1)(A) convictions.  In truth, Defendant's § 848(e)(1)(A) convictions had no basis in § 841(b)(1)(A) and did not incorporate § 841(b)(1)(A) as an element.

As the statute itself makes clear and the Fourth Circuit has noted, §848(e)(1)(A) has three distinct prongs. *United States v. Hager*, 721 F.3d 167, 179-80 (4th Cir. 2013).  A review of the record clearly demonstrates that Defendant's convictions rested on the first prong — engaging in or working in furtherance of a continuing criminal enterprise.  First, in the Indictment, the Capital Murder Counts all charge Defendant with a specific killing "while engaged in and working in furtherance of a Continuing Criminal Enterprise." (Indictment at 7, 9-10.)  The Counts make no mention of § 841(b)(1)(A).  Second, the Court's instructions to the jury with respect to these Counts make no reference to § 841(b)(1)(A).  Instead, the Court informed the jurors that the Indictment charged Defendant with a killing "while engaged in or working in

19

furtherance of a continuing criminal enterprise." (Instruction No. 20.) Importantly, the jury instruction providing the statute of offense appears below, exactly as the jury received it:

> Title 21, United States Code, Section 848(e)(1)(A) provides in pertinent part that:
>
>> any person engaging in or working in the furtherance of a continuing criminal enterprise . . . who intentionally kills or counsels, commands, induced, procures, or causes the intentional killing of an individual and such killing results
>
> is guilty of an offense against the United States.

(Instruction No. 21.) Indeed, the jury instructions *expressly omitted* the statute's reference to § 841(b)(1)(A). The Court further instructed the jury on the elements of the offense, referencing only the continuing criminal enterprise and, again, omitting any reference to § 841(b)(1)(A). Finally, on the verdict form returned by the jury for the Capital Murder Counts, the jury found Defendant guilty of "Killing of [victim's name] while Engaged In or Working In Furtherance of a Continuing Criminal Enterprise." (Instruction No. 21.) Again, no mention of § 841(b)(1)(A) existed. Simply put, Defendant's convictions in no way rest on the second prong — engaging in an offense punishable under § 841(b)(1)(A).

As the record makes clear, Defendant's conviction on Count Two for engaging in a CCE served as the predicate offense for his Capital Murder Convictions. And, neither the Fair Sentencing Act nor the First Step Act extinguished his criminal liability for his CCE conviction under § 848(a). A CCE conviction requires proof that the defendant "violate[d] any provision of this subchapter or subchapter II the punishment for which is a felony." 21 U.S.C. § 848(c). In finding Defendant guilty of the CCE violation in Count Two, the jury found that Defendant had committed felony violations of federal narcotics laws, including § 841(a). That is, in Count Thirty-Two, the jury found beyond a reasonable doubt that Defendant had possessed with the intent to distribute, and conspired to possess with the intent to distribute, more than 50 grams of

crack cocaine.  The jury's findings would still lead to convictions of felony federal narcotics laws, including § 841(a), even after the Fair Sentencing Act.  *See* 21 U.S.C. § 841(b)(1)(B)(iii) (providing for a sentence of 5 to 40 years' imprisonment for more than 28 grams of crack cocaine); *United States v. Venable*, 943 F.3d 187, 193 (4th Cir. 2019) (noting how the offenses reclassified under Fair Sentencing Act remain felonies).  The Fair Sentencing Act did not change the fact that Defendant would still have been found guilty of federal narcotics laws, only that the statutory penalties for such stand-alone convictions based on those violations would have differed.

The verdicts in this case make clear that the jury found beyond a reasonable doubt that Defendant had committed the predicate offenses for both § 848(a) and § 848(e)(1)(A), and any modification to the statutory penalties of the underlying offenses does not change that finding.  *Cf. United States v. Hopkins*, 310 F.3d 145, 153 (4th Cir. 1997) ("Moreover, a defendant's conviction under § 924(c) does not depend on his being convicted — either previously or contemporaneously — of the predicate offense, as long as all of the elements of that offense are proved and found beyond a reasonable doubt." (internal quotations omitted)).  In short, Defendant's possession with intent to distribute more than 50 grams of crack can still serve as a predicate for his CCE conviction, regardless of his sentencing exposure for a separate charge for that conduct.  Consequently, the jury necessarily found beyond a reasonable doubt that Defendant had committed all of the elements of an offense for engaging in a continuing criminal enterprise, in violation of § 848(a), regardless of the statutory penalties for each element.  Likewise, the jury found that Defendant had committed all of the elements necessary to prove a violation § 848(e)(1)(A), regardless of the statutory penalties for each element standing alone.  And Defendant received the challenged sentences for murdering individuals in furtherance of a

21

continuing criminal enterprise, not for violating the federal narcotics laws. Thus, the statutes modified by the Fair Sentencing Act did not form the predicate for Defendant's convictions under § 848(e)(1)(A).

