IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

UNITED STATES OF AMERICA,

    v.                                     Criminal No. 3:92cr68 (DJN)

COREY JOHNSON,
    Defendant.

## MEMORANDUM ORDER
### (Denying First Step Act Motion)

Convicted serial killer Corey Johnson ("Defendant" or "Johnson") comes before the

Court with a Motion for a Reconsideration of Sentence Hearing Pursuant to the First Step Act of

2018 (ECF No. 38) in a last-ditch effort to avoid the just punishment imposed on him for his role

in killing multiple people in furtherance of his drug enterprise.  The Court has already rejected a

nearly identical effort from one of Defendant's co-conspirators.[1]  Defendant has challenged his

convictions and sentences on numerous occasions throughout the years.  But each time they

survived appellate review.  Defendant now seeks to latch onto laws passed to reduce the

sentencing disparities between non-violent crack and powder cocaine offenses as a vehicle to

reduce his sentences imposed for running a drug enterprise and committing multiple murders in

furtherance of the drug enterprise.  But that enterprise and those murders, and the statutes under

which a jury convicted Defendant for them, have nothing to do with the penalties for drug

quantities that the First Step Act addressed.

---

[1]    The Court hereby expressly incorporates into this Memorandum Order the Memorandum Opinion (the "*Roane* Mem. Op." (ECF No. 67)) denying Roane's First Step Act Motion, entered on October 29, 2020.  The instant Memorandum Order supplements the *Roane* Memorandum Opinion to address the new or individualized arguments raised by Defendant.

## I.    BACKGROUND[2]

### A.    Factual Background

Defendant, along with Richard Tipton ("Tipton") and James Roane, Jr. ("Roane") (collectively, the "partners"), ran a substantial drug-trafficking conspiracy that lasted from 1989 through July of 1992. *Roane*, 378 F.3d at 389. The partners in the conspiracy obtained wholesale quantities of powder cocaine from suppliers in New York City, converted it into crack cocaine, divided it among themselves and then distributed it through a network of 30-40 street level dealers. *Id.* at 389-90. Typically, the partners took two-thirds of the proceeds realized from the street-level sales of their product. *Id.* at 390.

Over a short time in early 1992, the partners took part, in some form, in the murders of ten persons in the Richmond area. *Id.* These murders occurred "in relation to their drug-trafficking operation and either because their victims were suspected of treachery or other misfeasance, or because they were competitors in the drug trade, or because they had personally offended one of the 'partners.'" *Id.* The murders described below directly implicated Defendant.

On January 14, 1992, Roane and Johnson located Peyton Johnson, another rival drug dealer, at a tavern. *Id.* Shortly after Roane left the tavern, Corey Johnson entered and fatally shot Peyton Johnson with a semiautomatic weapon. *Id.*

On January 29, 1992, Roane pulled his car around the corner of an alley, got out and shot Louis Johnson, who had threatened one of the partners while acting as a bodyguard for a rival drug dealer. *Id.* Corey Johnson and Lance Thomas ("Thomas") then got out of Roane's car and

---

[2]    The Court takes these background facts from the Fourth Circuit's opinion in *United States v. Roane*, 378 F.3d 382 (4th Cir. 2004), which recited the factual summary *in haec verba* from *United States v. Tipton*, 90 F.3d 861 (4th Cir. 1996), the opinion on the defendants' direct appeal.

began firing at Louis Johnson. *Id.* As Louis Johnson laid on the ground, either Corey Johnson or Thomas shot him twice at close range. *Id.* Louis Johnson died from these gunshot wounds. *Id.*

On February 1, 1992, Roane, Johnson and Thomas went to the apartment of Torrick Brown, who had given Roane trouble. *Id.* After the three men knocked on the apartment door, Brown's half-sister opened the door and summoned Brown. *Id.* The three men opened fire with semiautomatic weapons, killing Brown and critically wounding his half-sister. *Id.*

