# EXHIBIT 30

<u>**AFFIDAVIT**</u>

State of New York        )
                        ) ss:
County of Bronx        )

DAVID WASHINGTON, being duly sworn, deposes and says:

1.    I am currently 61 years old and reside at 4347 Furman Avenue, Bronx, New York.

2.    I worked for Jewish Child Care Association (the "JCCA") for 23 years. While working for the JCCA, I worked in various capacities, including about half this period at various group homes in New York City that were a part of the JCCA network.

3.    From about 1987 through 1989, I was a child care worker at Elmhurst Boys Residence in Elmhurst, New York, a foster care residence for youth operated by the JCCA.

4.    The residence consisted of two apartments, and housed up to eight boys at a time. I and other staff members alternated living in the apartment in three to four day shifts. In addition, a social worker who worked offsite would pay periodic visits to the apartment.

5.    I met and interacted with Corey Johnson during the approximately year-and-a-half period that I worked at the Elmhurst Boys Residence. As far as I remember, Corey was between 16 and 18 years old at the time.

6.    At the time that Corey was at Elmhurst Boys Residence, most of the other boys were black males of about the same age.

7. My impression was that while there were many boys with below normal intellectual ability and various levels of functioning, almost all of the other boys there were more intelligent than Corey.

8. My impression was that Corey sensed he was not as bright as the other residents. As a consequence, Corey would often not express his opinion and chose to remain quiet. For example, Corey would not join staff and residents during group conversations at meal time, and also did not join other residents to play games or for other recreational activities.

9. While I do not know whether Corey understood all the rules that he was expected to follow at the Elmhurst Boys Residence, I do recall one instance in which Corey repeatedly turned on the television when he was not supposed to do so. This prompted me to unplug the television. I asked him to try to explain why he was disobeying rules, but he did not or could not articulate his reason for keeping the television on.

10. Corey was very quiet, kept to himself and (although he was athletically built) never picked on anyone. During the year and a half that I knew Corey, he did not confide in me.

11. Corey seemed outwardly sad much of the time I observed him. I very rarely saw him laugh or express happiness.

12. Corey was a follower in that he would generally go along with what others wanted to do.

13. In fact, Corey was known at the Elmhurst Boys Residence as someone who could be convinced to do what you asked him to do.

2

14. I recall an occasion when Odette Noble, a social worker at Elmhurst Boys Residence, asked Corey to speak in a group session and Corey refused.

15. As I recall, subsequently Corey was told to "leave." As I recall, this incident led to Corey's leaving Elmhurst Boys Residence, and I do not remember Corey returning to Elmhurst Boys Residence again.

16. This incident sticks out in my mind because I remember questioning whether Odette's reaction to Corey's refusal to speak was excessive, and also whether Corey understood what Odette intended when she told Corey to "leave."

DAVID WASHINGTON

Sworn before me on this
1st day of March, 2012

NOTARY PUBLIC

CLARENCE PYNE
Notary Public, State of New York
No. 5026495
Qualified in Bronx & Westchester County
Commission Expires

3