# EXHIBIT 46

PLEASANTVILLE COTTAGE SCHOOL

Name of Child: COREY JOHNSON          Date of Evaluation: 9/23/83
Date of Birth: ███████              By:  John B. Stadler, M.D.
Date of (PDC) Adm: 2/1/82             Social Worker:  Gayle Turnquest
Date of (PCS) Adm: 4/26/82

## PSYCHIATRIC EVALUATION

The family consists of Corey, his mother and his two years younger
half-brother.  About two years ago the mother placed the brother,
and a few months later brought Corey to SSC, which led to his admis-
sion to PDC and PCS.  She said that he had been stealing from her
(and her live-in boyfriend) and he ran away a lot, was truant and in
particular he had a long standing learning problem.  At the present
time, therefore, both boys are in placement and the mother lives
essentially alone.  Corey says she is going to school, studying
business in college.

At the Cottage School Corey has a reputation of being a good boy,
one who stays out of trouble, even though he lives in a cottage
where there is a good deal of trouble.  He does not drink or smoke
pot.  He does not run away.  I have never known him to be suspected
of stealing.  On the other hand his learning disorder is not respond-
ing to any of our teaching methods.  He seems absolutely refractory
to phonics.  His math abilities are a little bit better than his
reading ability (approximately mid-3rd grade compared to approximate-
ly beginning 2nd grade).  Psychological examinations performed by
Dr. Gallaudet in February 1982 and Dr. Barish in March 1983 indicate
a neurologic basis for his learning disorder, but no specific educa-
tional method was suggested.  PDC psychiatrist, Dr. Sundar, also
found evidence of neurologic disease.

Seen today Corey is his usual cooperative self.  He is tall (68 3/4"),
good looking, modest, self-effacing somewhat, and he still has some
remnants of his previous speech defect.

He described in a simple but descriptive way, the adventure of meet-
ing his natural father after almost thirteen years of absence.  Af-
fects would appear to be intact, judging by this experience (and
throughout the interview).  He described the reasons for his place-
ment and his brother's placement, as entirely due to "the stupid
things we do" the stealing, the running away, etc.  When I asked if
there was anthing wrong with the mother, both of whose children were
in placement, he quickly denied it, and attributed everything to the
boys' misbehavior.  The referral material says that for four years
she lived with a drug addicted, abusive man, but Corey does not have
anything to say about this person, who has since moved out of her
life.

He is well oriented, his sense of reality is good, he has a diminished
sense of the future.  Caught in a conflict between a mother who wants
him to go to college and an educational experience which has been a
hundred percent negative, he still says he thinks he should try to
find a job in computers or some other kind of professional work.  How-
ever, this is clearly rather an embarrassing subject for him.

<u>Corey Johnson</u>                                         -2-

A kinetic family drawing was done in a very light hand.  The people
are drawn as stick figures in the lower left hand corner of the page,
about one-and-a-half inches high.  He drew himself and his mother play-
ing paddle ball, while his brother "is playing with his car."

<u>Diagnosis:</u>

Axis I.     No Diagnosis
            (History of running away and stealing, with Differential
            Diagnosis between Conduct Disorder, Socialized, Non-Aggressive
            and Parent-Child Problem, Severe; however, these are not
            present now.)

Axis II.    Long Standing Developmental Reading and Arithmetic Disorders,
            Severe.

Axis III.  Positive Soft Neurological Signs (and evidence on psychologica
            testing of central neurologic dysfunction, diffuse).

Within the structure of this institution, Corey's behavior is quite
adequate.  He needs very Special Education, and I know of no methods
to suggest to remediate his defects, beyond a great deal of individual
attention and drill.  I leave these questions to experts of Special
Education.  It would seem, however, that with his attitudes, work
skills and behavior, he should be considered for both an on-grounds job
and vocational education at B.O.C.E.S., as soon as possible.
            John B. Stadler, M.D.:ww  D-8/23/83    T-8/26/83

            John B. Stadler, M.D.
            Clinical Director