**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **Case No. 3:92CR68 (DJN)** |
| | : | **CAPITAL CASE** |
| **COREY JOHNSON,** | : | **EXECUTION** |
| | : | **SCHEDULED FOR** |
| Defendant. | : | **JANUARY 14, 2021** |

### <u>COREY JOHNSON'S REPLY PURSUANT TO DECEMBER 15, 2020 ORDER</u>

The government's response to Mr. Johnson's § 2255 Motion ("Motion") contains numerous inaccuracies and confuses the pertinent issues before this Court.  Although he disagrees with the government's merits argument, Mr. Johnson will not address the merits in this pleading because that would be outside the scope of this Court's Order and would be improper before jurisdiction is established.  Order at 2, ECF No. 95; *see also Trustgard Ins. Co. v. Collins*, 942 F.3d 195, 200-01 (4th Cir. 2019) (holding that courts may not assume hypothetical jurisdiction to reach merits); *Leal Garcia v. Quarterman*, 573 F.3d 214, 224-25 & n.4 (5th Cir. 2009) (vacating district court's alternative merits analysis of second-in-time capital habeas petition).

I.      **The Government's Response Relies on Several Misunderstandings of Law**

The government argues that Mr. Johnson cannot proceed in this Court because he did not seek authorization from the Fourth Circuit.  Gov't Response ("GR") at 7-9.  According to the government, Mr. Johnson's "sole argument" in support of this Court's jurisdiction is the language of § 3596(c)[1] and that statute cannot be an exception to the successor requirements

---

[1] The language of § 848(*l*) and § 3596(c) is identical; both provide a "sentence of death shall not be carried out upon a person who is mentally retarded."  Mr. Johnson's Motion references both.

because it would allow prisoners to circumvent the prohibitions on successive applications. GR at 9-10. Not so. This circular reasoning does not aid this Court's analysis because it simply avoids the very issue before it: Does the specific language adopted by Congress allow a determination of mental retardation to be made at the time a death sentence is to be implemented? If it does, as Mr. Johnson has shown, his claim is not successive.

The government repeatedly, but erroneously, conflates the statutory claim with Eighth Amendment jurisprudence. The government cites to *Atkins v. Virginia*, 536 U.S. 304 (2002), throughout but in so doing misses the import of the federal statute. Mr. Johnson raised a statutory claim premised on the right Congress created to prevent the execution of persons with mental retardation. Many cases cited by the government are simply inapposite. *Busby v. Davis*, 925 F.3d 699 (5th Cir. 2019), and *Williams v. Kelley*, 858 F.3d 464 (8th Cir. 2017), for example, rejected arguments that a state prisoner could raise an Eighth Amendment *Atkins* claim in a second-in-time non-successive application. But these cases have no bearing on whether a federal statute (which expressly provides that a determination of mental retardation can be made when the sentence is to be implemented) is non-successive. *Busby*, in fact, supports Mr. Johnson's position, stating "Texas law is less demanding than federal law in this regard," 925 F.3d at 712, meaning the statutes of the jurisdiction of conviction (Texas in *Busby* and federal law here) may allow a second-in-time pleading notwithstanding a court's interpretation of *Atkins*.

Neither is the Seventh Circuit's recent decision in *Bourgeois v. Watson*, 977 F.3d 620 (7th Cir. 2020), germane to the jurisdictional question before this Court. Bourgeois sought relief under § 2241 which requires a threshold showing that the § 2255 remedy is "inadequate or

2

ineffective." *Id*. at 627.  The circuit decision precluding § 2241 relief is not relevant to whether § 2255 allows a remedy under the distinct and unique circumstances in Mr. Johnson's case.[2]

The government also asserts that "*Panetti* is inapposite because Johnson did . . . raise the same intellectual disability claim in his prior § 2255 motion and on appeal."  GR at 12.  The government misunderstands the history of *Stewart v. Martinez-Villareal*, 523 U.S. 637 (1998), and *Panetti v. Quarterman*, 551 U.S. 930 (2007), and misconstrues their significance.  In 1998, *Martinez-Villareal* held that a claim "previously dismissed as premature" should not be treated as a successive habeas petition.  523 U.S. at 644-45.  The Court declined to decide whether the successor bar applies to a claim raised first after the initial round of habeas review.  *Id*. at 645.

