# EXHIBIT 3

8C

1 #

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

------------------------------------------

UNITED STATES OF AMERICA,

                              Plaintiff;

     v.                                    CRIMINAL ACTION
                                              92CV68
RICHARD TIPTON, CORY JOHNSON, and
JAMES H. ROANE, JR.,

                              Defendants.

------------------------------------------

                    June 1, 1993
                 Richmond, Virginia
                    9:30 a.m.

FILED JUN 2 9 1993 D-PHB
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

BEFORE:        HONORABLE JAMES R. SPENCER
               United States District Judge

APPEARANCES:   HOWARD C. VICK, JR., ESQ.
               WILLIAM H. PARCELL, III, ESQ.
               Office of the United States Attorney
               Main Street Centre
               Richmond, Virginia  23219
                         Counsel for Government;

               ROBERT P. GEARY, ESQ.
               ERIC D. WHITE, ESQ.
               CRAIG S. COOLEY, ESQ.
               JOHN McGARVEY, ESQ.
               DAVID P. BAUGH, ESQ.
               ARNOLD R. HENDERSON, V, ESQ.
                         Counsel for Defendants.

                    JEFFREY B. KULL
               OFFICIAL COURT REPORTER

4862

2  #

P-R-O-C-E-E-D-I-N-G-S

THE CLERK: Case Number 92CV68: United States of America versus Richard Tipton, Cory Johnson, and James H. Roane, Jr.  Mr. Howard C. Vick and Mr. William H. Parcell, III represent the United States.  Mr. Eric D. White and Mr. Robert P. Geary represent Defendant Tipton.  Mr. Craig S. Cooley and Mr. John F. McGarvey represent Defendant Johnson. Mr. David P. Baugh and Mr. Arnold R. Henderson, V represent Defendant Roane.  Are counsel ready to proceed?

MR. VICK:  The government is ready to proceed.

MR. GEARY:  Defendant Tipton is ready.

MR. COOLEY:  Defendant Johnson is ready.

MR. BAUGH:  Defendant Roane is ready, Your Honor.

THE COURT:  All right.  We had a couple of outstanding motions.  And before we get into the sentencing proper, we need to go ahead and rule on these motions.  They have been fully briefed and there is no need for any additional argument.

MR. BAUGH:  Your Honor, if I might, I would ask permission to allocute or argue for new sentencing phase as Defendant Roane, in light of the

4863

3

issues that are raised in the Presentence Report.

THE COURT:  The request will be denied. The matters have been fully briefed and I have a full understanding of them.  I don't see any reason for additional argument.

MR. VICK:  There is one motion we received Friday evening, I believe, that the United States has not responded to, and that's the dismissal of the 1959 counts as lesser includeds to the 848 Count.

THE COURT:  All right.  We had a motion to vacate the judgment of convictions based on several claims.  First of all, there was a motion to vacate the judgment of convictions based on the claim of double jeopardy.  Those motions will be denied.

There was a motion to vacate the judgment based on the claim that conspiracy is a lesser included offense of Continuing Criminal Enterprise.  That motion will be denied.  All of you be aware that I will write and explain in more particular why they are denied.  But what's important for this morning is to understand the rulings.

There was a motion to vacate judgment based on the claim that the racketeering murders as charged in the indictment were lesser included offenses of the Continuing Criminal Enterprise murders.  Those

4864

4  #

motions likewise will be denied.  There was a similar claim that the use of the Greene sisters' maiming as aggravators as well as independent counts in the indictment constitute double jeopardy.  Those claims or motions will also be denied.

Now, we come to what is a little bit more of a problematic motion raised by the defendants:  the defendants have formed their motion in this way: the motion to bar execution of the defendants due to the absence of a Congressionally-authorized execution method.

I think in styling or titling or fashioning their motion in that way, it somehow misses the point, which will become clear from my ruling on the issue.

To answer the direct questions of the defendants, I will state up front that I will not exclude death as a punishment in fashioning the sentences that I will impose this morning.  I will impose a death penalty as part of any sentence I announce this morning.

At the same time, I specifically find that the Attorney General's regulation establishing the procedures for executing federal death sentences is ultra vires and with no legal force or effect.

