IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Richmond Division*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No. 3:92-cr-68 (DJN) |
| | ) | |
| COREY JOHNSON, | ) | |
| | ) | |
| Defendant. | ) | |

**Government's Response Opposing
Motion to Vacate**

Corey Johnson received seven death sentences in 1993 under 21 U.S.C. § 848(e)(1)(A) and 18 U.S.C. § 2 for the murders of seven people—Peyton Maurice Johnson; Louis J. Johnson, Jr.; Bobby Long; Anthony Carter; Dorothy Mae Armstrong; Curtis Thorne; and Linwood Chiles. Johnson was also convicted for his role in the murder of an eighth person, Torrick Brown, Jr., an offense that was ineligible for a death sentence, and he was convicted of an assault resulting in serious bodily injury to Martha McCoy. Johnson's convictions and death sentences were affirmed on direct appeal. *United States v. Tipton*, 90 F.3d 861 (4th Cir. 1996), *cert. denied*, 520 U.S. 1253 (1997). And his challenges to his convictions and death sentences were also denied under 28 U.S.C. § 2255. *United States v. Roane*, 378 F.3d 382 (4th Cir. 2004), *cert. denied*, 546 U.S. 810 (2005).

Four days before his scheduled execution, Johnson now seeks to challenge the manner in which his death sentence is carried out. (ECF No. 107.) He argues that this Court erred on November 17, 2005, in entering an order that altered an earlier order of November 22, 1996, specifying how his death sentence would be carried out. According to Johnson, this Court violated Federal Rule of Criminal Procedure 35(a) and 18 U.S.C. § 3582(c) with its order of November 17,

2005, and acted without jurisdiction. But Johnson is mistaken. This Court's November 17, 2005, order simply altered an earlier *order* regarding sentence implementation—not a *judgment* of conviction—as the relevant orders and the Fourth Circuit's opinion on direct appeal demonstrate. Moreover, the orders unambiguously dealt with the manner in which the death sentences would be carried out, and Rule 35(a) does not govern the manner in which a sentence is carried out. *See, e.g.*, *United States v. Little*, 392 F.3d 671, 679–80 (4th Cir. 2004) (Rule 35 does not govern challenge to how sentencing credit is calculated, an issue dealing with the execution of a sentence). Johnson's claim also fails because he never appealed the order of November 17, 2005, even though he opposed the order, and that order has long been final. Any attempt to challenge it now is untimely.

Johnson relies on *United States v. Higgs*, 2020 WL 7707165 (D. Md. Dec. 29, 2020). Although the United States disagrees with that ruling and has appealed it, *Higgs* is readily distinguishable. It does not address the series of orders like those entered in this case after a criminal judgment was entered, and it does not involve a case where a defendant seeks to attack an order entered more than a decade and a half ago.

## Procedural History

### A.      Johnson is convicted and sentenced.

On February 16, 1993, a jury sentenced Johnson to death for seven murders under § 848(e)(1)(A). Thereafter, this Court imposed those death sentences and entered a judgment. The Court stayed the implementation of the death sentences, however, because "no federal statute provided authorization for the specific means of executing such sentences." *Tipton*, 90 F.3d at 901–02. Although federal regulations did provide for the method in which the sentence would be carried out, *id.* (citing 28 C.F.R. § 26.3), the Court concluded that the regulations did not suffice to provide a mechanism to carry out the death sentences. Thus, the Court accepted that there were

valid death sentences but "entered an order affirmatively staying the executions until such time as Congress provided specific authorization of means." *Id*. at 902.

After the Court entered judgment, both Johnson and the government appealed. As to the government's appeal, the Fourth Circuit held that, while Congress may "legislate the means of executing federal death sentences," the Executive Branch could address the means of execution through regulations. *Id*. Hence, the Fourth Circuit remanded to this Court "with instructions to enter appropriate orders for the executions in accordance with regulation promulgated by the Attorney General." *Id*. at 903.

On remand, this Court entered an order on November 22, 1996, addressing the manner in which Johnson's execution would be carried out. This Court's order of November 22, 1996, was styled *not* as any modification of the criminal judgment of conviction, but as an "order of execution." In other words, the order replaced the stay that had previously been in place, a stay that was ancillary to the judgment of conviction. This Court's order of November 22, 1996, provided that Johnson be released "to the custody of a U.S. Marshal who shall supervise implementation of the sentence of death, in the manner prescribed by the law of the Commonwealth of Virginia[.]" (ECF No. 107-6 at 1.) The order also specified that the U.S. Marshall "charged with supervising the implementation of the sentence of death may use appropriate State or local facilitates and services of an appropriate State of local official for the purposes[.]" (*Id*.)

