**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Criminal No. 3:92cr68-04** |
| | ) | **The Honorable David J. Novak** |
| **VERNON LANCE THOMAS,** | ) | |
| | ) | |
| *Defendant.* | ) | |

## DEFENDANT'S MOTION TO REDUCE SENTENCE
## PURSUANT TO SECTION 404 OF THE FIRST STEP ACT OF 2018

Vance L. Thomas, by counsel,[1] moves this Court pursuant to § 404(b) of the First Step Act of 2018 for an order reducing his term of imprisonment on all life sentence counts. In November of 1993, the Court sentenced Mr. Thomas to concurrent life sentences on a series of counts, and concurrent terms of 240 months on Count 33, and consecutive terms of 5 years and 20 years on Counts 12 and 27, respectively. The Court sentenced Mr. Thomas, who was a young man of 21 years of age when the conspiracy was alleged to have started, and who suffered from serious mental health and intellectual deficits (*see* PSR ¶¶ 141-144), when the Court last saw him more almost thirty years ago for his sentencing hearing. He brought no history of any criminal charges to the Court, with a Criminal History Category of I. Although the offenses involved in this case were very serious,

Mr. Thomas has changed dramatically over time and is deserving of this opportunity to have his sentence reviewed and reduced. In his almost 30 years of incarceration, he has had only 5 disciplinary infractions and has moved his way up to a medium security prison. All of the statutory provisions governing the offenses of conviction involve mandatory minimum sentences

---

[1] Mr. Thomas's inmate registry number is 00141-748.

1

of 20 years. *See* PSR ¶ 173. Mr. Thomas has served almost 30 years, and he is eligible for a reduction in his life sentences under Section 404 of the First Step Act to sentences of terms of months of 240 months or greater, 240 months being the mandatory minimum sentences for those offenses. He has mandatory consecutive sentences of 25 years for § 924(c) firearm offenses in addition to the 20 year mandatory minimum sentences that cannot be reduced under Section 404 of the First Step Act.

Specifically, Mr. Thomas was convicted in Count One of conspiracy to possess with intent to distribute and to distribute more than fifty grams of crack cocaine. *See* PSR at 1-A.  This is a covered offense for purposes of Section 404 of the First Step Act.  *See United States v. Wirsing*, 943 F.3d 175 (4th Cir. 2019) and *United States v. Gravatt*, 953 F.3d 258 (4th Cir. 2020).  Because the 2010 Fair Sentencing Act modified the statutory penalties applicable to his statute of conviction in Count One, Mr. Thomas is eligible for a reduced sentence on all affected counts pursuant to the First Step Act of 2018.  Moreover, the First Step Act requires that the Court conduct a complete review on the merits.  This Court has observed that in conducting that complete review on the merits, "the Court must consider all the facts in the case including those set forth in the motion for reduction of sentence, those in the Presentence Report or otherwise, and the record of the case in its entirety."  *United States v. Mabry*, 420 F. Supp. 3d 475, 479 (E.D. Va. 2019).

In this case, the convictions that drove the Court's imposition of life sentences occurred when Mr. Thomas was a very young man and suffering from mental health and intellectual deficits. While not a mandatory life sentence, the Court sentenced Mr. Thomas to life in prison without the possibility of parole.  As explained further below, to sentence Mr. Thomas to life in prison for conduct that happened when he was very young and under the circumstances presented should be reexamined by this Court.

2

Mr. Thomas is now a mature, rational, and respected man, no longer the rash, undereducated, and uninformed young man who committed serious offenses decades ago. He has worked diligently to improve himself while incarcerated and has only five disciplinary incidents in his almost 30 years of incarceration. Accordingly, he respectfully requests that the Court reduce his sentence from life in prison on all of his life counts to 240 months.

