**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | | |
|---|---|---|
| RICHARD TIPTON, III, | ) | |
| | ) | Criminal Case No. 92CR68 |
| Movant, | ) | Prior Civil Case No. 98CV361 |
| | ) | |
| v. | ) | **CAPITAL CASE** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**MOTION TO VACATE CONVICTION UNDER 28 U.S.C. § 2255 IN LIGHT OF *UNITED STATES V. DAVIS*, __U.S.__, 139 S. Ct. 2319 (2019)**

Movant Richard Tipton, III, by and through undersigned counsel, respectfully moves this Court pursuant to 28 U.S.C. § 2255 to set aside his convictions and sentences for Counts 20 and 26 in the above-captioned case, which charged him with using a firearm during and in relation to a "crime of violence" or drug trafficking crime in violation of 18 U.S.C. § 924(c). As explained below, these counts must be vacated in light of the Supreme Court's decision in *United States v. Davis*, __U.S.__, 139 S. Ct. 2309 (2019), which held that § 924(c)(3)(b)'s "residual clause" is void for vagueness and violates the Due Process Clause. As Mr. Tipton's particular § 924(c) convictions cannot be otherwise sustained, this Court should grant review and relief.

**Table of Contents**

INTRODUCTION .................................................................................................1

    A.    Mr. Tipton's Convictions and Sentencing. ...........................................2

    B.    Mr. Tipton's Direct Appeal. ................................................................5

    C.    Mr. Tipton's First Section 2255 Motion. .............................................5

    D.    Mr. Tipton's Prior Applications for Authorization. ..............................5

ARGUMENT ......................................................................................................7

    I.    Mr. Tipton's is Entitled to Relief Under 28 U.S.C. § 2255 Because His Claim under Davis is Cognizable, Timely, and Satisfies the Successive Petition Requirements of § 2255(h) ..............9

        A.    Mr. Tipton's Claims under Davis are Cognizable under § 2255(a). ....................................................................................9

        B.    Mr. Tipton's Motion is Timely Under § 2255(f). .....................10

        C.    Davis Announced a New Rule. .................................................11

        D.    Davis's Rule is Constitutional in Nature. ................................12

        E.    The Supreme Court Made Davis Retroactive to Cases on Collateral Review. ...............................................................13

        F.    Davis's New Rule was Previously Unavailable to Mr. Tipton. ...................................................................................15

    II.    After Davis, Mr. Tipton's § 924(c) Convictions Can No Longer Be Sustained. ..................................................................................15

        A.    Under the Modified Categorical Approach, a § 924(c) Conviction Based on Multiple Offenses is Invalid if There is Ambiguity as to Which Offense Supported the § 924(c) Conviction and at Least One of the Possible Predicates is not Categorically a "Crime of Violence." ..........17

i

B. Section 1959(a) is Not Categorically a "Crime of Violence" and Thus Cannot Support a § 924(c) Conviction. ...............................................................23

  1. The jury was empowered to base Mr. Tipton's § 924(c) convictions on § 1959 conspiracy, which is not a categorical "crime of violence," and it may have done so. .............................................................24

  2. After Davis, Mr. Tipton's § 924(c) convictions can no longer rest on § 1959 murder offenses. .....................26

  3. Maiming is not categorically a crime of violence and thus cannot support Mr. Tipton's 924(c) convictions. ................................................................32

  4. Mr. Tipton's 924(c) convictions cannot rest on assault resulting in serious bodily injury, which is not categorically a crime of violence .............................32

C. Mr. Tipton's § 848(e) Convictions Also Fail to Qualify Categorically as "Crimes of Violence" under § 924(c). ............33

III. Because Both of Mr. Tipton's § 924(c) Convictions are Invalid after Davis, Mr. Tipton is Entitled to be Resentenced. ........................35

CONCLUSION AND PRAYER FOR RELIEF ....................................................37

ATTACHED EXHIBITS

United States v. Tipton, EDVA, No. 3:92Cr68,
Superseding Indictment ............................................................Exhibit 1

United States v. Tipton, EDVA, No. 3:92CR68, Verdict Form ...................Exhibit 2

## INTRODUCTION

Before *Davis*, § 924(c) included two alternative clauses defining "crime of violence." The first, § 924(c)(3)(A), is commonly referred to as the "force" or "elements" clause and applies to any felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." The second, § 924(c)(3)(B), was referred to as the "residual clause" and applied to any felony "that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense. *Davis*, however, held that § 924(c)(3)'s residual clause is void for vagueness, violates the Due Process Clause, and, accordingly, unconstitutionally imposed criminal punishment. 139 S. Ct. at 2336.

Absent § 924(c)'s residual clause, none of Mr. Tipton's purported predicate offenses can categorically qualify as a "crime of violence" because (1) none has as a required element the use, attempted use, or threatened use of violent physical force, and (2) each can be accomplished without the defendant's intentional use, attempted use, or threatened use of the same. Moreover, as the record does not establish the specific offense used by the jury as the predicate offense for his § 924(c) convictions, reviewing courts cannot assume that the jury chose a predicate that authorized conviction for a drug trafficking crime as an alternative to a crime of violence.

1

As § 924(c)'s residual clause is void and its force clause is unsatisfied, Mr. Tipton's convictions and sentences: (1) violate due process; (2) violate the laws of the United States and result in a fundamental miscarriage of justice; and (3) were entered in excess of the district court's jurisdiction.  Mr. Tipton is accordingly innocent of the § 924(c) offenses, and his convictions and their associated sentences are void.

## STATEMENT OF RELEVANT FACTS

### A.    Mr. Tipton's Convictions and Sentencing.

On February 3, 1993, Mr. Tipton was convicted of the following offenses: conspiracy to possess cocaine base with intent to distribute in violation of 21 U.S.C. § 846[1]; engaging in a continuing criminal enterprise ("CCE") in violation of 21 U.S.C. § 848(a)[2]; six counts of murder "while engaged in and working in furtherance of" a CCE in violation of 21 U.S.C. § 848(e)[3]; six counts of murder "to maintain or increase position in racketeering enterprise" in violation of 18 U.S.C. §

---

[1]Count 1.

[2]Count 2.

[3]Counts 3, 17, 18, 19, 24, and 25.

2

1959[4]; two counts of maiming "to maintain or increase position in racketeering enterprise" in violation of 18 U.S.C. § 1959[5]; two counts of possession of cocaine base with intent to distribute in violation of 21 U.S.C. § 841(a)(1)[6]; and, most relevant to this motion, two counts of using a firearm in relation to a crime of violence or a drug trafficking crime, 21 U.S.C. § 924(c).[7]

This Court instructed Mr. Tipton's jury that it could find him guilty of his charges under 18 U.S.C. § 1959 based upon any of the substantive crimes listed in the statute, including *conspiracy* to commit them. Tr. 3219-20. This Court further instructed the jury that it could find him guilty of his 21 U.S.C. § 848(e) charges if it concluded that he had *counseled, commanded, induced, procured, or caused* the intentional killing of the named victim. Tr. 3216-17.

As for Mr. Tipton's § 924(c) offenses, the Second Superseding Indictment offered multiple § 848(e) and § 1959 counts as the predicate offenses for each. See Exhibit 1. For the first, Count 20, the indictment cited: conspiracy, as charged in

---

[4]Counts 4, 21, 22, 23, 27, and 28. As discussed below, the indictment did not identify any federal or state statute defining murder as to these counts, nor was the jury instructed as to a specific murder statute to consider.

[5]Counts 29 and 30.

[6]Counts 32 and 33.

[7]Counts 20 and 26.

3

Count 1; the § 848(e) violations charged in Counts 17, 18, and 19; and the § 1959 violations charged in Counts 21, 22 and 23. *Id.* at 15. For the second, Count 26, the indictment cited: conspiracy, again as charged in Count 1; § 848(e) violations as charged in Counts 24 and 25; § 1959 violations as charged in Counts 27 and 28; and the § 1959 maiming violations charged in Counts 29 and 30. *Id.* at 15.

When instructing the jury as to the § 924(c) offenses, however, this Court made no reference to these predicates. Tr. 3221-24. Rather, it simply read the text of § 924(c)(1) to the jury, including a nearly verbatim recitation of its force and residual clauses. *Id.* Nor did this Court identify certain counts as drug trafficking crimes, merely stating generally that "[t]he offenses alleged . . . are crimes of violence *or* drug trafficking crimes." Tr. 3223. This Court repeatedly admonished the jury to refer to Mr. Tipton's verdict form to "assist" it in "giving individual consideration to each…count against him," T. 3219-22, but that form required no specific findings as to the predicate or § 924(c) offenses, directing the jury only to find Mr. Tipton "Guilty or Not Guilty." *See* Exhibit 2.

At the conclusion of the penalty phase, the jury recommended death sentences for three killings in furtherance of a CCE (Counts 3, 24 and 25). The jury also recommended sentences of life for three murders in furtherance of a CCE for which the prosecution had sought the death penalty. This Court sentenced Mr. Tipton in accord with the jury's recommendation, also imposing terms of

4

imprisonment for the non-capital counts of which Tipton was convicted, including the two § 924(c) counts.

### B.     Mr. Tipton's Direct Appeal.

Mr. Tipton timely appealed to the Fourth Circuit, raising issues relating to the guilt and penalty phases of his trial.  That Court vacated Mr. Tipton's conviction under Count One, conspiracy in violation of 21 U.S.C. § 846, as violating the Constitution's double jeopardy clause, but it otherwise affirmed his convictions and death sentences.  *United States v. Tipton*, 90 F.3d 861, 891 (4th Cir. 1996).  The Supreme Court denied certiorari.  *Tipton v. United States*, 520 U.S. 1253 (1997).

### C.     Mr. Tipton's First Section 2255 Motion.

In 1998, Mr. Tipton filed a timely motion for collateral relief under § 2255, raising in the motion (and amendments to it) claims of error in both the guilt and penalty phases of his trial.  This Court denied relief.  *Tipton v. United States*, No. 3:92CR68 (E.D. Va. Nov. 26, 2003).  The Fourth Circuit affirmed the denial of relief.  *United States v. Roane*, et al., 378 F.3d 382 (4th Cir. 2004).  The Supreme Court denied certiorari.  *Tipton v. United States*, 546 U.S. 810 (2005).

### D.     Mr. Tipton's Prior Applications for Authorization.

In *Johnson v. United States*, 135 S. Ct. 2551 (2015), the Supreme Court held that the residual clause of the Armed Career Criminal Act, 18 U.S.C. §

924(e)(2)(B)(ii), was unconstitutionally vague.  The Court subsequently found

*Johnson*'s rule substantive and retroactively applicable to cases on collateral

review.  *Welch v. United States*, 136 S. Ct. 1257, 1265 (2016).

On May 20, 2016, Mr. Tipton moved the Fourth Circuit for authorization to

file a successive § 2255 motion challenging his § 924(c) convictions and sentences

based upon *Johnson* and *Welch*.  (Doc. 1, *In re: Tipton*, No. 16-7.)  The Fourth

Circuit denied that motion on June 6, 2016. (Doc. 13, No. 16-7.)

On April 17, 2018, the Supreme Court held in *Sessions v. Dimaya*, __ U.S.

