# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | | |
|---|---|---|
| RICHARD TIPTON, III, | ) | |
| | ) | Criminal Case No. 92CR68 |
| Movant, | ) | Prior Civil Case No. 98CV361 |
| | ) | |
| v. | ) | **CAPITAL CASE** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**AMENDED MOTION TO VACATE CONVICTION
UNDER 28 U.S.C. § 2255 IN LIGHT OF
*UNITED STATES V. DAVIS*, __U.S.__, 139 S. Ct. 2319 (2019)**

Movant Richard Tipton, III, by and through undersigned counsel, respectfully moves this Court pursuant to 28 U.S.C. § 2255 to set aside his convictions and sentences for Counts 20 and 26 in the above-captioned case, which charged him with using a firearm during and in relation to a "crime of violence" or drug trafficking crime in violation of 18 U.S.C. § 924(c).  As explained below, these counts must be vacated in light of the Supreme Court's decision in *United States v. Davis*, __U.S.__, 139 S. Ct. 2309 (2019), which held that § 924(c)(3)(b)'s "residual clause" is void for vagueness and violates the Due Process Clause.  As Mr. Tipton's particular § 924(c) convictions cannot be otherwise sustained, this Court should grant review and relief.

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................1

 A. Mr. Tipton's Convictions and Sentencing. ............................................2

 B. Mr. Tipton's Direct Appeal. ...................................................................5

 C. Mr. Tipton's First Section 2255 Motion. ..............................................5

 D. Mr. Tipton's Prior Applications for Authorization. ..............................6

ARGUMENT ......................................................................................................9

 I. Mr. Tipton's is Entitled to Relief Under 28 U.S.C. § 2255 Because His Claim under *Davis* is Cognizable, Timely, and Satisfies the Successive Petition Requirements of § 2255(h) .............11

  A. Mr. Tipton's Claims under *Davis* are Cognizable under § 2255(a). .........................................................................................11

  B. Mr. Tipton's Motion Satisfies § 2255(h). ................................12

  C. Mr. Tipton's Motion is Timely Under § 2255(f). ....................13

 II. After *Davis*, Mr. Tipton's § 924(c) Convictions Can No Longer Be Sustained. ...........................................................................14

  A. Under the Modified Categorical Approach, a § 924(c) Conviction Based on Multiple Offenses is Invalid if There is Ambiguity as to Which Offense Supported the § 924(c) Conviction and at Least One of the Possible Predicates is not Categorically a "Crime of Violence." ...........16

  B. Section 1959(a) is Not Categorically a "Crime of Violence" and Thus Cannot Support a § 924(c) Conviction. ...........................................................................24

   1. The jury was empowered to base Mr. Tipton's § 924(c) convictions on § 1959 conspiracy, which is

not a categorical "crime of violence," and it may have done so. ...............................................................25

2. After *Davis*, Mr. Tipton's § 924(c) convictions can no longer rest on § 1959 murder offenses. .....................27

3. Maiming is not categorically a crime of violence and thus cannot support Mr. Tipton's 924(c) convictions. .................................................................36

4. Mr. Tipton's 924(c) convictions cannot rest on assault resulting in serious bodily injury, which is not categorically a crime of violence .............................37

C. Mr. Tipton's § 848(e) Convictions Also Fail to Qualify Categorically as "Crimes of Violence" under § 924(c). ...........37

III. Because Both of Mr. Tipton's § 924(c) Convictions are Invalid after *Davis*, Mr. Tipton is Entitled to be Resentenced. .......................40

CONCLUSION AND PRAYER FOR RELIEF .....................................................42

ATTACHED EXHIBITS

*United States v. Tipton*, EDVA, No. 3:92CR68, Superseding Indictment ..............................................................................Exhibit 1

*United States v. Tipton*, EDVA, No. 3:92CR68, Verdict Form ...................Exhibit 2

ii

**INTRODUCTION**

Before *Davis*, § 924(c) included two alternative clauses defining "crime of violence." The first, § 924(c)(3)(A), is commonly referred to as the "force" or "elements" clause and applies to any felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." The second, § 924(c)(3)(B), was referred to as the "residual clause" and applied to any felony "that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense. *Davis*, however, held that § 924(c)(3)'s residual clause is void for vagueness, violates the Due Process Clause, and, accordingly, unconstitutionally imposed criminal punishment. 139 S. Ct. at 2336.

Absent § 924(c)'s residual clause, none of Mr. Tipton's purported predicate offenses can categorically qualify as a "crime of violence" because none has as a *required* element the intentional use, attempted use, or threatened use of violent physical force.[1] Moreover, as the record does not establish the specific offense used by the jury as the predicate offense for his § 924(c) convictions, reviewing

---

[1]See *Borden v. United States*, 141 S. Ct. 1817, 1834 (2021) (offenses with *mens rea* of recklessness do not qualify as violent felonies under the Armed Career Criminal Act (ACCA) because they cannot satisfy its elements clause).

1

courts cannot assume that the jury chose a predicate that authorized conviction for a drug trafficking crime as an alternative to a crime of violence.

As § 924(c)'s residual clause is void and its force clause is unsatisfied, Mr. Tipton's convictions and sentences: (1) violate due process; (2) violate the laws of the United States and result in a fundamental miscarriage of justice; and (3) were entered in excess of the district court's jurisdiction.  Mr. Tipton is accordingly innocent of the § 924(c) offenses, and his convictions and their associated sentences are void.

<strong>STATEMENT OF RELEVANT FACTS</strong>

**A.     Mr. Tipton's Convictions and Sentencing.**

On February 3, 1993, Mr. Tipton was convicted of the following offenses: conspiracy to possess cocaine base with intent to distribute in violation of 21 U.S.C. § 846[2]; engaging in a continuing criminal enterprise ("CCE") in violation of 21 U.S.C. § 848(a) [3]; six counts of murder "while engaged in and working in furtherance of" a CCE in violation of 21 U.S.C. § 848(e)[4]; six counts of murder "to

---

[2]Count 1.

[3]Count 2.

[4]Counts 3, 17, 18, 19, 24, and 25.

2

maintain or increase position in racketeering enterprise" in violation of 18 U.S.C. § 1959[5]; two counts of maiming "to maintain or increase position in racketeering enterprise" in violation of 18 U.S.C. § 1959[6]; two counts of possession of cocaine base with intent to distribute in violation of 21 U.S.C. § 841(a)(1)[7]; and, most relevant to this motion, two counts of using a firearm in relation to a crime of violence or a drug trafficking crime, 21 U.S.C. § 924(c).[8]

This Court instructed Mr. Tipton's jury that it could find him guilty of his charges under 18 U.S.C. § 1959 based upon any of the substantive crimes listed in the statute, including *conspiracy* to commit them. Tr. 3219-20.[9] This Court further instructed the jury that it could find him guilty of his 21 U.S.C. § 848(e) charges if

---

[5]Counts 4, 21, 22, 23, 27, and 28. As discussed below, the indictment did not identify any federal or state statute defining murder as to these counts, nor was the jury instructed as to a specific murder statute to consider.

[6]Counts 29 and 30.

[7]Counts 32 and 33.

[8]Counts 20 and 26.

[9]Citations to Mr. Tipton's transcript are "Tr. [page number]." Citations to the docket in Mr. Tipton's underlying criminal case, *U.S. v. Tipton, et al*, Case No. 3:92-cr-00068-DJN-1 (EDVA), are "D.[docket number]:[page number]." Citations to Mr. Tipton's dockets in the Fourth Circuit are "Doc. [docket number]," followed by the case number.

3

it concluded that he had *counseled, commanded, induced, procured, or caused* the intentional killing of the named victim.  Tr. 3216-17.

As for Mr. Tipton's § 924(c) offenses, the Second Superseding Indictment offered multiple § 848(e) and § 1959 counts as the predicate offenses for each.  See Exhibit 1.  For the first, Count 20, the indictment cited: conspiracy, as charged in Count 1; the § 848(e) violations charged in Counts 17, 18, and 19; and the § 1959 violations charged in Counts 21, 22 and 23.  *Id.* at 15. For the second, Count 26, the indictment cited: conspiracy, again as charged in Count 1; § 848(e) violations as charged in Counts 24 and 25; § 1959 violations as charged in Counts 27 and 28; and the § 1959 maiming violations charged in Counts 29 and 30.  *Id.* at 15.

When instructing the jury as to the § 924(c) offenses, however, this Court made no reference to these predicates.  Tr. 3221-24.  Rather, it simply read the text of § 924(c)(1) to the jury, including a nearly verbatim recitation of its force and residual clauses.  *Id.*  Nor did this Court identify certain counts as drug trafficking crimes, merely stating generally that each of "[t]he offenses alleged . . . are crimes of violence *or* drug trafficking crimes."  Tr. 3223.  This Court repeatedly admonished the jury to refer to Mr. Tipton's verdict form to "assist" it in "giving individual consideration to each…count against him," T. 3219-22, but that form required no specific findings as to the predicate or § 924(c) offenses, directing the jury only to find Mr. Tipton "Guilty or Not Guilty."  *See* Exhibit 2.

4

At the conclusion of the penalty phase, the jury recommended death sentences for three killings in furtherance of a CCE (Counts 3, 24 and 25). The jury also recommended sentences of life for three murders in furtherance of a CCE for which the prosecution had sought the death penalty. This Court sentenced Mr. Tipton in accord with the jury's recommendation, also imposing terms of imprisonment for the non-capital counts of which Tipton was convicted, including the two § 924(c) counts.

### B.    Mr. Tipton's Direct Appeal.

Mr. Tipton timely appealed to the Fourth Circuit, raising issues relating to the guilt and penalty phases of his trial. That Court vacated Mr. Tipton's conviction under Count One, conspiracy in violation of 21 U.S.C. § 846, as violating the Constitution's double jeopardy clause, but it otherwise affirmed his convictions and death sentences. *United States v. Tipton*, 90 F.3d 861, 891 (4th Cir. 1996). The Supreme Court denied certiorari. *Tipton v. United States*, 520 U.S. 1253 (1997).

### C.    Mr. Tipton's First Section 2255 Motion.

In 1998, Mr. Tipton filed a timely motion for collateral relief under § 2255, raising in the motion (and amendments to it) claims of error in both the guilt and penalty phases of his trial. This Court denied relief. *Tipton v. United States*, No. 3:92CR68 (E.D. Va. Nov. 26, 2003). The Fourth Circuit affirmed the denial of

5

relief.  *United States v. Roane*, et al., 378 F.3d 382 (4th Cir. 2004).  The Supreme

Court denied certiorari.  *Tipton v. United States*, 546 U.S. 810 (2005).

      **D.**      **Mr. Tipton's Prior Applications for Authorization.**

In *Johnson v. United States*, 576 U.S. 591 (2015), the Supreme Court held

that the residual clause of the Armed Career Criminal Act, 18 U.S.C. §

924(e)(2)(B)(ii), was unconstitutionally vague.  The Court subsequently found

*Johnson*'s rule substantive and retroactively applicable to cases on collateral

review.  *Welch v. United States*, 578 U.S. 120, 129-30 (2016).

On May 20, 2016, Mr. Tipton moved the Fourth Circuit for authorization to

file a successive § 2255 motion challenging his § 924(c) convictions and sentences

based upon *Johnson* and *Welch*.  (Doc. 1, *In re: Tipton*, No. 16-7.)  The Fourth

Circuit denied that motion on June 6, 2016. (Doc. 13, No. 16-7.)

On April 17, 2018, the Supreme Court held in *Sessions v. Dimaya,* __ U.S.

__,138 S. Ct. 1204, 1223 (2018), that the residual clause of the federal criminal

code's definition of a "crime of violence," as codified in § 16(b) of Title 18, was

void for vagueness and violated the Due Process Clause of the Fourteenth

Amendment.  On April 17, 2019, Mr. Tipton moved the Fourth Circuit for

authorization to file a successive § 2255 motion challenging his § 924(c)

convictions and sentences based upon *Dimaya* and the Fourth Circuit's en banc

decision in *United States v. Simms,* 914 F.3d 229 (4th Cir. 2019) (*en banc*), *cert.*

*denied*, 140 S. Ct. 304 (2019), which held that Section 924(c)(3)(B)'s residual clause was *also* void for vagueness, as it was identical to Section 16(b) and imposed the same "categorical approach" and "ordinary case" inquiry that *Dimaya* rejected. (Doc. 1, *In re Tipton*, 19-2.) The Fourth Circuit summarily denied Mr. Tipton's application on May 14, 2019. (Doc .9, *In re Tipton*, 19-2.)