### iii.    Defendant's § 848(e)(1)(A) Convictions Did Not Indirectly Rely on a Violation of § 841(b)(1)(A).

Aside from incorrectly arguing that § 841(b)(1)(A) formed the predicate for his Capital Murder Convictions, Defendant also asks the Court to connect several dots to find that his convictions under § 848(e)(1)(A) constitute covered offenses. (Def.'s Reply at 2.) Specifically, Defendant offers two alternative paths for the Court to reach this conclusion. First, Defendant argues that the Fourth Circuit found that Defendant's § 848(e)(1)(A) conviction included as a lesser offense his conviction under § 846 in Count One, vacating his Count One conviction on Double Jeopardy grounds.[6] (Def.'s Reply at 2.) His § 846 conviction, in turn, rested on a conspiracy to violate § 841(b)(1)(A). According to Defendant, because the Fair Sentencing Act modified the statutory penalties for violations of § 841(b)(1)(A), it modified the statutory penalties for violations of § 846 and, therefore, modified the statutory penalties for violations of § 848(e)(1)(A). In sum, Defendant argues that his "§ 848(e)(1)(A) convictions did indeed rest on proof of a violation of § 841(b)(1)(A)." (Def.'s Reply at 2.)

Alternatively, Defendant argues that his § 848(e)(1)(A) conviction relied on his § 848(a) conviction in Count Two.[7] (Def.'s Reply at 2.) His § 848(a) conviction, in turn, rested on violations of § 841(b)(1)(A). (Def.'s Reply at 2.) Again, according to Defendant, this modified the statutory penalties for violations of § 848(a) and, therefore, modified the statutory penalties

---

[6]    Notably, the Fair Sentencing Act did not expressly modify the statutory penalties for violations of § 846.

[7]    Likewise, the Fair Sentencing Act did not expressly modify the statutory penalties for violations of § 848(a).

22

for violations of § 848(e)(1)(A).  (Def.'s Reply at 2.)  In essence, Defendant argues that his Capital Murder Convictions necessarily flow from his Drug Distribution Convictions, rendering them covered by the First Step Act.

However, this argument ignores the fact that § 848(e)(1)(A) operates as a stand-alone offense.  *See NJB*, 104 F.3d at 633 (holding that the statute "clearly expresses Congress' intent that § 848(e) be a separate crime").  Importantly, this also ignores the fact that Congress created distinct penalties for violations of § 841 on the one hand, and violations of § 848 on the other.  *Garrett v. United States*, 471 U.S. 773, 794-95 (1985) (allowing cumulative sentences for § 841 and § 848 convictions).  Indeed, the Supreme Court in *Garrett* held "that Congress intended separate punishments for the underlying substantive predicates and for the CCE offense." *Id.* at 795.  Because Congress created separate punishments, modifications to the statutory penalties in § 841 do not necessarily result in modifications to the statutory penalties in § 848.  Moreover, as described above, the jury found beyond a reasonable doubt that Defendant had committed all of the elements of § 848(e)(1)(A), regardless of the statutory penalties that those elements could expose Defendant to when charged as separate offenses.

Defendant's argument attempts to rewrite the definition of a covered offense to mean "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010, or a violation of a Federal criminal statute that rests on the violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010."  Congress did not write the First Step Act this broadly.  Instead, Congress limited covered offenses to those discreet offenses whose statutory penalties the Fair Sentencing Act modified.  The following textual analysis of the statute confirms the conclusion that Congress did not intend the First Step Act to reach so broadly as to

23

cover all offenses related to crack cocaine, especially deadly offenses.

**B.     A Textual Analysis of the Statutes at Issue Demonstrates That Congress Did Not Intend to Cover § 848(e)(1)(A) Convictions Under the First Step Act.**

In analyzing the texts of the statutes at issue, it becomes clear that Congress did not intend for the First Step Act to cover offenses under § 848(e)(1)(A). The structure of the Fair Sentencing Act further evinces this intent. Likewise, the general Savings Statute confirms that the First Step Act does not cover Defendant's murder convictions.

**i.     Congress Clearly Did Not Intend for the First Step Act to Cover Convictions Under § 848(e).**

Congress' clearly expressed intent with respect to both § 848(e)(1)(A) and the Fair Sentencing Act directly contradicts Defendant's argument for application of the First Step Act to § 848(e)(1)(A). Congress enacted § 848 to combat violent drug traffickers. "A common-sense reading of [the definition of a continuing criminal enterprise] reveals a carefully crafted prohibition aimed at a special problem. This language is designed to reach the 'top brass' in the drug rings, not the lieutenants and foot soldiers." *Garrett*, 471 U.S. at 781. Conversely, the Fair Sentencing Act aimed to ameliorate a disparate sentencing scheme for those lieutenants and foot soldiers (but not the top brass) serving sentences for possession and distribution (but not for violence). *See, e.g., Kimbrough*, 552 U.S. at 98 (noting that the disparate sentencing scheme ran contrary to the "goal of punishing major drug traffickers more severely than low-level dealers"); *Dorsey*, 567 U.S. at 269-70 (noting that Congress enacted the Fair Sentencing Act in response to, among other problems, the disproportionate treatment of low-level dealers and major drug traffickers). And in passing the First Step Act, "Congress's clear intent was to apply the Fair Sentencing Act to pre-Fair Sentencing Act offenders, including those who were heretofore ineligible for such relief." *Wirsing*, 943 F.3d at 186.

Defendant did not simply deal drugs. Defendant dealt drugs, managed other drug dealers

24

and *murdered others in furtherance of his drug dealing.* Nothing in the three statutes above indicates that Congress intended to reduce the sentences for lethal drug dealers. In fact, the Fair Sentencing Act's instructions to *increase* the guidelines for violent drug crimes clearly demonstrates the opposite intent of that which Defendant seeks.