In late January 1992, after Johnson threatened Dorothy Armstrong for not paying for a supply of crack cocaine, Armstrong went to live with her brother, Bobby Long. *Id.* On February 1, 1992, Johnson, Tipton and Jerry Gaiters ("Gaiters") went to Long's house. *Id.* at 391. While Tipton waited in the car, Johnson and Gaiters approached the front door. *Id.* When Long opened the door, Johnson opened fire, killing Dorothy Armstrong and Anthony Carter. *Id.* As Bobby Long fled out the front door, Johnson shot him dead in the front yard. *Id.*

On February 19, 1992, Johnson arranged to meet with Linwood Chiles, who Johnson suspected of cooperating with the police. *Id.* That night, Chiles and Johnson drove off together in Chile's station wagon, with Curtis Thorne and sisters Priscilla and Gwen Greene also in the car. *Id.* Chiles parked in an alley before Tipton parked behind the station wagon and walked up beside it. *Id.* With Tipton standing by, Johnson told Chiles to place his head on the steering wheel before shooting him twice at close range. *Id.* The partners fired additional shots, killing Thorne and critically wounding the Greene sisters in the station wagon. *Id.*

**B.    Verdict and Sentencing**

In January and February of 1993, United States District Judge James R. Spencer presided

over the trial of Defendant and his co-conspirators. Defendant[3] faced capital murder charges for Murder in Furtherance of a Continuing Criminal Enterprise ("CCE") under 21 U.S.C. § 848(e)(1)(A) for seven of these killings — Peyton Johnson (Count Eight), Louis Johnson (Count Eleven), Armstrong (Count Seventeen), Carter (Count Eighteen), Long (Count Nineteen), Thorne (Count Twenty-Four) and Chiles (Count Twenty-Five) (collectively, the "Capital Murder Counts" or "Capital Murder Convictions"). *Id.* at 391; (Second Superseding Indictment ("Indictment") (Dkt. No. 115) at 7-18). On February 3, 1993, the jury convicted him of all seven Capital Murder Counts. 378 F.3d at 391. The jury also convicted Defendant of one count of participating in a Conspiracy to Possess Cocaine Base with Intent to Distribute, in violation of 21 U.S.C. § 846 (Count One); one count of engaging in a CCE, in violation of 21 U.S.C. § 848(a) (Count Two (the "CCE Count" or "CCE Conviction")); eleven counts of Committing Acts of Violence in Aid of Racketeering ("VICAR"), in violation of 18 U.S.C. § 1959 (Counts Ten, Thirteen, Fourteen, Sixteen, Twenty-One, Twenty-Two, Twenty-Three, Twenty-Seven, Twenty-Eight, Twenty-Nine, Thirty); five counts of Use of a Firearm in Relation to a Crime of Violence or Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c) (Counts Nine, Twelve, Fifteen, Twenty, Twenty-Six); and two counts of Distribution of or Possession with Intent to Distribute Crack Cocaine, in violation of § 841(a)(1) (Counts Thirty-One and Thirty-Two (the "Drug Distribution Counts" or the "Drug Distribution Convictions")). 378 F.3d at 392; (Dkt. Nos. 466, 593). Defendant's First Step Act Motion pertains only to the CCE Conviction, the Capital Murder Convictions and the Drug Distribution Convictions.

On February 16, 1993, following a penalty hearing on the Capital Murder Convictions, the jury recommended that Defendant be sentenced to death for all seven of the Capital Murder

---

[3]    The Court tried Roane, Tipton and Johnson along with four other defendants on a thirty-three-count superseding indictment.

4

Convictions. 378 F.3d at 392. On June 1, 1993, pursuant to 21 U.S.C. § 848(l), the Court sentenced Johnson to death for Counts Eight, Eleven, Seventeen, Eighteen, Nineteen, Twenty-Four and Twenty-Five. (Dkt. No. 593.) Defendant received a life imprisonment sentence for the CCE Conviction and each of the VICAR convictions. *Id.* Additionally, Defendant received a sentence of forty years' imprisonment for Count Thirty-Two, thirty years' imprisonment for each of Counts Twenty-Nine and Thirty, twenty years' imprisonment for each of Counts Twelve, Fifteen, Sixteen, Twenty, Twenty-Six and Thirty-One and five years' imprisonment for Count Nine. *Id.*