The Court did not finally resolve that issue until 2007 in *Panetti* when it held that when such claims are raised after conclusion of the initial habeas review they should still be considered non-successive.  551 U.S. at 945.  The best practice—between *Martinez-Villareal* and *Panetti*, the very time Mr. Johnson was litigating his § 2255 motion—was to raise all claims, even those which were potentially to be litigated at a future date.  Failure to do so could be fatal.  *See Richardson v. Johnson*, 256 F.3d 257, 259 (5th Cir. 2001) (refusing to hear *Ford* claim not raised in initial petition because petitioner's mental illness was long-standing and claim could have been discovered previously); *see also In re Provenzano*, 215 F.3d 1233, 1235 (11th Cir. 2000) (same).  That Mr. Johnson raised his claim in his prior § 2255 does not render *Panetti* inapposite.

Moreover, the previous consideration of his claim also has no bearing on the jurisdictional question.  Although initially-pleaded non-successive claims were often dismissed as premature, some district courts during this period resolved them on the merits even when no

---

[2] This is especially true because Bourgeois went to trial after *Atkins* was decided and he was also afforded a week-long hearing on his claim during his § 2255 proceedings.

execution date was imminent. *See, e.g.*, *Jacobs v. Cockrell*, No. 97-CV-2728, 2002 WL 172629 at \*34-36 (N.D. Tex. Jan. 31, 2002) (finding petitioner competent to be executed during initial habeas review). This did not, however, somehow transform any future claim into a successor and thus preclude its litigation. Contrary to the government's suggestion, a claim's procedural history (especially during the time when Mr. Johnson's was litigated) does not obviate the need to inquire whether it is second-in-time yet non-successive. In sum, none of the government's arguments undermines Mr. Johnson's right to challenge the carrying out of his execution when it is scheduled. Both the plain language and legislative history of § 3596 permit such a challenge.

## II.    The Government Misunderstands the Statutory History of § 3596(c)

To the extent that the Court needs to look beyond the plain language of the ADAA and FDPA, which both enact a statutory bar for the execution of the intellectually disabled, the government's arguments on statutory interpretation fail for myriad reasons. First, the government's argument that Mr. Johnson's case is controlled by the ADAA rather than the FDPA is both wrong and a reversal of its prior position. As Mr. Johnson noted in his Motion, *see* Motion at 2 n.3, the government previously admitted as much in pleadings in the D.C. lethal injection lawsuit.[3] Based, in part, on the government's assertions, the district court agreed. *See* Mem. Op. at 3, *In the Matter of the Fed. Bureau of Prisons' Execution Protocol Cases*, 19-mc-00145-TSC (Nov. 20, 2019), ECF No. 50 ("Plaintiffs' cases are governed by the FDPA because when the death penalty portions of the ADAA were repealed in 2006, the FDPA was 'effectively render[ed] . . . applicable to all federal death-eligible offenses.'") (quoting *United States v.*

_____

[3] The government now argues that it "was bound by Honken's 2005 criminal judgment, which—in stark contrast to Johnson's Execution Order—expressly invoked the FDPA." GR at 10. This is false. Honken was granted partial § 2255 relief, and the remaining operative death sentences were only § 848 counts. His judgment was amended in 2013, and thus the D.C. litigation related only to those death sentences. *See* Ex. 1 (Honken Amended Judgment).

4

*Barrett*, 496 F.3d 1079, 1106 (10th Cir. 2007)).  Notably, *United States v. Tipton*, 90 F.3d 861 (4th Cir. 1996), relied on by the government, predates the repeal in 2006 of the death penalty portions of the ADAA.[4]

Regardless of the government's current position, § 848 and § 3596 *both* bar the execution of someone with intellectual disability.  Not only did the plain language of § 848 make clear that it pertains to the time period when the sentence of death is to "be carried out," the Supreme Court has acknowledged that § 848 reached past sentencing to the execution itself.  *See Atkins*, 536 U.S. at 314 n.10 (citing the ADAA, and explaining "Congress expanded the federal death penalty law in 1994.  It *again* included a provision that prohibited any individual with mental retardation from being sentenced to death *or executed*." (emphasis added) (citation omitted)).  If the Supreme Court understood § 3596 as imposing a one-time decision regarding intellectual disability made only at the time of sentencing, as the government advances in its response, the Court would have written only "sentenced to death" and not included "or executed."

Second, the structure and statutory history of § 3596 make clear that intellectual disability is to be determined after an execution date is set, reinforcing the statute's plain language.  Section 848 had no overarching structure—§ 848(k), for example, governed how juries should apply aggravating and mitigating factors, factors not presented until §§ 848(m) and (n); § 848(q) concerned the appeal process, but § 848(*l*) discussed carrying out the execution.