4865

5

Congress did not delegate the Legislative prerogative to the Executive. In fact, Congress has been strangely silent on the issue. So now the government suggests that it is among the inherent powers of the Judiciary to establish a method of execution because there certainly is no specifially-enumerated power that I can find flowing from any legitimate source. I will not, as the Attorney General has done, assume such power to fill the obvious vacuum.

I agree with the Judge in the case of UNITED STATES v. CHANDLER, the Alabama case, that the sentences of death that I impose cannot be implemented unless and until Congress provides a method for implementation of the death sentence. Of course, if a higher court were to consider the matter and determine that I am in error about this, I would follow their direction and outline a method of execution.

While I certainly agree with the Attorney General that lethal injection is the most humane way to carry out the execution, the method of execution shouldn't depend on the philosophical bent or whim or personality of the Attorney General, or any judge, for that matter. This is a task for the

4866

6  #

democratically-elected representatives of the People.

All right. Now, to the individual sentences, and Mr. Marshal, if you could help me out here, I would like to do these in the following order. We will follow the indictment and start with Mr. Tipton, and if you would please remove the other defendants as I deal with Mr. Tipton.

(Mr. Johnson and Mr. Roane were removed from the courtroom.)

Now, I think I should add for the record, there were certain arguments regarding the ex-post-facto clause as it would relate to the motion that I have just ruled on. I will say for the record that the ex-post-facto arguments have no validity and will have no impact on what I do here today.

All right, let me talk first of all to counsel for Mr. Tipton. If you would come to the lectern, please.

(Counsel approached lectern.)

Counsel, have you all had an adequate opportunity to review the Presentence Report and discuss it with your client?

MR. GEARY:  Yes, sir.

MR. WHITE:  Yes, sir.

4867

of the jury on the merits, the findings of the jury as it relates to sentence, and any sentence imposed by this Court. And if you were going to do that, you have to file a notice of appeal within ten days of this date.

All right. That completes the sentencing of Mr. Tipton. Mr. Tipton may be removed and we will start with Mr. Johnson.

(Defendant Tipton removed from the courtroom.)

MR. VICK: Prior to Mr. Tipton being removed, may we approach the bench?

(At Bench.)

THE COURT: Count One is multiplicious for sentencing purposes.

MR. VICK: That's what I wanted to find out.

THE COURT: So everybody is clear on that, I will not be sentencing on the conspiracy. It is multiplicious.

(In Open Court.)

All right, you can remove Mr. Tipton.

(The defendant was removed from the courtroom.)

(Defendant Cory Johnson entered the courtroom.)

THE COURT: All right, counsel for Mr. Johnson, if you would approach the lectern, please.

16#

Good morning.  Counsel, have you all had an adequate opportunity to review the pre-sentence report and discuss it with your client?

MR. COOLEY:  We have, Your Honor.

THE COURT:  Do you have any objections, comments, or amendments to the Presentence Report?

MR. COOLEY:  Yes, Your Honor.

THE COURT:  All right.

MR. COOLEY:  As the Court knows, we filed a position paper regarding the sentencing factors, and we raised principally the two issues of the exaggerated quantity of cocaine that was allegedly distributed.  I would adopt the comments made by counsel for Mr. Tipton, but I would also note to the Court that while counsel for the government indicates there was testimony from Mr. Townes, Mr. Saunders regarding the quantity that was being distributed by them and by others, the Court will also recall that their testimony related to at the conclusion of each month when there was a necessity for the five folks living at that one home to contribute the $100 for their share of the rent.  They didn't have it and they often fought over it.

The Court will also recall from the evidence that came before you that there was absolutely no

17

testimony relating to the accrual of funds, of assets for any of the three individuals, specifically with Cory Johnson.  No cars, no substantial jewelry, no items or assets of any value whatsoever.  Indeed, when pressed, each of the witnesses, most, said they couldn't identify anything that he had as to Cory Johnson, and one ultimately said to the jury that what he had was nice, and when questioned further, she said it was a Guess shirt and a pair of Timberland boots.  That's the totality of the assets described and attributed to Mr. Cory Johnson out of this purported 42, and in addition to 42-and-a-half kilograms of cocaine.  And I would suggest to the Court that the lifestyle that was proven by the government's witnesses contradicts the government's theory as to the quantity of the drugs that were being distributed.