In 2005, following the conclusion of post-conviction litigation, *see Roane*, 378 F.3d at 396–407, the government sought the vacatur of this Court's 1996 order setting the time, place, and method of execution. As the government explained, the Court's prior order instructed that the execution be conducted at "the State correctional facility housing the death chamber" and "in the

manner prescribed by the law of the Commonwealth of Virginia." (ECF No. 107-8 at 3.) At the time, however, the government did not own its own facility for carrying out the death penalty. (*Id*.) Because the government had since built its own facility at Terre Haute Federal Correctional Institute, there was "no continuing reason," the government explained, "for this Court to designate 'the State facility housing the death chamber' as the place where [Johnson's] execution should be carried out." (*Id*. at 4.)

On November 17, 2005, this Court granted the government's motion and vacated its 1996 order. (ECF No. 107-2.) The Court followed with an order directing that "the sentence shall be executed on a date and at a place designated by the Director of the Federal Bureau of Prisons[.]" (ECF No. 107-3.)

### B.      Johnson's First Step Act motion.

On August 19, 2020, Johnson filed a motion for a sentence modification under § 404(b) of the First Step Act, arguing that his murder convictions under § 848(e) and his cocaine distribution convictions were "covered offenses" eligible for resentencing. (ECF No. 39.) Johnson requested "that the Court [] order a capital resentencing hearing at which a new jury would determine whether to reduce his sentences," after which the court would "use its discretion to reduce those counts in light of all of the evidence, pursuant to § 3553(a)." (*Id*. at 2.) The Court denied Johnson's § 404(b) motion, holding that § 848(e) is not a "covered offense" under the First Step Act and adopting its earlier, comprehensive opinion denying relief on the same issue for one of Johnson's co-defendants. (ECF No. 75.) *See United States v. Roane*, No. 3:92-cr-68 (DJN), 2020 WL 6370984 (E.D. Va. Oct. 29, 2020).

### C.      Johnson's second 28 U.S.C. § 2255 motion.

On November 20, 2020, the government informed Johnson that it had set his execution date for January 14, 2021. (ECF No. 78.) In turn, on December 14, 2020, Johnson filed a motion

to vacate under § 2255, arguing that the Federal Death Penalty Act (FDPA), 18 U.S.C. § 3596(c), permitted re-litigating the issue of his mental health before his execution. (ECF No. 86.) The Court dismissed that petition as an unauthorized successive § 2255 on Saturday, January 2, 2021, and denied a certificate of appealability. (ECF No. 99); *United States v. Johnson*, No. 3:92-cr-68 (DJN), 2021 WL 17809 (E.D. Va. Jan. 2, 2021).

### D.    Johnson's recent Fourth Circuit stay applications.

On January 7, 2021 and January 8, Johnson filed three stay applications in the Fourth Circuit, despite having never sought such relief from this Court, as required under Federal Rule of Appellate Procedure 8. *See* Fed. R. App. P. 8(a)(2)(A) (party seeking a stay in a court of appeals must have either first tried and failed to obtain a stay in the district court or, alternately, "show that moving first in the district court would be impracticable.").

On January 7, 2021, Johnson sought a stay in *United States v. Johnson*, 20-15, ECF No. 15 (4th Cir. Jan. 7, 2021), his pending appeal of this Court's First Step Act ruling. On January 7, Johnson also opened a new case in the Fourth Circuit seeking authorization to file a successive § 2255 based on the Supreme Court's decision in *Atkins v. Virginia*, 536 U.S. 304 (2002). *See In re Johnson*, 21-2, ECF No. 2 (4th Cir. Jan. 7, 2021). The next day, Johnson filed a stay motion based on his earlier request for a successive petition. *Id*. at ECF No. 9. Also on January 8, Johnson filed a stay in his pending appeal of this Court's January 2 ruling on his successive § 2255. *United States v. Johnson*, 21-1, ECF No. 8-1 (4th Cir. Jan. 8, 2021). The defense has never sought to expedite rulings in either of these cases. Nonetheless, the government has responded in opposition to each of Johnson's three stay applications.

### Argument

This Court's order of November 22, 1996, that provided the manner in which Johnson's death sentence would be carried out, addressed, self-evidently, the manner in which his sentence

would be executed. Challenges to orders addressing the execution of a sentence, however, are not governed by Rule 35. *See Little*, 392 F.3d at 679 ("Little's request for sentencing credit," a claim addressing the execution of a sentence, is "properly brought under [28 U.S.C.] § 2241, rather than Rule 35(a).").