## I.        First Step Act: Background and Requirements

On December 21, 2018, the First Step Act of 2018 was signed into law. *See* First Step Act of 2018, Pub. L. 115-391, § 404(b), 132 Stat. 5194, 5222 (2018). Section 404 of this new law makes the Fair Sentencing Act of 2010 retroactively applicable to defendants who committed controlled substance offenses before that law's enactment on August 3, 2010. The Fair Sentencing Act altered the quantities of cocaine base subject to the penalty provisions of 21 U.S.C. § 841(b)(1)(A)-(C). Specifically, the quantity triggering the ten-year mandatory minimum was increased from 50 grams of cocaine base to 280 grams, and the quantity triggering the five-year mandatory minimum was increased from five grams of cocaine base to 28 grams of cocaine base. *See* 21 U.S.C. §§ 841(b)(1)(A), (B). Finally, the quantity subject to the catch-all provision, § 841(b)(1)(C), was increased from amounts under five grams of cocaine base to amounts under 28 grams. *See* Fair Sentencing Act of 2010, Pub. L. No. 111-220, 124 Stat. 2372 (2010).

Section 404(b) of the First Step Act of 2018 provides that a defendant who committed a cocaine base offense before enactment of the Fair Sentencing Act may move for a reduced sentence. First Step Act § 404(b). Specifically, the section provides that in such a case, [a] court that imposed a sentence for a covered offense may, on motion of the defendant . . ., impose a reduced sentence as if Sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) were in effect at the time the covered offense was committed. First Step Act §

3

404(b); *see also* id. §404(c) (stating that "[n]othing in this section shall be construed to require a court to reduce any sentence pursuant to this section"). Section 404 defines "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372), that was committed before August 3, 2010." First Step Act § 404(a).

### A.    A defendant's eligibility for a reduction under § 404 turns solely on the statute of conviction, not the nature of the defendant's conduct.

Eligibility for a reduced sentence under the First Step Act "turns on the proper interpretation of a 'covered offense.'" *United States v. Wirsing*, 943 F.3d 175, 185 (4th Cir. 2019). In *Wirsing*, the Court resolved the question of whether classification as a "covered offense" depends upon (A) whether the penalties of a federal criminal statute the defendant violated were modified by the Fair Sentencing Act; or (B) whether the amount of drugs involved in a defendant's offense conduct exceeded the new thresholds set forth in the Fair Sentencing Act. *Id*.

The Fourth Circuit held that a "covered offense" is defined solely by whether the statutory penalties for a violation of a federal criminal statute were modified by the Fair Sentencing Act. *Wirsing*, 943 F.3d at 185-86. The eligibility determination is thus based on "a simple interpretation of the statute:" a defendant "is eligible to seek relief under the First Step Act" if "'before August 3, 2010,' he 'committed' a 'violation'" of a federal criminal statute, "and 'the statutory penalties' for that statute 'were modified by' Section 2 of the Fair Sentencing Act." *Id*. at 186. In so ruling, the Fourth Circuit adopted the "consensus view" among federal courts that eligibility does not depend upon the amount of drugs involved in a defendant's particular offense conduct. *Id*. at 184.

**B.**     ***The Court has the authority to resentence Mr. Thomas on all of his life sentence charges, including counts that are not "covered' under the First Step Act***

Though Mr. Thomas was convicted of multiple offenses in the underlying case, this Court is not prohibited from resentencing him on each count for which he was convicted, including his convictions under 18 U.S.C. § 1951(a), 18 U.S.C. § 1959(a), and 21 U.S.C. §§ 848, 846, and 841. The relevant language of § 404(b) does not contain any prohibition or qualification limiting the Court from resentencing a defendant to only convictions for "covered offenses." Rather, the statute states that the Court "may… impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act were in effect at the time the covered offense was committed." *Supra* Note 2. To read a prohibition into §404(b) disallowing the court from imposing a reduced sentence on non-covered counts would result in reading a limitation into the law that is not present in its text. *United States v. Washington*, No. 03-cr-20045-JES-DGB, 2019 U.S. Dist. LEXIS 168118, at *6-7 (C.D. Ill., Sept. 30, 2019). Had Congress intended to include such a limitation, it could have written it into the First Step Act itself. *Id. See, e.g.*, *United States v. Gravatt*, 953 F.3d 258, 264 (4th Cir. 2020) (holding that defendant convicted of multiple offenses, including those not covered under § 404 of the First Step Act, is eligible for reduction when at least one offense is a "covered offense" under section 404); *United States v. Black*, 388 F. Supp. 3d 682, 688 (E.D. Va. 2019) (reducing sentence on offenses not covered by First Step Act when crack conviction that was a "covered offense"). The District Courts in the Richmond Division of the Eastern District of Virginia have applied this sentencing approach in other cases as well, including *United States v. Rooks*, Case No. 3:99cr312-2, ECF No. 271 (Hudson, J.) and *United States v. Williams*, Case No. 3:99cr312-3, ECF No. 273 (Hudson, J.).