__,138 S. Ct. 1204, 1223 (2018), that the residual clause of the federal criminal

code's definition of a "crime of violence," as codified in § 16(b) of Title 18, was

void for vagueness and violated the Due Process Clause of the Fourteenth

Amendment.  On April 17, 2019, Mr. Tipton moved the Fourth Circuit for

authorization to file a successive § 2255 motion challenging his § 924(c)

convictions and sentences based upon *Dimaya* and the Fourth Circuit's en banc

decision in *United States v. Simms,* 914 F.3d 229 (4th Cir. 2019) (*en banc*), which

held that Section 924(c)(3)(B)'s residual clause was *also* void for vagueness, as it

was identical to Section 16(b) and imposed the same "categorical approach" and

"ordinary case" inquiry that *Dimaya* rejected.  (Doc. 1, *In re Tipton*, 19-2.)  The

Fourth Circuit summarily denied Mr. Tipton's application on May 14, 2019.  (D.9,

*In re Tipton*, 19-2.)

6

Mr. Tipton now files timely files this 2255 motion based on the Supreme

Court's holding in *Davis,* which unlike *Johnson and Dimaya*, directly addressed

and invalidated § 924(c)'s residual clause.

## ARGUMENT

As noted *supra*, *Davis* held that the residual clause in § 924(c)'s definition

of a "crime of violence" is void for vagueness and violates the Due Process Clause.

139 S. Ct. 2319.  Accordingly, a § 924(c) conviction predicated upon a crime of

violence cannot remain valid unless its predicate offense satisfies the elements-

based, categorical approach required by § 924(c)(3)(a)'s "force" or "elements"

clause.  As discussed below, a reviewing court applying the categorical approach

determines only "whether the statutory elements of the offense necessarily require

the use, attempted use, or threatened use of physical force."  *United States v.*

*Simms*, 914 F.3d 229, 233 (4th Cir. 2019) (*en banc*) *cert. denied*, 140 S. Ct. 304

L.Ed. 2d (2019).  Moreover, the requirements of § 924(c) cannot be satisfied unless

the record established with "certainty" that the defendant was "necessarily"

convicted of an offense that qualifies as a "crime of violence."  *Shepard v. United*

*States*, 544 U.S. 13, 21 (2005).  Accordingly, in cases where the record does not

establish which of multiple offenses the jury might have found as the predicate, the

7

§ 924(c) conviction cannot be sustained if even *one* of the possible predicates is not categorically a crime of violence.[8]

As detailed *infra*, at least two types of offenses charged as predicates for Mr. Tipton's § 924(c) counts–those pursuant to § 1959(a) and § 848(e)–cannot categorically qualify as "crimes of violence" absent the residual clause voided by *Davis.* Moreover, the record does not conclusively establish which of the many possible predicates listed were relied upon by the jury when convicting him of § 924(c) violations. Finally, the record cannot establish with certainty whether § 848(e) was considered by the jury as a crime of violence or a drug trafficking charge, which prevents its use as an alternative predicate for the § 924(c) offenses. Accordingly, following *Davis*, Mr. Tipton's § 924(c) convictions are legal nullities that were entered in excess of this Court's jurisdiction, which warrants relief under § 2255.

---

[8] The Fourth Circuit recently granted a certificate of appealability on the question of "whether an 18 U.S.C. § 924(c) conviction is subject to vacatur where the indictment charged multiple predicates, one of which is invalid." Order, *United States v. Taylor*, No. 19-7616 (Feb. 12, 2020 4th Cir.).

I.      **MR. TIPTON'S IS ENTITLED TO RELIEF UNDER 28 U.S.C. § 2255 BECAUSE HIS CLAIM UNDER DAVIS IS COGNIZABLE, TIMELY, AND SATISFIES THE SUCCESSIVE PETITION REQUIREMENTS OF § 2255(H)**

   A.      **Mr. Tipton's Claims under Davis are Cognizable under § 2255(a).**

A federal prisoner may obtain relief under 28 U.S.C. § 2255(a) if his "sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence."  Mr. Tipton's convictions violate the Due Process Clause of the Fifth Amendment, violate federal law, and exceed this Court's jurisdiction. This Court therefore should grant him relief.

As detailed below, Mr. Tipton's § 924(c) convictions violate the Due Process Clause, as their predicate offenses cannot categorically satisfy its force clause and, thus cannot be sustained as "crimes of violence" absent the residual clause vacated by *Davis*.  As no predicates were clearly established as drug trafficking crimes, Mr. Tipton's indictment therefore failed to state an offense under § 924(c).  Given this infirmity, his convictions violate the laws of the United States.  This is precisely the type of error that is cognizable under § 2255(a).  *See Davis v. United States,* 417 U.S. 333, 346-47 (1974) (holding that when an intervening decision establishes that a prisoner was convicted of "an act that the law [no longer] make[s] criminal," "such a circumstance 'inherently results in a

9

complete miscarriage of justice and presents exceptional circumstances' that justify relief under § 2255").

Mr. Tipton's convictions exceed this Court's jurisdiction because his indictment not only failed to state a § 924(c) offense, but also alleged conduct that is outside the reach of that statute. These convictions are legal nullities entered in excess of this Court's jurisdiction, and they must be vacated. *See United States v. Brown,* 752 F.3d 1344, 1347 (11th Cir. 2014) (a jurisdictional defect exists "when the indictment affirmatively alleges conduct that does not constitute a crime at all because that conduct falls outside the sweep of the charging statute"); *United States v. Barboa,* 777 F.3d 1420, 1423 n.3 (10th Cir. 1985).

**B.    Mr. Tipton's Motion is Timely Under § 2255(f).**

A 2255 motion must be filed within a one-year limitations period, which runs from the latest applicable triggering event. 28 U.S.C. § 2255(f). Where, as here, the motion is pursuant to a "right [that] has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review," the one-year limitations period runs from "the date on which the right asserted was initially recognized by the Supreme Court." 28 U.S.C. § 2255(f)(3). The Supreme

10

Court decided *Davis* on June 24, 2019.  Because this application has been filed within one year of that date (*i.e.*, before June 24, 2020), it is timely.[9]

### C.   *Davis* Announced a New Rule.

"[A] case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Chaidez v. United States*, 568 U.S. 342, 347 (2013) (quoting *Teague v. Lane*, 489 U.S. 288, 301 (1989)).  "And a holding is not so dictated," the Court has made clear, "unless it would have been apparent to all reasonable jurists." *Chaidez*, 568 U.S. at 347 (quoting *Lambrix v. Singletary*, 520 U.S. 518, 527-28 (1997)).

*Davis* plainly announced a new rule.  When Mr. Tipton's conviction became final in July 1996, no precedent suggested—much less "*dictated*"—that § 924(c)'s residual clause was unconstitutional.  On the contrary, the Supreme Court had construed the language of the residual clause of § 924(c)(3)(B), but did not hold

---

[9] Section 2255(h)(2) imposes a gatekeeping restriction on second or successive motions. Before filing such a motion, the petitioner must obtain permission to do so from the appropriate circuit court of appeals. *See* 28 U.S.C. § 2255(h)(2). The court of appeals must certify that the successive motion contains a claim based on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." *Id.; see also* 28 U.S.C. § 2244(b)(3)(C).

Mr. Tipton has appended this successive § 2255 motion to his application to the Fourth Circuit for permission to file it.  Per the Circuit's practice, if it concludes that he has made a *prima facie* showing that he satisfies § 2255(h)(2), it will issue his certification and direct the clerk of this Court to file his petition.

that it was constitutionally problematic. *See, e.g.*, *Smith v. United States*, 508 U.S. 223, 227-28 (1993).

As noted *supra*, Mr. Tipton has previously submitted § 2255(h)(2) applications arguing that earlier Supreme Court holdings striking similar residual clauses in different statutes entitled him to a successive § 2255 motion. But those applications do not diminish the newness of *Davis*'s rule, which, again, was not dictated by existing precedent when Mr. Tipton's conviction became final in 1996 and, unlike the Court's prior decisions analogized by Mr. Tipton, directly and explicitly invalidated § 924(c)(3)(B). *See, e.g.*, *United States v. Reece*, 938 F.3d 630 (5th Cir. 2019) ("[T]he *Davis* rule resolved a circuit split regarding the residual clause's constitutionality, which evidences that the result in *Davis* was not apparent to all reasonable jurists.").

### D.    *Davis*'s Rule is Constitutional in Nature.

Nor is there any dispute that *Davis* announced a *constitutional* rule. The Court found § 924(c)(3)(B)'s residual clause void under the Due Process Clause. 138 S. Ct. at 2336. As *Davis* held that provision unconstitutional, its rule is certainly constitutional in nature. *United States v. Littlejohn*, 2020 WL 639642 (4th Cir., Feb. 11, 2020) ("The § 924(c) residual clause is unconstitutionally vague"). *See also Welch*, 136 S. Ct. at 1261 (reaffirming that "the void-for-

12

vagueness doctrine" is "mandated by the Due Process Clause[] of the Fifth Amendment").

### E.    The Supreme Court Made *Davis* Retroactive to Cases on Collateral Review.

*Davis*'s new rule also satisfies 28 U.S.C. § 2255(h)(2) requirement of retroactivity.  Per *Teague v. Lane*, 489 U.S. 288 (1989), a Supreme Court decision applies retroactively to cases on collateral review if it announces a rule that is both "new" and "substantive."  *Schriro v. Summerlin*, 542 U.S. 348, 351 (2004); *Miller v. United States*, 735 F.3d 141, 145 (4th Cir. 2013).  *Davis*'s rule is "new" for the reasons discussed *supra*.  It is also "substantive," as discussed *infra*.

The Supreme Court makes a new rule of constitutional law retroactive to cases on collateral review in one of two ways:  by explicitly declaring it retroactive, or through a combination of holdings that "necessarily dictate retroactivity of the new rule."  *Tyler v. Cain*, 533 U.S. 656, 666 (2001); *see also San-Miguel v. Dove*, 291 F.3d 257, 260 (4th Cir. 2002).  Here, *Davis*'s retroactivity is "necessarily dictate[d]" by a long line of Supreme Court cases holding that "[n]ew *substantive* rules generally apply retroactively."  *Schriro v. Summerlin*, 542 U.S. 348, 351 (2004); *see also Miller v. United States*, 735 F.3d 141, 145 (4th Cir. 2013).  A rule is "substantive" when it "narrow[s] the scope of a criminal statute by interpreting its terms."  *Schriro*, 542 U.S. at 351-52.

13

*Davis*, of course, establishes that, pursuant to the Due Process Clause, some offenses can no longer be considered "crimes of violence" within the meaning of § 924(c), thus rendering some conduct that was formerly criminal no longer criminal under that statute. *See, e.g.*, *U.S. v. Mathis*, 932 F.3d 242, 266 (4th Cir. 2019) (holding that after *Davis*, VICAR based on kidnapping under Virginia law is no longer a § 924(c) crime of violence). Accordingly, its rule is substantive.