The Supreme Court issued its decision in *Davis* on June 24, 2019. On June 8, 2020, Mr. Tipton moved the Fourth Circuit for authorization to file a successive § 2255 motion challenging his § 924(c) convictions and sentences based upon *Davis*, which, unlike *Johnson and Dimaya*, directly addressed and invalidated § 924(c)'s residual clause. (Doc. 2-1, *In re Tipton*, 20-10.)

On July 31, 2020, Mr. Tipton filed a motion in this Court pursuant to Section 404 of the First Step Act, seeking sentencing relief "for the interrelated [Section 841(a)(1) and 848] offenses charged in Counts 3, 24, 25, 32, and 33" of his superseding indictment, "as the statutory penalty for each has been modified by the Fair Sentencing Act." ("Section 404 motion," D.24:1.) On November 19, 2020, this Court entered an order denying Mr. Tipton's Section 404 motion on the ground that his "convictions on Counts Three, Seventeen, Eighteen, Nineteen, Twenty-Four and Twenty-Five'—his Subsection 848(e) convictions—"do not constitute covered offenses under the First Step Act." D.76:12. This Court expressly incorporated its earlier order addressing a Section 404 motion presented

7

by James Roane, Mr. Tipton's co-defendant. D.76:1, n.1; see also D.66. While concluding that Mr. Tipton's convictions on Counts Thirty-Two and Thirty-Three did constitute covered offenses, this Court declined to exercise its discretion to reduce his sentences for those offenses. D.76:12. This Court further disclaimed any authority to "revisit" the sentencing determination made by Mr. Tipton's 1993 jury, or to consider evidence not heard by that jury. *Id.* Mr. Tipton filed a notice of appeal on November 24, 2020. D.80. His appeal is currently held in abeyance. Doc. 31, *U.S. v. Tipton*, No. 20-16.

On January 24, 2022, the Fourth Circuit granted Mr. Tipton's authorization motion. Doc. 42-1, *In re Tipton*, 20-10. In its accompanying Notice of Authorization, the Fourth Circuit transferred "[t]he post-conviction application attached to the motion for authorization…to the district court with the order granting authorization." Doc. 42-2, *In re Tipton*, 20-10. The Notice further directed that "[a]ny proposed amendment to the post-conviction application should be filed in the district court rather than in the court of appeals." *Id.*

On January 31, 2022, this Court ordered Mr. Tipton "to submit within twenty (20) days of the date of entry hereof, a § 2255 motion complying with Rule 2" of the Rules Governing Section 2255 Proceedings. D.149:2. Mr. Tipton has timely filed the Section 2255 motion appended to his authorization motion in the Fourth Circuit and contemporaneously submits this amended Section 2255 motion.

8

## ARGUMENT

As noted *supra*, *Davis* held that the residual clause in § 924(c)'s definition of a "crime of violence" is void for vagueness and violates the Due Process Clause. 139 S. Ct. 2319.  Accordingly, a § 924(c) conviction predicated upon a crime of violence cannot remain valid unless its predicate offense satisfies the elements-based, categorical approach required by § 924(c)(3)(a)'s "force" or "elements" clause.  As discussed below, a reviewing court applying the categorical approach determines only "whether the statutory elements of the offense necessarily require the use, attempted use, or threatened use of physical force."  *Simms*, 914 F.3d at 233. The reviewing court must also determine whether that use, attempted use, or threatened use of physical force meets "a *mens rea* requirement…of purposeful or knowing conduct."  *Borden v. United States*, 141 S. Ct. 1817, 1828, 210 L. Ed. 2d 63 (2021). Moreover, the requirements of § 924(c) cannot be satisfied unless the record established with "certainty" that the defendant was "necessarily" convicted of an offense that qualifies as a "crime of violence."  *Shepard v. United States*, 544 U.S. 13, 21 (2005).  Accordingly, in cases where the record does not establish which of multiple offenses the jury might have found as the predicate, the § 924(c)

9

conviction cannot be sustained if even *one* of the possible predicates is not categorically a crime of violence.[10]

As detailed *infra*, at least two types of offenses charged as predicates for Mr. Tipton's § 924(c) counts–those pursuant to § 1959(a) and § 848(e)–cannot categorically qualify as "crimes of violence" absent the residual clause voided by *Davis*. Moreover, the record does not conclusively establish which of the many possible predicates listed were relied upon by the jury when convicting him of § 924(c) violations. Finally, the record cannot establish with certainty whether § 848(e) was considered by the jury as a crime of violence or a drug trafficking charge, which prevents its use as an alternative predicate for the § 924(c) offenses. Accordingly, following *Davis*, Mr. Tipton's § 924(c) convictions are legal nullities that were entered in excess of this Court's jurisdiction, which warrants relief under § 2255.

_____

[10] The Fourth Circuit has granted a certificate of appealability on the question of "whether an 18 U.S.C. § 924(c) conviction is subject to vacatur where the indictment charged multiple predicates, one of which is invalid," but was unable to reach the question. *United States v. Taylor*, 979 F.3d 203, 205 (4th Cir. 2020), cert. granted, 141 S. Ct. 2882, 210 L. Ed. 2d 990 (2021) ("given our holding that here neither predicate constitutes a 'crime of violence' under § 924(c), we cannot reach that question in this case.")

I.      **MR. TIPTON'S IS ENTITLED TO RELIEF UNDER 28 U.S.C. § 2255 BECAUSE HIS CLAIM UNDER *DAVIS* IS COGNIZABLE, TIMELY, AND SATISFIES THE SUCCESSIVE PETITION REQUIREMENTS OF § 2255(H)**

   A.      **Mr. Tipton's Claims under *Davis* are Cognizable under § 2255(a).**

A federal prisoner may obtain relief under 28 U.S.C. § 2255(a) if his "sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence." Mr. Tipton's convictions violate the Due Process Clause of the Fifth Amendment, violate federal law, and exceed this Court's jurisdiction. This Court therefore should grant him relief.

As detailed below, Mr. Tipton's § 924(c) convictions violate the Due Process Clause, as their predicate offenses cannot categorically satisfy its force clause and, thus cannot be sustained as "crimes of violence" absent the residual clause vacated by *Davis*. As no predicates were clearly established as drug trafficking crimes, Mr. Tipton's indictment therefore failed to state an offense under § 924(c). Given this infirmity, his convictions violate the laws of the United States. This is precisely the type of error that is cognizable under § 2255(a). *See Davis v. United States,* 417 U.S. 333, 346-47 (1974) (holding that when an intervening decision establishes that a prisoner was convicted of "an act that the law [no longer] make[s] criminal," "such a circumstance 'inherently results in a

11

complete miscarriage of justice and presents exceptional circumstances' that justify relief under § 2255").

Mr. Tipton's convictions exceed this Court's jurisdiction because his indictment not only failed to state a § 924(c) offense, but also alleged conduct that is outside the reach of that statute. These convictions are legal nullities entered in excess of this Court's jurisdiction, and they must be vacated. *See United States v. Brown,* 752 F.3d 1344, 1347 (11th Cir. 2014) (a jurisdictional defect exists "when the indictment affirmatively alleges conduct that does not constitute a crime at all because that conduct falls outside the sweep of the charging statute"); see also *United States v. Barboa,* 777 F.2d 1420, 1423 n.3 (10th Cir. 1985) (even guilty plea "does not bar a claim that the defendant may not constitutionally be convicted in the first instance," as "this jurisdictional defect…goes 'to the very power of the State to bring the defendant into court to answer the charge brought against him.'" (quoting *Blackledge v. Perry*, 417 U.S. 21, 30 (1974)).

## B.    Mr. Tipton's Motion Satisfies § 2255(h).

Section 2255(h)(2) imposes a gatekeeping restriction on second or successive motions. Before filing such a motion, the petitioner must obtain permission to do so from the appropriate circuit court of appeals. *See* 28 U.S.C. § 2255(h)(2). The court of appeals must certify that the successive motion contains a claim based on "a new rule of constitutional law, made retroactive to cases on

12

collateral review by the Supreme Court, that was previously unavailable." *Id.; see also* 28 U.S.C. § 2244(b)(3)(C).  In granting Mr. Tipton's application for authorization and directing this Court to file his Section 2255 motion, the Fourth Circuit implicitly made that certification.  The Fourth Circuit has also explicitly "consider[ed] whether *Davis* (1) announced a new rule of constitutional law (2) made retroactive to cases on collateral review (3) by the Supreme Court (4) that was previously unavailable"[11] and concluded that "*Davis* satisfies these requirements."  *In re Thomas*, 988 F.3d 783, 788 (2021).

C.    **Mr. Tipton's Motion is Timely Under § 2255(f).**

A 2255 motion must be filed within a one-year limitations period, which runs from the latest applicable triggering event.  28 U.S.C. § 2255(f).  Where, as here, the motion is pursuant to a "right [that] has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review," the one-year limitations period runs from "the date on which the right asserted was initially recognized by the Supreme Court."  28 U.S.C. § 2255(f)(3).  The Supreme

---

[11]*Davis*'s new constitutional rule was not previously available to Mr. Tipton during his direct review, which concluded in 1997, nor during his prior 2255 filings.  *Davis* marked the first occasion when the Supreme Court applied the constitutional vagueness analysis to the residual clause in 18 U.S.C. § 924(c) and found it wanting.

13

Court decided *Davis* on June 24, 2019.  Because Mr. Tipton sought authorization

to file this successive motion within one year of that date (*i.e.*, before June 24,

2020), this motion is timely.

## II.    AFTER *DAVIS*, MR. TIPTON'S § 924(C) CONVICTIONS CAN NO LONGER BE SUSTAINED.

Mr. Tipton's convictions for using or carrying a firearm during and in

relation to a "crime of violence" are void because their predicate offenses cannot as

a matter of law qualify as "crime[s] of violence" for purposes of § 924(c). To

constitute a crime of violence under § 924(c), the offense requires not only the use

of strong physical force[12], but also that the use of force is intentional.  *Borden*, 141

S. Ct. at 1821-22 (crime capable of commission with "a less culpable mental state

than purpose or knowledge," such as "recklessness," cannot qualify as "violent

felony").  As none of these predicate offenses requires as an element the (1)

intentional (2) use of strong physical force, necessary to satisfy the force or

elements clause, and as the residual clause can no longer provide a catch-all for

such offenses, Mr. Tipton's § 924(c) convictions are no longer valid federal

crimes.  Their vacatur, moreover, entitles Mr. Tipton to a resentencing free from

their impermissible influence upon his jury.

---

[12]The "physical force" required for a crime of violence is "*violent* force –
that is, force capable of causing physical pain or injury to another person." *Johnson
(Curtis) v. United States*, 559 U.S. 133, 140 (2010) (emphasis in original).

14

Section 924(c) prohibits "us[ing]" a firearm "during and in relation to any crime of violence or drug trafficking crime."  18 U.S.C. § 924(c)(1)(A).  It is "a combination crime," in that it "punishes the temporal and relational conjunction of *two separate acts*."  *Rosemond v. United States,* 572 U.S. 65, 69 (2014) (emphasis added).  Accordingly, the jury must find *each* of those separate acts: "the commission of an underlying crime and the use of a firearm."  *Simms*, 914 F.3d at 237 (quoting *Smith v. United States*, 508 U.S. 223, 227-28 (1993)).

After *Davis*, the first of these acts, the underlying "crime of violence," cannot be found in Mr. Tipton's case.  At the time of Mr. Tipton's trial, § 924(c)(3) defined a "crime of violence" as a felony that:

(A)    has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(B)    that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3).  *Davis,* however, has had the effect of striking the second of these definitions—§ 924(c)(3)(B), otherwise known as the residual clause—from the statute as unconstitutionally vague.  *Davis*, 139 S. Ct. at 2336.  As a result, the residual clause, which was cited by this Court in its instructions to the jury, can no longer support Mr. Tipton's § 924(c) convictions.