This conclusion becomes even stronger in light of the fact that Congress must "expressly" provide for any exceptions to the narrow rule of sentencing finality. Defendant asks the Court to shoehorn a stretched implication into a narrow exception to allow a serial murderer to use the First Step Act to reduce his murder sentences, all in contradiction of the Fair Sentencing Act's clear intent. *See Chambers*, 956 F.3d at 676 (Rushing, J., dissenting) ("As the text makes clear, Congress's concern in Section 404 was to extend the cocaine sentencing provisions of the Fair Sentencing Act retroactively, not to provide a general opportunity to collaterally attack a final sentence.").

### ii.     The Structure of The First Step Act Demonstrates that It Does Not Apply to Defendant's Convictions.

The First Step Act's structure directs its application in a manner that demonstrates its inapplicability to Defendant's convictions. The text indicates that "[a] court that imposed a sentence for a covered offense may . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." First Step Act, § 404(b). Put simply, if a defendant received a sentence before the Fair Sentencing Act that was subject to shorter statutory penalties after the Fair Sentencing Act, then the Court may now — in its discretion — impose a shorter sentence. Here, that is not possible.

If Defendant had been convicted of § 848(e)(1)(A) after the passage the Fair Sentencing Act, his sentences on the Capital Murder Counts still would have subjected him to either a sentence of death or life imprisonment with a mandatory minimum of 20 years' imprisonment.

The Fair Sentencing Act did not alter that a jury would render his sentence on these Counts. And, nothing in sections 2 or 3 of the Fair Sentencing Act would have changed the instructions or evidence given to the jury in the penalty phase. Moreover, unlike a covered offense under § 841, the Court here would have no new statutory penalties on which to base a reduced sentence. In sum, nothing in sections 2 or 3 of the Fair Sentencing Act would have changed Defendant's sentencing exposure on his § 848(e)(1)(A) convictions. This precludes the Court from imposing a reduced sentence "as if" the Fair Sentencing Act had been in effect. If the possibility of a reduced sentence for an offense does not exist, then the "reduced sentence" and "as if" provisions in the First Step Act have no meaning. But Congress chose to include these provisions, and this Court must "give effect to Congress' choice" to include the provisions. *See Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 354 (2013); *United States v. Menasche*, 348 U.S. 528 (1955) ("It is our duty to give effect, if possible, to every clause and word of a statute, rather than to emasculate an entire section."). Consequently, the Court will not interpret the statute in a way that essentially reads the "reduced sentence" and "as if" provisions out of the statute. *United States v. Atlantic Research Corp.*, 551 U.S. 128, 137 (2007) (rejecting an interpretation that would render a statutory provision "a dead letter"). The fact that the Court cannot impose a reduced sentence under the Fair Sentencing Act supports the conclusion that Defendant's § 848(e)(1)(A) convictions do not constitute covered offenses.

### iii.     The Savings Statute Renders the Penalties for Defendant's § 848(e)(1)(A) Convictions Unchanged.

The Government argues that the Savings Statute precludes a finding that Defendant's Capital Murder Convictions constitute covered offenses. (Govt's Resp. at 23.) The Court agrees.

26

The general Savings Statute provides in pertinent part:

> The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability.

1 U.S.C. § 109. First, neither the First Step Act nor the Fair Sentencing Act expressly provided for the release or elimination of any penalty or liability incurred under § 848(e)(1)(A), so the Court starts with the presumption that neither Act had the effect of doing so. Yet, even under Defendant's theory that the modifications of the penalties in § 841(a)(1) work their way up the chain to modify the penalties of § 848(e), the chain breaks under the weight of the Savings Statute.

The Savings Statute comes into play with respect to the reduced penalties for crack offenses, because "[c]ase law makes clear that the word 'repeal' applies when a new statute simply diminishes the penalties that the older statute set forth." *Dorsey*, 567 U.S. at 272; *see also United States v. Bullard*, 645 F.3d 237, 248 (4th Cir. 2011) ("But we have squarely held that although § 109 specifically refers only to repealed statutes, it also applies to statutes changed by amendment." (internal quotations omitted)). Accordingly, the Fair Sentencing Act "repealed" § 841(a)(1) and § 841(b)(1) and replaced them with different statutory penalties.

In examining the effect of a later statute under the Savings Statute, Congress need not use any particular magic words to extinguish liability or penalties, because the Savings Statute "cannot justify a disregard of the will of Congress as manifested either expressly or by *necessary implication* in a subsequent enactment." *Dorsey*, 567 U.S. at 274 (internal quotations omitted) (emphasis in original). Neither the Fair Sentencing Act nor the First Step Act expressly provided

27

that it would extinguish liability incurred under § 841(a)(1). Likewise, neither necessarily implied that they would extinguish liability incurred under § 841(a)(1). Instead, they altered the statutory penalties but not criminal liability. Thus, under the Savings Statute, neither statute could have the effect of extinguishing criminal liability for violations of § 841(a)(1). *See United States v. Stitt*, 552 F.3d 345, 353 (4th Cir. 2008) (explaining that "under the Savings Statute, a liability that arises under a later-repealed statute is preserved despite repeal and may be enforced by a post-repeal action." (internal quotations omitted)).

Consequently, Defendant's criminal liability incurred for violations of § 841(a)(1) in Count Thirty-Two stands. Defendant's criminal liability incurred for violations of § 848(a) for engaging in a continuing criminal enterprise in Count Two — based in part on conduct that violated § 841(a) — stands. And his criminal liability for murders — based in part on conduct that violates § 848(a) — stands.