The Court refused to order the execution on the grounds that Congress had neither directly authorized the means to carry out the death sentences, nor properly delegated to the Attorney General the authority to issue the implementing regulations that the Government invoked. 378 F.3d at 392. As a result, the Court stayed the execution of the death sentences until such time as Congress had authorized the means of execution. *Id.*

## C.    Post-Trial Proceedings

The defendants appealed their convictions and sentences and the Government cross-appealed the stay of the death sentences. *Id.* at 392. In a lengthy opinion, the Fourth Circuit analyzed and disposed of approximately sixty issues, including challenges by the defendants to aspects of the jury-selection process and both the guilt and penalty phases of the trial. *Tipton*, 90 F.3d at 861. The Fourth Circuit rejected nearly all of the claims, affirming the convictions and sentences of all of the defendants, except that it vacated on Double Jeopardy grounds the drug conspiracy convictions under 21 U.S.C. § 846, finding that the CCE convictions in Count Two precluded sentences for the drug conspiracy offenses. *Id.* at 903. Additionally, the Fourth Circuit vacated the stay of the death sentences and remanded for the executions to proceed in

5

accordance with regulations promulgated by the Attorney General. *Id.* at 901-03.

Defendant continued to press his appeals. On June 1, 1998, Defendant filed a motion under 28 U.S.C. § 2255 to vacate and set aside his sentences. *Roane*, 378 F.3d at 392. The Court granted the Government's summary judgment motion, and Defendant appealed. *Id.* at 393. The Fourth Circuit affirmed, ruling against Defendant on all accounts. *Id.* at 398-406.

In 2016, Defendant filed multiple applications with the Fourth Circuit to file successive § 2255 petitions to invalidate his § 924(c) convictions. The Fourth Circuit denied his requests. *In re Corey Johnson*, No. 16-4 (4th Cir. 2016), ECF Nos. 2, 10; *In re Corey Johnson*, No. 16-13 (4th Cir. 2016), ECF Nos. 2, 8. On May 22, 2020, Defendant filed yet another application with the Fourth Circuit for a successive § 2255 petition pursuant to the Supreme Court's decision in *United States v. Davis*, 139 S. Ct. 2319 (2019). The Fourth Circuit has placed the case in abeyance pending its decision in *United States v. Dickerson*. *In re Corey Johnson*, No. 20-8 (4th Cir. 2020), ECF Nos. 2, 23.[4]

### D.     Defendant's First Step Act Motion

On August 19, 2020, Defendant filed the instant motion under § 404 of the First Step Act, asking the Court to reduce his sentences for the CCE counts, the Capital Murder Counts and the Drug Distribution Counts. (Mem. in Supp. of Def.'s Mot. for Reconsideration of Sentence Hearing Pursuant to the First Step Act of 2018 ("Def.'s Mot.") (ECF No. 39).) Defendant argues that these convictions constitute covered offenses under the First Step Act, because the Fair

---

[4]     Johnson's proposed successive § 2255 petition has no impact on his First Step Act motion. In his proposed petition, he attacks his convictions under § 924(c) and does not attack the counts at issue here. *In re Corey Johnson*, No. 20-8 (4th Cir. 2020), ECF No. 2-2 (moving to vacate his convictions under 18 U.S.C. § 924(c) in Counts Nine, Twelve, Fifteen, Twenty and Twenty-Six). Although in his proposed § 2255 petition he argues that his Capital Murder Convictions cannot form the predicates of his § 924(c) convictions, he does not attack the convictions or sentences for the Capital Murder Counts. *Id.*