When Congress wrote the FDPA, it rearranged the sections to chronologically follow a typical death penalty case.  Section 3591 begins with a guilty verdict, and § 3597 ends with

---

[4] Furthermore, this Court's conclusion in *United States v. Roane* regarding the relationship between § 848 and § 3596 relates to sentencing provisions, not the implementation of the death penalty.  *See* No. 92cr68, 2020 WL 6370984, at *16 n.8 (E.D. Va. Oct. 29, 2020) (quoting *United States v. Stitt*, 552 F.3d 345, 354 (4th Cir. 2008)).

execution procedures. Congress also created an "implementation" section, one notably absent from § 848. Where Congress prohibited "carrying out" death sentences[5] on juveniles, the mentally retarded, and the insane in the ADAA, it chose to include only mental retardation and insanity in the FDPA implementation section, and added the new pregnancy category. Congress moved the prohibition on executing juveniles to § 3591(a), a section titled "sentence of death," thus clearly indicating this issue was to be determined at sentencing, not at the time of execution, a sensible distinction. Whether a defendant is under 18 is an immutable fact. By contrast, the intellectual disability bar was moved to § 3596. In doing so, Congress placed it between the pregnancy and mental capacity bars—two conditions that can only be assessed on the eve of an execution, conditions that even the government would appear to acknowledge, *see* GR at 13, are suitably challenged when execution is imminent.[6] By the statute's structure, Congress made clear its intent that seeking § 3596(c) relief is available when an execution warrant has been issued. Motion at 47-48.

---

[5] Congress's language choice in the ADAA and FDPA indicates its intent for the determination of mental retardation to be when an execution is imminent. "Carry out" and "implement" are synonymous:

> Implementing a sentence means carrying it out. *See Implement*, Webster's Third New International Dictionary . . . ("to carry out: accomplish, fulfill"); *Implementation Plan*, Black's Law Dictionary . . . ("An outline of steps needed to accomplish a particular goal."). . . . [U]nder the FDPA, "implementation" of a death sentence involves only conduct that immediately precedes the execution. . . . "[I]mplementation" does not include scheduling the execution, but instead presupposes a set time and date.

*In re Fed. Bureau of Prisons' Execution Protocol Cases*, No. 20-5361, slip op. at 5 (D.C. Cir. Dec. 10, 2020) (Katsas, J., concurring).

[6] There has been unambiguous development in the medical and legal standards such that a person who was determined to not have intellectual disability in 1993 could be determined to have intellectual disability in 2020. And, this is precisely one point Congress meant to capture by placing intellectual disability in § 3596(c). *See* Motion Sections III and IV.A.

6

Third, the government's attacks on Mr. Johnson's reliance on the legislative history miss the mark on both grounds. Senator Hatch's floor speech criticized the meaning of the plain language of the intellectual disability bar enacted in the ADAA two years prior to the Senate debate. Senator Hatch understood the plain language of the existing bar provided multiple opportunities across a span of time to raise an intellectual disability bar. Congress rejected the proposed change and preserved the existing bar as is. Senator Hatch's critique was not to "proposed, but unenacted, legislation," GR at 14, but was to enacted legislation (the ADAA) and a proposal—the Biden Amendment—that reconfirmed the language of the ADAA,[7] recognition that both statutes permitted a defendant to litigate his intellectual disability at the time of execution despite any prior filings.

## III. Conclusion

Mr. Johnson respectfully requests the Court find that it has jurisdiction to consider his non-successive § 2255 motion, set a briefing schedule, and set the date for an evidentiary hearing, so that Mr. Johnson can present evidence of his intellectual disability.

Dated: December 24, 2020                    Respectfully submitted,

/s/ David E. Carney
David E. Carney, VA Bar #: 43914
Donald P. Salzman (Admitted Pro Hac Vice)
Skadden, Arps, Slate, Meagher & Flom, LLP
1440 New York Avenue, NW
Washington, DC 20005
Telephone: (202) 371-7246
Fax: (202) 661-8295
Email: david.carney@skadden.com
*Counsel for Corey Johnson*

---

[7] The government also takes Congressman Levin's statement out of context; he was responding to a comment about "the burden" of proof being "on the defense." *See* Motion Ex. 78 (134 Cong. Rec. 22,926, 22,993 (1988)). It also is unclear why the government would rely on the statement of Congressman Levin to reflect the intent of the entire Congress when it contends that Mr. Johnson's reliance on the statements of a single senator is contrary to Supreme Court precedent.

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th of December, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send notification of such filing to all parties and counsel included on the Court's Electronic Mail notice list.

<u>/s/ David E. Carney</u>
David E. Carney, VA Bar #: 43914
Skadden, Arps, Slate, Meagher & Flom, LLP
1440 New York Avenue, NW
Washington, DC 20005
Telephone: (202) 371-7246
Fax: (202) 661-8295
Email: david.carney@skadden.com