Your Honor, in addition to that issue, we have raised the jeopardy issues or the issues that the Court has already addressed and ruled upon.  I would simply note to the Court that in challenging whether the sentences could be imposed upon the counts that were related to the murders in furtherance of racketeering, that while it certainly could be, I believe, under the government's theory that if

4878

18#

racketeering were described as some other specific acts by these defendants, and specifically Cory Johnson, that would be one thing. In the case before this Court, the furtherance of activity concerned with racketeering is specifically defined as the distribution, possession with intent to distribute drugs, which is the identical allegation contained in the CCE count.

So we would further urge that issue, and those are the only objections we have. We would also ask, Your Honor, that we be allowed leave to amend our motion to add Counts Thirty-one and Thirty-two. Those are the substantive counts.

THE COURT: Leave will be granted. Mr. Vick, do you want to respond?

MR. VICK: Unless the Court wants me to, I have made my statement in relation to both of those issues.

THE COURT: Both objections will be overruled.

MR. COOLEY: Please note our exception.

THE COURT: Mr. Johnson, let me ask you directly, have you had an adequate opportunity to review the Presentence Report and discuss it with your lawyers?

4879

19#

THE DEFENDANT:  Yes.

THE COURT:  Thank you, Mr. Johnson.

All right, counsel, I'll hear from you all in any way that you care to proceed.

MR. COOLEY:  Judge, I will not belabor the points, but I ask the Court and I know the Court has had an ample opportunity to re-review the mitigation evidence that was put forward.  I think the Court retains and has, continues to have, the mitigation information that was supplied through a number of witnesses and was documented in our presentation.  If the Court does not retain that copy, I would move to introduce this as part of this, and I would ask the Court to adopt that and ask the Court to recall the substantial circumstances that led to a tremendous frustration throughout Cory Johnson's life.  And I would ask the Court to consider and impose its sentences with a degree of mercy.  Thank you.

MR. VICK:  Very briefly, Your Honor.  Mr. Johnson, during the life of this conspiracy, showed mercy toward no one.  Indeed, he was the most brutal member of a brutal conspiracy, and he has been sentenced to death for the murders of Peyton Maurice Johnson, Louis Johnson, Bobby Long, "Mousey" Armstrong, Tony Carter, Linwood Chiles, and Curt

4880

Thorne, by the jury. I think that the sentence of death, and life sentences on all other counts that life sentences is able to be given on, is appropriate given the extreme violence that was perpetrated by Mr. Johnson.

THE COURT: All right. Before I impose the sentences, I will use the same method. I will deal with the jury-directed sentences first, and then with the other counts. I will say that I have reviewed every single word of the mitigation testimony and I recall it in all its specifics. And as it relates to all three of the defendants, it was voluminous and moving, and the jury certainly had an opportunity to hear it. And I think they were moved by it, and they came down and decided it in a manner antagonistic to the defendant's position. But it has certainly been considered.

Before I impose the sentence, Mr. Johnson, let me ask you again: Do you have anything you want to say directly to the Court?

THE DEFENDANT: Yes.

THE COURT: Just stand up where you are.

THE DEFENDANT: I'd like to say like this. I felt the trial wasn't in our favor, but then again, that's how it is. I'd like to thank the counselors

21

for taking their time to help us out. And I notice a lot of stress on them. I'd like to thank the family members for helping us out and being here for us spiritually.

I'm sorry for the great number of people who are dead, you know, and there is a lot on us, and I feel we are no angels. We are not that. But we are not no killing machines, no mass murderers. We are none of those people that the district attorney thinks we are. We are not. We are human beings. We are young men. You know, we probably took a little wrong step, but we are not that. We look at life maybe a little differently than everybody else. But we had each other. I don't consider wrong whatever happens. We didn't mean to do no harm to no one, which we didn't. And I felt it is a lot of stress because we have to take this, knowing the fact that after this we have to go in a cell and we have to sit there for the rest of our life until somebody makes an agreement what they are going to do with us.