Every aspect of this Court's rulings addressing the manner in which the death sentences would be carried out demonstrated that the rulings were ancillary to the judgment of conviction. This Court entered the judgment of conviction with the death sentences, but stayed it on the theory that no lawful means existed for carrying out the judgment. The Fourth Circuit vacated that order, instructing the Court to "enter appropriate orders for the executions." *Tipton*, 90 F.3d at 902. This was the appropriate relief for "the Government's cross-appeal from the district court's order staying execution." *Id*. at 903. That cross-appeal did not challenge the underlying judgment.

This Court's order of November 22, 1996, is styled *not* as any modification of the judgment, but as an "order of execution." And this Court later modified that order, again styling the updated order as an "order," not as a judgment of conviction. The government needed that modification because the 1996 *order*—not the *judgment*—would have precluded carrying out the death sentence in Terre Haute. Indeed, the 2005 order specifically stated that it was entered "[p]ursuant to the imposition of the sentence of death that was handed down by the jury on February 16, 1993."

Johnson's own motion effectively concedes the ancillary nature of the orders at issue. As he states: "The Court thereafter entered the *judgment* imposing a sentence of death on Counts 8, 11, 17, 18, 19, 24, and 25. *See* Ex. 4 (ECF No. 593). Per its oral ruling, however, it did not include *an order for implementing* the death sentence." (ECF No. 107 at 2) (emphasis added). Johnson asserts that the judgment was not complete until the further orders that provided the procedures

for executing the sentence. But the sentence here was the death sentence, which was complete and final without the further orders. Indeed, that explains why a final judgment did validly exist for Johnson's own direct appeal to the Fourth Circuit.

Johnson's claim should also fail for the additional reason that—in addition to being unduly delayed even if the proper focus were simply on the order in *Higgs*, which was itself issued two weeks before the instant motion—it is an untimely challenge. Johnson did not file an appeal from the 2005 order, and he did not seek to challenge the order in a motion under § 2255 to correct his sentence (the mechanism that his own theory that the order is part of his sentence would appear to suggest). Johnson may not ignore the 14-day deadline for criminal appeals, *see* Fed. R. App. P. 4(b)(1)(A); disregard the one-year time limit for § 2255 motions, *see* 28 U.S.C. § 2255(f); wait a decade and a half; and on the eve of his execution mount an attack on an order that this Court entered long ago. *See Buckley v. Precythe*, 139 S. Ct. 1112, 1134 (2019) ("Last-minute stays should be the extreme exception, not the norm, and 'the last-minute nature of an application' that 'could have been brought' earlier … 'may be grounds for denial of a stay.'"). Johnson argues that the defect in the 2005 order was jurisdictional, but his invocation of the label "jurisdiction" does not entitle him to ignore applicable appeal deadlines, disregard applicable statutes of limitations, and bring a freestanding collateral challenge to the order. *See, e.g.*, *Travelers Indemnity Co. v. Bailey*, 557 U.S. 137, 153 (2009) ("A party that had an opportunity to litigate the question of subject-matter jurisdiction may not … reopen that question in a collateral attack."). In any event, the Supreme Court, endeavoring "to 'bring some discipline' to the use of the term 'jurisdictional,'" has held that "[a] rule is jurisdictional [only] [i]f the Legislature clearly states" as much. *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012). Johnson identifies no basis for concluding that § 3582(c) (which relates to sentences that include terms of imprisonment) or Rule 35 posed a *jurisdictional*

7

obstacle to the 2005 order.

Given that Johnson's execution date is this Thursday, and that he has already launched many separate appeals in this case, the government respectfully requests that, in the interest of avoiding piecemeal litigation, this Court address both whether the 2005 order amended the original criminal judgment under Rule 35 and whether Johnson's current request for relief is timely.

## Conclusion

The United States respectfully requests that this Court deny Johnson's motion.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

By:  _____/s/_____

Richard D. Cooke
Joseph Attias
Assistant United States Attorneys
U.S. Attorney's Office
Eastern District of Virginia
919 East Main Street, Suite 1900
Richmond, Virginia 23219
(804) 819-5400

8

**Certificate of Service**

I certify that on January 12, 2020, I filed electronically the foregoing with the Clerk of

Court using the CM/ECF system, which will serve all counsel of record.

By:  _____/s/_____

Joseph Attias
Assistant United States Attorney