5

Though courts have reached different conclusions on whether a defendant is entitled to a plenary sentencing hearing under the First Step Act, a number of district courts have recognized the authority to reduce the aggregate of sentences, including both covered and non-covered offense convictions. *See, e.g., United States v. Mack*, Crim No. PJM 09-00247, 2019 U.S. Dist. LEXIS 219457 (D. Md., Dec. 20, 2019) *United States v. Clarke*, No. 4:29cr4013-WS/CAS, 2019 U.S. Dist. LEXIS 224430 (N.D. Fla., Oct. 24, 2019); *United States v. Biggs*, No. 05 CR 316, 2019 U.S. Dist. LEXIS 81509 (N.D. Ill., May 15, 2019); *United States v. Powell*, No. 3:99cr264-18 (VAB), 2019 U.S. Dist. LEXIS 171895 (D. Conn. Oct. 3, 2019); *United Stat s v. DeJesus*, No. 3:00-cr-227 (SRU), 2019 U.S. Dist. LEXIS 188385 (D. Conn., Oct. 30, 2019). This is in line with Congress's intent in passing the First Step Act, especially in cases in which a defendant's sentence in the covered crack offense was the driving factor in the entire prosecution, and other prosecutions of its kind during that period of time. In Mr. Thomas's case, the covered offense was the kind of prosecution that brought his case and others like it before this Court and other federal courts at the time.

Furthermore, many courts, including those within the Eastern District of Virginia, have ruled that the First Step Act allows for the reduction of sentences for non-covered offenses, even if the non-covered offense involved a firearm or was violent in nature.[2] In fact, there are several

---

[2] *See, e.g. United States v. Black*, 388 F. Supp. 3d 682, 2019 U.S. Dist. LEXIS 98991 (E.D Va., June 7, 2019) (granting reduced sentence for defendant convicted under 18 USC §§ 924(g)(1) and 924(e)); *United States v. Wright*, 2019 U.S. Dist. LEXIS 1988760 at *17-18 (reducing defendant's sentences under convictions for 18 USC § 924(c) based on the First Step Act's amendment of the 25-year "stacking provisions")); *United States v. Williams*, No. 5:06-CR-14, 2019 U.S. Dist. LEXIS 197099 (W.D. Va., Nov. 13, 2019) (reducing defendant's sentence for his conviction for drug conspiracy in light of his 10-year mandatory minimum sentence for conviction under 18 USC § 924(c)); *United States v. Hines*, No. 3:05-cr-118 (SRU), No. 3:16-cv-1044 (SRU), 2020 U.S. Dist. LEXIS 21284 (D. Conn., Feb. 7, 2020) (granting new sentencing hearing for defendant convicted of covered drug offense as well as felon in possession of firearm offenses in violation of 18 USC §§ 922(g)(1), 924(e), and

district court cases in which a defendant sentenced to life in prison on a non-covered offense received a reduced sentence pursuant to the First Step Act. *See*, *e.g. Rooks* and *Williams*. In *United States v. Powell*, the District Court for the District of Connecticut reduced a defendant's life sentence to 20 years. Powell was convicted of various "non-covered" RICO offenses in addition to a "covered offense," including conspiracy to commit murder, for which he received the life sentence. *See United States v. Powell* 2019 U.S. Dist. LEXIS, 171895 (D. Conn., Oct. 3, 2019). The Court found that it had the discretion to reduce Powell's sentence on all his charges because he had also been convicted of a covered offense, and did so based on his exemplary record in prison. *Id.*, at *24.