A decision is also "substantive" if it "alters . . . the class of persons that the law punishes." *Welch*, 136 S. Ct. at 1264-165 (citation omitted). In *Welch*, for example, the Supreme Court found that *Johnson* was retroactive because it altered the punishment for those people who had been subject to the ACCA but, after the excision of its residual clause, could no longer be classified as armed career criminals. This reasoning applies with even more force here. *Davis* not only alters sentences, but also places a class of people outside of the reach of Section 924(c) liability for predicate offenses that fell solely within its now-defunct residual clause.

For these reasons, *Davis* is substantive, and in turn, retroactive to cases on collateral appeal. Courts, unsurprisingly, have recognized it as such. *See, e.g.*, *United States v. Dixon*, 789 Fed. Appx. 371 (4th Cir. 2020) (granting a certificate of appealability where the parties agreed that *Davis* applies retroactively). *See also*, *United States v. Reece*, 938 F.3d at 635 (5th Cir. 2019) (holding that the rule

14

announced in *Davis* meets the standard for a new substantive rule and applies retroactively.); *In re: Mullins*, 942 F.3d 975 (10th Cir. 2019) (same); *In re: Hammond*, 931 F.3d 1032 (11th Cir. 2019) (same).

### F.    *Davis*'s New Rule was Previously Unavailable to Mr. Tipton.

Finally, there can be no dispute that *Davis*'s new constitutional rule was not previously available to Mr. Tipton during his direct review, which concluded in 1997, or during his prior 2255 filings.  *Davis* marked the first occasion when the Supreme Court applied the constitutional vagueness analysis to the residual clause in 18 U.S.C. § 924(c) and found it wanting.

## II.    AFTER *DAVIS*, MR. TIPTON'S § 924(C) CONVICTIONS CAN NO LONGER BE SUSTAINED.

Mr. Tipton's convictions for using or carrying a firearm during and in relation to a "crime of violence" are void because their predicate offenses cannot as a matter of law qualify as "crime[s] of violence" for purposes of § 924(c).  As none of these predicate offenses meet the definition of the "force" clause, and as the residual clause can no longer provide a catch-all for such offenses, Mr. Tipton's § 924(c) convictions are no longer valid federal crimes.  Their vacatur, moreover, entitles Mr. Tipton to a resentencing free from their impermissible influence upon his jury.

Section 924(c) prohibits "us[ing]" a firearm "during and in relation to any crime of violence or drug trafficking crime."  18 U.S.C. § 924(c)(1)(A).  It is "a

15

combination crime," in that it "punishes the temporal and relational conjunction of *two separate acts*." *Rosemond v. United States,* 572 U.S. 65, 69 (2014) (emphasis act). Accordingly, the jury must find *each* of those separate acts: "the commission of an underlying crime and the use of a firearm." *Simms*, 914 F.3d at 237 (quoting *Smith v. United States*, 508 U.S. 223, 227-28 (1993)).

After *Davis*, the first of these acts, the underlying "crime of violence," cannot be found in Mr. Tipton's case. At the time of Mr. Tipton's trial, § 924(c)(3) defined a "crime of violence" as a felony that:

> (A)    has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B)    that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3). *Davis,* however, has had the effect of striking the second of these definitions—§ 924(c)(3)(B), otherwise known as the residual clause—from the statute as unconstitutionally vague. *Davis*, 139 S. Ct. at 2336. As a result, the residual clause, which was cited by this Court in its instructions to the jury, can no longer support Mr. Tipton's § 924(c) convictions.

Nor can the surviving elements clause; indeed, it never could. To qualify as a "crime of violence" under the elements clause, the "use of . . . force" must satisfy two requirements. First, the conduct, as described in the statute (not as events actually played out), must involve *violent* force—that is, "strong physical force"

16

that is "capable of causing physical pain or injury to another person." *Johnson v. United States,* 559 U.S. 133, 140 (2010). Second, the use of such force must be *intentional*—not merely reckless or negligent. *See Garcia v. Gonzales,* 455 F.3d 465, 469 (4th Cir. 2006) ("[R]ecklessness, like negligence, is not enough to support a determination that a crime is a 'crime of violence.'"). Because at least one—if not all—of Mr. Tipton's convictions fail to satisfy the requirements of the elements clause, his § 924(c) convictions are a legal nullity that were entered in excess of this Court's jurisdiction, and relief under § 2255 is warranted.

A. **Under the Modified Categorical Approach, a § 924(c) Conviction Based on Multiple Offenses is Invalid if There is Ambiguity as to Which Offense Supported the § 924(c) Conviction and at Least One of the Possible Predicates is not Categorically a "Crime of Violence."**

To determine whether a predicate offense constitutes a "crime of violence" under the force clause of § 924(c), courts must apply the categorical approach. *See United States v. Evans,* 848 F.3d 242, 245–46 (4th Cir. 2017); *United States v. Fuertes*, 805 F.3d 485, 498 (4th Cir. 2015). This approach requires the courts "to look to whether the statutory elements of the offense *necessarily require* the use, attempted use, or threatened use of physical force." *United States v. Simms*, 914 F.3d 229, 233 (4th Cir. 2019) (*en banc*) (emphasis added). And the courts must "look *only* to the statutory definitions—*i.e.*, the elements—of a defendant's

17

[offense] and *not* to the particular facts underlying [the offense]." *Simms,* 914 F.3d
at 233 (emphases added).

In other words, an offense can only qualify as a "crime of violence" under
the categorical approach if *all* of the criminal conduct covered by the statute,
including the least culpable conduct, matches or is narrower than the definition of a
"crime of violence." *See United States v. Torres-Miguel,* 701 F.3d 165, 167 (4th
Cir. 2012); *United States v. Diaz-Ibarra*, 522 F.3d 343, 348 (4th Cir. 2008) ("We
look only to the statutory definition of the . . . crime and the fact of conviction to
determine whether the conduct criminalized by the statute, including the most
innocent conduct, qualifies as a 'crime of violence.'"); *see also United States v.
Davis*, No. 4:18-cr-00011, 2019 WL 3307235, at *9 (W.D. Va. July 23, 2019)
(quoting *Descamps v. United States*, 570 U.S. 254, 260–61 (2013)) ("[T]he key
consideration is whether the state statute 'sweeps more broadly than the generic
crime.' If the state statute is broader, and is applied to capture non-violent
conduct, the conviction in question cannot serve as the predicate § 924(c) "crime
of violence" regardless of whether the defendant's actual conduct violates the
generic form of the offense."). "When a statute defines an offense in a way that
allows for both violent and nonviolent means of commission, that offense is not
'categorically' a crime of violence under the force clause." *Simms*, 914 F.3d at
233.

18

If necessary, the court may employ the modified categorical approach," and consult a select few documents to help "'determine what crime, with what elements,' formed the basis of a defendant's conviction." *United States v. Mathis*, 932 F.3d 242, 264 (4th Cir.) (quoting *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016)). These documents, known as *Shepard* documents, are generally limited to the indictment, jury instructions, and verdict form. *See Shepard v. United States*, 544 U.S. 13, 26 (2005). This approach "acts not as an exception [to the categorical approach] but instead as a tool" to facilitate its inquiry, which remains confined to the *elements* of the crime and *not* the facts of the case. *Descamps v. United States*, 570 U.S. 254, 261, 262 (2013).

Under this modified categorical approach, therefore, an offense cannot serve as the predicate for a § 924(c) conviction unless the *Shepard* documents establish with "certainty" that the defendant was "*necessarily*" convicted of an offense that meets its surviving definition for a crime of violence. *Shepard*, 544 U.S .at 21. The "plausibility or even likelihood," that the defendant was convicted of a qualifying crime of violence is not enough. *United States v. Clay*, 627 F.3d 959, 967 (4th Cir. 2010). This bar is purposefully set high to protect against the kind of "evidentiary inquiries into the factual basis for the conviction" that the categorical approach eschews. *Shepard*, 544 U.S. at 21, 22; *Fuertes*, 805 F.3d at 498.

19

Accordingly, when it cannot be conclusively determined that the defendant was convicted of an offense that categorically qualifies as a "crime of violence," courts should assume that he was convicted of the "least serious" conduct criminalized by the underlying statute. *See United States v. Chapman*, 666 F.3d 220, 228 (4th Cir. 2012) (looking to the "the least serious of the statutory conduct" only to determine which crime a defendant pleaded guilty to); *see also United States v. Vann*, 660 F.3d 771, 774 (4th Cir. 2011) (*en banc*) ("[I]n trials by jury, it has been established that a defendant convicted under a conjunctively charged indictment cannot be sentenced–in the absence of a special verdict form identifying the factual bases for conviction."); *Ortiz v. Lynch*, 796 F.3d 932, 935 (8th Cir. 2015) (alterations in original) ("[W]e must presume [Ortiz's] conviction rested upon [nothing] more than the least of th[e] acts criminalized." (quoting *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1680 (2013))).

Moreover, in cases such as Mr. Tipton's, in which multiple potential predicates are put before the jury, a § 924(c) conviction cannot be sustained if even *one* of the possible predicates is not categorically a crime of violence under its force clause and the *Shepard* documents do not conclusively establish the basis of the conviction. Thus, in *United States v. McCall*, this Court vacated a § 924(c) conviction post-*Davis* because the jury *could* have based its § 924(c) verdict on the offense that did not constitute a crime of violence. 2019 WL 4675762, at *6-7

20

(E.D. Va. Sept. 25, 2019).  Likewise, in *United States v. Berry*, the court vacated a

§ 924(c) conviction post-*Davis* because "there [wa]s no means of establishing

whether the conviction was for attempt–which could qualify as a crime of

violence–as opposed to conspiracy–which *does not* qualify as a crime of violence."

2020 WL 591569, at *3 (W. D. Va. Feb. 6, 2020) (citation omitted).  In *United*

*States v. Lettiere*, the court vacated a § 924(c) conviction because the *Shepard*

documents "arguably did not establish that he committed a crime of violence as

defined by § 924(c)(3)(A)."  2018 WL 3429927, at *4 (D. Mont. July 16, 2018).

And, in *In re Gomez*, the Eleventh Circuit recognized that an ambiguous verdict

necessarily undermines a § 924(c) conviction based on multiple offenses:

> [W]e can't know what, if anything, the jury found with regard to
> Gomez's connection to a gun and these crimes. That is because the
> jurors had multiple crimes to consider in a single count, so they could
> have convicted Gomez of the § 924(c) offense without reaching
> unanimous agreement on during which crime it was that Gomez
> possessed the firearm.

830 F.3d 1225, 1227 (11th Cir. 2016).

In Mr. Tipton's case, the *Shepard* documents do not establish with

"certainty" which potential predicates support the jury's ultimate § 924(c)

determinations.  The superseding indictment pointed to multiple possible predicate

offenses under 18 U.S.C. § 1959(a), 21 U.S.C. §§ 846, and 848(e)(1)(A).  *See*

Exhibit 1 at 15, 18.  The jury instructions, moreover, referred only to the general

terms used in the statute itself, stating that "[i]t is charged in the indictment that . . .