Nor can the surviving elements clause; indeed, it never could.  To qualify as a "crime of violence" under the elements clause, the "use of...force" must satisfy

15

two requirements.  First, the conduct, as described in the *statute* (and not as events actually played out), must involve *violent* force—that is, "strong physical force" that is "capable of causing physical pain or injury to another person."  *Johnson v. United States,* 559 U.S. 133, 140 (2010).  Second, the use of such force must be *intentional*—not merely reckless or negligent. *Borden*, 141 S. Ct. at 1834 ("[o]ffenses with a *mens rea* of recklessness do not qualify as violent felonies under ACCA"); *see also Garcia v. Gonzales,* 455 F.3d 465, 469 (4th Cir. 2006) ("recklessness, like negligence, is not enough to support a determination that a crime is a 'crime of violence'").  Because at least one—if not all—of Mr. Tipton's convictions fail to satisfy the requirements of the elements clause, his § 924(c) convictions are a legal nullity that were entered in excess of this Court's jurisdiction, and relief under § 2255 is warranted.

A. **Under the Modified Categorical Approach, a § 924(c) Conviction Based on Multiple Offenses is Invalid if There is Ambiguity as to Which Offense Supported the § 924(c) Conviction and at Least One of the Possible Predicates is not Categorically a "Crime of Violence."**

To determine whether a predicate offense constitutes a "crime of violence" under the "force" or "elements" clause of § 924(c), courts must apply the categorical approach.  *See Borden*, 141 S. Ct. at 1822 ("[t]o decide whether an offense satisfies the elements clause, courts use the categorical approach"); *United States v. Evans,* 848 F.3d 242, 245–46 (4th Cir. 2017); *United States v. Fuertes*,

16

805 F.3d 485, 498 (4th Cir. 2015).  This approach is a purely legal analysis that requires the courts "to look to whether the statutory elements of the offense *necessarily require* the use, attempted use, or threatened use of physical force." *Simms*, 914 F.3d at 233.  And the courts must "look *only* to the statutory definitions—*i.e.*, the elements—of a defendant's [offense] and *not* to the particular facts underlying [the offense]."  *Id.* (emphases added).

In other words, an offense can only qualify as a "crime of violence" under the categorical approach if *all* of the criminal conduct covered by the statute, including the least culpable conduct, matches or is narrower than the definition of a "crime of violence." *Borden*, 141 S. Ct. at 1832 ("[a]n offense does not qualify as a 'violent felony' unless the *least* serious conduct it covers falls within the elements clause" (emphasis in original)); *see also United States v. Torres-Miguel,* 701 F.3d 165, 167 (4th Cir. 2012) (abrogated on other grounds by *United States v. Allred*, 942 F.3d 641, 653 (4th Cir. 2019)); *United States v. Diaz-Ibarra*, 522 F.3d 343, 348 (4th Cir. 2008) ("We look only to the statutory definition of the . . . crime and the fact of conviction to determine whether the conduct criminalized by the statute, including the most innocent conduct, qualifies as a 'crime of violence'"); *see also United States v. Davis*, No. 4:18-cr-00011, 2019 WL 3307235, at *9 (W.D. Va. July 23, 2019) ("[T]he key consideration is whether the state statute 'sweeps more broadly than the generic crime.' If the state statute is broader, and is applied to

17

capture non-violent conduct, the conviction in question cannot serve as the predicate § 924(c) "crime of violence" regardless of whether the defendant's actual conduct violates the generic form of the offense" (quoting *Descamps v. United States*, 570 U.S. 254, 260–61 (2013)). "When a statute defines an offense in a way that allows for both violent and nonviolent means of commission, that offense is not 'categorically' a crime of violence under the force clause." *Simms*, 914 F.3d at 233.

If necessary, the court may employ the modified categorical approach, and consult a select few documents to help "'determine what crime, with what elements,' formed the basis of a defendant's conviction." *United States v. Mathis*, 932 F.3d 242, 264 (4th Cir. 2019) (quoting *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016)). These documents, known as *Shepard* documents, are generally limited to the indictment, jury instructions, and verdict form. *See Shepard v. United States*, 544 U.S. 13, 26 (2005). The modified categorical approach "acts not as an exception [to the categorical approach] but instead as a tool" to facilitate its inquiry, which remains confined to the *elements* of the crime and *not* the facts of the case. *Descamps*, 570 U.S. at 261-262.

Under the modified categorical approach, therefore, an offense cannot serve as the predicate for a § 924(c) conviction unless the *Shepard* documents establish with "certainty" that the defendant was "*necessarily*" convicted of an offense that

18

meets its surviving definition for a crime of violence. *Shepard*, 544 U.S .at 21. The "plausibility or even likelihood," that the defendant was convicted of a qualifying crime of violence is not enough. *United States v. Clay*, 627 F.3d 959, 967 (4th Cir. 2010). This bar is purposefully set high to protect against the kind of "evidentiary inquiries into the factual basis for the conviction" that the categorical approach eschews. *Shepard*, 544 U.S. at 21, 22; *Fuertes*, 805 F.3d at 498.

Accordingly, when it cannot be conclusively determined that the defendant was convicted of an offense that categorically qualifies as a "crime of violence," courts should assume that he was convicted of the "least serious" conduct criminalized by the underlying statute. *See United States v. Chapman*, 666 F.3d 220, 228 (4th Cir. 2012) (looking to the "the least serious of the statutory conduct" only to determine which crime a defendant pleaded guilty to); *see also United States v. Vann*, 660 F.3d 771, 774 (4th Cir. 2011) (*en banc*) ("[I]n trials by jury, it has been established that a defendant convicted under a conjunctively charged indictment cannot be sentenced–in the absence of a special verdict form identifying the factual bases for conviction."); *Ortiz v. Lynch*, 796 F.3d 932, 935 (8th Cir. 2015) (alterations in original) ("[W]e must presume [Ortiz's] conviction rested upon [nothing] more than the least of th[e] acts criminalized" (quoting *Moncrieffe v. Holder*, 569 U.S. 184, 190-91 (2013)).

19

Moreover, in cases such as Mr. Tipton's, in which multiple potential predicates are put before the jury, a § 924(c) conviction cannot be sustained if even *one* of the possible predicates is not categorically a crime of violence under its force clause and the *Shepard* documents do not conclusively establish the basis of the conviction. The Second Circuit recognized this principle in *United States v. Capers*, vacating the appellant's conviction for a § 924 firearms offense "[b]ecause it is unclear whether the jury based its decision to convict [the defendant]" on one of the alternative predicates that *Davis* had rendered invalid, or on one that was still valid. 20 F.4th 105, 112 (2d Cir. 2021). The Fifth Circuit held similarly in *United States v. McClaren*, vacating § 924 convictions where it "cannot determine whether the jury relied on the RICO or drug-trafficking predicate," noting that "because a RICO conspiracy is not a crime of violence, the basis for conviction may have been improper." 13 F.4th 386, 414 (5th Cir. 2021).

Applying these principles in *United States v. McCall*, this Court vacated a § 924(c) conviction post-*Davis* because the jury *could* have based its § 924(c) verdict on the offense that did not constitute a crime of violence. 2019 WL 4675762, at *6-7 (E.D. Va. Sept. 25, 2019). Likewise, in *United States v. Berry*, the court vacated a § 924(c) conviction post-*Davis* because "there [wa]s no means of establishing whether the conviction was for attempt–which could qualify as a crime of violence–as opposed to conspiracy–which *does not* qualify as a crime of

20

violence." 2020 WL 591569, at *3 (W. D. Va. Feb. 6, 2020) (citation omitted). In

*United States v. Lettiere*, the District of Montana vacated a § 924(c) conviction

because the *Shepard* documents "arguably did not establish that he committed a

crime of violence as defined by § 924(c)(3)(A)." 2018 WL 3429927, at *4 (D.

Mont. July 16, 2018).

This authority also underscores the inapplicability to Mr. Tipton's case of

the Fourth Circuit's decision in *United States v. Ali*, 991 F.3d 561, 574 (4th Cir.

2021), which was the subject of extensive briefing in the Fourth Circuit during its

consideration of Mr. Tipton's authorization motion. See Docs. 35, 37, 40, 41, *In

re: Tipton*, No. 2010. In *Ali*, the Fourth Circuit denied the defendant's unpreserved

challenge to his § 924(c) conviction, which argued that it was unclear which of two

*closely intertwined* offenses was its predicate—aiding and abetting Hobbs Act

robbery, which constituted a crime of violence, or Hobbs Act conspiracy, which

did not. *Id.* at 574. The Fourth Circuit concluded that it could answer that factual

question itself, through "a case-specific and fact-intensive determination" that

yielded an "*overwhelming* weight" of uncontroverted evidence establishing that Ali

had committed the valid predicate offense while providing and carrying firearms.

*Id.* at 574-76 (emphasis added) (internal citations and quotations omitted).

But *Ali* is inapposite here. In the first place, there is neither the

"overwhelming" record evidence nor "strong proof" present in *Ali*, 991 F.3d at

21

575-76, that Mr. Tipton used a firearm in the commission of the still-valid predicate offenses.  Mr. Tipton's second superseding indictment offered multiple predicates for each of his § 924(c) offenses, alternatively offering his convictions for drug-trafficking, as charged under 21 U.S.C. §§ 846 and 848(a), *or* crime of violence killings, as charged under 21 U.S.C. § 848(e)(1)(A) and 18 U.S.C. § 1959, neither of which are valid predicates after *Davis*.[13]  And there was no clear evidence in the record that Mr. Tipton used a firearm *in the commission* of his drug-trafficking offenses—the only remaining, valid predicates. In light of this record evidence, it is simply impossible to assume that the jury's § 924(c) verdicts comport with the Constitution.

The case of *United States v. Said,* which is now pending on appeal in the Fourth Circuit, is instructive.[14]  There, after receiving briefing on *Ali,* the district court for the Eastern District of Virginia granted the petitioner's § 2255 motion and vacated his § 924(c) convictions based on its "grave doubt…based on the record[,]

---

[13] For the first, Count 20, the indictment cited: § 846 conspiracy, as charged in Count 1; the §§ 848(a) and 848(e) violations charged in Counts 17, 18, and 19; and the § 1959 violations charged in Counts 21, 22 and 23. Exhibit 1 at 15. For the second, Count 26, the indictment cited: § 846 conspiracy, again as charged in Count 1; §§ 848(a) and 848(e) violations as charged in Counts 24 and 25; § 1959 violations as charged in Counts 27 and 28; and the § 1959 maiming violations charged in Counts 29 and 30. *Id.*

[14] *United States v. Said*, No. 21-7089 (4th Cir.).

which is unclear on whether the jury relied on the invalid predicate offenses…or

valid offenses…or a combination thereof" when finding him guilty.  See Order

(Doc. No. 632) at 22, *Said v. U.S.*, Case No. 2:10-CR-00057-RAJ-DEM (E.D. Va.

July 19, 2021).  As with Mr. Tipton, *Said*'s § 924(c) offenses were (1) based on

multiple predicates that, unlike *Ali*, (2) were not factually intertwined and (3) were

imposed by a jury that was never instructed that it had to decide unanimously

which predicate supported its finding of guilt.

Thus, in Mr. Tipton's case, the *Shepard* documents do not establish with

"certainty" which potential predicates underlay the jury's ultimate § 924(c)

determinations.  The superseding indictment pointed to multiple possible predicate

offenses under 18 U.S.C. § 1959(a), 21 U.S.C. §§ 846, and 848(e)(1)(A).  *See*

Exhibit 1 at 15, 18.  The jury instructions, moreover, referred only to the general

terms used in the statute itself, stating that "[i]t is charged in the indictment that . . .

[the defendants] used a firearm during and in relationship – or in relation to the

commission of a crime of violence or a drug-trafficking crime."  Tr. 3221.  In

instructing the jury as to the burden of proof for Mr. Tipton's § 924(c) counts, this

Court stated only that "the government must prove the following two essential

elements beyond a reasonable doubt:  one, the defendant committed *the crime as*

*charged in the indictment*; and two, during and in relation to the commission of

*that* crime, the defendant knowingly used or carried a firearm."  Tr. 3222

23

(emphasis added).  Rather than identify any specific "crime charged in the indictment," however, this Court then merely listed "[t]he offenses alleged in Counts . . . Eight, Ten, Eleven, Thirteen, Fourteen, Sixteen, Seventeen, Eighteen, Nineteen, Twenty-one, Twenty-two, Twenty-three, Twenty-four, Twenty-five, Twenty-seven, Twenty-eight, Twenty-nine, Thirty" as "crimes of violence or drug trafficking crimes."  Tr. 3223.