Indeed, Defendant correctly concedes that his convictions under all of these statutes remain intact. (Def.'s Reply at 5.) Defendant completed each crime at the time of the murder, and no adjustments to the penalties of the offenses in § 841 have altered his criminal liability or the penalties for § 848. *See Dorsey*, 567 U.S. at 272 ("Case law also makes clear that penalties are 'incurred' under the older statute when an offender becomes subject to them, *i.e.*, commits the underlying conduct that makes the offender liable."); s*ee also United States Guerrero*, 813 F.3d 462, 466 (2d Cir. 2016) ("Because the [Fair Sentencing Act] did not expressly extinguish any criminal liability under § 848(e)(1)(A), the law's enactment did not retroactively invalidate Guerrero's convictions."). Accordingly, the Savings Statute pushes Defendant's § 848(e)(1)(A) conviction farther beyond the reach of the First Step Act than even a straightforward reading of the statutes suggests.

**C.     Application of the Fair Sentencing Act Demonstrates that It Does Not Apply to Defendant's Convictions.**

Not only would the conclusion that the First Step Act covers Defendant's convictions contravene the intent of Congress as clearly expressed in the text of the statutes, but attempting to apply that conclusion proves untenable.  This result further demonstrates the defect in Defendant's argument.

**i.     Section 848(e) Differs from the Other Statutes Found to Have Been Indirectly Modified by the Fair Sentencing Act.**

The Court recognizes that the Fourth Circuit has found that the First Step Act can cover offenses not directly amended by sections 2 or 3 of the Fair Sentencing Act. *See, e.g., Woodson,* 962 F.3d at 816 (finding a conviction under § 848(b)(1)(C) a "covered offense" although the Fair Sentencing Act did not amend the text).  The Fourth Circuit's analysis in *Woodson* as to why "Congress did not need to amend the text of Subsection 841(b)(1)(C) to make this change" supports the conclusion that Defendant's convictions under § 848(e)(1)(A) do not constitute covered offenses. *Id.*  In *Woodson,* the Fourth Circuit used a before-and-after approach to determine whether the Fair Sentencing Act modified § 841(b)(1)(C), the statute at issue there. *Id.*  In answering in the affirmative, the court noted:

> Before the Fair Sentencing Act, Subsection 841(b)(1)(C)'s penalty applied only to offenses involving less than 5 grams of crack cocaine (or an unspecified amount).  But because of the changes rendered by Section 2 of the Fair Sentencing Act, the penalty in Subsection 841(b)(1)(C) now covers offenses involving between 5 and 28 grams of crack cocaine as well.

962 F.3d at 816.  Continuing, "Subsection 841(b)(1)(C) set forth the penalty for quantities of crack cocaine between zero and 5 grams (or an unspecified amount) before the Fair Sentencing Act, and between zero and 28 grams (or an unspecified amount) after.  This is a modification." *Id.*  The court went on to note that Woodson's conviction of 0.41 grams of crack cocaine amounted to 8.2% of the upper end of Subsection 841(b)(1)(C)'s range before the Fair

29

Sentencing Act, but only 1.5% of the upper end after the Fair Sentencing Act, which a sentencing judge could find relevant. *Id.* at 817. Because of the calculable differences in the penalties associated with Woodson's conviction before and after the Fair Sentencing Act, the Fourth Circuit found the offense covered by the First Step Act. The conclusion in *Woodson* falls squarely in line with Congress' intent to reduce the crack cocaine-to-powder cocaine disparity for non-violent offenses, even if it did not directly amend the text of § 841(b)(1)(C).

Applying the same before-and-after analysis here to Defendant's convictions leads to the opposite result. Before the Fair Sentencing Act, § 848(e)(1)(A)'s penalties applied to killings in furtherance of a continuing criminal enterprise. After the changes rendered by Section 2 of the Fair Sentencing Act, the penalty in § 848(e)(1)(A) still covers killings in furtherance of a continuing criminal enterprise. In other words, § 848(e)(1)(A) set forth the penalty for killing in furtherance of a continuing criminal enterprise both before and after the Fair Sentencing Act. No modification exists. The penalties in § 848(e)(1)(A) simply do not depend on a specific quantity of drugs. Both before and after the passage of the Fair Sentencing Act Defendant's convictions for killing Douglas Moody, Peyton Johnson and Louis Johnson in furtherance of a continuing criminal enterprise remain punishable by death or life imprisonment with a mandatory minimum of 20 years' imprisonment. As a result, this case differs from *Woodson*, where the Fourth Circuit found that by modifying the conduct at issue under § 841(b)(1)(C), the Fair Sentencing Act also modified the statutory penalties for § 841(b)(1)(C). Here, unlike in *Woodson*, Congress did not modify the conduct at issue in § 848(e)(1)(A) and, therefore, did not modify the statutory penalties. Accordingly, the suggestion that Congress amended § 848(e)(1)(A) to reduce the penalties for lethal drug traffickers finds itself far afield of any intent expressed by Congress.

ii.     **The First Step Act Cannot Override the Sentencing Statutes Applicable to Defendant's Convictions.**

Even if the Fair Sentencing Act could have indirectly modified the statutory penalties for convictions under § 848(e)(1)(A), the Court could not reduce Defendant's death sentence. A comparison of the language between the statutes at issue reveals that Congress did not intend for the First Step Act to authorize courts to reduce death sentences imposed under § 848(e)(1)(A). First, Defendant's sentencing statute mandated the imposition of the death penalty upon the jury's recommendation.[8] 21 U.S.C. § 848(l) (repealed 2006) ("Upon the recommendation that the sentence of death be imposed, the court shall sentence the defendant to death."). The statute that would govern sentencing if Defendant were convicted for similar crimes today likewise contains mandatory language. *See* 18 U.S.C. § 3591(a) (mandating that a defendant "shall be sentenced to death" if the jury recommends such a sentence following a hearing). That mandatory language contrasts starkly with the First Step Act, which contains undeniably permissive language in two of its three sections: "A court that imposed a sentence for a covered offense *may*, on motion of the defendant . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed." First Step Act, § 404(b) (emphasis added). The next subsection reinforces the discretion granted the courts: "Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section." *Id.*, § 404(c).