Sentencing Act modified the statutory penalties for §§ 841 and 848, and the First Step Act allows the Court to retroactively impose those modified statutory penalties. (Def.'s Mot. at 8-10.) Because his resentencing implicates the death penalty, Defendant claims that a jury must resentence him on the Capital Murder Convictions. (Def.'s Mot. at 11.) To that end, Defendant devotes the bulk of his brief to arguing that mitigating factors warrant a reduced sentence. Specifically, Defendant argues that his abusive and neglectful childhood and intellectual disability counsel against imposing the death penalty. (Def.'s Mot. at 16-31.) Further, Defendant argues that his remorse and post-conviction record warrant a reduced sentence. (Def.'s Mot. at 32-35, 40-42.) Finally, Defendant claims that his entire sentencing package contains fatal deficiencies, warranting a sentence reduction. (Def.'s Mot. at 43.) To reach this conclusion, Defendant argues that his § 846, § 924(c) and VICAR convictions are all invalid, despite the Fourth Circuit only invalidating the § 846 conviction to date (on Double Jeopardy grounds) following multiple appeals. (Def.'s Mot. at 43-46.) Accordingly, Defendant requests that the Court grant a full resentencing hearing on the Capital Murder Convictions and a reconsideration of the sentence on the remaining convictions by the Court. (Def.'s Mot. at 47.)

On September 23, 2020, the Government filed its opposition to Defendant's Motion, primarily arguing that his convictions under §848 do not constitute covered offenses and, therefore, the Court may not reduce his sentence. (Govt's Opp. to Def.'s First Step Act Mot. ("Govt's Resp.") (ECF No. 39).) On October 8, 2020, Defendant filed his reply ("Def.'s Reply" (ECF No. 64)), rendering this matter now ripe for review.

## II.    DISCUSSION

The Court must first address whether Defendant's convictions for which he seeks a reduction constitute covered offenses. *United States v. Gravatt*, 953 F.3d 258, 260 (4th Cir.

7

2020) ("[T]he existence of a 'covered offense' is a threshold requirement under the [First Step] Act."). Defendant's desire to have his death sentences reduced for his Capital Murder Convictions clearly drives his request, but the Court has recently determined that those convictions do not constitute covered offenses under the First Step Act. Thus, the Court need not engage in that analysis again. The Court will then address whether Defendant's CCE Conviction constitutes a covered offense, because it did not previously have occasion to address that conviction. Finally, the Court must determine whether to reduce Defendant's sentences for the Drug Distribution Counts, which do constitute covered offenses.

### A.    Defendant's Capital Murder Convictions under § 848(e) Do Not Constitute Covered Offenses.

Defendant argues that his Capital Murder Convictions qualify as covered offenses under the First Step Act. The Court has recently rejected this identical argument as advanced by his co-conspirator, James Roane. On October 29, 2020, the Court denied Roane's First Step Act Motion. (ECF No. 66.) In the accompanying Memorandum Opinion, the Court thoroughly analyzed the question of whether the defendants' murder convictions under § 848(e)(1)(A) constitute covered offenses under the First Step Act. *Roane* Mem. Op. at 15-37. The Court concluded that they do not. *Id.* That analysis applies equally to Defendant's Capital Murder Convictions, and Defendant has offered no compelling arguments to reach a different result. Therefore, the Court hereby incorporates its previous Memorandum Opinion and finds that Defendant's Capital Murder Convictions under Counts Eight, Eleven, Seventeen, Eighteen, Nineteen, Twenty-Four and Twenty-Five do not constitute covered offenses for purposes of the First Step Act.

### B.    Defendant's CCE Conviction under § 848(a) Does Not Constitute a Covered Offense.

Defendant also argues that his CCE Conviction in Count Two constitutes a covered

offense. (Def.'s Mot. at 8-10.) In the *Roane* Memorandum Opinion, the Court did not analyze whether a conviction under § 848(a) constitutes a covered offense, because Roane did not move to reduce his sentence imposed under Count Two. However, for many of the same reasons that Defendant's Capital Murder Convictions do not constitute covered offenses, his CCE Conviction likewise does not constitute a covered offense.

First, the Fair Sentencing Act did not modify the statutory penalties in § 848(a), demonstrating that the First Step Act does not apply. *See Roane* Mem. Op. at 24-28 (determining that textual analysis of statutes at issue demonstrate that convictions under § 848(e)(1)(A) do not constitute covered offenses). Second, and relatedly, Congress did not intend for the Fair Sentencing Act to reduce the sentences for the drug kingpins that § 848 targets. *See Roane* Mem. Op. at 24-25 (explaining why Congress did not intend the Fair Sentencing Act to apply to § 848(e) convictions). Third, Defendant's CCE Conviction, and the convictions predicating his CCE Conviction, remain valid. That is, the jury found beyond a reasonable doubt that Defendant had committed all of the required elements of a violation of § 848(a), regardless of the statutory penalties that those elements could expose Defendant to when charged as separate offenses. *See id.* at 22-23, 26-28 (explaining why convictions remain valid). Finally, should the Court resentence Defendant under Count Two, his sentencing exposure would remain the same as when the Court originally imposed his sentence — a potential life imprisonment sentence. In short, just as with his Capital Murder Convictions, Defendant comes before the Court with unaltered convictions for statutes that have unaltered statutory penalties and asks the Court to alter his sentence anyway. The First Step Act does not allow for such a result.