The young people in Court, I'd like to explain to them, let them know that this is a system; it is a fair system. It might be in certain ways, in other ways it might not. That depends on what side you are on.

4882

22#

All crimes, crimes is not good, period. All crimes, period, is not good. Being the fact that you are here, take a lesson to what's going on. I mean, you get old enough and realize that this is not the life that you are living. I am unfortunate that I never had nobody. That's no excuse. I'm a grown man. I am going to take my punishment the way I have to. Same with my co-defendants. They have to take their punishment. We have to deal with this reality. And I would hope that you take heed to this. I would hope you discuss this. Because I would hate to see you all end up this way. I would hate to see you have kids in this way, because this is not right. This is stress.

No man can really stand up here and have somebody come and sentence them to death. I can't take it. My co-defendants can't take it. We try to joke about it, to laugh, you know, to laugh the stress off. But it is a hurting feeling knowing the fact that you will be sentenced to death and you don't know when it is going to happen.

I'm sorry for my family, my co-defendants' families. I didn't mean no harm to you. I love you all. I love you from the heart. I thank my counselors again. I'm not mad at Mr. Vick, because

4883

2

that's his job. I cannot knock him for his job, and that's what he is doing. I'm sorry for everyone who has to sit up here and realize what's going on. I'm sorry for the families that lost their loved ones. I know they might not don't care if I say I'm sorry or not, or how I feel about it. But I am sorry. I am human. I do have feelings. I don't like it. I can't do anything about it, but I do have feelings.

I pray. I pray for my family, my co-defendants, and I ask the Lord up above to forgive me. I have to meet my Maker anyway, whether right or wrong. I have to meet that Judgment Day. But if they execute me or don't, I still have to meet that man.

I just want to thank the counselors again, and my co-defendants' counselors, and the families.

THE COURT: Thank you, Mr. Johnson.

All right, it is the sentence of the Court as follows: First of all, following the direction of the jury, it is the Court's sentence as to Counts Eight, Eleven, Seventeen, Eighteen, Nineteen, Twenty-four, and Twenty-five, the sentence of death will be imposed. The special assessment of $50 per count, for a total of $350, will also be imposed. The defendant shall be committed to the custody of

4884

24#

the Bureau of Prisons to be confined there until the sentence is carried out.

I may not have announced it, but the finding of the Probation Department of an Offense Level of 43 and a Criminal History Category of 4 will be adopted. The sentences as they relate to the additional counts in the indictment are as follows: On Count Two, a sentence of life imprisonment will be imposed. On Count Nine, a sentence  --  strike that. Let me do it this way. As to the additional counts in the indictment, the term of life plus 85 years will be imposed. That sentence will consist of a term of life with respect to Count Two.

The sentence will also consist of concurrent terms of incarceration of life on Counts Ten, Thirteen, Fourteen, Twenty-one, Twenty-two, Twenty-three, Twenty-seven, and Twenty-eight. The term consists of a concurrent period of incarceration of 30 years for Count Twenty-nine and Count Thirty; a term of 20 years concurrent for Counts Sixteen and Thirty-one; and a term of 40 years concurrent for Count Thirty-two.

The sentence also includes a consecutive term of incarceration of five years for Count Nine, and a consecutive term of incarceration of 20 years each

4885

25:

for Counts Twelve, Fifteen, Twenty, and Twenty-six, for a total of 85 years.

Should the defendant ever be released from imprisonment, he shall be placed on supervised release for a combined term of five years.

As to the additional counts in the indictment, a special assessment in the amount of $50 per count, for a total of $950, will also be imposed.

The Court finds that the defendant does not have an ability to pay a fine or restitution, and therefore, none is imposed.

Mr. Johnson, I'm sure your lawyers have spoken to you about this, but you have a right to appeal any sentence imposed by this Court, as well as the findings of the jury on the merits, the findings of the jury as it relates to the sentence that they found. If you were going to file an appeal, you would have to file a notice within ten days of this date.

All right, that completes the matter. Mr. Johnson may be removed and we will deal with Mr. Roane.

(Defendant Johnson removed from courtroom.)

(Defendant Roane entered the courtroom.)

All right, counsel, have you all had an adequate

4886