Another highly instructive case regarding this Court's ability to reduce Mr. Thomas's entire sentence is *United States v. Anderson*. Cr. No. 0:04-353 (CMC), 2019 U.S. Dist. LEXIS 158026 (D.S.C., Sep. 17, 2019). Anderson was initially charged with a multi-count indictment that included a charge of using a firearm in commission of murder in relation to a drug trafficking crime in violation of 18 USC § 924(j)(1). He ultimately pleaded guilty to two drug trafficking crimes, but not the 924(j) charge. *Id.*, at *2-3. However, for the purposes of calculating his guidelines, Anderson stipulated that the murder cross-reference contained in §2D1.1(d)(1) applied. *Id.*, at *3.

Anderson received a total sentence of 300 months. *Id.*, at *7. In Anderson's First Step Act proceedings, the government conceded that the Court had the discretion to reduce the Defendant's sentence, but argued that the Court should not do so because of the Defendant's stipulation that the murder cross-reference was applicable. *Id.*, at *9-10. The Court rejected this

---

924(c)(1)); *United States v. Luna*, No. 3:05-cr-58 (SRU), F. Supp. 3d , 2020 U.S. Dist. LEXIS 14545 (D. Conn., Jan. 29, 2020) (granting new sentencing hearing to defendant convicted of firearm offense in violation of 18 USC § 924(g)(1)).

argument, and reduced Anderson's sentence from 300 months to 262 months. *Id*., at \*11. Even though Anderson was not convicted of some of the code sections that comprise Mr. Thomas's convictions, the situations in *Anderson* and the instant case are analogous. *Powell* and *Anderson* demonstrate that courts may reduce sentences for "non-covered" offenses, even offenses that involve violent conduct, pursuant to the First Step Act.

Upon a finding of eligibility, § 404 expressly permits a court to "impose a reduced sentence" "as if" the Fair Sentencing Act "were in effect." First Step Act § 404(b). At the same time, § 404 gives the court discretion to deny the motion of a defendant who is eligible and whose sentence is not already fully in accordance with the Fair Sentencing Act, so long as the court denies the motion "after a complete review . . . on the merits." *See* First Step Act § 404(c). Section 404 places no other limit on the extent to which the court may reduce a sentence, and places no restriction at all on what the court may consider in imposing a reduced sentence. If a defendant is eligible under § 404(a) and (b) because he was previously sentenced for a covered offense, the district court decides in its discretion whether, and to what extent, to impose a reduced sentence. In doing so, the court considers the applicable statutory limits, the advisory guideline range, and the § 3553(a) purposes and factors, including the need to avoid unwarranted disparities between defendants "with similar records who have been found guilty of similar conduct," and the defendant's post-sentencing conduct.

Thus, "unlike earlier rounds of retroactive crack or other drug sentencing relief, the First Step Act does not impose any artificial or guideline limits on a reviewing court." *United States v. Boulding*, 379 F. Supp. 3d 646, 653 (W.D. Mich. 2019). Indeed, "[t]he limits of 18 U.S.C. §3582(c)(2) [that apply to retroactive guideline amendment reductions] are inapplicable. The only

limits found in the First Step Act are the statutory minimums of the Fair Sentencing Act's new thresholds." *Id*.

In sum, to be eligible for a discretionary sentencing reduction, a defendant need meet only three requirements: (1) he was convicted of a covered offense committed before August 3, 2010; (2) he was sentenced pursuant to the statutory penalties for the covered offense in effect before August 3, 2010; and (3) he has not previously filed a motion pursuant to § 404 that was denied on its merits after a complete review. Mr. Thomas meets these three requirements. Accordingly, the Court has the discretion to impose a reduced sentence in this case.