21

[the defendants] used a firearm during and in relationship – or in relation to the commission of a crime of violence or a drug-trafficking crime." Tr. 3221. In instructing the jury as to the burden of proof for Mr. Tipton's § 924(c) counts, this Court stated only that "the government must prove the following two essential elements beyond a reasonable doubt: one, the defendant committed *the crime as charged in the indictment*; and two, during and in relation to the commission of *that* crime, the defendant knowingly used or carried a firearm." Tr. 3222 (emphasis added). Rather than identify any specific "crime charged in the indictment," however, this Court then merely listed "[t]he offenses alleged in Counts . . . Eight, Ten, Eleven, Thirteen, Fourteen, Sixteen, Seventeen, Eighteen, Nineteen, Twenty-one, Twenty-two, Twenty-three, Twenty-four, Twenty-five, Twenty-seven, Twenty-eight, Twenty-nine, Thirty" as "crimes of violence or drug trafficking crimes." Tr. 3223.

For its part, the portion of special verdict form that addresses the § 924(c) counts refers only to "killing," which matches the language used to describe both the § 1959(a) and § 848(e) offenses on the verdict form. As set forth below, however, neither § 1959(a) nor § 848(e) qualifies as a categorical "crime of violence" under *Davis*.

22

Accordingly, under the modified categorical approach, Mr. Tipton's § 924(c) convictions are invalid, and cannot be sustained, because they were based on one or more crimes that do not qualify as a "crime of violence" after *Davis*.

**B.      Section 1959(a) is Not Categorically a "Crime of Violence" and Thus Cannot Support a § 924(c) Conviction.**

While § 1959 was identified as a possible underlying crime for each of Mr. Tipton's § 924(c) convictions, its statutory language sets forth multiple crimes that are punishable when done "as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value from an enterprise engaged in racketeering activity, or for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity." These crimes include (1) murder, (2) kidnapping, (3) maiming, (4) assault with a dangerous weapon, (5) assault resulting in serious bodily injury, (6) a threat to commit a crime of violence, (7) attempt to commit the foregoing, or (8) conspiracy to commit the foregoing. 18 U.S.C. § 1959(a). In Mr. Tipton's case, the jury instructions and other *Shepard* documents identify as many as *four* types of § 1959 conduct—each of which categorically fails to qualify as a § 924(c) "crime of violence" following *Davis*. As even one invalid predicate undermines Mr. Tipton's § 924(c) convictions under the modified categorical approach, the resulting uncertainty leaves those convictions untenable.

23

1.       *The jury was empowered to base Mr. Tipton's § 924(c) convictions on § 1959 conspiracy, which is not a categorical "crime of violence," and it may have done so.*

As the en banc Fourth Circuit made clear in *Simms*, conspiracy does not categorically qualify as a "crime of violence" and cannot support a § 924(c) conviction. *Simms*, 914 F.3d at 233-34. "[T]o convict a defendant of [a conspiracy] offense, the Government must prove only that the defendant agreed with another to commit actions that, if realized, would violate the [statute at issue]. Such an agreement does not invariably require the actual, attempted, or threatened use of physical force." *Id.* The instructions given by Mr. Tipton's trial court underscore this point, as they informed his jury that the only two elements needed to convict a defendant of conspiracy were "that two or more persons in some way or manner, positively or tacitly, came to a mutual understanding to try to accomplish a common and unlawful plan as charged in the indictment . . . [and] that the defendant knowingly and willfully became a member of such a conspiracy." Tr. 3201. Elements of such vagueness and breadth would allow a defendant to be found guilty of conspiracy for an incredibly wide spectrum of conduct *and* culpability. It is accordingly impossible to discern precisely what degree of responsibility the jury ultimately assigned to Mr. Tipton—an uncertainty that undermines the reliability of his sentences to a degree that the Constitution cannot abide.

24

As noted above, 18 U.S.C. § 1959 includes conspiracy to commit any of the multiple crimes listed in the statute. In Mr. Tipton's case, this Court also specifically instructed the jury that it could base its finding of guilt on the crime charged *or* on "*conspir[acy]* to commit the crime charged in the particular count under consideration." Tr. 3220. It is therefore impossible to tell whether the jury found Mr. Tipton guilty of § 924(c) based upon a crime itself or the conspiracy to commit it. However, this Court must assume that the jury followed its instructions, which unequivocally stated that the § 924(c) conviction could be predicated on either. *United States v. Runyon*, 707 F.3d 475, 497 (4th Cir. 2013) (quoting *Richardson v. Marsh*, 481 U.S. 200, 206 (1987) ("Our analysis is governed, first and foremost, by the 'almost invariable assumption of the law that jurors follow their instructions.'"); *see also United States v. Hager*, 721 F.3d 167, 189 (4th Cir. 2013) ("Without any evidence to the contrary, we must assume that the jury followed the instructions given to it by the court."). Thus, in *McCall*, this Court vacated the defendant's § 924(c) conviction because conspiracy could not qualify as a § 924(c) predicate and the "liability in [the § 924(c) count] could have been based on committing assault with a dangerous weapon by either unlawful or malicious wounding or brandishing *or conspiring* to commit those offenses." 2019 WL 4675762, at *7 (emphasis added). The same is true here. Because conspiracy

25

cannot qualify as a "crime of violence," all of Mr. Tipton's § 924(c) convictions are invalid.

> 2.  *After Davis, Mr. Tipton's § 924(c) convictions can no longer rest on § 1959 murder offenses.*

Even if conspiracy had not been included as an underlying offense, Mr. Tipton's § 1959 counts would not stand up to the categorical, elements-based approach now required for § 924(c) convictions after *Davis*. In the Fourth Circuit, a "crime of violence" requires intent. *United States v. Townsend,* 886 F.3d 441, 444–45 (4th Cir. 2018) ("'Use' of force means to act with a *mens rea* more culpable than negligence or recklessness."); *United States v. McNeal*, 818 F.3d 141, 154-55 (4th Cir. 2016) ("Although *Leocal* reserved the question of whether a reckless application of force could qualify as a 'use' of force, we answered that question two years later by ruling that recklessness was not enough."); *see also, e.g.*, *United States v. Allred*, 942 F.3d 641, 652 (4th Cir. 2019) ("[A]n offense will not have as an element the 'use' of force sufficient to qualify as a violent felony if it does not have the requisite level of *mens rea*."); *United States v. Middleton*, 883 F.3d 485, 497 (4th Cir. 2018) ("The difference in mental states distinguishes the reckless causation of death . . . that cannot constitute a "use ... of physical force," from the intentional causation of injury . . . that constituted "use of ... physical force.") (Judge Floyd, writing for the plurality); *Popal v. Gonzales*, 416 F.3d 249, 254 (3d Cir. 2005) (holding that a court may not assume a *mens rea* greater than

26

"the minimum culpability required for a conviction under" the predicate statute and finding that, because the predicate statute "requires a *mens rea* of recklessness, rather than intent, it is not a crime of violence under § 16(a)").[10]  Accordingly, a crime that could be committed without intent sweeps more broadly than § 924(c) allows and cannot qualify as a "crime of violence" under the elements clause. *Garcia*, 455 F.3d at 468 ("[The predicate state statute] does not contain an element that there be the intentional employment of physical force against a person or thing, and thus is beyond the scope of 18 U.S.C. § 16(a)").

In Mr. Tipton's case, § 1959(a) fails under this standard. The record is devoid of any reference to a specific "murder" statute to which the categorical, elements-based approach required by *Davis* could be applied.  Indeed, neither the indictment, nor the jury instructions, nor the jury's special verdict form references any specific "murder" charge or statute.  As an elements-based analysis of a murder statute can only occur where there is a statute to analyze, the lack of any reference to any specific murder statute makes it *impossible* to determine whether Mr. Tipton § 1959 convictions established the necessary *mens rea* to satisfy the intent and elements required for a conviction under § 924(c)'s remaining force

---

[10]The question of whether a crime that can be committed recklessly can qualify as a categorical "crime of violence" is currently pending before the Supreme Court.  *See Borden v. United States*, No. 19-5410 (*cert. granted* Mar. 2, 2020).

27

clause. As a result, it cannot be shown that he was convicted of a crime that is categorically a "crime of violence."

But even if Mr. Tipton's § 1959 conviction *had* rested on the federal murder statute, 18 U.S.C. § 1111, it would not categorically qualify as a "crime of violence," as that statute does not require intent. The elements of § 1111 are (1) "unlawful killing of a human being" and (2) "malice aforethought," which does not require the higher degree of *mens rea* demanded by § 924(c). Instead, the "malice aforethought" element of § 1111 requires only evidence of conduct that is "reckless and wanton and a gross deviation from a reasonable standard of care, of such a nature that a jury is warranted in inferring that defendant was aware of a serious risk of death or serious bodily harm." *United States v. Fleming*, 739 F.2d 945, 947–48 (4th Cir. 1984); *United States v. Begay*, 934 F.3d 1033, 1040 (9th Cir. 2019) ("[S]econd-degree murder may be committed recklessly—with a depraved heart mental state—and need not be committed willfully or intentionally."); *Simpkins v. State,* 596 A.2d 655, 657 (Md. Ct. Spec. App. 1991) (holding second-degree murder requires only "the intent to do an act under circumstances manifesting extreme indifference to the value of human life (depraved heart)" or "the intent to commit a dangerous felony."); Dep't of Justice, Violent Crimes in Aid of Racketeering: A Manual for Federal Prosecutors § 9-110.000 (2006) ("The government need not show a subjective intent to kill" to establish malice

28

aforethought.).  Accordingly, because § 1111 encompasses second-degree murders that do not require the government to prove an intentional killing, murder under § 1111 is not categorically a "crime of violence."  *Begay*, 934 F.3d at 1040 ("Because second-degree murder [as defined in § 1111] can be committed recklessly, rather than intentionally, it does not categorically constitute a crime of violence.").

While this Court has ruled that some second-degree murder statutes can categorically qualify as "crimes of violence," those rulings addressed specified statutes, which made them available for the required elements-based analysis, and rested upon the conclusion that the statute required intent.  In *In re Irby*, for example, the court examined a defendant's convictions for retaliatory murder under 18 U.S.C. §§ 1513 and 1111.  858 F.3d 231, 234 (4th Cir. 2017).[11]  As a specific murder statute could be identified for analysis, the court was able to determine that each of the necessary elements to constitute a "crime of violence"—including the *mens rea* element—were present.  *In re Irby*, 858 F.3d at 234 (Section 1513 "makes it an offense to intentionally kill another person in retaliation" (emphasis added)).  Similarly, in *United States v. Parrish*, the

---

[11]The defendant in *Irby* was also convicted of 18 U.S.C. § 1111, which the court described as *setting forth the punishment for a violation of § 1513*.  *In re Irby*, 858 F.3d 231, 234 (4th Cir. 2017).

29

defendant's conviction for second-degree murder was pursuant to North Carolina law, which "is proved by intentional conduct." 767 Fed. Appx. 440, 442 (4th Cir. 2019) (quotation omitted). Yet such an analysis is impossible here because nothing in the record references a murder statute that categorically qualifies as a crime of violence. Accordingly, this Court has no way to identify and analyze the elements of the "murder" relied upon by the jury in reaching its verdict. For that reason, cases like *Irby* do not control—and, indeed, are irrelevant to—this court's analysis of Mr. Tipton's § 924(c) convictions.