For its part, the portion of special verdict form that addresses the § 924(c) counts refers only to "killing," which matches the language used to describe both the § 1959(a) and § 848(e) offenses on the verdict form.  As set forth below, however, neither § 1959(a) nor § 848(e) qualifies as a categorical "crime of violence" under *Davis*.

**B.**     **Section 1959(a) is Not Categorically a "Crime of Violence" and Thus Cannot Support a § 924(c) Conviction.**

While § 1959 was identified as a possible underlying crime for each of Mr. Tipton's § 924(c) convictions, its statutory language sets forth multiple crimes that are punishable when done "as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value from an enterprise engaged in racketeering activity, or for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity."  These crimes include (1) murder, (2) kidnapping, (3) maiming, (4) assault with a dangerous weapon, (5) assault resulting in serious bodily injury, (6)

24

a threat to commit a crime of violence, (7) attempt to commit the foregoing, or (8) conspiracy to commit the foregoing. 18 U.S.C. § 1959(a). In Mr. Tipton's case, the jury instructions and other *Shepard* documents identify as many as *four* types of § 1959 conduct—each of which categorically fails to qualify as a § 924(c) "crime of violence" following *Davis*. As even one invalid predicate undermines Mr. Tipton's § 924(c) convictions under the modified categorical approach, the resulting uncertainty leaves those convictions untenable.

        1.     *The jury was empowered to base Mr. Tipton's § 924(c) convictions on § 1959 conspiracy, which is not a categorical "crime of violence," and it may have done so.*

As the en banc Fourth Circuit made clear in *Simms*, conspiracy does not categorically qualify as a "crime of violence" and cannot support a § 924(c) conviction. *Simms*, 914 F.3d at 233-34. "[T]o convict a defendant of [a conspiracy] offense, the Government must prove only that the defendant agreed with another to commit actions that, if realized, would violate the [statute at issue]. Such an agreement does not invariably require the actual, attempted, or threatened use of physical force." *Id.* The instructions given by Mr. Tipton's trial court underscore this point, as they informed his jury that the only two elements needed to convict a defendant of conspiracy were "that two or more persons in some way or manner, positively or tacitly, came to a mutual understanding to try to accomplish a common and unlawful plan as charged in the indictment…[and] that

25

the defendant knowingly and willfully became a member of such a conspiracy." Tr. 3201. Elements of such vagueness and breadth would allow a defendant to be found guilty of conspiracy for an incredibly wide spectrum of conduct *and* culpability. It is accordingly impossible to discern precisely what degree of responsibility the jury ultimately assigned to Mr. Tipton—an uncertainty that undermines the reliability of his sentences to a degree that the Constitution cannot abide.

As noted above, 18 U.S.C. § 1959 includes conspiracy to commit any of the multiple crimes listed in the statute. In Mr. Tipton's case, this Court also specifically instructed the jury that it could base its finding of guilt on the crime charged *or* of "*conspir[acy]* to commit the crime charged in the particular count under consideration." Tr. 3220. It is therefore impossible to tell whether the jury found Mr. Tipton guilty of § 924(c) based upon a crime itself or the conspiracy to commit it. However, this Court must assume that the jury followed its instructions, which unequivocally stated that the § 924(c) conviction could be predicated on either. *United States v. Runyon*, 707 F.3d 475, 497 (4th Cir. 2013) (quoting *Richardson v. Marsh*, 481 U.S. 200, 206 (1987) ("Our analysis is governed, first and foremost, by the 'almost invariable assumption of the law that jurors follow their instructions'"); *see also United States v. Hager*, 721 F.3d 167, 189 (4th Cir. 2013) ("Without any evidence to the contrary, we must assume that the jury

26

followed the instructions given to it by the court."). Thus, in *McCall*, this Court vacated the defendant's § 924(c) conviction because conspiracy could not qualify as a § 924(c) predicate and the "liability in [the § 924(c) count] could have been based on committing assault with a dangerous weapon by either unlawful or malicious wounding or brandishing *or conspiring* to commit those offenses." 2019 WL 4675762, at *7 (emphasis added). The same is true here. Because conspiracy cannot qualify as a "crime of violence," all of Mr. Tipton's § 924(c) convictions are invalid.

2.      *After* Davis*, Mr. Tipton's § 924(c) convictions can no longer rest on § 1959 murder offenses.*

Even if conspiracy had not been included as an underlying offense, Mr. Tipton's § 1959 counts would not stand up to the categorical, elements-based approach now required for § 924(c) convictions after *Davis*. Pursuant to *Borden*, the level of mens rea needed for a crime of violence is "a purposeful or knowing mental state," 141 S. Ct. at 1830, which "excludes conduct, like recklessness, that is not directed or targeted at another," *ibid* at 1833. *See also United States v. Townsend*, 886 F.3d 441, 444–45 (4th Cir. 2018) ("'Use' of force means to act with a *mens rea* more culpable than negligence or recklessness."); *United States v. McNeal*, 818 F.3d 141, 154-55 (4th Cir. 2016) ("Although *Leocal* reserved the question of whether a reckless application of force could qualify as a 'use' of force, we answered that question two years later by ruling that recklessness was not

27

enough."); *see also Allred*, 942 F.3d at 652 ("[A]n offense will not have as an element the 'use' of force sufficient to qualify as a violent felony if it does not have the requisite level of *mens rea*."); *United States v. Middleton*, 883 F.3d 485, 497 (4th Cir. 2018) ("The difference in mental states distinguishes the reckless causation of death…that cannot constitute a "use…of physical force," from the intentional causation of injury…that constituted "use of…physical force.") (Judge Floyd, writing for the plurality); *Popal v. Gonzales*, 416 F.3d 249, 254 (3d Cir. 2005) (holding that a court may not assume a *mens rea* greater than "the minimum culpability required for a conviction under" the predicate statute and finding that, because the predicate statute "requires a *mens rea* of recklessness, rather than intent, it is not a crime of violence under § 16(a)"). Accordingly, a crime that could be committed without intent sweeps more broadly than § 924(c) allows and cannot qualify as a "crime of violence" under the elements clause. *Garcia*, 455 F.3d at 468 ("[The predicate state statute] does not contain an element that there be the intentional employment of physical force against a person or thing, and thus is beyond the scope of 18 U.S.C. § 16(a)").

In Mr. Tipton's case, § 1959(a) fails under this standard. The *Shepard* documents are devoid of any reference to a specific "murder" statute to which the categorical, elements-based approach required by *Davis* could be applied. Indeed, no specific "murder" charge or statute is referenced in the indictment, the jury

28

instructions, or the jury's special verdict form.  As an elements-based analysis of a murder statute can only occur where there is a statute to analyze, the lack of any reference to any specific murder statute makes it *impossible* to determine whether Mr. Tipton § 1959 convictions established the necessary *mens rea* to satisfy the intent and elements required for a conviction under § 924(c)'s remaining force clause.  As a result, it cannot be shown that he was convicted of a crime that is categorically a "crime of violence."

But even if Mr. Tipton's § 1959 conviction *had* rested on the federal murder statute, 18 U.S.C. § 1111, it would not categorically qualify as a "crime of violence," because that statute does not require intent.

*First*, homicide under § 1111 encompasses *felony* murders—including those based on felonies resulting in death where neither the underlying felony, nor the resultant death requires the intentional use of violent physical force. Thus, the government has elsewhere conceded, in light of *Borden*, that kidnapping resulting in death does not constitute a crime of violence. Government's Unopposed Motion to Vacate, Entry ID: 5115866, *United States v. Ross*, Nos. 18-2800/18-2877 (8th Cir., Jan. 7, 2022) ( "After *Borden*...[defendants'] convictions under Count Three must be vacated because kidnapping resulting in death is no longer a crime of violence under the force clause of 18 U.S.C. § 924(c)(3)(A)."); *see also United States v. McDuffy*, 890 F.3d 796 (9th Cir. 2018) (holding that bank robbery

29

resulting in even accidental death satisfies the mens rea requirement).   Because

intent is not required for its commission, § 1959(a)(1) sweeps more broadly than §

924(c)(3)(A) and cannot categorically qualify as a crime of violence.

*Second*, second degree murder does not require a *mens rea* necessary to

satisfy the force clause. The elements of § 1111 are (1) "unlawful killing of a

human being" and (2) "malice aforethought," which does not require the higher

degree of *mens rea* demanded by § 924(c).  Instead, the "malice aforethought"

element of § 1111 requires only evidence of conduct that is "reckless and wanton

and a gross deviation from a reasonable standard of care, of such a nature that a

jury is warranted in inferring that defendant was aware of a serious risk of death or

serious bodily harm."  *United States v. Fleming*, 739 F.2d 945, 947–48 (4th Cir.

1984); *United States v. Begay*, 934 F.3d 1033, 1040 (9th Cir. 2019) ("[S]econd-

degree murder may be committed recklessly—with a depraved heart mental

state—and need not be committed willfully or intentionally") (en banc review is

pending); *Simpkins v. State,* 596 A.2d 655, 657 (Md. Ct. Spec. App. 1991) (holding

second-degree murder requires only "the intent to do an act under circumstances

manifesting extreme indifference to the value of human life (depraved heart)" or

"the intent to commit a dangerous felony."); Dep't of Justice, Violent Crimes in

Aid of Racketeering: A Manual for Federal Prosecutors § 9-110.000 (2006) ("The

government need not show a subjective intent to kill" to establish malice

30

aforethought.).  Accordingly, because § 1111 encompasses second-degree murders, and "second-degree murder [as defined in § 1111] can be committed recklessly, rather than intentionally," § 1111 does not require the government to prove an intentional killing, and does not categorically constitute a "crime of violence." *Begay*, 934 F.3d at 1040.

While the Fourth Circuit has ruled that some second-degree murder statutes can categorically qualify as "crimes of violence," those rulings addressed specific statutes that were available for the required elements-based analysis and rested upon the conclusion that those statutes required intent.  In *In re Irby*, for example, the Fourth Circuit examined a defendant's convictions for retaliatory murder under 18 U.S.C. §§ 1513 and 1111.  858 F.3d 231, 234 (4th Cir. 2017).[15]  As a specific murder statute could be identified for analysis, the court was able to determine that each of the necessary elements to constitute a "crime of violence"—including the *mens rea* element—were present in § 1513.  *In re Irby*, 858 F.3d at 234 (Section 1513 "makes it an offense to intentionally kill another person in retaliation" (emphasis added)).  Similarly, in *United States v. Parrish*, the defendant's conviction for second-degree murder was pursuant to North Carolina law, which

---

[15]The defendant in *Irby* was also convicted of 18 U.S.C. § 1111, which the court described as *setting forth the punishment for a violation of § 1513*.  *In re Irby*, 858 F.3d 231, 234 (4th Cir. 2017).

"is proved by *intentional* conduct." 767 Fed. Appx. 440, 442 (4th Cir. 2019) (quotation omitted) (emphasis added). Here such an analysis is impossible because nothing in the record references a murder statute that categorically qualifies as a crime of violence. Accordingly, this Court has no way to identify and analyze the elements of the "murder" relied upon by the jury in reaching its verdict. For that reason, cases like *Irby* do not control—and, indeed, are irrelevant to—this court's analysis of Mr. Tipton's § 924(c) convictions.

Moreover, while *Borden* explicitly reserved the question of whether extreme recklessness or a "depraved heart" mental state would satisfy the force clause (a question not before the Court), *Borden*, 141 S. Ct. at 1825 n.4, the reasoning of both the plurality opinion and Justice Thomas's concurrence indicate that the level of intent required by the force clause could be satisfied only by purposeful acts, and not by *any* form of recklessness.

Despite its modifier, extreme recklessness is *still* recklessness, requiring a risk "far less than . . . substantial certainty." Wayne R. LaFave & Austin W. Scott, 2 Substantive Criminal Law § 14.4(a), Westlaw (3d ed. database updated Oct. 2020). And even tolerance of a large and dangerous risk is not the "deliberate choice of wreaking harm on another," that *Borden* rejected, but rather "mere indifference to risk." *Borden*, 141 S. Ct. at 1830 (plurality op.) (emphasis added).