The Court must give effect to both statutes. "[W]hen two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the

---

[8]     Congress repealed §§ 848(g)-(r) in 2006 and made § 848(e)(1)(A) offenses subject to the death penalty provisions of the Federal Death Penalty Act, 18 U.S.C. § 3591, *et seq.* ("FDPA"). Pub. L. 109-177, 120 Stat. 231, 232. However, the Fourth Circuit has held that §§ 848(g)-(r) continue to apply to defendants sentenced before the repeal of those sections. *Stitt*, 552 F.3d at 354 ("We think this case law leads inexorably to the conclusion that §§ 848(g)-(r) are saved by the Savings Statute.").

31

contrary, to regard each as effective." *Morton v. Mancari*, 417 U.S. 535, 551 (1974). Regarding both as effective leads the Court to follow the mandate set forth in the sentencing statutes and sentence Defendant to death as the jury recommended. The permissive language of the First Step Act cannot overrule the mandatory language in the sentencing statutes. And, instead of "clearly expressed congressional intention to the contrary" of this conclusion, Congress' definitively expressed intent supports this conclusion. With the Fair Sentencing Act, Congress intended to increase the sentences of violent drug offenders. *See* Fair Sentencing Act, § 5, 124 Stat. at 2373 (directing the Sentencing Guideline Commission to increase the Sentencing Guidelines "if the defendant used violence, made a credible threat to use violence, or directed the use of violence during a drug trafficking offense."). Thus, it defies logic to suggest that Congress intended the First Step Act to grant discretion to the courts in sentencing the most violent drug offenders when none previously existed. Allowing the Court to override the jury's death recommendation to reduce Defendant's sentences for his § 848(e)(1)(a) convictions would run contrary to the intent of the Fair Sentencing Act and result in giving the sentencing statutes no effect. This the Court cannot do.

Defendant's specific request with respect to Count Five highlights the difficulty in squaring the two statutes in the manner that he suggests. Although the First Step Act only gives courts the discretion to impose a reduced sentence for a covered offense, Defendant does not (and cannot) request that the Court impose a reduced sentence for Count Five. Defendant instead asks the Court to impanel a new sentencing jury. But the First Step Act did not expressly vest the courts with the discretion or authority to impanel a new sentencing jury, because Congress did not intend the statute to cover violent offenses for which a jury could sentence a defendant to death. Therefore, the Court cannot grant Defendant's request.

32

**iii.      The Sentencing Guidelines Demonstrate that Defendant's Convictions Do Not Fall Under the First Step Act.**

The Sentencing Guidelines further support the conclusion that Defendant's sentencing exposure under his § 848(e)(1)(A) remained unchanged by the First Step Act.[9]  The Fair Sentencing Act did not result in changes to the guidelines for convictions under § 848(e).  Those convictions currently fall under the "First Degree Murder" section of the Sentencing Guidelines, which suggest a guideline sentencing range of life imprisonment.[10]  U.S.S.G. § 2A1.1.  Likewise, before the Fair Sentencing Act, and at the time of Defendant's sentencing, convictions under § 848(e) fell under the "First Degree Murder" section of the Sentencing Guidelines.  *See, e.g.*, U.S.S.G. § 2A1.1 (U.S. Sentencing Comm'n 1993); (PSR at 42).  Moreover, unlike other sections of the Sentencing Guidelines that take into account the drug quantity in the underlying offense, the "First Degree Murder" section contains no such provision.  *Compare, e.g.*, U.S.S.G. § 2D1.1 (taking into account drug quantity in calculating base offense level for various offenses), *with* U.S.S.G. § 2A1.1 (no reference to drug quantities in calculating base offense level for first degree murder).  This provides further support for the conclusion that the Fair Sentencing Act had no effect on the penalties applicable to Defendant's Capital Murder Convictions.

---

[9]      The Court recognizes that the First Step Act concerns changes to the statutory penalties rather than the Sentencing Guidelines.  *See Wirsing*, 943 F.3d at 186 ("The First Step Act specifies that it is 'statutory penalties' that are at issue to avoid any ambiguity that might arise in the sentencing context between penalties specified by statute or by the Guidelines.").  Nevertheless, this brief analysis of the relevant Sentencing Guidelines highlights the lack of change to Defendant's sentencing exposure produced by the First Step Act and illustrates that Congress did not intend to reduce the statutory penalties for violent drug offenders.

[10]      "This guideline applies when a sentence of death is not imposed under [21 U.S.C. § 848(e)]."  U.S.S.G. § 2A1.1 cmt. 3.  And, of course, the Fair Sentencing Act did not change the fact that the death penalty (or a sentence of life imprisonment) may still be imposed under 21 U.S.C. § 848(e).