9

**C.** **The Court Will Not Reduce Defendant's Sentences for the Drug Distribution Convictions.**

Although the First Step Act does not cover Defendants convictions under § 848(a) or (e), it does cover his Drug Distribution Convictions in Counts Thirty-One and Thirty-Two for violations of § 841(a)(1). However, even if a defendant meets the eligibility requirement for a sentence reduction under the First Step Act, the Court retains discretion over whether to grant the reduction. *United States v. Wirsing*, 943 F.3d 175, 180 (4th Cir. 2019) ("Among other limitations, Congress left the decision as to whether to grant a sentence reduction to the district court's discretion."). The Court imposed a sentence of twenty years' imprisonment for Count Thirty-One and forty years' imprisonment for Count Thirty-Two. (Dkt. No. 593.) Under the current statutory penalties, the Court may impose a sentence up to twenty years' imprisonment for Count Thirty-One and forty years' imprisonment for Count Thirty-Two. Thus, Defendant received sentences in 1993 that remain within the statutory penalties today. However, the Court could still exercise its discretion and reduce Defendant's sentences for the Drug Distribution Convictions.[5]

The Court will not exercise its discretion to reduce Defendant's sentence. In declining to reduce Defendant's sentence, the Court has considered the factors set forth in 18 U.S.C. § 3553(a), which include:

1.  the nature and circumstances of the offense and the history and characteristics of the defendant;

2.  the need for the sentence imposed –

    a.  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

---

[5]  As the Court previously decided, the fact that Defendant received sentences for covered offenses does not permit the Court to impose a reduced sentence for his non-covered offenses. *See Roane* Mem. Op. at 37-38.

10

b.   to afford adequate deterrence to criminal conduct;

c.   to protect the public from further crimes of the defendant; and

d.   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3.   the kinds of sentences available;

4.   the kinds of sentences and the sentencing range established for [the applicable offense category as set forth in the guidelines];

5.   any pertinent policy statement . . . by the Sentencing Commission;

6.   the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

7.   the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). The applicable factors weigh against granting Defendant's motion.

First, "the nature and circumstances of the offense and the history and characteristics of the defendant" weigh heavily against Defendant. Defendant murdered multiple people on different occasions in cold blood in furtherance of his drug trafficking. Defendant maimed several others in the commission of those murders. Defendant did not limit his violence to others engaged in drug trafficking — innocent bystanders fell victim to Defendant simply as a result of finding themselves in the wrong place at the wrong time. Moreover, even before these convictions, Defendant committed other violent and drug-related crimes, leading to a criminal history category of IV. (PSR ¶ 123-25.) The Court has considered Defendant's good conduct and rehabilitative efforts while in prison, which factor in his favor. Moreover, the Court has considered the evidence of the mitigating factors that Defendant has raised in his Motion, including his neglectful and abusive childhood and his intellectual disability. However, these mitigating factors do not outweigh the heinous nature and circumstances of his offenses.

Next, the Court believes that reducing Defendant's sentence would not reflect the

11

seriousness of the offense, promote just punishment for the offense, provide respect for the law or afford adequate deterrence to criminal conduct. Indeed, reducing the sentence of a lethal drug dealer would undermine these goals. Defendant has proven himself as the ultimate danger to the community. Defendant led an extremely violent drug enterprise that killed at least ten people, with Defendant personally implicated in at least eight killings. The jury recognized Defendant's status as a highly dangerous individual in sentencing him to the death penalty — a penalty reserved for only the most vicious and dangerous criminals. Defendant's rehabilitative efforts, although substantial and commendable, pale in comparison to the dangers that he poses to society. A reduced sentence would fail to reflect the seriousness of Defendant's crimes. Nor would a reduced sentence provide for a just punishment for Defendant's horrific acts. Likewise, reducing the sentence of a serial killer would undermine respect for the law and detract from adequate deterrence to criminal conduct.