### C.   *Mr. Thomas is eligible for a sentence reduction pursuant to section 404(b) of the First Step Act.*

Mr. Thomas was convicted at a jury trial, conducted in April and May of 1993, of the following offenses:

Count 1: Conspiracy to Distribute 50 grams or more of Cocaine Base:  21 U.S.C. § 846;

Count 2: Continuing Criminal Enterprise, 21 U.S.C. § 848;

Counts 11, 25, 26: Murder in Furtherance of a Continuing Criminal Enterprise, 18 U.S.C. § 848(e)(1)(A);

Counts 12, 27: Use of a Firearm in Relation to a Crime of Violence or Drug Trafficking Crime, 18 U.S.C. § 924(c);

Counts 13, 14, 28, 29: Violent Crimes in Aid of Racketeering, 18 U.S.C. § 1959;

Counts 17, 30, 31: Violent Crimes in Aid of Racketeering, 18 U.S.C. § 1959;

Count 33: Possession with Intent to Distribute Cocaine Base, 21 U.S.C. § 841;

Count 21: Interference with Commerce by Violence, 18 U.S.C. § 1951(a).

On July 8, 1993, this Court sentenced Mr. Thomas to several terms of life imprisonment, concurrent with each other, on Counts 1, 2, 11, 13, 14, 25, 26, 28, 29, on Counts 17, 30 and 31, 30 years concurrent, on Count 33, 20 years, concurrent, and on Count 12, 5 years, consecutive, and Count 27, 20 years, consecutive. Five years of supervised release was ordered and a special assessment of $50 was ordered for each count of conviction. *See* ECF No. 1309.

Under the Fair Sentencing Act of 2010, the quantity of cocaine base alleged in Count 1, fifty grams, would result in a minimum sentence of five years and a maximum sentence of forty years in prison, rather than a range of 10 years in prison to life. Recent Fourth Circuit authority requires that this Court impose a reduced sentence to 480 months on Count One, the cocaine base offense, a covered offense under Section 404 of the First Step Act. *See United States v. Collington*, No. 19-6721, 2021 WL 1608756, at *7 (4th Cir. Apr. 26, 2021). Mr. Thomas has not previously moved for a reduced sentence pursuant to § 404 of the First Step Act. And he has not previously had his sentence reduced as if the Fair Sentencing Act of 2010 applied in his case.

In sum, because Mr. Thomas was convicted of a covered offense, 21 U.S.C. § 846, and was sentenced pursuant to the statutory penalties in § 841(b)(1)(A) in effect at the time of the offense in the early 1990s, before the Fair Sentencing Act of 2010 became law, and because he has not previously moved for or received a reduction under the First Step Act of 2018, he is eligible for a sentence imposed in accordance with the Fair Sentencing Act of 2010.

II.    **Argument**

A.    ***The Court Should Exercise Its Discretion to Reduce Mr. Thomas's Sentence***

At the sentencing hearing in 1993, the Court sentenced Mr. Thomas to concurrent life terms, a 20-year term, and a consecutive term of 25 years. The then mandatory guideline range for the case was Life in prison and remains the same now. To clarify Mr. Thomas's request, he

asks that he be sentenced to 240 months, concurrent, on every count with the exception of Counts 12 and 17 – Section 924(c) firearm offenses - which will remain as consecutive 5 and 20 year sentences. These consecutive sentences of 60 months and 240 months cannot be reduced under Section 404 of the First Step Act, as they are statutory mandatory minimum sentences. Mr. Thomas intends to revisit those sentences under Section 603(b) of the First Step Act. *See United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020).

### 1. Mr. Thomas's Young Age at the Time of His Offenses and his Intellectual Limitations Weigh in Favor of Reducing His Sentence

While Mr. Thomas was not a juvenile at the time of his offenses, the *Miller v. Alabama* factors should nonetheless be considered in assessing Mr. Thomas's request for a reduction of sentence under 18 U.S.C. §3553(a) factors. *See McCoy*, ___F.3d __, 2020 U.S. App. LEXIS 37661, at *31 (4th Cir. Dec. 2, 2020) (holding the district court was correct to "focus[] on the defendants' relative youth - from 19 to 24 - at the time of their offenses, a factor that many courts have found relevant under § 3582(c)(A)(i)."); *see also, McCoy*, 2020 U.S. Dist. LEXIS 91801 (E.D. Va. May 26, 2020) (referencing *Miller* neurological development, decision-making, and reform factors in assessing extraordinary and compelling reasons for a defendant arrested at nineteen), *aff'd*, ___F.3d __, 2020 U.S. App. LEXIS 37661 (4th Cir. Dec. 2, 2020).