Further, homicide under § 1959(a)(1) also encompasses *felony* murders—including those in which the underlying *homicide* is committed by another person, while the underlying felony does not involve the use or threatened use of violent physical force. For example, burglary lacks any element requiring the intentional use of force but may serve as a predicate felony for a felony murder under both state and federal law. *See, e.g.,* 18 U.S.C. § 1111(a) (defining murder to include murder "committed in the perpetration of, or attempt to perpetrate, any … burglary"). Because intent is not required, § 1959(a)(1) sweeps more broadly than §924(c) and cannot categorically qualify as a crime of violence.

Finally, both §§ 1959(a)(1) and 1959(a)(2) categorically fail to qualify as "crime[s] of violence" because, like a wide range of other offenses under state and federal law, its plain language criminalizes acts of *omission* that require *no*

30

physical force, much less the "violent force" required by § 924(c)'s force clause. *See, e.g., United States v. Gomez,* 690 F.3d 194, 201 (4th Cir. 2012) (holding that statute categorically fails to qualify as a "crime of violence" under element clause because "a defendant may be found guilty" under the statute "by committing an affirmative act or by neglecting to act, neither of which necessarily requires the use of physical force"); *United States v. Scott*, 954 F.3d 74 (2d Cir. 2020) (holding "that New York first-degree manslaughter is not a crime of violence under the force clause of ACCA because it can be committed by inaction"). A homicide conviction under § 1959(a) could result from, e.g., "the deliberate failure to provide food or medical care," or leaving someone locked in a dangerous place. *See, e.g.*, *Torres-Miguel,* 701 F.3d at 169-70 (citing examples); *United States v. Mayo,* 901 F.3d 218, 227 (3d Cir. 2018) (holding that offense did not category qualify as a "crime of violence" under elements clause because convictions under it "have been upheld not because a defendant used physical force against the victim, but because serious bodily injury occurred, as with the deliberate failure to provide food or medical care"). *But see United States v. Rumley*, 952 F.3d 538 (4th Cir. 2020) (explaining—though in dicta—"that the intentional infliction of bodily harm requires a use of physical force, *even if* the means used are indirect"). And, under the categorical approach, that fact is disqualifying.

31

3.    *Maiming is not categorically a crime of violence and thus cannot support Mr. Tipton's 924(c) convictions.*

An analysis of Mr. Tipton's "maiming" charges leads to the same conclusion.  The indictment fails to identify a particular statute defining maiming, and the jury instructions say even less about maiming than they do about murder.  In fact, they reference the counts by number only and do not even describe them.  As a result, it is *impossible* to determine whether Mr. Tipton was convicted of maimings that would categorically qualify as "crimes of violence."

Additionally, maiming under § 1959(a)(2) suffers from the same defects discussed above as to murder: it criminalizes acts of omission that require no physical force whatsoever.  Maiming is an assault, which itself does not require actual violent physical force.  *See United States v. Royal,* 731 F.3d 333, 341 (4th Cir. 2013).  Moreover, the intent element of maiming does not convert assault into a "violent felony" because it can be accomplished merely by *causing* injury rather than the use of strong physical force.  *See Torres-Miguel,* 701 F.3d at 168 (holding that the threat of *any physical injury,* even "serious bodily injury or *death,"* does not necessarily require the use of physical force—let alone "violent force").

4.    *Mr. Tipton's 924(c) convictions cannot rest on assault resulting in serious bodily injury, which is not categorically a crime of violence.*

Count 26 charged Mr. Tipton with "assault resulting in serious bodily injury."  Verdict, 22a.  Because no intent is required for such a conviction, this is

32

not categorically a crime of violence and thus does not support a conviction under § 924(c)(1)(A).  *See United States v. Knife*, 592 F.2d 472, 482 (8th Cir. 1979) ("Section 113(f) requires only that the assault shall have resulted in serious bodily harm; the assault need not have been committed with a dangerous weapon, or with intent to do bodily harm.").

### C.    Mr. Tipton's § 848(e) Convictions Also Fail to Qualify Categorically as "Crimes of Violence" under § 924(c).

Section 848(e), which was identified as a possible underlying crime for both of Mr. Tipton's § 924(c) counts, authorizes a conviction for any person who, *inter alia*, "counsels, commands, induces, procures, or causes the intentional killing of an individual" in furtherance of a CCE.  As such a violation of § 848(e) would not categorically qualify as a "crime of violence," it cannot serve as the predicate for Mr. Tipton's § 924(c) convictions.  Neither counseling, commanding, inducing, procuring, nor causing a killing necessitate the use of force; like conspiracy, they require only interaction with others regarding the underlying actions.  *Simms*, 914 F.3d at 233-34 (such third-party interactions do "not invariably require the actual, attempted, or threatened use of physical force").  Because the jury could have convicted Mr. Tipton under 848(e) for carrying a firearm while merely counseling his co-defendant, the court must assume that his § 848(e) conviction rested on this "least serious of the disjunctive statutory conduct."  *United States v. Chapman*, 666 F.3d 220, 228 (4th Cir. 2012).  As discussed, this variability in culpability further

33

questions the soundness of his sentences of death, now that they are no longer buttressed by his unconstitutional Section 924(c) convictions.

The modified categorical approach does not support a different conclusion, as the available *Shepard* documents—the indictment, the jury instructions, and the verdict form—only underscore the ambiguity of the jury's finding. The indictment alleged that Mr. Tipton both "killed" *and* "counseled commanded, induced, procured, and caused" the killing. The jury instructions allow for a finding of guilt if Mr. Tipton "*either* intentionally killed, *or* counseled, commanded, induced, procured, *or* caused" the killing. Tr. 3217 (emphasis added). The jury was never directed to pick one or the other, and the Court "must assume that the jury followed the instructions given to it by the court." *Hager*, 721 F.3d at 189. The special verdict form offers no clarity, simply referring to the "killing" without asking the jury to choose or identify the role it found Mr. Tipton had played.[12] Accordingly, Mr. Tipton's § 848(e) convictions cannot categorically qualify as a crime of violence within § 924(c)'s force clause.

---

[12]In order to be construed as consistent with the jury instructions, this reference must be considered short hand for both clauses of § 848(e). This Court must assume that the jury followed the jury instructions, which unequivocally instructed that the § 924(c) conviction could be predicated on any of the possible § 848(e) conduct listed. *United States v. Hager*, 721 F.3d 167, 189 (4th Cir. 2013).

Further, while § 848(e) offenses can also be categorized as drug-trafficking crimes, there is nothing in the record to indicate that it was treated as such by Mr. Tipton's jury, or that it was accordingly used as an alternative ground for his § 924(c) convictions.  Section 848(e) can be and is frequently relied upon as a predicate crime of violence under § 924(c).  *See United States v. Turner*, 198 F.3d 425, 432 (4th Cir. 1999) (concluding that § 848(e)(1)(A) is "a substantive crime of violence"); *United States v. NJB*, 104 F.3d 630, 635 (4th Cir. 1997) ("§ 848(e) clearly sets forth a separate substantive violent offense . . . .")  When instructing the jury, this Court did not identify certain counts as drug trafficking crimes, merely stating generally that "[t]he offenses alleged . . . are crimes of violence *or* drug trafficking crimes."  Tr. 3223.  Accordingly, the *Shepard* documents fall far short of establishing with "certainty" how § 848(e) was considered by the jury, and cannot redeem its inability to qualify categorically as a crime of violence under § 924(c).

III.   **BECAUSE BOTH OF MR. TIPTON'S § 924(C) CONVICTIONS ARE INVALID AFTER *DAVIS*, MR. TIPTON IS ENTITLED TO BE RESENTENCED.**

In light of the foregoing analysis, Mr. Tipton's five § 924(c) criminal charges and two convictions are unconstitutional; they should never have been put to his jury.  As the Supreme Court recognized in *United States v. Tucker*, "the real question" for Mr. Tipton is "whether the sentence" for those of his convictions that remain in place "might have been different if the [jury] had known that at least two

35

of [Mr. Tipton's] previous convictions had been unconstitutionally obtained."  404

U.S. 443, 448 (1972).  In keeping with *Tucker,* courts have held that a defendant

must be resentenced on any valid convictions "unless it can be ascertained from the

record that a [jury's] sentence on a valid conviction was not affected" by invalid

convictions.  *Bourgeois v. Whitley,* 784 F.2d 718, 721 (5th Cir. 1986); *see also*

*Jerkins v. United States,* 530 F.2d 1203, 1204 (5th Cir. 1976) (same); *James v.*

*United States,* 476 F.2d 936 (8th Cir. 1973) (same).  Given the fact that this same

jury sentenced Mr. Tipton to death, that ascertaining must be guided by "[t]he

fundamental respect for humanity underlying the Eighth Amendment's prohibition

against cruel and unusual punishment gives rise to *a special need for reliability* in

the determination that death is the appropriate punishment in any capital case."

*Johnson v. Mississippi,* 486 U.S. 578, 584 (1988) (citation omitted) (emphasis

added).  Indeed, because "[t]he decision to exercise the power of the State to

execute a defendant is unlike any other decision citizens and public officials are

called upon to make," the Supreme Court has made clear that "[t]he *possibility* that

[a defendant's] jury conducted its task improperly certainly is great enough to

require resentencing."  *Mills v. Maryland,* 486 U.S. 367, 383–84 (1988) (emphasis

added).

     And there is more than a possibility here.  The record shows that the

government's penalty phase case relied almost exclusively on evidence from the

36

guilt-innocence phase of the trial.  The government "did not put on a great deal of evidence" during the penalty phase.  T. 3883–3884, 3891, 3392–3893.  Rather, it urged the jury to rely upon its findings "in your guilt phase verdict."  T. 3893.  Thus, the jury's decision to impose the death penalty was intertwined with the invalid § 924(c) convictions.  Given that, it is not merely possible, but likely, that Mr. Tipton's two unconstitutional § 924(c) convictions profoundly affected the jury's decision to impose a sentence of death.

In light of the Eighth Amendment's requirement of reliability in capital sentencing, the "possibility" that the jury improperly relied upon the unconstitutional § 924(c) convictions in sentencing him to death requires that Mr. Tipton be resentenced on the remaining counts.

## CONCLUSION AND PRAYER FOR RELIEF

For all the reasons set forth above, Mr. Tipton respectfully asks this Court to vacate his convictions and sentences on Counts 20 and 26, the invalid charges under 18 U.S.C. § 924(c).

Mr. Tipton further requests the following relief:

a) That this Court vacate Mr. Tipton's sentences on all of the remaining counts and order a new sentencing proceeding on those counts.

b) That this Court grant him leave to amend this motion, including by submitting a supplemental memorandum of law to support it.

37

c) That this Court schedule a status conference on this motion at the Court's earliest convenience, and order that Mr. Tipton be personally present at such conference.

d) Any other relief that may be necessary to correct Mr. Tipton's invalid conviction and sentence and put him back in the position he would have been in were it not for having been convicted of non-existent crimes.

Respectfully submitted on this, the 19th day of February, 2022.