Thus, even when the risk is "extreme," it remains just a possibility, and one that the defendant might have underestimated. Actors who disregard a risk that their conduct will create harmful force simply do not "use," "target," or "intend" that application of force in the way that an intentional violator does. See *Borden*, 141 S. Ct. at 1824-27 (plurality op.).[16] An interpretation of § 924(c)(3)(A) that

---

[16]The *Borden* plurality held up a number of cases as examples of extreme reckless conduct that do not fit the common understanding of violent felonies— most prominently reckless driving, but also jumping from a mall balcony and skiing at dangerously fast speeds. 141 S. Ct. at 1831.

Similar conduct has been found sufficient for conviction of crimes that require "extreme" recklessness. Carelessly throwing a piece of lumber into a street would be sufficient in Virginia courts to support a murder conviction. *See Mosby v. Commonwealth*, 190 S.E. 152, 154 (Va. 1937); *Whiteford v. Commonwealth*, 27 Va. 721, 724–25 (Va. Gen. Ct. 1828). Instructing an undocumented alien to hide in a truck compartment and failing to tell Border Patrol agents of his hiding place is sufficient to support a federal conviction for second degree murder. *United States v. Escobedo-Moreno*, 781 F. Appx. 312, 314, 318 (5th Cir. 2019). Failing to properly train and control aggressive dogs, so that the defendant "could have reasonably foreseen" that they could injure someone, is sufficient to support a murder conviction in Kansas. *State v. Davidson*, 987 P.2d 335 (Kan. 1999).

And reckless or drunk driving are the paradigmatic examples of reckless conduct that "do[es] not fit within the ordinary meaning of the term violent crime" and would not satisfy the force clause according to the *Borden* plurality. 141 S. Ct. at 1830-31 (plurality op.) (internal quotation marks omitted). It is well established that reckless and intoxicated driving can count as extremely reckless behavior. *See Knight v. Commonwealth*, 733 S.E.2d 701, 708-09 (Va. Ct. App. 2012) (driver who drove a car at a high speed into a turn lane); *United States v. Lemus-Gonzalez*, 563 F.3d 88, 93 (5th Cir. 2009) (intoxicated driver who transported aliens without seatbelts at a high rate of speed); *State v. Barstad*, 970 P.2d 324, 326 (Wash. Ct. App. 1999) (intoxicated driver who sped through red light at busy intersection), *review denied*, 137 Wash. 2d 1037, 980 P.2d 1284 (1999); *State v.*

33

would sweep in these "extremely reckless" violators would have results even harsher than those that the *Borden* plurality considered implausibly severe.

As noted *supra*, the Ninth Circuit reached that same conclusion in *Begay*, a pre-*Borden* case in which it concluded that second-degree murder does not categorically constitute a crime of violence because it can be committed recklessly, rather than intentionally. *Begay*, 934 F.3d at 1040. Even though the recklessness required for commission of second-degree murder was "extreme," the Ninth Circuit deemed the specific level of recklessness inconsequential to the result, as its precedent required intentional use of force, and "[r]eckless murder, no matter how extreme, is not intentional." *Id.*

In sum, and as the *Borden* plurality explained, reviewing courts "'cannot forget that we ultimately are determining the meaning of the term 'crime of violence.'" 141 S. Ct. at 1830 (quoting *Leocal*, 543 U.S. at 11) (emphasis added). And that term is meant to establish and police the boundaries between even

---

*Braden*, 867 S.W.2d 750, 753 (Tenn. Crim. App. 1993) (intoxicated driver who took a blind curve at over eighty miles per hour); *Allen v. State*, 611 So.2d 1188, 1189-90 (Ala. Crim. App. 1992) (intoxicated driver who swerved into oncoming traffic); *State v.Woodall*, 744 P.2d 732, 736 (Ariz. Ct. App. 1987) (intoxicated driver who crossed the center line while speeding); *Pears v. State,* 672 P.2d 903, 909 (Alaska App.1983) (intoxicated driver who ran stop signs, yield signs, and traffic lights), *remanded on other grounds*, 698 P.2d 1198 (Alaska 1985).

34

extreme, reckless conduct and the "narrow 'category of *violent*, *active* crimes'" that it defines. *Id.* (quoting *Johnson*, 559 U.S. at 140) (emphasis added).

*Third,* both §§ 1959(a)(1) and 1959(a)(2) categorically fail to qualify as "crime[s] of violence" because, like a wide range of other offenses under state and federal law, its plain language criminalizes acts of *omission* that require *no* physical force, much less the "violent force" required by § 924(c)'s force clause. And, under the categorical approach, that fact is disqualifying. *See, e.g., United States v. Gomez,* 690 F.3d 194, 201 (4th Cir. 2012) (holding that a statute categorically fails to qualify as a "crime of violence" under element clause because "a defendant may be found guilty" under the statute "by committing an affirmative act or by neglecting to act, neither of which necessarily requires the use of physical force); *see also Torres-Miguel,* 701 F.3d at 169-70 (citing examples); *United States v. Mayo,* 901 F.3d 218, 227 (3d Cir. 2018) (holding that offense did not categorically qualify as a "crime of violence" under elements clause because convictions "have been upheld not because a defendant used physical force against the victim, but because serious bodily injury occurred, as with the deliberate failure to provide food or medical care"). *But see United States v. Rumley*, 952 F.3d 538 (4th Cir. 2020) (explaining, though in dicta,—"that the intentional infliction of bodily harm requires a use of physical force, *even if* the means used are indirect").

35

3.      *Maiming is not categorically a crime of violence and thus cannot support Mr. Tipton's 924(c) convictions.*

An analysis of Mr. Tipton's "maiming" charges leads to the same conclusion. The indictment fails to identify a particular statute defining maiming, and the jury instructions say even less about maiming than they do about murder. In fact, they reference the counts by number only and do not even describe them. As a result, it is *impossible* to determine whether Mr. Tipton was convicted of maimings that would categorically qualify as "crimes of violence."

Additionally, maiming under § 1959(a)(2) suffers from the same defects discussed above as to murder: it criminalizes acts of omission that require no physical force whatsoever. Maiming is an assault, which itself does not require actual violent physical force. *See United States v. Royal,* 731 F.3d 333, 341 (4th Cir. 2013). Moreover, the intent element of maiming does not convert assault into a "violent felony" because it can be accomplished merely by *causing* injury rather than the use of strong physical force. *See Torres-Miguel,* 701 F.3d at 168 (holding that the threat of *any physical injury,* even "serious bodily injury or *death,"* does not necessarily require the use of physical force—let alone "violent force").

36

> 4.    *Mr. Tipton's 924(c) convictions cannot rest on assault resulting in serious bodily injury, which is not categorically a crime of violence.*

Count 26 charged Mr. Tipton with "assault resulting in serious bodily injury." Verdict, 22a. Because no intent is required for such a conviction, this is not categorically a crime of violence and thus does not support a conviction under § 924(c)(1)(A). *See United States v. Knife*, 592 F.2d 472, 482 (8th Cir. 1979) ("Section 113(f) requires only that the assault shall have resulted in serious bodily harm; the assault need not have been committed with a dangerous weapon, or with intent to do bodily harm.").

## C.    Mr. Tipton's § 848(e) Convictions Also Fail to Qualify Categorically as "Crimes of Violence" under § 924(c).

Section 848(e), which was identified as a possible underlying crime for both of Mr. Tipton's § 924(c) counts, but Mr. Tipton's convictions under § 848(e)(1)(A) likewise do not categorically qualify as crimes of violence under § 924(c)(3)(A) because they do not require 1) the intentional 2) use of any physical force by the defendant.

First, the *mens rea* required in the predicate crime § 848(e) includes an intent level of "extreme recklessness/grave risk of death," a level that falls short of the intent required for a crime of violence under *Borden, supra. See e.g., United States v. Alvarez*, 266 F.3d 587 (6th Cir. 2001) (permitting a jury instruction for § 848(e) that included a *mens rea* of recklessness creating grave

risk of death). Similarly, the Modern Federal Jury Instructions include language regarding a "grave risk of death."[17] The "risk" of death does not require the *intentional* use of physical force. *See also United States v. Winston*, 55 Fed. App'x 289, 300-01 (6th Cir. 2003) (upholding murder instruction that allowed for conviction based on *mens rea* of extreme recklessness, a question left open by *Borden*.)  As noted *supra*, no degree of recklessness can satisfy the *mens rea* required by § 924(c).

Second, § 848(e)(1) authorizes a conviction for any person who, *inter* alia, "counsels, commands, induces, procures, or causes the intentional killing of an individual" in furtherance of a CCE.  None of these actions – not counseling, commanding, inducing, procuring, or causing a killing – necessitates the use of force; like conspiracy, they require only interaction with others regarding the underlying actions.  *Simms*, 914 F.3d at 233-34 (such third-party interactions do "not invariably require the actual, attempted, or threatened use of physical force").  Because the jury could have convicted Mr. Tipton under 848(e) for carrying a firearm while merely counseling his co-defendant, the court must assume that his

---

[17]Instruction 56-53 includes as the required intent that the defendant "intentionally engaged in conduct *that the defendant knew would create a grave risk of death to [the victim] and resulted in the death of [the victim]).* (Emphasis added.) *See* 3 Modern Federal Jury Instructions-Criminal P 56.07. While the jury is instructed that some conduct must be intentional, it does not require the intentional use of force.

§ 848(e) conviction rested on this "least serious of the disjunctive statutory conduct." *United States v. Chapman*, 666 F.3d 220, 228 (4th Cir. 2012). Therefore, a violation of § 848(e) would not categorically qualify as a "crime of violence" and cannot serve as the predicate for Mr. Tipton's § 924(c) convictions. As discussed *infra*, this variability in culpability further questions the soundness of his sentences of death, now that they are no longer buttressed by his unconstitutional Section 924(c) convictions.

The modified categorical approach does not support a different conclusion, as the available *Shepard* documents—the indictment, the jury instructions, and the verdict form—only underscore the ambiguity of the jury's finding. The indictment alleged that Mr. Tipton both "killed" *and* "counseled commanded, induced, procured, and caused" the killing. The jury instructions allow for a finding of guilt if Mr. Tipton "*either* intentionally killed, *or* counseled, commanded, induced, procured, *or* caused" the killing. Tr. 3217 (emphasis added). The jury was never directed to pick one or the other, and the Court "must assume that the jury followed the instructions given to it by the court." *Hager*, 721 F.3d at 189. The special verdict form offers no clarity, simply referring to the "killing" without

asking the jury to choose or identify the role it found Mr. Tipton had played.[18]

Accordingly, Mr. Tipton's § 848(e) convictions cannot categorically qualify as a crime of violence within § 924(c)'s force clause.

### III.   BECAUSE BOTH OF MR. TIPTON'S § 924(C) CONVICTIONS ARE INVALID AFTER *DAVIS*, MR. TIPTON IS ENTITLED TO BE RESENTENCED.

In light of the foregoing analysis, Mr. Tipton's five § 924(c) criminal charges and two convictions are and always have been unconstitutional; accordingly, they should never have been put to his jury.  As the Supreme Court recognized in *United States v. Tucker*, "the real question" for Mr. Tipton is "whether the sentence" for those of his convictions that remain in place "might have been different if the [jury] had known that at least two of [Mr. Tipton's] previous convictions had been unconstitutionally obtained."  404 U.S. 443, 448 (1972).  In keeping with *Tucker*, courts have held that a defendant must be resentenced on any valid convictions "unless it can be ascertained from the record that a [jury's] sentence on a valid conviction was not affected" by invalid convictions.  *Bourgeois v. Whitley*, 784 F.2d 718, 721 (5th Cir. 1986); *see also Jerkins v. United States*, 530 F.2d 1203, 1204 (5th Cir. 1976) (same); *James v.*

---

[18]In order to be construed as consistent with the jury instructions, this reference must be considered shorthand for both clauses of § 848(e).  This Court must assume that the jury followed the jury instructions, which unequivocally instructed that the § 924(c) conviction could be predicated on any of the possible § 848(e) conduct listed.  *Hager*, 721 F.3d at 189.