33

**D.      Other Courts Have Considered Similar, But Not Identical, Issues.**

Defendant further argues that other courts have found that § 848 convictions qualify as covered offenses. (Def. Mem. at 5.) However, Defendant cites only non-binding and inapposite cases. The Fourth Circuit has not spoken on the issue. Yet, in the only published circuit court opinion to address an § 848(e) conviction under the First Step Act, the Sixth Circuit came to the same conclusion as the Court does here. In *United States v. Snow*, the Sixth Circuit held that Defendant's conviction under § 848(e)(1)(a) for conspiracy to kill a person while engaged in a conspiracy to distribute at least 50 grams of cocaine base did not constitute a covered offense for purposes of the First Step Act. 967 F.3d 563, 564 (6th Cir. 2020). The defendant argued that the increase in the threshold quantity to trigger § 841(b)(1)(A), combined with § 848(e)(1)(A)'s requirement of an offense punishable under § 841(b)(1)(A), qualified his § 848(e)(1)(A) conviction as a covered offense. *Id.* at 564. The Sixth Circuit rejected this argument: "We disagree and hold that the First Step Act's text and structure do not support extending resentencing relief to Snow's § 848(e)(1)(A) conviction." *Id.*

This rejection relied on two main reasons. First, the court determined that under the defendant's theory, the previous elements of the defendant's conviction — murder in furtherance of a conspiracy to distribute at least 50 grams of cocaine base — *"no longer amount to an offense under § 848 at all* and there is *no* applicable statutory sentencing range" after the Fair Sentencing Act. *Id.* at 565 (emphasis in original). The Sixth Circuit determined that this constituted an elimination of statutory penalties, not a modification, and, therefore, the First Step Act did not apply. Second, and relatedly, the district court could not impose a reduced sentence as if the Fair Sentencing Act had been in effect, because the First Step Act "simply does not contemplate the *elimination* of a sentence, as would be required here." *Id.* (emphasis in original). Therefore, it

34

concluded that "Snow's § 848(e)(1)(A) conviction is not a covered offense and he is ineligible for a reduction in his sentence for Count 2." *Id.* For the reasons stated above, the Court agrees with the Sixth Circuit's conclusion.

The cases cited by Defendant for the proposition that "courts have consistently found that a conviction under § 848 is a covered offense under the First Step Act" fail to persuade the Court. (Def.'s Mot. at 5.)  For example, in *United States v. Davis*, the court found that "a defendant's § 848(e)(1)(A) conviction is a covered offense because it relies on the drug quantity thresholds set by § 841 and, therefore, requires a jury finding that the defendant committed a murder in furtherance of a drug conspiracy to sell 280 or more grams of cocaine base." 2020 WL 1131147, at *2 (W.D. Va. Mar. 9, 2020). Here, however, as described above, Defendant's § 848(e)(1)(A) conviction does not rely on the drug quantity thresholds set by § 841. Moreover, for the reasons stated above, the Court disagrees with the reasoning in *Davis*.[11]

The remaining cited cases are inapposite. In *United States v. Brown*, the Court found that the defendant's convictions under § 848 (a) and (b) constituted covered offenses under the First Step Act. 2020 WL 3106320 (W.D. Va. June 11, 2020). It did not address a conviction under § 848(e)(1)(A). In any event, its finding that § 848 as a whole constituted the statute of conviction contradicts Fourth Circuit precedent that § 848(e)(1)(A) stands by itself apart from the rest of § 848. *See NJB*, 104 F.3d at 633 (holding that the statute "clearly expresses Congress' intent that § 848(e) be a separate crime"). Likewise, in *United States v. Kelly*, the Court addressed the defendant's convictions under § 848(c) and sentence under § 848(a) and (b). No. 2:94cr163 (E.D. Va. June 5, 2020). It did not address a conviction under § 848(e)(1)(A).

---

[11]   Despite the faulty eligibility analysis, the court in *Davis* did find that the First Step Act did not alter the § 848(e)(1)(A) conviction and instead only made him eligible for a sentence reduction. And the court denied him such a reduction. 2020 WL 1131147, at *2-3.

Finally, in *Wright v. United States*, the Court addressed the defendant's § 841 convictions, but excluded the defendant's § 848(c) conviction when listing the counts covered by the First Step Act. 425 F. Supp. 3d 588, 592-94 (E.D. Va. 2019). It did not address a conviction under § 848(e)(1)(A) or any other section of § 848 and, therefore, has no bearing on the instant analysis. The other unpublished, out-of-district and out-of-circuit cases cited by Defendant similarly fail to convince this Court that it may modify Defendant's sentences for convictions for murder in furtherance of a continuing criminal enterprise in violation of § 848(e)(1)(A).

At bottom, Defendant comes before the Court with unaltered convictions under a statute with unaltered statutory penalties and asks the Court to alter his sentence. Defendant received a death sentence and life imprisonment sentences for drug-related murders. However, these sentences had no foundation in the type or quantity of drug that led to the murders. Instead, they were predicated on the fact that Defendant killed multiple people to advance his drug enterprise. Yet, Defendant attempts to use the Fair Sentencing Act and First Step Act — enacted to correct disparate sentences that had a foundation only in the type and quantity of the drug at issue — to reduce his sentences for these murders. Congress plainly did not intend for those Acts to apply to Defendant's deadly drug crimes.

Because the statutory penalties for his statute of conviction remain unchanged, the First Step Act does not reach Defendant's sentences under § 848(e)(1)(A). *See United States v. Woodson*, 962 F.3d at 816-17 (holding that "the relevant change for purposes of a 'covered offense' under the First Step Act is a change to the statutory penalties for a defendant's statute of conviction"). Accordingly, the Court holds that Defendant's convictions under § 848(e)(1)(A) for the Capital Murder Counts do not constitute "covered offenses" for purposes of the First Step Act. The Court's decision on these counts does not end the analysis, as Defendant also moves

36

for a reduction of his sentence imposed for his Drug Distribution Conviction.