The kinds of sentences and sentencing range weigh in favor of not reducing Defendant's sentence, as he has already received sentences in the applicable Guideline Range for the Drug Distribution Convictions. Likewise, no policy statement from the Sentencing Commission weighs in favor of reducing Defendant's sentences, as the Guidelines for both offenses remain unchanged.

Finally, the Court finds that reducing Defendant's sentence could lead to unwarranted sentence disparities, as defendants with similar records who have been convicted of similar conduct would likely not receive sentences below what Defendant has received here. Defendant argues the opposite, claiming that the life sentences (rather than death) imposed for four murder convictions on his co-conspirator, Thomas, demonstrates that Defendant's sentence "is disproportionate compared to other similarly situated defendants." (Def.'s Mot. at 2; Def.'s

12

Reply at 11-12.)  However, the Court has reviewed and considered Thomas's convictions and sentences and finds that they do not warrant reducing Defendant's sentences.  With respect to the murder convictions, Defendant arguably played a larger role in the killings.  For instance, although the jury convicted both Thomas and Defendant of the murders of Thorne and Chiles, Defendant pulled the trigger while Thomas sat in jail at the time of the killings.  *United States v. Reavis*, 48 F.3d 763, 766 (4th Cir. 1995) (describing respective roles in murders in affirming Thomas's convictions).  More importantly, an individualized inquiry into whether the specific defendant deserves the death penalty constitutes the hallmark of the penalty phase in death penalty litigation.  *See Lockett v. Ohio*, 438 U.S. 586, 604 (1978) (holding that the Eighth and Fourteenth Amendment require the sentencer to make an individualized consideration of mitigating factors); *Woodson v. North Carolina*, 428 U.S. 280, 304 (1976) ("[T]he fundamental respect for humanity underlying the Eighth Amendment requires consideration of the character and record of the individual offender and the circumstances of the particular offense.").  And here, the jury made that individualized determination, finding that Defendant deserved the death penalty after hearing the evidence relating to Defendant's character and record and the circumstances of the murders.  Moreover, with respect to the Drug Distribution Convictions that the First Step Act covers, Defendant received the same sentences as his co-conspirators, and those sentences do not diverge from other similarly-situated defendants such that the Court should reduce them.

The applicable § 3553(a) factors, taken as a whole, counsel against reducing Defendant's term of imprisonment for Count Thirty-One below twenty years or Count Thirty-Two below forty years.

13

## III.    CONCLUSION

Throughout both the guilt and penalty phases, the jury in this case heard all of the evidence relating to Defendant's role in this drug enterprise and the eight individuals that he killed to protect his enterprise. Beyond evidence of the atrocious crimes for which it convicted Defendant, the jury heard evidence relating to his character. That jury — speaking on behalf of the community — unanimously decided that this heinous serial killer deserved to die for his actions. The Court refuses to overturn the will of the community. It is not the Court's role to revisit the jury's determination, especially when doing so would run contrary to the goals of the First Step Act.

For the reasons stated above and in the Court's *Roane* Memorandum Opinion, the Court finds that Defendant's convictions on Counts Two, Eight, Eleven, Seventeen, Eighteen, Nineteen, Twenty-Four and Twenty-Five do not constitute covered offenses under the First Step Act. Although Defendant's convictions on Counts Thirty-One and Thirty-Two do constitute covered offenses, the Court declines to exercise its discretion to reduce Defendant's sentence. Therefore, Defendant's Motion for a Reconsideration of Sentence Hearing Pursuant to the First Step Act of 2018 (ECF No. 38) will be denied.

Let the Clerk file a copy of this Memorandum Order electronically and notify all counsel of record.

It is so ORDERED.

/s/
David J. Novak
United States District Judge

Richmond, Virginia
Dated: November 19, 2020

14