While the categorical ban on mandatory sentences for life without parole for juveniles does not apply to defendants in their late teens, research demonstrates that such individuals still experience many of the same behavioral, psychological, and neurological development factors that affect the ability to understand risks and consequences and to make informed, mature decisions. *See, e.g., Kathryn L. Modecki*, Addressing Gaps in the Maturity of Judgment Literature: Age Differences and Delinquency, 32 Law & Hum. Behav. 78, 85 tbl.3 (2007) (describing study finding that college-aged adults statistically shared adolescents' diminished ability to evaluate a situation

before acting when compared to older adults). Thus, even without a categorical ban, several courts within the Fourth Circuit have found criminal conduct and arrest at a young age, particularly when accompanied by a minimal prior criminal history and subsequent rehabilitation, favors sentence reduction in most cases. *See, McCoy*, ___F.3d __, 2020 U.S. App. LEXIS 37661, at *36 (4th Cir. Dec. 2, 2020) (finding the courts' consideration of the defendants' age of 19 a relevant factor to consider for post-conviction relief analyses)*, Scott*, 2020 U.S. Dist. LEXIS 84313 (D. Md. May 13, 2020) (finding defendant's age of 23 and lack of prior criminal record favored relief); *United States v. Bryant*, 2020 U.S. Dist. LEXIS 75681, at *9-10 (noting relative youth—24 years old— and minimal prior criminal record, combined with good post-sentencing conduct greatly favored relief); *Decator*, 452 F.Supp.3d at 325-326; *Maumau,* 2020 U.S. Dist. LEXIS 28392, at *17.

Restricting *Miller*'s logic solely to individuals under 18 is rooted in an arbitrary legal tradition and ignores the modern science the Supreme Court consulted when developing the *Miller* factors. *See e.g., United States v. Chavez*, 894 F.3d 593, 609 (4th Cir. 2018) ("Contemporary 'society draws the line for many purposes between childhood and adulthood' at 18 years old. [. . .] It is true of course, that 'the qualities that distinguish juveniles from adults do not disappear when an individual turns 18'" (citing *Roper v. Simmons*, 543 U.S. 551, 574, 125 S.Ct. 1183 (2005))). Studies have repeatedly indicated that the prefrontal cortex is not fully developed until age 25. *See e.g.,* Mariam Arain, et al., *Maturation of the adolescent brain*, 9 Neuropsychiatric Disease and Treatment 449 (2013) (stating, "The fact that brain development is not complete until near the age of 25 years refers specifically to the development of the prefrontal cortex"). In *United States v. Streett*, the court found that

> [T]he prefrontal cortex "helps us control our impulses and regulate our emotion," as well as aid in decision-making, reasoning, and planning, such that "we often see risk-taking behavior in adolescents because they don't have that complete development of the prefrontal cortex."

434 F. Supp. 3d 1125, 1161 (D.N.M. 2020) (citing the expert testimony of Sueann Kenney-Noziska, an LCSW, therapist, lecturer on childhood trauma and its impact on neurobiological development).  Thus, *Miller*'s underlying logic - that juveniles are less culpable for their crimes because, *inter alia*, their brains are not fully mature in regions related to impulse control, planning, and risk avoidance, *Miller*, 567 U.S. at 472 - ought to be applied to those individuals who are under the age of 25. Rather than an out-dated, arbitrary legal tradition, *Miller* has set forth that young adults meet the same criteria as juveniles with respect to the science of culpability and sentencing.