/s/Frederick R. Gerson
Frederick R. Gerson
VSB #39968
Bank Of America Center
1111 East Main Street, 16th Floor
Richmond, VA 23219
fgerson@dagglaw.com

Stephen Northup
VSB #16547
Troutman Sanders LLP
P.O. Box 1122
Richmond, Virginia 23218-1122
(804) 697-1240
(fax) (804) 698-5120
steve.northup@troutmansanders.com

*Jeffrey Lyn Ertel
Ga. Bar No. 249966
Federal Defender Program, Inc.
101 Marietta Street, Suite 1500
Atlanta, Georgia 30303
404-688-7530
(fax) 404-688-0768
Jeff_Ertel@fd.org

*Gerald W. King, Jr.
Chief, Fourth Circuit Capital Habeas
Unit
Federal Public Defender
Western District of North Carolina
129 West Trade Street, Suite 300
Charlotte, NC 28202
Tel: (704) 374-0720
Direct: (704) 688-6946
Gerald_King@fd.org

*Applications for admission *pro hac vice* pending.


Counsel for Richard Tipton, III.

38

Exhibit 1

*United States v. Tipton*, EDVA, No. 3:92Cr68

Superseding Indictment.



IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

JUL 2 0 1992

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) |
| | ) |
| RICHARD TIPTON aka Whittey | ) |
| (Counts 1-7, 11-30, 32-33) | ) |
| | ) |
| CORY JOHNSON aka "O" aka "CO" | ) |
| (Counts 1, 2, 8-32) | ) |
| | ) |
| JAMES H. ROANE, JR., aka "J.R." | ) |
| (Counts 1, 2, 5-16, 32) | ) |
| | ) |
| VERNON LANCE THOMAS | ) |
| aka Anthony Mack aka "V" | ) |
| (Counts 1, 2, 11-16, 24-30, 32) | ) |
| | ) |
| JERRY R. GAITERS | ) |
| (Counts 1, 17-23, 32) | ) |
| | ) |
| STERLING HARDY | ) |
| (Counts 1, 14-16, 32) | ) |
| | ) |
| SANDRA REAVIS | ) |
| (Count 1) | ) |

CRIMINAL NO. 3:92CR68

21 USC § 846
Conspiracy
(Count 1)

21 USC § 848
Continuing Criminal Enterprise
(Count 2)

21 USC § 848(e)(1)(A) & 18 USC § 2
Murder in Furtherance of CCE
(Counts 3,5,8,11,17,18,19,24,25)

18 USC § 924(c)
Use of Firearm in Relation to Crime of
Violence or Drug Trafficking Crime
(Counts 6,9,12,15,20,26)

18 USC §§ 1959 & 2
Violent Crimes in Aid of Racketeering
(Counts 4,7,10,13,14,16,21-23,27-30)

21 USC § 841(a)(1)
Distribution of Crack
(Count 31)

21 USC § 841(a)(1) & 18 USC § 2
Possession w/Intent to Distribute Crack
(Counts 32-33)

00085

## SECOND SUPERSEDING INDICTMENT

JULY 1992 TERM - At Richmond

### COUNT ONE

THE GRAND JURY CHARGES that from on or about January, 1989, the exact date being unknown to the grand jury, and continuously thereafter up to and including the filing of this indictment, in the Eastern District of Virginia, and elsewhere, the defendants, RICHARD TIPTON, aka Whittey, CORY JOHNSON, aka "O," aka "CO", VERNON LANCE THOMAS, aka Anthony Mack, aka "V", JAMES H. ROANE, JR., aka "J.R.", JERRY GAITERS, STERLING HARDY, and SANDRA REAVIS, did unlawfully, knowingly, and intentionally combine, conspire, confederate, and agree with each other and with other persons, both known and unknown to the grand jury to commit the following offenses against the United States of America:

1. To knowingly, intentionally, and unlawfully possess with the intent to distribute, and to distribute, a Schedule II narcotic controlled substance, that is, at least fifty (50) grams or more of a mixture or substance described in Title 21, United States Code, Section 841(b)(1)(A)(ii), which contains cocaine base, in violation of Title 21, United States Code, Section 841(a)(1).

### WAYS, MANNERS, AND MEANS OF THE CONSPIRACY

The ways, manners, and means by which the conspirators carried out the purpose of the conspiracy includes, but are not limited to, the following:

1. It was part of the conspiracy that defendants and co-conspirators would cause cocaine to be purchased in New York City, and elsewhere, and transported to Richmond, Virginia, where the cocaine was to be distributed.

2

2.    It was further part of the conspiracy that once the defendants and co-defendants would receive cocaine in Richmond, Virginia, they would cook the cocaine in such a way to make it cocaine base ("crack" or "cook-em-up"), which cocaine was intended to be distributed on the streets of Richmond, Virginia.

3.    It was further part of the conspiracy that the defendants and co-defendants would induce other individuals to work for them selling the crack cocaine on the streets of Richmond, Virginia.

4.    It was further part of the conspiracy to engage in a pattern of violent activity, including murder, assaults, and threats of violence to further the goals of the conspiracy.  To that end, members of the conspiracy bought, possessed, and transferred firearms, which firearms were used in their violent activities.

## OVERT ACTS

In furtherance of this conspiracy, and to bring about the objects and goals of the conspiracy, the defendants, co-conspirators, and unindicted co-conspirators committed overt acts in the Eastern District of Virginia and elsewhere, including, but not limited to, the following:

1.    In or about December, 1991, defendants RICHARD TIPTON, aka Whittey, and CORY JOHNSON, aka "O," aka "CO", assaulted an individual known to the grand jury over a cocaine debt.

2.    On or about January 5, 1992, RICHARD TIPTON, aka Whittey, murdered Douglas A. Talley.

3

00087

3.      On or about January 13, 1992, RICHARD TIPTON, aka Whittey, and JAMES H. ROANE, JR., aka "J.R." murdered Douglas Moody.

4.      On or about January 13, 1992, an individual known to the grand jury, disposed of the knife used by JAMES ROANE, JR., aka "J.R.", to kill Doug Moody.

5.      On or about January 14, 1992, members of the conspiracy caused an individual known to the grand jury to purchase one Glock handgun and two Tech 9mm handguns from Southern Gun World in Richmond, Virginia.

6.      On or about January 14, 1992, JAMES ROANE, JR., aka "J.R." and CORY JOHNSON, aka "O;" aka "CO", murdered Peyton Maurice Johnson.

7.      On or about January 15, 1992, CORY JOHNSON, aka "O," aka "CO", distributed a certain amount of cocaine base ("crack" or "cook em up") in Richmond, Virginia.

8.      On or about January 29, 1992, RICHARD TIPTON aka Whittey, JAMES ROANE, JR., aka "J.R.", and CORY JOHNSON, aka "O," aka "CO", VERNON LANCE THOMAS, aka Anthony Mack, aka "V", murdered Louis J. Johnson, Jr., in Richmond, Virginia.

9.      On or about January 31, 1992, CORY JOHNSON, aka "O," aka "CO", assaulted an individual known to the grand jury over a drug debt, and solicited that individual to kill Dorothy Armstrong.

10.      On or about February 1, 1992, JAMES ROANE, JR., aka "J.R.", RICHARD TIPTON aka Whittey, CORY JOHNSON, aka "O," aka "CO", VERNON

4

00088

LANCE THOMAS, aka Anthony Mack, aka "V",and STERLING HARDY murdered Torrick Brown and shot Martha McCoy in Richmond, Virginia.

11. On or about February 1, 1992, RICHARD TIPTON aka Whittey, CORY JOHNSON, aka "O," aka "CO", and JERRY GAITERS murdered Bobby Long, Anthony Carter, and Dorothy Mae Armstrong aka Mousey, in Richmond, Virginia.

12. On or about February 2, 1992, defendants RICHARD TIPTON aka Whittey, CORY JOHNSON, aka "O," aka "CO", STERLING HARDY, VERNON LANCE THOMAS, aka Anthony Mack, aka "V", JAMES H. ROANE, JR., aka "J.R.", and JERRY GAITERS possessed with the intent to distribute crack cocaine.

13. On or about February 13, 1992, STERLING HARDY solicited the murders of certain individuals.

14. On or about February 19, 1992, RICHARD TIPTON, aka Whittey, CORY JOHNSON, aka "O," aka "CO", and VERNON LANCE THOMAS, aka Anthony Mack, aka "V", murdered Curtis Thorne, Linwood Chiles, and shot, seriously wounding, Gwendolyn Green and Priscilla Green, in Richmond, Virginia.

15. On or about April 10, 1992, RICHARD TIPTON, aka Whittey, possessed with the intent to distribute crack cocaine in Richmond, Virginia.

(In violation of Title 21, United States Code, Section 846).

## COUNT TWO

THE GRAND JURY FURTHER CHARGES that from at least January, 1991, and continuously thereafter up to and including the date of the filing of this indictment, in the Eastern District of Virginia, and elsewhere, the defendants RICHARD TIPTON,

5

00089

aka Whittey, CORY JOHNSON, aka "O", aka "CO," JAMES H. ROANE, JR., aka "JR,"
and VERNON LANCE THOMAS, aka Anthony Mack, aka "V", unlawfully, intentionally,
and knowingly, did engage in a Continuing Criminal Enterprise, that is, they did violate
Title 21, United States Code, Section 841 and 846, including, but not limited to, those
violations alleged in the instant indictment, which are realleged and incorporated by
reference herein, and did commit other violations of said statutes, which violations were
part of a continuing series of violations of said statutes undertaken by RICHARD
TIPTON, aka Whittey, CORY JOHNSON, aka "O", aka "CO," JAMES H. ROANE, JR.,
aka "JR," and VERNON LANCE THOMAS, aka Anthony Mack, aka "V", in concert
with at least five other persons with respect to whom they occupied positions of
organizer, supervisor, and manager, and from which continuing series of violations the
defendant, RICHARD TIPTON aka Whittey, CORY JOHNSON, aka "O", aka "CO,"
JAMES H. ROANE, JR., aka "JR," and VERNON LANCE THOMAS, aka Anthony
Mack, aka "V", obtained substantial income and resources.

(In violation of Title 21, United States Code, Section 848.)

## COUNT THREE

THE GRAND JURY FURTHER CHARGES that on or about January 5, 1992,
at Richmond, Virginia, in the Eastern District of Virginia, the defendant RICHARD
TIPTON aka Whittey, while engaged in and working in furtherance of a Continuing
Criminal Enterprise, 21 USC § 848(a), knowingly, intentionally, and unlawfully killed and
counseled, commanded, induced, procured, and caused the intentional killing of Douglas
A. Talley, and such killing resulted.

6

00090

(In violation of Title 21, United States Code, Section 848(e)(1)(A) and Title 18, United

States Code, Section 2.).

## COUNT FOUR

THE GRAND JURY FURTHER CHARGES that on or about January 5, 1992,

at Richmond, Virginia, in the Eastern District of Virginia, the defendant, RICHARD

TIPTON aka Whittey, did knowingly, intentionally, and unlawfully cause the murder of

Douglas Talley, as consideration for the receipt of, and as consideration for a promise

and agreement to pay, something of pecuniary value from an enterprise engaged in

racketeering activity, and for the purpose of gaining entrance to and maintaining and

increasing position in an enterprise engaged in racketeering activity, said racketeering

activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

## COUNT FIVE

THE GRAND JURY FURTHER CHARGES that on or about January 13, 1992,

at Richmond, Virginia, in the Eastern District of Virginia, the defendants RICHARD

TIPTON aka Whittey, and JAMES H. ROANE, JR., aka "J.R.", while engaged in and

working in furtherance of a Continuing Criminal Enterprise, 21 USC § 848(a), knowingly,

intentionally, and unlawfully killed and counseled, commanded, induced, procured, and

caused the intentional killing of Douglas Moody, and such killing resulted.