*United States,* 476 F.2d 936 (8th Cir. 1973) (same).  Because this is a capital case, ascertaining whether the jury's sentence was affected by the invalid convictions must be guided by "[t]he fundamental respect for humanity underlying the Eighth Amendment's prohibition against cruel and unusual punishment gives rise to *a special need for reliability* in the determination that death is the appropriate punishment in any capital case." *Johnson v. Mississippi,* 486 U.S. 578, 584 (1988) (citation omitted) (emphasis added).  Indeed, because "[t]he decision to exercise the power of the State to execute a defendant is unlike any other decision citizens and public officials are called upon to make," the Supreme Court has made clear that "[t]he *possibility* that [a defendant's] jury conducted its task improperly certainly is great enough to require resentencing." *Mills v. Maryland,* 486 U.S. 367, 383–84 (1988) (emphasis added).

There is more than a possibility here that the jury considered improper factors.  The record shows that the government's penalty phase case relied almost exclusively on evidence from the guilt-innocence phase of the trial.  The government "did not put on a great deal of evidence" during the penalty phase.  T. 3883–3884, 3891, 3392–3893.  Rather, it urged the jury to rely upon its findings "in your guilt phase verdict."  T. 3893.  Thus, the jury's decision to impose the death penalty was intertwined with the invalid § 924(c) convictions, making it not

41

merely possible, but likely, that Mr. Tipton's two unconstitutional § 924(c) convictions profoundly affected the jury's decision to impose a sentence of death.

In light of the Eighth Amendment's requirement of reliability in capital sentencing, the "possibility" that the jury improperly relied upon the unconstitutional § 924(c) convictions in sentencing him to death requires that Mr. Tipton be resentenced on the remaining counts.

## CONCLUSION AND PRAYER FOR RELIEF

For all the reasons set forth above, Mr. Tipton respectfully asks this Court to vacate his convictions and sentences on Counts 20 and 26, the invalid charges under 18 U.S.C. § 924(c).

Mr. Tipton further requests the following relief:

a) That this Court vacate Mr. Tipton's sentences on all of the remaining counts and order a new sentencing proceeding on those counts.

b) Any other relief that may be necessary to correct Mr. Tipton's invalid convictions and sentence and put him back in the position he would have been in were it not for having been convicted of non-existent crimes.

[Signatures on following page.]

Respectfully submitted on this, the 19th day of February, 2022.

/s/Frederick R. Gerson
Frederick R. Gerson
VSB #39968
Bank Of America Center
1111 East Main Street, 16th Floor
Richmond, VA 23219
fgerson@dagglaw.com

Stephen Northup
VSB #16547
Troutman Sanders LLP
P.O. Box 1122
Richmond, Virginia 23218-1122
(804) 697-1240
(fax) (804) 698-5120
steve.northup@troutmansanders.com

*Jeffrey Lyn Ertel
Ga. Bar No. 249966
Federal Defender Program, Inc.
101 Marietta Street, Suite 1500
Atlanta, Georgia 30303
404-688-7530
(fax) 404-688-0768
Jeff_Ertel@fd.org

*Gerald W. King, Jr.
Chief, Fourth Circuit Capital Habeas Unit
Federal Public Defender
Western District of North Carolina
129 West Trade Street, Suite 300
Charlotte, NC 28202
Tel: (704) 374-0720
Direct: (704) 688-6946
Gerald_King@fd.org

*Applications for admission *pro hac vice* pending.

Counsel for Richard Tipton, III.

43

## CERTIFICATE OF SERVICE

I certify that on this, the 19th day of February, 2022, the foregoing document

was served on all parties or their counsel of record though the CM/ECF system and

will be served electronically on the attorney listed below:

Richard Cooke, Esq.
U.S. Attorney's Office
Eastern District of Virginia
2100 Jamison Avenue
Alexandria, Virginia 22314

This, the 19th day of February, 2022.

$\hspace{6cm}$ */s/Frederick R. Gerson*
$\hspace{6cm}$ Frederick R. Gerson
$\hspace{6cm}$ VSB #39968
$\hspace{6cm}$ Durrette, Arkema, Gerson & Gill, PC
$\hspace{6cm}$ Bank Of America Center
$\hspace{6cm}$ 1111 East Main Street, 16th Floor
$\hspace{6cm}$ Richmond, VA 23219
$\hspace{6cm}$ fgerson@dagglaw.com

Exhibit 1

*United States v. Tipton*, EDVA, No. 3:92Cr68

Superseding Indictment.



IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

JUL 2 0 1992

CLERK, U.S. DISTRICT COURT
RICHMOND, VA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL NO. 3:92CR68 |
| ) | |
| RICHARD TIPTON aka Whittey ) | 21 USC § 846 |
| (Counts 1-7, 11-30, 32-33) ) | Conspiracy |
| ) | (Count 1) |
| CORY JOHNSON aka "O" aka "CO" ) | |
| (Counts 1, 2, 8-32) ) | 21 USC § 848 |
| ) | Continuing Criminal Enterprise |
| JAMES H. ROANE, JR., aka "J.R." ) | (Count 2) |
| (Counts 1, 2, 5-16, 32) ) | |
| ) | 21 USC § 848(e)(1)(A) & 18 USC § 2 |
| VERNON LANCE THOMAS ) | Murder in Furtherance of CCE |
| aka Anthony Mack aka "V" ) | (Counts 3,5,8,11,17,18,19,24,25) |
| (Counts 1, 2, 11-16, 24-30, 32) ) | |
| ) | 18 USC § 924(c) |
| JERRY R. GAITERS ) | Use of Firearm in Relation to Crime of |
| (Counts 1, 17-23, 32) ) | Violence or Drug Trafficking Crime |
| ) | (Counts 6,9,12,15,20,26) |
| STERLING HARDY ) | |
| (Counts 1, 14-16, 32) ) | 18 USC §§ 1959 & 2 |
| ) | Violent Crimes in Aid of Racketeering |
| SANDRA REAVIS ) | (Counts 4,7,10,13,14,16,21-23,27-30) |
| (Count 1) ) | |
| ) | 21 USC § 841(a)(1) |
| ) | Distribution of Crack |
| ) | (Count 31) |
| ) | |
| ) | 21 USC § 841(a)(1) & 18 USC § 2 |
| ) | Possession w/Intent to Distribute Crack |
| ) | (Counts 32-33) |

00085

## SECOND SUPERSEDING INDICTMENT

### JULY 1992 TERM - At Richmond

### COUNT ONE

THE GRAND JURY CHARGES that from on or about January, 1989, the exact date being unknown to the grand jury, and continuously thereafter up to and including the filing of this indictment, in the Eastern District of Virginia, and elsewhere, the defendants, RICHARD TIPTON, aka Whittey, CORY JOHNSON, aka "O," aka "CO", VERNON LANCE THOMAS, aka Anthony Mack, aka "V", JAMES H. ROANE, JR., aka "J.R.", JERRY GAITERS, STERLING HARDY, and SANDRA REAVIS, did unlawfully, knowingly, and intentionally combine, conspire, confederate, and agree with each other and with other persons, both known and unknown to the grand jury to commit the following offenses against the United States of America:

1.      To knowingly, intentionally, and unlawfully possess with the intent to distribute, and to distribute, a Schedule II narcotic controlled substance, that is, at least fifty (50) grams or more of a mixture or substance described in Title 21, United States Code, Section 841(b)(1)(A)(ii), which contains cocaine base, in violation of Title 21, United States Code, Section 841(a)(1).

### WAYS, MANNERS, AND MEANS OF THE CONSPIRACY

The ways, manners, and means by which the conspirators carried out the purpose of the conspiracy includes, but are not limited to, the following:

1.      It was part of the conspiracy that defendants and co-conspirators would cause cocaine to be purchased in New York City, and elsewhere, and transported to Richmond, Virginia, where the cocaine was to be distributed.

2

2.    It was further part of the conspiracy that once the defendants and co-defendants would receive cocaine in Richmond, Virginia, they would cook the cocaine in such a way to make it cocaine base ("crack" or "cook-em-up"), which cocaine was intended to be distributed on the streets of Richmond, Virginia.

3.    It was further part of the conspiracy that the defendants and co-defendants would induce other individuals to work for them selling the crack cocaine on the streets of Richmond, Virginia.

4.    It was further part of the conspiracy to engage in a pattern of violent activity, including murder, assaults, and threats of violence to further the goals of the conspiracy.  To that end, members of the conspiracy bought, possessed, and transferred firearms, which firearms were used in their violent activities.

### OVERT ACTS

In furtherance of this conspiracy, and to bring about the objects and goals of the conspiracy, the defendants, co-conspirators, and unindicted co-conspirators committed overt acts in the Eastern District of Virginia and elsewhere, including, but not limited to, the following:

1.    In or about December, 1991, defendants RICHARD TIPTON, aka Whittey, and CORY JOHNSON, aka "O," aka "CO", assaulted an individual known to the grand jury over a cocaine debt.

2.    On or about January 5, 1992, RICHARD TIPTON, aka Whittey, murdered Douglas A. Talley.

3

00087

3.    On or about January 13, 1992, RICHARD TIPTON, aka Whittey, and JAMES H. ROANE, JR., aka "J.R." murdered Douglas Moody.

4.    On or about January 13, 1992, an individual known to the grand jury, disposed of the knife used by JAMES ROANE, JR., aka "J.R.", to kill Doug Moody.

5.    On or about January 14, 1992, members of the conspiracy caused an individual known to the grand jury to purchase one Glock handgun and two Tech 9mm handguns from Southern Gun World in Richmond, Virginia.

6.    On or about January 14, 1992, JAMES ROANE, JR., aka "J.R." and CORY JOHNSON, aka "O;" aka "CO", murdered Peyton Maurice Johnson.

7.    On or about January 15, 1992, CORY JOHNSON, aka "O," aka "CO", distributed a certain amount of cocaine base ("crack" or "cook em up") in Richmond, Virginia.

8.    On or about January 29, 1992, RICHARD TIPTON aka Whittey, JAMES ROANE, JR., aka "J.R.", and CORY JOHNSON, aka "O," aka "CO", VERNON LANCE THOMAS, aka Anthony Mack, aka "V", murdered Louis J. Johnson, Jr., in Richmond, Virginia.

9.    On or about January 31, 1992, CORY JOHNSON, aka "O," aka "CO", assaulted an individual known to the grand jury over a drug debt, and solicited that individual to kill Dorothy Armstrong.

10.    On or about February 1, 1992, JAMES ROANE, JR., aka "J.R.", RICHARD TIPTON aka Whittey, CORY JOHNSON, aka "O," aka "CO", VERNON

4

00088

LANCE THOMAS, aka Anthony Mack, aka "V",and STERLING HARDY murdered Torrick Brown and shot Martha McCoy in Richmond, Virginia.

11.     On or about February 1, 1992, RICHARD TIPTON aka Whittey, CORY JOHNSON, aka "O," aka "CO", and JERRY GAITERS murdered Bobby Long, Anthony Carter, and Dorothy Mae Armstrong aka Mousey, in Richmond, Virginia.

12.     On or about February 2, 1992, defendants RICHARD TIPTON aka Whittey, CORY JOHNSON, aka "O," aka "CO", STERLING HARDY, VERNON LANCE THOMAS, aka Anthony Mack, aka "V", JAMES H. ROANE, JR., aka "J.R.", and JERRY GAITERS possessed with the intent to distribute crack cocaine.

13.     On or about February 13, 1992, STERLING HARDY solicited the murders of certain individuals.

14.     On or about February 19, 1992, RICHARD TIPTON, aka Whittey, CORY JOHNSON, aka "O," aka "CO", and VERNON LANCE THOMAS, aka Anthony Mack, aka "V", murdered Curtis Thorne, Linwood Chiles, and shot, seriously wounding, Gwendolyn Green and Priscilla Green, in Richmond, Virginia.

15.     On or about April 10, 1992, RICHARD TIPTON, aka Whittey, possessed with the intent to distribute crack cocaine in Richmond, Virginia.

(In violation of Title 21, United States Code, Section 846).