**E.    Count Thirty-Two's Status as a Covered Offense Will Not Result in a Sentence Reduction.**

Although the First Step Act does not cover Defendant's convictions under

§ 848(e)(1)(A), it does cover his Drug Distribution Conviction in Count Thirty-Two for

violations of § 841(a)(1).  Under Count Thirty-Two, Defendant received a sentence of forty

years' imprisonment for a violation of § 841(a)(1), to run concurrently with any other sentence

imposed.  Defendant argues that this sentence makes up part of a larger sentencing package that

the Court must revisit.[12]  Therefore, the combination of a covered offense with non-covered

offenses presents two issues that the Court must resolve.  First, does a conviction of one covered

offense entitle Defendant to reconsideration of his sentences for all convictions?  And second,

should the Court reduce Defendant's sentence for his Drug Distribution Conviction?  For both

questions, the Court answers in the negative.

**i.    The Court Cannot Impose a Reduced Sentence for Non-Covered Offenses.**

First, the statute's text demonstrates that the First Step Act does not permit the Court to

impose a reduced sentence for non-covered offenses.  By its operative language, section 404(b)

provides, "[a] court that imposed a sentence for a covered offense may . . . impose a reduced

sentence as if sections 2 and 3 of the Fair Sentencing Act . . . were in effect at the time the

covered offense was committed."  First Step Act, § 404(b), 132 Stat. 5194.  In deciphering the

meaning of the term "sentence," the Court must keep in mind the "normal rule of statutory

---

[12]    Defendant also attacks the other convictions that comprise his sentencing package. (Def.'s Mot. at 47-50.)  However, only Counts Five, Eight, Eleven and Thirty-Two form the basis of his First Step Act Motion, as only those counts could arguably fall under the First Step Act.  Because a First Step Act motion does not provide the proper vehicle for the attacks on Defendant's other convictions that he raises, the Court will not entertain those arguments here. *See Chambers*, 956 F.3d at 676 (Rushing, J., dissenting) (noting that the First Step Act does not "provide a general opportunity to collaterally attack a final sentence").

37

interpretation that identical words used in different parts of the same statute are generally presumed to have the same meaning." *IBP, Inc. v. Alvarez*, 546 U.S. 21, 33-34 (2005). Giving the word "sentence" a consistent meaning in Section 404(b), the Court can impose a "reduced sentence" only to replace the "sentence for a covered offense." Along these same lines, the Court must read section 404(b) in conjunction with the narrow limitations placed on sentence modifications by 18 U.S.C. § 3582(c)(1)(B). And, section 404(b) did not expressly permit the Court to modify a defendant's sentence for a non-covered offense. Accordingly, the Court finds that it cannot reduce Defendant's sentences for the Capital Murder Convictions based solely on the fact that Defendant received a sentence for a covered offense for the Drug Distribution Count.

### ii. The Calculation of Defendant's Sentence and the Concurrent Sentences Imposed Weigh Against a Sentence Reduction.

Although the First Step Act covers Defendant's offense in Count Thirty-Two, the Court need not reduce his sentence. Even if a defendant meets the eligibility criteria for a sentence reduction under the First Step Act, the Court retains discretion over whether to grant the reduction. *Wirsing*, 943 F.3d at 180 ("Among other limitations, Congress left the decision as to whether to grant a sentence reduction to the district court's discretion."); FSA § 404(c), 132 Stat. at 5222 ("Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section."). Here, the Court will exercise that discretion and deny Defendant's request for a reduction below forty years' imprisonment.

In exercising this discretion, the Court notes that Defendant's sentence appears to have been imposed as if the Fair Sentencing Act were in effect at the time of his sentencing. In Count Thirty-Two, the jury convicted Defendant of Possession with Intent to Distribute 50 Grams or More of Cocaine Base, in violation of §§ 841(a)(1) and (b)(1)(A)(ii). At the time of Defendant's

sentencing, before the Fair Sentencing Act, Defendant's conviction for more than 50 grams of cocaine base mandated a sentence of ten years to life imprisonment. *Wirsing*, 943 F.3d at 180-81. Today, after the Fair Sentencing Act, possession of 50 grams of cocaine base mandates a sentence of imprisonment of five to forty years. 21 U.S.C. § 841(b)(1)(B)(iii). However, in preparing Defendant's Presentence Investigation Report (("PSR") ECF No. 27-1), the Probation Officer calculated Defendant's statutory penalty range for Count Thirty-Two as five to forty years' imprisonment. (PSR at 36, 53.) The Court sentenced Defendant within this range, albeit at the top of this range — forty years. Accordingly, due to a potential miscalculation, it would appear as if Defendant already received the benefit of the Fair Sentencing Act with respect to the Drug Distribution Conviction.

The concurrent sentence doctrine further counsels against reducing Defendant's sentence for the Drug Distribution Conviction. The concurrent sentence doctrine generally provides that where a defendant receives concurrent sentences on plural counts, a reviewing court need not pass on the validity of a sentence where the sentence runs concurrently with an equal or longer sentence. *United States v. Charles*, 932 F.3d 153, 160-61 (4th Cir. 2019). The doctrine "has continuing force as a species of harmless-error review where a defendant seeks to challenge the legality of a *sentence* that was imposed for a valid conviction, but where the challenged sentence runs concurrently with a valid sentence of an equal or greater duration." *Id.* (emphasis in original). Here, Defendant received a forty-year sentence for his covered offense to run concurrently with his death sentence and five other life imprisonment sentences. These other sentences clearly eclipse his sentence on the Drug Distribution Conviction, such that the Court need not pass on imposing a new sentence for Count Thirty-Two.