Mr. Thomas's case comports with the *Miller* factors:

1. Adolescent brains are not fully mature in regions related to impulse control, planning ahead, and risk avoidance;

2. Adolescents cannot extricate themselves from negative family or social environments and are more vulnerable than adults to negative influences such as abuse and neglect;

3. Adolescent brains have an enhanced susceptibility to peer pressure;

4. Adolescents are less able than adults to assist in their defense and properly evaluate plea options; and

5. Because the adolescent brain is not fully formed, adolescents have a tremendous potential for rehabilitation.

*Id.* at 477. *See also* Scott, Grisso, Levick, and Steinberg, *Juvenile Sentencing Reform in a Constitutional Framework* at § III, 88 Temp. L. Rev. 675, 695-703 (2016) ("*Juvenile Sentencing Reform*" (discussing how to apply the five *Miller* factors).

Numerous studies have demonstrated that ACEs experienced in childhood and adolescence have a profound effect on the development of key areas of the brain responsible for executive functions (i.e. decision making and risk-taking behavior), namely the prefrontal cortex. *See e.g.,* Jessie I. Lund, et al., *Adverse Childhood Experiences and Executive Function Difficulties in Children: A Systematic Review*, 106 Child Abuse & Neglect 104485 (2020) (finding that, across thirty-six studies that examined executive functions related to forms of maltreatment, including

13

abuse, neglect, and exposure to intimate partner violence, many found a "*strong* relationship between maltreatment and [prefrontal cortex] deficits among children." (Emphasis added)). Based on his age and history of intellectual deficits, Mr. Thomas's brain was still not fully developed in the areas of the brain that govern behavior.

But perhaps the clearest example of the *Miller* factors' application to Mr. Thomas comes in his demonstrated capacity for rehabilitation. Since being incarcerated, Mr. Thomas has incurred only five disciplinary incidents (*see* attached Exhibit A), and his prison programming has been impressive. *See* attached Exhibit B. This Court should also take note of Mr. Thomas's serious mental and emotional health issues that were noted at the time of his sentencing. *See* PSR ¶¶ 141-144.

His presentence report noted that he "began experiencing mental health problems while in elementary school." PSR ¶ 141. By age 12, he was placed in special education classes. *Id*. He was classified as CRMD (Children with Retarded Mental Development). One of his school officials referred to him as "a follower, easily persuaded, and could be drawn by promise of anything, friendship not necessarily money." *Id*. This could explain his involvement with the criminal activity in this case and his association with the co-defendants when, previously, he had no criminal history. Mr. Thomas's impressive institutional record for the last 30 years would also suggest that his involvement with the very serious conduct in this case was more a matter of him trying to gain acceptance and friendship than a propensity towards criminal activity and violence.

14

### 2.    Other Factors

This Court should also be mindful of avoiding unwarranted disparities in considering a reduction in Mr. Thomas's sentences. *See* 18 U.S.C. § 3553(a)(6). Co-defendants Jerry Gaiters and Sterling Hardy were involved in some of the most serious of violence of the defendants.  As pointed out in Mr. Thomas's presentence report, Sterling Hardy was involved in murders as well as the drug conspiracy, *See* PSR at pp. 2-5, ¶ 49. He was released from federal prison in October of 1999, having served only seven years.  https://www.bop.gov/ inmateloc/. Jerry Gaiters' sentence was completed in October of 2004, and his involvement in violent crimes in this case, including murders, was substantial. *Id.*, PSR at pp. 2-5, ¶ 48. Although Mr. Thomas acknowledges that these defendants cooperated with the government and had their sentences reduced based on their cooperation, the disparity in their sentences, and the continued imposition of a life sentence for Mr. Thomas, is not justified under all of the 18 U.S.C. § 3553(a) factors. Mr. Thomas's demonstrated rehabilitation, his limited intellectual capacity, his criminal record before this conduct, and his remorse for the damage he caused, justifies a substantial reduction in his sentence, especially in consideration of the gross disparity in the sentences of these co-defendants.