(In violation of Title 21, United States Code, Section 848(e)(1)(A) and Title 18, United

States Code, Section 2.).

7

00091

## COUNT SIX

THE GRAND JURY FURTHER CHARGES that on or about January 13, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants RICHARD TIPTON, aka Whittey, and JAMES H. ROANE, JR., aka "J.R.", did knowingly, willfully, and unlawfully use a firearm, during and in relation to a crime of violence or a drug trafficking crime, which is a felony prosecutable in a court of the United States, that is, a violation of Title 21, United States Code, Section 846 and 848, and Title 18, United States Code, Section 1959, as set forth in Counts One, Five and Seven of this Indictment. (In violation of Title 18, United States Code, Sections 924(c) and 2.)

## COUNT SEVEN

THE GRAND JURY FURTHER CHARGES that on or about January 13, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON, aka Whittey, and JAMES H. ROANE, JR., aka "J.R.", did knowingly, intentionally, and unlawfully cause the murder of Douglas Moody, as consideration for the receipt of, and as consideration for a promise and agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining and increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

8

00092

## COUNT EIGHT

THE GRAND JURY FURTHER CHARGES that on or about January 14, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants JAMES H. ROANE, JR., aka "J.R.", CORY JOHNSON, aka "O," aka "CO", and while engaged in and working in furtherance of a Continuing Criminal Enterprise, 21 USC § 848(a), knowingly, intentionally, and unlawfully killed and counseled, commanded, induced, procured, and caused the intentional killing of Peyton Maurice Johnson, and such killing resulted.

(In violation of Title 21, United States Code, Section 848(e)(1)(A) and Title 18, United States Code, Section 2.).

## COUNT NINE

THE GRAND JURY FURTHER CHARGES that on or about January 14, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants JAMES H. ROANE, JR., aka "J.R.", and CORY JOHNSON, aka "O," aka "CO", did knowingly, willfully, and unlawfully use a firearm, during and in relation to a crime of violence or a drug trafficking crime, which is a felony prosecutable in a court of the United States, that is a violation of Title 21, United States Code, Sections 846 and 848, and Title 18, United States Code, Section 1959, as set forth in Counts One, Eight and Ten of this Indictment.

(In violation of Title 18, United States Code, Sections 924(c) and 2.)

9

00093

## COUNT TEN

THE GRAND JURY FURTHER CHARGES that on or about January 14, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, JAMES H. ROANE, JR., aka "J.R." and CORY JOHNSON, aka "O," aka "CO", did knowingly, intentionally, and unlawfully cause the murder of Peyton Maurice Johnson, as consideration for the receipt of, and as consideration for a promise and agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining and increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

## COUNT ELEVEN

THE GRAND JURY FURTHER CHARGES that on or about January 29, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants RICHARD TIPTON aka Whittey, JAMES H. ROANE, JR., aka "J.R.", CORY JOHNSON, aka "O," aka "CO", and VERNON LANCE THOMAS, aka Anthony Mack, aka "V", while engaged in and working in furtherance of a Continuing Criminal Enterprise, 21 USC § 848(a), knowingly, intentionally, and unlawfully killed and counseled, commanded, induced, procured, and caused the intentional killing of Louis J. Johnson, Jr., and such killing resulted.

(In violation of Title 21, United States Code, Section 848(e)(1)(A) and Title 18, United States Code, Section 2.).

10

00094

## COUNT TWELVE

THE GRAND JURY FURTHER CHARGES that on or about January 29, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON aka Whittey, JAMES H. ROANE, JR., aka "J.R.", CORY JOHNSON, aka "O," aka "CO", and VERNON LANCE THOMAS, aka Anthony Mack, aka "V", did knowingly, willfully, and unlawfully use a firearm, during and in relation to a crime of violence or a drug trafficking crime, which is a felony prosecutable in a court of the United States, that is a violation of Title 21, United States Code, Sections 846 and 848, and Title 18, United States Code, Section 1959, as set forth in Counts One, Eleven and Thirteen of this Indictment.

(In violation of Title 18, United States Code, Sections 924(c) and 2.)

## COUNT THIRTEEN

THE GRAND JURY FURTHER CHARGES that on or about January 29, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON aka Whittey, JAMES H. ROANE, JR., aka "J.R.", CORY JOHNSON, aka "O," aka "CO", and VERNON LANCE THOMAS, aka Anthony Mack, aka "V", did knowingly, intentionally, and unlawfully cause the murder of Louis J. Johnson, Jr., as consideration for the receipt of, and as consideration for a promise and agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining and increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in

11

00095

narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

## COUNT FOURTEEN

THE GRAND JURY FURTHER CHARGES that on or about February 1, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON aka Whittey, JAMES H. ROANE, JR., aka "J.R.", CORY JOHNSON, aka "O," aka "CO", VERNON LANCE THOMAS, aka Anthony Mack, aka "V", and STERLING HARDY, did knowingly, intentionally, and unlawfully cause the murder of Torrick Brown, Jr., as consideration for the receipt of, and as consideration for a promise and agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining and increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

## COUNT FIFTEEN

THE GRAND JURY FURTHER CHARGES that on or about February 1, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON aka Whittey, JAMES H. ROANE, JR., aka "J.R.", CORY JOHNSON, aka "O," aka "CO", VERNON LANCE THOMAS, aka Anthony Mack, aka "V", and STERLING HARDY, did knowingly, willfully, and unlawfully use a firearm, during and in relation to a crime of violence or a drug trafficking crime, which is a felony prosecutable in a court

12

of the United States, that is a violation of Title 21, United States Code, Section 846, and Title 18, United States Code, Section 1959, as set forth in Counts One, Fourteen and Sixteen of this Indictment.

(In violation of Title 18, United States Code, Sections 924(c) and 2.)

## COUNT SIXTEEN

THE GRAND JURY FURTHER CHARGES that on or about February 1, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON aka Whittey, JAMES H. ROANE, JR., aka "J.R.", CORY JOHNSON, aka "O," aka "CO", VERNON LANCE THOMAS, aka Anthony Mack, aka "V", and STERLING HARDY, did knowingly, intentionally, and unlawfully commit assault resulting in serious bodily injury to Martha McCoy, as consideration for the receipt of, and as consideration for a promise and agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining and increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

## COUNT SEVENTEEN

THE GRAND JURY FURTHER CHARGES that on or about February 1, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants RICHARD TIPTON aka Whittey, CORY JOHNSON, aka "O," aka "CO", and JERRY GAITERS, while engaged in and working in furtherance of a Continuing Criminal Enterprise, 21

13

00097

USC § 848(a), knowingly, intentionally, and unlawfully killed and counseled, commanded, induced, procured, and caused the intentional killing of Bobby Long, and such killing resulted.

(In violation of Title 21, United States Code, Section 848(e)(1)(A) and Title 18, United States Code, Section 2.).

## COUNT EIGHTEEN

THE GRAND JURY FURTHER CHARGES that on or about February 1, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants RICHARD TIPTON aka Whittey, CORY JOHNSON, aka "O," aka "CO", and JERRY GAITERS, while engaged in and working in furtherance of a Continuing Criminal Enterprise, 21 USC § 848(a), knowingly, intentionally, and unlawfully killed and counseled, commanded, induced, procured, and caused the intentional killing of Anthony Carter, and such killing resulted.

(In violation of Title 21, United States Code, Section 848(e)(1)(A) and Title 18, United States Code, Section 2.).

## COUNT NINETEEN

THE GRAND JURY FURTHER CHARGES that on or about February 1, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants RICHARD TIPTON aka Whittey, CORY JOHNSON, aka "O," aka "CO", and JERRY GAITERS, while engaged in and working in furtherance of a Continuing Criminal Enterprise, 21 USC § 848(a), knowingly, intentionally, and unlawfully killed and counseled, commanded,

14

00098

induced, procured, and caused the intentional killing of Dorothy Mae Armstrong, and such killing resulted.

(In violation of Title 21, United States Code, Section 848(e)(1)(A) and Title 18, United States Code, Section 2.).

## COUNT TWENTY

THE GRAND JURY FURTHER CHARGES that on or about February 1, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON aka Whittey, CORY JOHNSON, aka "O," aka "CO", and JERRY GAITERS, did knowingly, willfully, and unlawfully use a firearm, during and in relation to a crime of violence or a drug trafficking crime, which is a felony prosecutable in a court of the United States, that is a violation of Title 21, United States Code, Sections 846 and 848, and Title 18, United States Code, Section 1959, as set forth in Counts One, Seventeen, Eighteen & Nineteen and Twenty-One through Twenty-Three of this Indictment.

(In violation of Title 18, United States Code, Sections 924(c) and 2.)

## COUNT TWENTY-ONE

THE GRAND JURY FURTHER CHARGES that on or about February 1, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON aka Whittey, CORY JOHNSON, aka "O," aka "CO", and JERRY GAITERS, did knowingly, intentionally, and unlawfully cause the murder of Bobby Long, as consideration for the receipt of, and as consideration for a promise and agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity,

15

00099

and for the purpose of gaining entrance to and maintaining and increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

## COUNT TWENTY-TWO

THE GRAND JURY FURTHER CHARGES that on or about February 1, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON aka Whittey, CORY JOHNSON, aka "O," aka "CO", and JERRY GAITERS, did knowingly, intentionally, and unlawfully cause the murder of Anthony Carter, as consideration for the receipt of, and as consideration for a promise and agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining and increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

## COUNT TWENTY-THREE

THE GRAND JURY FURTHER CHARGES that on or about February 1, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON aka Whittey, CORY JOHNSON, aka "O," aka "CO", and JERRY GAITERS, did knowingly, intentionally, and unlawfully cause the murder of Dorothy Mae Armstrong, as consideration for the receipt of, and as consideration for a promise and

16

00100

agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining and increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

## COUNT TWENTY-FOUR

THE GRAND JURY FURTHER CHARGES that on or about February 19, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants RICHARD TIPTON, aka Whittey, VERNON LANCE THOMAS, aka Anthony Mack, aka "V", and CORY JOHNSON, aka "O," aka "CO", while engaged in and working in furtherance of a Continuing Criminal Enterprise, 21 USC § 848(a), knowingly, intentionally, and unlawfully killed and counseled, commanded, induced, procured, and caused the intentional killing of Curtis Thorne, and such killing resulted.

(In violation of Title 21, United States Code, Section 848(e)(1)(A) and Title 18, United States Code, Section 2.).

## COUNT TWENTY-FIVE

THE GRAND JURY FURTHER CHARGES that on or about February 19, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants RICHARD TIPTON, aka Whittey, VERNON LANCE THOMAS, aka Anthony Mack, aka "V", and CORY JOHNSON, aka "O," aka "CO", while engaged in and working in furtherance of a Continuing Criminal Enterprise, 21 USC § 848(a), knowingly,

17

00101

intentionally, and unlawfully killed and counseled, commanded, induced, procured, and caused the intentional killing of Linwood Chiles, and such killing resulted.