## COUNT TWO

THE GRAND JURY FURTHER CHARGES that from at least January, 1991, and continuously thereafter up to and including the date of the filing of this indictment, in the Eastern District of Virginia, and elsewhere, the defendants RICHARD TIPTON,

5

00089

aka Whittey, CORY JOHNSON, aka "O", aka "CO," JAMES H. ROANE, JR., aka "JR," and VERNON LANCE THOMAS, aka Anthony Mack, aka "V", unlawfully, intentionally, and knowingly, did engage in a Continuing Criminal Enterprise, that is, they did violate Title 21, United States Code, Section 841 and 846, including, but not limited to, those violations alleged in the instant indictment, which are realleged and incorporated by reference herein, and did commit other violations of said statutes, which violations were part of a continuing series of violations of said statutes undertaken by RICHARD TIPTON, aka Whittey, CORY JOHNSON, aka "O", aka "CO," JAMES H. ROANE, JR., aka "JR," and VERNON LANCE THOMAS, aka Anthony Mack, aka "V", in concert with at least five other persons with respect to whom they occupied positions of organizer, supervisor, and manager, and from which continuing series of violations the defendant, RICHARD TIPTON aka Whittey, CORY JOHNSON, aka "O", aka "CO," JAMES H. ROANE, JR., aka "JR," and VERNON LANCE THOMAS, aka Anthony Mack, aka "V", obtained substantial income and resources.

(In violation of Title 21, United States Code, Section 848.)

## COUNT THREE

THE GRAND JURY FURTHER CHARGES that on or about January 5, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendant RICHARD TIPTON aka Whittey, while engaged in and working in furtherance of a Continuing Criminal Enterprise, 21 USC § 848(a), knowingly, intentionally, and unlawfully killed and counseled, commanded, induced, procured, and caused the intentional killing of Douglas A. Talley, and such killing resulted.

6

(In violation of Title 21, United States Code, Section 848(e)(1)(A) and Title 18, United States Code, Section 2.).

## COUNT FOUR

THE GRAND JURY FURTHER CHARGES that on or about January 5, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendant, RICHARD TIPTON aka Whittey, did knowingly, intentionally, and unlawfully cause the murder of Douglas Talley, as consideration for the receipt of, and as consideration for a promise and agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining and increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

## COUNT FIVE

THE GRAND JURY FURTHER CHARGES that on or about January 13, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants RICHARD TIPTON aka Whittey, and JAMES H. ROANE, JR., aka "J.R.", while engaged in and working in furtherance of a Continuing Criminal Enterprise, 21 USC § 848(a), knowingly, intentionally, and unlawfully killed and counseled, commanded, induced, procured, and caused the intentional killing of Douglas Moody, and such killing resulted.

(In violation of Title 21, United States Code, Section 848(e)(1)(A) and Title 18, United States Code, Section 2.).

7

00091

## COUNT SIX

THE GRAND JURY FURTHER CHARGES that on or about January 13, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants RICHARD TIPTON, aka Whittey, and JAMES H. ROANE, JR., aka "J.R.", did knowingly, willfully, and unlawfully use a firearm, during and in relation to a crime of violence or a drug trafficking crime, which is a felony prosecutable in a court of the United States, that is, a violation of Title 21, United States Code, Section 846 and 848, and Title 18, United States Code, Section 1959, as set forth in Counts One, Five and Seven of this Indictment. (In violation of Title 18, United States Code, Sections 924(c) and 2.)

## COUNT SEVEN

THE GRAND JURY FURTHER CHARGES that on or about January 13, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants; RICHARD TIPTON, aka Whittey, and JAMES H. ROANE, JR., aka "J.R.", did knowingly, intentionally, and unlawfully cause the murder of Douglas Moody, as consideration for the receipt of, and as consideration for a promise and agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining and increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

8

00092

## COUNT EIGHT

THE GRAND JURY FURTHER CHARGES that on or about January 14, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants JAMES H. ROANE, JR., aka "J.R.", CORY JOHNSON, aka "O," aka "CO", and while engaged in and working in furtherance of a Continuing Criminal Enterprise, 21 USC § 848(a), knowingly, intentionally, and unlawfully killed and counseled, commanded, induced, procured, and caused the intentional killing of Peyton Maurice Johnson, and such killing resulted.

(In violation of Title 21, United States Code, Section 848(e)(1)(A) and Title 18, United States Code, Section 2.).

## COUNT NINE

THE GRAND JURY FURTHER CHARGES that on or about January 14, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants JAMES H. ROANE, JR., aka "J.R.", and CORY JOHNSON, aka "O," aka "CO", did knowingly, willfully, and unlawfully use a firearm, during and in relation to a crime of violence or a drug trafficking crime, which is a felony prosecutable in a court of the United States, that is a violation of Title 21, United States Code, Sections 846 and 848, and Title 18, United States Code, Section 1959, as set forth in Counts One, Eight and Ten of this Indictment. (In violation of Title 18, United States Code, Sections 924(c) and 2.)

9

00093

## COUNT TEN

THE GRAND JURY FURTHER CHARGES that on or about January 14, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, JAMES H. ROANE, JR., aka "J.R." and CORY JOHNSON, aka "O," aka "CO", did knowingly, intentionally, and unlawfully cause the murder of Peyton Maurice Johnson, as consideration for the receipt of, and as consideration for a promise and agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining and increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

## COUNT ELEVEN

THE GRAND JURY FURTHER CHARGES that on or about January 29, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants RICHARD TIPTON aka Whittey, JAMES H. ROANE, JR., aka "J.R.", CORY JOHNSON, aka "O," aka "CO", and VERNON LANCE THOMAS, aka Anthony Mack, aka "V", while engaged in and working in furtherance of a Continuing Criminal Enterprise, 21 USC § 848(a), knowingly, intentionally, and unlawfully killed and counseled, commanded, induced, procured, and caused the intentional killing of Louis J. Johnson, Jr., and such killing resulted.

(In violation of Title 21, United States Code, Section 848(e)(1)(A) and Title 18, United States Code, Section 2.).

10

00094

## COUNT TWELVE

THE GRAND JURY FURTHER CHARGES that on or about January 29, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON aka Whittey, JAMES H. ROANE, JR., aka "J.R.", CORY JOHNSON, aka "O," aka "CO", and VERNON LANCE THOMAS, aka Anthony Mack, aka "V", did knowingly, willfully, and unlawfully use a firearm, during and in relation to a crime of violence or a drug trafficking crime, which is a felony prosecutable in a court of the United States, that is a violation of Title 21, United States Code, Sections 846 and 848, and Title 18, United States Code, Section 1959, as set forth in Counts One, Eleven and Thirteen of this Indictment.

(In violation of Title 18, United States Code, Sections 924(c) and 2.)

## COUNT THIRTEEN

THE GRAND JURY FURTHER CHARGES that on or about January 29, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON aka Whittey, JAMES H. ROANE, JR., aka "J.R.", CORY JOHNSON, aka "O," aka "CO", and VERNON LANCE THOMAS, aka Anthony Mack, aka "V", did knowingly, intentionally, and unlawfully cause the murder of Louis J. Johnson, Jr., as consideration for the receipt of, and as consideration for a promise and agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining and increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in

11

00095

narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

## COUNT FOURTEEN

THE GRAND JURY FURTHER CHARGES that on or about February 1, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON aka Whittey, JAMES H. ROANE, JR., aka "J.R.", CORY JOHNSON, aka "O," aka "CO", VERNON LANCE THOMAS, aka Anthony Mack, aka "V", and STERLING HARDY, did knowingly, intentionally, and unlawfully cause the murder of Torrick Brown, Jr., as consideration for the receipt of, and as consideration for a promise and agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining and increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

## COUNT FIFTEEN

THE GRAND JURY FURTHER CHARGES that on or about February 1, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON aka Whittey, JAMES H. ROANE, JR., aka "J.R.", CORY JOHNSON, aka "O," aka "CO", VERNON LANCE THOMAS, aka Anthony Mack, aka "V", and STERLING HARDY, did knowingly, willfully, and unlawfully use a firearm, during and in relation to a crime of violence or a drug trafficking crime, which is a felony prosecutable in a court

12

00096

of the United States, that is a violation of Title 21, United States Code, Section 846, and Title 18, United States Code, Section 1959, as set forth in Counts One, Fourteen and Sixteen of this Indictment.

(In violation of Title 18, United States Code, Sections 924(c) and 2.)

## COUNT SIXTEEN

THE GRAND JURY FURTHER CHARGES that on or about February 1, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON aka Whittey, JAMES H. ROANE, JR., aka "J.R.", CORY JOHNSON, aka "O," aka "CO", VERNON LANCE THOMAS, aka Anthony Mack, aka "V", and STERLING HARDY, did knowingly, intentionally, and unlawfully commit assault resulting in serious bodily injury to Martha McCoy, as consideration for the receipt of, and as consideration for a promise and agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining and increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

## COUNT SEVENTEEN

THE GRAND JURY FURTHER CHARGES that on or about February 1, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants RICHARD TIPTON aka Whittey, CORY JOHNSON, aka "O," aka "CO", and JERRY GAITERS, while engaged in and working in furtherance of a Continuing Criminal Enterprise, 21

13

00097

USC § 848(a), knowingly, intentionally, and unlawfully killed and counseled, commanded, induced, procured, and caused the intentional killing of Bobby Long, and such killing resulted.

(In violation of Title 21, United States Code, Section 848(e)(1)(A) and Title 18, United States Code, Section 2.).

## COUNT EIGHTEEN

THE GRAND JURY FURTHER CHARGES that on or about February 1, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants RICHARD TIPTON aka Whittey, CORY JOHNSON, aka "O," aka "CO", and JERRY GAITERS, while engaged in and working in furtherance of a Continuing Criminal Enterprise, 21 USC § 848(a), knowingly, intentionally, and unlawfully killed and counseled, commanded, induced, procured, and caused the intentional killing of Anthony Carter, and such killing resulted.

(In violation of Title 21, United States Code, Section 848(e)(1)(A) and Title 18, United States Code, Section 2.).

## COUNT NINETEEN

THE GRAND JURY FURTHER CHARGES that on or about February 1, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants RICHARD TIPTON aka Whittey, CORY JOHNSON, aka "O," aka "CO", and JERRY GAITERS, while engaged in and working in furtherance of a Continuing Criminal Enterprise, 21 USC § 848(a), knowingly, intentionally, and unlawfully killed and counseled, commanded,

14

00098

induced, procured, and caused the intentional killing of Dorothy Mae Armstrong, and such killing resulted.

(In violation of Title 21, United States Code, Section 848(e)(1)(A) and Title 18, United States Code, Section 2.).

## COUNT TWENTY

THE GRAND JURY FURTHER CHARGES that on or about February 1, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON aka Whittey, CORY JOHNSON, aka "O," aka "CO", and JERRY GAITERS, did knowingly, willfully, and unlawfully use a firearm, during and in relation to a crime of violence or a drug trafficking crime, which is a felony prosecutable in a court of the United States, that is a violation of Title 21, United States Code, Sections 846 and 848, and Title 18, United States Code, Section 1959, as set forth in Counts One, Seventeen, Eighteen & Nineteen and Twenty-One through Twenty-Three of this Indictment.

(In violation of Title 18, United States Code, Sections 924(c) and 2.)

## COUNT TWENTY-ONE

THE GRAND JURY FURTHER CHARGES that on or about February 1, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON aka Whittey, CORY JOHNSON, aka "O," aka "CO", and JERRY GAITERS, did knowingly, intentionally, and unlawfully cause the murder of Bobby Long, as consideration for the receipt of, and as consideration for a promise and agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity,

15

00099

and for the purpose of gaining entrance to and maintaining and increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

## COUNT TWENTY-TWO

THE GRAND JURY FURTHER CHARGES that on or about February 1, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON aka Whittey, CORY JOHNSON; aka "O," aka "CO", and JERRY GAITERS, did knowingly, intentionally, and unlawfully cause the murder of Anthony Carter, as consideration for the receipt of, and as consideration for a promise and agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining and increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

## COUNT TWENTY-THREE

THE GRAND JURY FURTHER CHARGES that on or about February 1, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON aka Whittey, CORY JOHNSON, aka "O," aka "CO", and JERRY GAITERS, did knowingly, intentionally, and unlawfully cause the murder of Dorothy Mae Armstrong, as consideration for the receipt of, and as consideration for a promise and

16

00100

agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining and increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

## COUNT TWENTY-FOUR

THE GRAND JURY FURTHER CHARGES that on or about February 19, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants RICHARD TIPTON, aka Whittey, VERNON LANCE THOMAS, aka Anthony Mack, aka "V", and CORY JOHNSON, aka "O," aka "CO", while engaged in and working in furtherance of a Continuing Criminal Enterprise, 21 USC § 848(a), knowingly, intentionally, and unlawfully killed and counseled, commanded, induced, procured, and caused the intentional killing of Curtis Thorne, and such killing resulted.