39

### iii.   The § 3553(a) Factors Weigh Against A Sentence Reduction.

Even absent these factors, the Court would not exercise its discretion to reduce

Defendant's sentence.  In declining to reduce Defendant's sentence, the Court has considered the

factors set forth in 18 U.S.C. § 3553(a), which include:

1.   the nature and circumstances of the offense and the history and characteristics of the defendant;

2.   the need for the sentence imposed –

   a.   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   b.   to afford adequate deterrence to criminal conduct;

   c.   to protect the public from further crimes of the defendant; and

   d.   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3.   the kinds of sentences available;

4.   the kinds of sentences and the sentencing range established for [the applicable offense category as set forth in the guidelines];

5.   any pertinent policy statement . . . by the Sentencing Commission;

6.   the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

7.   the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).  The applicable factors weigh against granting Defendant's motion.

First, "the nature and circumstances of the offense and the history and characteristics of

the defendant" weigh heavily against Defendant.  Defendant murdered multiple people on

different occasions in cold blood in furtherance of his drug trafficking.  Even before these

convictions, Defendant committed several other violent and drug-related crimes, leading to a

criminal history category of V.  (PSR at 50-52.)  The Court has considered Defendant's good

40

conduct and rehabilitative efforts while in prison, which factor in his favor. Moreover, the Court has considered the evidence of the mitigating factors that Defendant has raised in his Motion, including his abusive childhood and his brain damage. However, these mitigating factors do not outweigh the heinous nature and circumstances of his offenses.[13]

Next, the Court believes that reducing Defendant's sentence would not reflect the seriousness of the offense, promote just punishment for the offense, provide respect for the law or afford adequate deterrence to criminal conduct. Indeed, reducing the sentence of a lethal drug dealer would undermine these goals. Defendant has proven himself as the ultimate danger to the community. Defendant led an extremely violent drug enterprise that killed at least ten people, with Defendant personally implicated in at least five killings. The jury recognized Defendant's status as a highly dangerous individual in sentencing him to the death penalty — a penalty reserved for only the most vicious and dangerous criminals. Defendant's rehabilitative efforts, although substantial and commendable, pale in comparison to the dangers that he poses to society. A reduced sentence would fail to reflect the seriousness of Defendant's crimes. Nor would a reduced sentence provide for a just punishment for Defendant's horrific acts. Likewise, reducing the sentence of a serial killer would undermine respect for the law and detract from adequate deterrence to criminal conduct.

---

[13]    In his First Step Act Motion, Defendant advances claims of actual innocence for the murder of Douglas Moody in arguing that the circumstances of the offense militate in favor of a reduced sentence. (Def.'s Mot. at 8-16.) However, his actual innocence claim has received multiple exhaustive reviews by this Court and the Fourth Circuit. Each review has resulted in a rejection of the actual innocence claim. In any event, a First Step Act Motion does not provide the proper vehicle to litigate this claim yet again.

Notably, his insistence on pressing his rejected actual innocence claim undermines his argument that he has accepted responsibility for his actions and changed his life. Nevertheless, the Court has considered the evidence supporting Defendant's claim of actual innocence and his rehabilitation, but it finds that this evidence does not outweigh the reprehensible nature and circumstances of the offense.

41

The kinds of sentences and sentencing range weigh in favor of not reducing Defendant's sentence, as he has already received a sentence in the applicable Guideline Range for the Drug Distribution Conviction. Likewise, no policy statement from the Sentencing Commission weighs in favor of reducing Defendant's sentence, as the Guidelines for both offenses remain unchanged with respect to the Drug Distribution Conviction and the Capital Murder Convictions. Finally, the Court finds that reducing Defendant's sentence could lead to unwarranted sentence disparities, as defendants with similar records who have been convicted of similar conduct would likely not receive sentences below what Defendant has received here.

The applicable § 3553(a) factors, taken as a whole, counsel against reducing Defendant's term of imprisonment for Count Thirty-Two below forty years.

## IV.    CONCLUSION

Throughout both the guilt and penalty phases, the jury in this case heard all of the evidence relating to Defendant's role in this drug enterprise and the five individuals that he killed to protect his enterprise. Beyond evidence of the atrocious crimes for which it convicted Defendant, the jury heard evidence relating to his character. That jury — speaking on behalf of the community — unanimously decided that this heinous serial killer deserved to die for his actions. The Court refuses to overturn the will of the community. It is not the Court's role to revisit the jury's determination, especially when doing so would run contrary to the goals of the First Step Act.

For the reasons stated above, the Court finds that Defendant's convictions on Counts Five, Eight and Eleven do not constitute covered offenses under the First Step Act. Although Defendant's conviction on Count Thirty-Two does constitute a covered offense, the Court declines to exercise its discretion to reduce Defendant's sentence. Therefore, Defendant's

Motion for Imposition of a Reduced Sentence Pursuant to Section 404 of the First Step Act (ECF No. 17) will be denied.

An appropriate Order will issue.

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all counsel of record.

_____/s/_____

David J. Novak
United States District Judge

Richmond, Virginia
Dated:  October 29, 2020