Despite the nature of his convictions and his mental health deficits, Mr. Thomas is now in a medium security facility. Mr. Thomas's Inmate Education Data Transcript demonstrates an impressive series of classes over the years, which clearly shows that he has made an effort to improve himself while incarcerated. *See* attached Exhibit B. Absent from these classes are vocational courses. Because of his intellectual limitations, he has not yet been able to secure his GED, without which, he is ineligible for vocational courses. Nonetheless, he reports that he has been actively employed in the prison as a leisure clerk and as an orderly in the hospital and gym.

Mr. Thomas deeply regrets his actions and criminal activity and wishes there was some way he could reverse the course of his young life and the tragic decisions he made as a young, troubled man. He came to Richmond from New York with no history of criminal activity, having been the victim of gunshot wounds in 1991. See PSR ¶ 140. The wounds pierced his liver and lung; he was forced to carry a colostomy bag. *Id*.

### 3. Family Support

Mr. Thomas's release plan is with his child's mother, Nicole Bishop, in Philadelphia Pennsylvania. Despite his lengthy prison sentence, Mr. Thomas has stayed in close contact with Ms. Bishop and their daughter, Shanders. Shanders now has children of her own, Mr. Thomas's grandchildren. Mr. Thomas looks forward to spending time with Ms. Bishop, his daughter, Shanders, and his grandchildren. These members of his family will help to provide a strong system of support to Mr. Thomas if he is to be released.

Attached are letters from Mr. Thomas's brother, Ralph Miller and his mother, Illona Miller. *See* Defendant's Exhibit C (the letters are mistakenly addressed to Judge Spencer). These letters demonstrate the family support Mr. Thomas has in the community and provide meaningful insights into his character and growth since his incarceration. His brother talks of the changes Mr. Thomas has undergone in his almost three decades of incarceration. Mr. Miller speaks of the peer pressure he was under at the time of the offenses and the fact that he had no criminal record prior to coming to Virginia with the co-defendants. He asks that this Court afford his brother a second chance. Mr. Thomas's mother, Ms. Miller, also asks the Court for a second chance for her son. She speaks in her letter about how her children grew up without a father and how she did her best to try to raise them. Due to her disability, she is presently unable to travel to see her son. She implores the Court to allow her son to come home, stating that "he was young and very immature at the time [of the

16

offenses]; and now that he is much older and wiser it would lead me to believe Vernon would be a much greater success than when he left." She wants her son home with her "for the final years that I have left here on this earth." Ex. C at 3.

Mr. Thomas has changed, matured, and developed into a man who is deserving of the second chance that the First Step Act affords. He wants the Court to know the following:

> I hope that i could get a Second Chance at Life. Because when i got lock up i was young and didn't understand a thing about Life. But since being incarcerated i did my best to become a better person. And i want to show my family and friends how productive i could be to them. And i want to give back to Society also.

### D. Conclusion

In sum, because Mr. Thomas was convicted of a covered offense, was sentenced pursuant to the statutory penalties for that offense in effect in 1993 before the Fair Sentencing Act of 2010, and because he has not previously moved for or received a reduction under the First Step Act of 2018, he is eligible for a sentence imposed in accordance with the Fair Sentencing Act of 2010. Further, a reduction in his sentence is consistent with the intention of Congress to remedy the disproportionate impact of the harsh sentences applied to crack cocaine offenses before 2010 and with the Eighth Amendment. Mr. Thomas requests that the Court set an evidentiary hearing on

this motion far enough into the future to account for adequate preparation once the federal prison system can safely open to outsiders.  Accordingly, Mr. Thomas therefore requests that the Court exercise its discretion to reduce his life sentences to 240 months, concurrent, still leaving him with an additional consecutive 25 years to serve.

Respectfully submitted,
Vernon L. Thomas

By: _____/s/_____
Robert J. Wagner
Va. Bar No. 27493
Counsel for Defendant
Office of the Federal Public Defender
701 E Broad Street, Suite 3600
Richmond, VA 23219-1884
Ph. (804) 565-0808
Fax (804) 648-5033
robert_wagner@fd.org

18