(In violation of Title 21, United States Code, Section 848(e)(1)(A) and Title 18, United States Code, Section 2.).

## COUNT TWENTY-SIX

THE GRAND JURY FURTHER CHARGES that on or about February 19, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON, aka Whittey, VERNON LANCE THOMAS, aka Anthony Mack, aka "V", and CORY JOHNSON, aka "O," aka "CO", did knowingly, willfully, and unlawfully use a firearm, during and in relation to a crime of violence or a drug trafficking crime, which is a felony prosecutable in a court of the United States, that is a violation of Title 21, United States Code, Section 846 and 848, and Title 18, United States Code, Section 1959, as set forth in Counts One, Twenty-Four, Twenty-Five and Twenty-Seven through Thirty of this Indictment.

(In violation of Title 18, United States Code, Sections 924(c) and 2.)

## COUNT TWENTY-SEVEN

THE GRAND JURY FURTHER CHARGES that on or about February 19, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON, aka Whittey, VERNON LANCE THOMAS, aka Anthony Mack, aka "V", and CORY JOHNSON, aka "O," aka "CO", did knowingly, intentionally, and unlawfully cause the murder of Curtis Thorne, as consideration for the receipt of, and as

18

consideration for a promise and agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining and increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

## COUNT TWENTY-EIGHT

THE GRAND JURY FURTHER CHARGES that on or about February 19, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON, aka Whittey, VERNON LANCE THOMAS, aka Anthony Mack, aka "V", and CORY JOHNSON, aka "O," aka "CO", did knowingly, intentionally, and unlawfully cause the murder of Linwood Chiles, as consideration for the receipt of, and as consideration for a promise and agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining and increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

## COUNT TWENTY-NINE

THE GRAND JURY FURTHER CHARGES that on or about February 19, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON, aka Whittey, VERNON LANCE THOMAS, aka Anthony Mack, aka "V", and CORY JOHNSON, aka "O," aka "CO", did knowingly, intentionally, and

19

unlawfully cause the maiming of Priscilla Green, as consideration for the receipt of, and as consideration for a promise and agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining and increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

## COUNT THIRTY

THE GRAND JURY FURTHER CHARGES that on or about February 19, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON, aka Whittey, VERNON LANCE THOMAS, aka Anthony Mack, aka "V", and CORY JOHNSON, aka "O," aka "CO", did knowingly, intentionally, and unlawfully cause the maiming of Gwendolyn Green, as consideration for the receipt of, and as consideration for a promise and agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining and increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

## COUNT THIRTY-ONE

THE GRAND JURY FURTHER CHARGES that on or about January 15, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendant, CORY

20

00104

JOHNSON, aka "O," aka "CO", did knowingly and intentionally distribute a Schedule II narcotic controlled substance, that is, a mixture and substance described in Title 21, United States Code, Section 841(b)(1)(A)(ii), which contains cocaine base, commonly known as "crack," or "cook em up."

(In violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.)

## COUNT THIRTY-TWO

THE GRAND JURY FURTHER CHARGES that on or about February 2, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON aka Whittey, CORY JOHNSON, aka "O," aka "CO", STERLING HARDY, VERNON LANCE THOMAS, aka Anthony Mack, aka "V", JAMES ROANE, JR., aka "J.R.", and JERRY GAITERS, did knowingly and intentionally possess with the intent to distribute a Schedule II narcotic controlled substance, that is, more than fifty (50) grams of a mixture and substance described in Title 21, United States Code, Section 841(b)(1)(A)(ii), which contains cocaine base, commonly known as "crack," or "cook em up."

(In violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.)

## COUNT THIRTY-THREE

THE GRAND JURY FURTHER CHARGES that on or about April 10, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD

21

TIPTON aka Whittey, did knowingly and intentionally possess with the intent to distribute a Schedule II narcotic controlled substance, that is, more than fifty (50) grams of a mixture and substance described in Title 21, United States Code, Section 841(b)(1)(A)(ii), which contains cocaine base, commonly known as "crack," or "cook em up."

(In violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.)

A TRUE BILL:

ISI *Christopher F. Snead*
**FOREPERSON**

RICHARD CULLEN
UNITED STATES ATTORNEY

By:

Howard C. Vick, Jr.
Assistant United States Attorney

William Parcell
Special Assistant U.S. Attorney

22

00106

**Exhibit 2**

*United States v. Tipton*, **EDVA, No. 3:92Cr68**

**Verdict Form.**

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF VIRGINIA
### RICHMOND DIVISION

UNITED STATES OF AMERICA )
)
v. )    Criminal Case No. 3:92CR68-01
)
RICHARD TIPTON )
  a.k.a. "Whittey" )
)



### VERDICT

WE, THE JURY, FIND as follows:

**Count 1:**    Conspiracy to Distribute Controlled Substance

Guilty
_____
(Guilty or Not Guilty)

**Count 2:**    Continuing Criminal Enterprise

Question: Do you find that the government has proven, beyond a reasonable doubt, that a Continuing Criminal Enterprise existed as charged in the indictment?

Yes: _Yes_    No: _____

If you indicated above that a Continuing Criminal Enterprise did **not** exist, you must find the defendant, RICHARD TIPTON, Not Guilty as to Count 2.

If you indicated that a Continuing Criminal Enterprise **did** exist, you must now determine whether defendant RICHARD TIPTON is Guilty or Not Guilty of the crime of engaging in that continuing criminal enterprise as charged in Count 2, and enter your finding below:

Guilty
_____
(Guilty or Not Guilty)

465



FEB -- 3 1993

**Count 3:**          Killing of Douglas A. Talley while Engaged In or Working in Furtherance of a Continuing Criminal Enterprise

(If you indicated, in response to the Question set forth under Count 2 above, that a Continuing Criminal Enterprise did not exist, you must find the defendant Not Guilty as to this Count).

Guilty
---
(Guilty or Not Guilty)

**Count 4:**          Killing of Douglas A. Talley to Maintain or Increase Position in Racketeering Enterprise

Guilty
---
(Guilty or Not Guilty)

**Count 5:**          Killing of Douglas Moody while Engaged In or Working in Furtherance of a Continuing Criminal Enterprise

(If you indicated, in response to the Question set forth under Count 2 above, that a Continuing Criminal Enterprise did not exist, you must find the defendant Not Guilty as to this Count).

Not Guilty
---
(Guilty or Not Guilty)

**Count 6:**          Use of Firearm in Relation to Killing of Douglas Moody

Not Guilty
---
(Guilty or Not Guilty)

**Count 7:**          Killing of Douglas Moody to Maintain or Increase Position in Racketeering Enterprise

Not Guilty
---
(Guilty or Not Guilty)

Defendant RICHARD TIPTON is not charged in Counts 8-13 of the indictment.

**Count 14:** Killing of Torrick Brown, Jr., to Maintain or Increase Position in Racketeering Enterprise

_Not Guilty_
(Guilty or Not Guilty)

**Count 15:** Use of Firearm in Relation to Killing of Torrick Brown, Jr., and Maiming of Martha McCoy

_Not Guilty_
(Guilty or Not Guilty)

**Count 16:** Maiming of Martha McCoy to Maintain or Increase Position in Racketeering Enterprise

_Not Guilty_
(Guilty or Not Guilty)

**Count 17:** Killing of Bobby Long while Engaged In or Working in Furtherance of a Continuing Criminal Enterprise

(If you indicated, in response to the Question set forth under Count 2 above, that a Continuing Criminal Enterprise did not exist, you must find the defendant Not Guilty as to this Count).

_Guilty_
(Guilty or Not Guilty)

**Count 18:** Killing of Anthony Carter while Engaged In or Working in Furtherance of a Continuing Criminal Enterprise

(If you indicated, in response to the Question set forth under Count 2 above, that a Continuing Criminal Enterprise did not exist, you must find the defendant Not Guilty as to this Count).

_Guilty_
(Guilty or Not Guilty)

**Count 19:**   Killing of Dorothy Mae Armstrong while Engaged In or Working in Furtherance of a Continuing Criminal Enterprise

(If you indicated, in response to the Question set forth under Count 2 above, that a Continuing Criminal Enterprise did not exist, you must find the defendant Not Guilty as to this Count).

_____Guilty_____
(Guilty or Not Guilty)

**Count 20:**   Use of Firearm in Relation to Killing of Bobby Long, Anthony Carter and Dorothy Mae Armstrong

_____Guilty_____
(Guilty or Not Guilty)

**Count 21:**   Killing of Bobby Long to Maintain or Increase Position in Racketeering Enterprise

_____Guilty_____
(Guilty or Not Guilty)

**Count 22:**   Killing of Anthony Carter to Maintain or Increase Position in Racketeering Enterprise

_____Guilty_____
(Guilty or Not Guilty)

**Count 23:**   Killing of Dorothy Mae Armstrong to Maintain or Increase Position in Racketeering Enterprise

_____Guilty_____
(Guilty or Not Guilty)

Count 24:        Killing of Curtis Thorne while Engaged In or Working in Furtherance of a Continuing Criminal Enterprise

(If you indicated, in response to the Question set forth under Count 2 above, that a Continuing Criminal Enterprise did not exist, you must find the defendant Not Guilty as to this Count).

Guilty
_____
(Guilty or Not Guilty)

Count 25:        Killing of Linwood Chiles while Engaged In or Working in Furtherance of a Continuing Criminal Enterprise

(If you indicated, in response to the Question set forth under Count 2 above, that a Continuing Criminal Enterprise did not exist, you must find the defendant Not Guilty as to this Count).

Guilty
_____
(Guilty or Not Guilty)

Count 26:        Use of Firearm in Relation to Killing of Curtis Thorne and Linwood Chiles and Maiming of Priscilla Green and Gwendolyn Green

Guilty
_____
(Guilty or Not Guilty)

Count 27:        Killing of Curtis Thorne to Maintain or Increase Position in Racketeering Enterprise

Guilty
_____
(Guilty or Not Guilty)

Count 28:        Killing of Linwood Chiles to Maintain or Increase Position in Racketeering Enterprise

Guilty
_____
(Guilty or Not Guilty)

<u>Count 29:</u>    Maiming of Priscilla Green to Maintain or Increase
             Position in Racketeering Enterprise

_____Guilty_____
(Guilty or Not Guilty)

<u>Count 30:</u>    Maiming of Gwendolyn Green to Maintain or Increase
             Position in Racketeering Enterprise

_____Guilty_____
(Guilty or Not Guilty)

Defendant RICHARD TIPTON is not charged in Count 31 of the indictment.

<u>Count 32:</u>    Possession of Controlled Substance with Intent to
             Distribute  (on or about 2/2/92)

_____Guilty_____
(Guilty or Not Guilty)

<u>Count 33:</u>    Possession of Controlled Substance with Intent to
             Distribute  (on or about 4/10/92)

_____Guilty_____
(Guilty or Not Guilty).

SO SAY WE ALL.

_____          _____2/3/93_____
FOREPERSON'S SIGNATURE                        DATE