(In violation of Title 21, United States Code, Section 848(e)(1)(A) and Title 18, United States Code, Section 2.).

## COUNT TWENTY-FIVE

THE GRAND JURY FURTHER CHARGES that on or about February 19, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants RICHARD TIPTON, aka Whittey, VERNON LANCE THOMAS, aka Anthony Mack, aka "V", and CORY JOHNSON, aka "O," aka "CO", while engaged in and working in furtherance of a Continuing Criminal Enterprise, 21 USC § 848(a), knowingly,

17

00101

intentionally, and unlawfully killed and counseled, commanded, induced, procured, and caused the intentional killing of Linwood Chiles, and such killing resulted.

(In violation of Title 21, United States Code, Section 848(e)(1)(A) and Title 18, United States Code, Section 2.).

## COUNT TWENTY-SIX

THE GRAND JURY FURTHER CHARGES that on or about February 19, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON, aka Whittey, VERNON LANCE THOMAS, aka Anthony Mack, aka "V", and CORY JOHNSON, aka "O," aka "CO", did knowingly, willfully, and unlawfully use a firearm, during and in relation to a crime of violence or a drug trafficking crime, which is a felony prosecutable in a court of the United States, that is a violation of Title 21, United States Code, Section 846 and 848, and Title 18, United States Code, Section 1959, as set forth in Counts One, Twenty-Four, Twenty-Five and Twenty-Seven through Thirty of this Indictment.

(In violation of Title 18, United States Code, Sections 924(c) and 2.)

## COUNT TWENTY-SEVEN

THE GRAND JURY FURTHER CHARGES that on or about February 19, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON, aka Whittey, VERNON LANCE THOMAS, aka Anthony Mack, aka "V", and CORY JOHNSON, aka "O," aka "CO", did knowingly, intentionally, and unlawfully cause the murder of Curtis Thorne, as consideration for the receipt of, and as

18

00102

consideration for a promise and agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining and increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

## COUNT TWENTY-EIGHT

THE GRAND JURY FURTHER CHARGES that on or about February 19, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON, aka Whittey, VERNON LANCE THOMAS, aka Anthony Mack, aka "V", and CORY JOHNSON, aka "O," aka "CO", did knowingly, intentionally, and unlawfully cause the murder of Linwood Chiles, as consideration for the receipt of, and as consideration for a promise and agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining and increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

## COUNT TWENTY-NINE

THE GRAND JURY FURTHER CHARGES that on or about February 19, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON, aka Whittey, VERNON LANCE THOMAS, aka Anthony Mack, aka "V", and CORY JOHNSON, aka "O," aka "CO", did knowingly, intentionally, and

00103

unlawfully cause the maiming of Priscilla Green, as consideration for the receipt of, and as consideration for a promise and agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining and increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

## COUNT THIRTY

THE GRAND JURY FURTHER CHARGES that on or about February 19, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON, aka Whittey, VERNON LANCE THOMAS, aka Anthony Mack, aka "V", and CORY JOHNSON, aka "O," aka "CO", did knowingly, intentionally, and unlawfully cause the maiming of Gwendolyn Green, as consideration for the receipt of, and as consideration for a promise and agreement to pay, something of pecuniary value from an enterprise engaged in racketeering activity, and for the purpose of gaining entrance to and maintaining and increasing position in an enterprise engaged in racketeering activity, said racketeering activity being dealing in narcotic or other dangerous drugs.

(In violation of Title 18, United States Code, Sections 1959 and 2.)

## COUNT THIRTY-ONE

THE GRAND JURY FURTHER CHARGES that on or about January 15, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendant, CORY

20

JOHNSON, aka "O," aka "CO", did knowingly and intentionally distribute a Schedule II narcotic controlled substance, that is, a mixture and substance described in Title 21, United States Code, Section 841(b)(1)(A)(ii), which contains cocaine base, commonly known as "crack," or "cook em up."

(In violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.)

## COUNT THIRTY-TWO

THE GRAND JURY FURTHER CHARGES that on or about February 2, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD TIPTON aka Whittey, CORY JOHNSON, aka "O," aka "CO", STERLING HARDY, VERNON LANCE THOMAS, aka Anthony Mack, aka "V", JAMES ROANE, JR., aka "J.R.", and JERRY GAITERS, did knowingly and intentionally possess with the intent to distribute a Schedule II narcotic controlled substance, that is, more than fifty (50) grams of a mixture and substance described in Title 21, United States Code, Section 841(b)(1)(A)(ii), which contains cocaine base, commonly known as "crack," or "cook em up."

(In violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.)

## COUNT THIRTY-THREE

THE GRAND JURY FURTHER CHARGES that on or about April 10, 1992, at Richmond, Virginia, in the Eastern District of Virginia, the defendants, RICHARD

21

00105

TIPTON aka Whittey, did knowingly and intentionally possess with the intent to distribute a Schedule II narcotic controlled substance, that is, more than fifty (50) grams of a mixture and substance described in Title 21, United States Code, Section 841(b)(1)(A)(ii), which contains cocaine base, commonly known as "crack," or "cook em up."

(In violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.)

A TRUE BILL:

ISI *Christopher F. Snead*
F O R E P E R S O N

RICHARD CULLEN
UNITED STATES ATTORNEY

By:

Howard C. Vick, Jr.
Assistant United States Attorney

William Parcell
Special Assistant U.S. Attorney

22

00106

**Exhibit 2**

*United States v. Tipton*, **EDVA, No. 3:92Cr68**

**Verdict Form.**

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

UNITED STATES OF AMERICA )
)
v. )    Criminal Case No. 3:92CR68-01
)
RICHARD TIPTON )
  a.k.a. "Whittey" )
)



**VERDICT**

WE, THE JURY, FIND as follows:

**Count 1:**      Conspiracy to Distribute Controlled Substance

<u>      Guilty      </u>
(Guilty or Not Guilty)

**Count 2:**      Continuing Criminal Enterprise

<u>Question</u>: Do you find that the government has proven, beyond a reasonable doubt, that a Continuing Criminal Enterprise existed as charged in the indictment?

Yes: <u>  Yes  </u>        No: <u>      </u>

If you indicated above that a Continuing Criminal Enterprise did <u>not</u> exist, you must find the defendant, RICHARD TIPTON, Not Guilty as to Count 2.

If you indicated that a Continuing Criminal Enterprise <u>did</u> exist, you must now determine whether defendant RICHARD TIPTON is Guilty or Not Guilty of the crime of engaging in that continuing criminal enterprise as charged in Count 2, and enter your finding below:

<u>    Guilty    </u>
(Guilty or Not Guilty)

465



**Count 3:**       Killing of Douglas A. Talley while Engaged In or Working in Furtherance of a Continuing Criminal Enterprise

(If you indicated, in response to the Question set forth under Count 2 above, that a Continuing Criminal Enterprise did <u>not</u> exist, you must find the defendant Not Guilty as to this Count).

_____Guilty_____
(Guilty or Not Guilty)

**Count 4:**       Killing of Douglas A. Talley to Maintain or Increase Position in Racketeering Enterprise

_____Guilty_____
(Guilty or Not Guilty)

**Count 5:**       Killing of Douglas Moody while Engaged In or Working in Furtherance of a Continuing Criminal Enterprise

(If you indicated, in response to the Question set forth under Count 2 above, that a Continuing Criminal Enterprise did <u>not</u> exist, you must find the defendant Not Guilty as to this Count).

_____Not Guilty_____
(Guilty or Not Guilty)

**Count 6:**       Use of Firearm in Relation to Killing of Douglas Moody

_____Not Guilty_____
(Guilty or Not Guilty)

**Count 7:**       Killing of Douglas Moody to Maintain or Increase Position in Racketeering Enterprise

_____Not Guilty_____
(Guilty or Not Guilty)

Defendant RICHARD TIPTON is not charged in Counts 8-13 of the indictment.

Count 14:    Killing of Torrick Brown, Jr., to Maintain or Increase Position in Racketeering Enterprise

_____Not Guilty_____
(Guilty or Not Guilty)


Count 15:    Use of Firearm in Relation to Killing of Torrick Brown, Jr., and Maiming of Martha McCoy

_____Not Guilty_____
(Guilty or Not Guilty)


Count 16:    Maiming of Martha McCoy to Maintain or Increase Position in Racketeering Enterprise

_____Not Guilty_____
(Guilty or Not Guilty)


Count 17:    Killing of Bobby Long while Engaged In or Working in Furtherance of a Continuing Criminal Enterprise

(If you indicated, in response to the Question set forth under Count 2 above, that a Continuing Criminal Enterprise did not exist, you must find the defendant Not Guilty as to this Count).

_____Guilty_____
(Guilty or Not Guilty)


Count 18:    Killing of Anthony Carter while Engaged In or Working in Furtherance of a Continuing Criminal Enterprise

(If you indicated, in response to the Question set forth under Count 2 above, that a Continuing Criminal Enterprise did not exist, you must find the defendant Not Guilty as to this Count).

_____Guilty_____
(Guilty or Not Guilty)

**Count 19:**     Killing of Dorothy Mae Armstrong while Engaged In or Working in Furtherance of a Continuing Criminal Enterprise

(If you indicated, in response to the Question set forth under Count 2 above, that a Continuing Criminal Enterprise did not exist, you must find the defendant Not Guilty as to this Count).

Guilty
_____
(Guilty or Not Guilty)

**Count 20:**     Use of Firearm in Relation to Killing of Bobby Long, Anthony Carter and Dorothy Mae Armstrong

Guilty
_____
(Guilty or Not Guilty)

**Count 21:**     Killing of Bobby Long to Maintain or Increase Position in Racketeering Enterprise

Guilty
_____
(Guilty or Not Guilty)

**Count 22:**     Killing of Anthony Carter to Maintain or Increase Position in Racketeering Enterprise

Guilty
_____
(Guilty or Not Guilty)

**Count 23:**     Killing of Dorothy Mae Armstrong to Maintain or Increase Position in Racketeering Enterprise

Guilty
_____
(Guilty or Not Guilty)

Count 24:        Killing of Curtis Thorne while Engaged In or Working in Furtherance of a Continuing Criminal Enterprise

(If you indicated, in response to the Question set forth under Count 2 above, that a Continuing Criminal Enterprise did **not** exist, you must find the defendant Not Guilty as to this Count).

Guilty
_____
(Guilty or Not Guilty)

Count 25:        Killing of Linwood Chiles while Engaged In or Working in Furtherance of a Continuing Criminal Enterprise

(If you indicated, in response to the Question set forth under Count 2 above, that a Continuing Criminal Enterprise did **not** exist, you must find the defendant Not Guilty as to this Count).

Guilty
_____
(Guilty or Not Guilty)

Count 26:        Use of Firearm in Relation to Killing of Curtis Thorne and Linwood Chiles and Maiming of Priscilla Green and Gwendolyn Green

Guilty
_____
(Guilty or Not Guilty)

Count 27:        Killing of Curtis Thorne to Maintain or Increase Position in Racketeering Enterprise

Guilty
_____
(Guilty or Not Guilty)

Count 28:        Killing of Linwood Chiles to Maintain or Increase Position in Racketeering Enterprise

Guilty
_____
(Guilty or Not Guilty)

Count 29:    Maiming of Priscilla Green to Maintain or Increase Position in Racketeering Enterprise

*Guilty*
(Guilty or Not Guilty)

Count 30:    Maiming of Gwendolyn Green to Maintain or Increase Position in Racketeering Enterprise

*Guilty*
(Guilty or Not Guilty)

Defendant RICHARD TIPTON is not charged in Count 31 of the indictment.

Count 32:    Possession of Controlled Substance with Intent to Distribute  (on or about 2/2/92)

*Guilty*
(Guilty or Not Guilty)

Count 33:    Possession of Controlled Substance with Intent to Distribute  (on or about 4/10/92)

*Guilty*
(Guilty or Not Guilty).

SO SAY WE ALL.

_____          2/3/93
FOREPERSON'S SIGNATURE               DATE