IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Richmond Division*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No. 3:92-cr-68 (DJN) |
| | ) | |
| RICHARD TIPTON, III, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>Government's Response in Opposition</u>**
**<u>to Defendant's Motion to Vacate</u>**

In 1993, a jury convicted the defendant, Richard Tipton, for his role in a drug organization

that was responsible for at least ten murders and additional maimings between January and

February 1992. The jury found Tipton responsible for six murders—the killings of Douglas Talley,

Dorothy Mae Armstrong, Bobby Long, Anthony Carter, Curtis Thorne, and Linwood Chiles—and

other violent crimes. Tipton's convictions and sentence have been upheld on direct appeal and

multiple rounds of collateral review. Tipton now seeks to vacate two of his firearm convictions

(Counts 20 and 26) under *United States v. Davis*, 139 S. Ct. 2319 (2019). But *Davis* had no effect

on Tipton's convictions.

First, Tipton's challenge to his firearm convictions is procedurally defaulted. Defendants

have been challenging statutes on vagueness grounds for decades and nothing prevented Tipton

from lodging a vagueness challenge to 18 U.S.C. § 924(c). Moreover, neither "cause" nor

"prejudice" exits to excuse this default.

Second, *Davis* did nothing to alter the meaning of a "drug-trafficking crime." *See* 18 U.S.C.

§ 924(c)(2). With or without *Davis*, Tipton's firearm convictions are supported by independent

1

and still-valid drug-trafficking predicates, namely, violations of 21 U.S.C. § 848(e) (capital murder in furtherance of a criminal enterprise). The debate in this case over what is or is not a "crime of violence" after *Davis* is academic. A conviction under § 924(c) can be sustained on only one valid predicate. Because both of Tipton's firearm convictions rely on still-valid drug-trafficking predicates, the Court can deny Tipton's motion.

But even if that were not the case, Tipton's firearm convictions are supported by still-valid crime-of-violence predicates, even after *Davis*. Capital murder in furtherance of a criminal enterprise and VICAR murder and maiming are crimes of violence under § 924(c)(3)(A).

Finally, even if the Court concludes that some of the predicate offenses underlying Tipton's convictions are no longer valid, Tipton's challenge would still fail. Under governing precedent, Tipton must show more than a reasonable possibility that the jury *only* found him guilty on Counts 20 and 26 in reliance on the invalid predicate. *See United States v. Said*, 26 F.4th 653 (4th Cir. 2022). Ambiguity and uncertainty are not enough on collateral review for Tipton to show a substantial and injurious effect on his verdict. Tipton does not even attempt to make this showing, thus providing a fourth basis for this Court to deny relief. And Tipton could not possibly make the requisite showing. For example, because each § 848(e) murder involved a victim who was shot with a firearm, and because § 848(e) itself requires a nexus between the murder and the drug trafficking, Tipton cannot meet his burden of showing that the jury would not have convicted him of the § 924(c) counts relying on a still valid drug-trafficking predicate.

## Factual Background

### A.    Tipton is indicted, convicted, and sentenced.

On July 20, 1992, Tipton, along with six others, was charged in a 33-count indictment with the following offenses:

2

| Count | Offense | Statutory Provision |
|---|---|---|
| Count 1 | Conspiracy to possess with intent to distribute and to distribute 50 grams or more of cocaine base | 21 U.S.C. § 846 |
| Count 2 | Engaging in a continuing criminal enterprise | 21 U.S.C. § 848(a) |
| Counts 3, 5, 11, 17-19, 24, 25 | Capital murder in furtherance of a criminal enterprise | 21 U.S.C. § 848(e) and 18 U.S.C. § 2 |
| Counts 4, 7, 13-14, 16, 21-23, 27, 28-30 | Commission of violent crimes in aid of racketeering activity | 18 U.S.C. § 1959 |
| Counts 12, 15, 20, 26 | Use of a firearm in relation to a crime of violence or a drug-trafficking offense | 18 U.S.C. § 924(c) |
| Counts 32-33 | Possession with intent to distribute cocaine base | 21 U.S.C. § 841(a)(1) |

Each firearm offense charged in Counts 20 and 26—the only convictions that Tipton challenges here—relied on multiple underlying predicates.

Count 20 charged Tipton with using, or aiding and abetting the use, of a firearm on or about February 1, 1992, during and in relation to the following crimes of violence or drug trafficking crimes:

| Count | Predicate Offense |
|---|---|
| Count 1 | 21 U.S.C. § 846 |
| Count 17 | 21 U.S.C. § 848(e)(1)(A) (CCE murder of Bobby Long) |
| Count 18 | 21 U.S.C. § 848(e)(1)(A) (CCE murder of Anthony Carter) |
| Count 19 | 21 U.S.C. § 848(e)(1)(A) (CCE murder of Dorothy Mae Armstrong) |
| Count 21 | 18 U.S.C. § 1959 (VICAR murder of Bobby Long) |
| Count 22 | 18 U.S.C. § 1959 (VICAR murder of Anthony Carter) |

3

| | |
|---|---|
| Count 23 | 18 U.S.C. § 1959 (VICAR murder of Dorothy Mae Armstrong) |

Count 26 charged Tipton with using, or aiding and abetting the use, of a firearm on or about February 19, 1992, during and in relation to the following crimes of violence or drug trafficking crimes:

| Count | Predicate Offense |
|---|---|
| Count 1 | 21 U.S.C. § 846 |
| Count 24 | 21 U.S.C. § 848(e)(1)(A) (CCE murder of Curtis Thorne) |
| Count 25 | 21 U.S.C. § 848(e)(1)(A) (CCE murder of Linwood Chiles) |
| Count 27 | 18 U.S.C. § 1959 (VICAR murder of Curtis Thorne) |
| Count 28 | 18 U.S.C. § 1959 (VICAR murder of Linwood Chiles) |
| Count 29 | 18 U.S.C. § 1959 (VICAR maiming of Priscilla Green) |
| Count 30 | 18 U.S.C. § 1959 (VICAR maiming of Gwendolyn Green) |

These charges stemmed from Tipton's leadership role, along with Cory Johnson and James Roane, in a continuing criminal enterprise, the "New York Boyz," that trafficked large quantities of cocaine in the Richmond, Virginia area between 1990 and 1992.

In February 1993, a jury convicted Tipton of six capital murders under § 848(e) (Counts 3, 17, 18, 19, 24, 25); conspiracy to possess cocaine base with the intent to distribute under § 846 (Count 1); engaging in a continuing criminal enterprise under § 848(a) (Count 2); committing violent crimes in aid of racketeering activity under § 1959 (Counts 4, 21, 22, 23, 27, 28, 29, 30); using a firearm in relation to a crime of violence or a drug-trafficking offense under § 924(c) (Counts 20 and 26); and possession of cocaine base with the intent to distribute under § 841(a)(1) (Counts 32 and 33). Following a penalty hearing on the capital murder counts, the jury

recommended that Tipton be sentenced to death for three of the six murders for which he was convicted under § 848(e) (Counts 3, 24, 25). *See United States v. Tipton*, 90 F.3d 861, 870 (4th Cir. 1996)

In accordance with the jury's recommendation, the Honorable James R. Spencer sentenced Tipton to death. *Id*. The jury also sentenced Cory Johnson to death on all seven of the § 848(e)(1)(A) murders for which he had been convicted, and sentenced Roane to death for one of the three § 848(e)(1)(A) murders for which he was convicted. *Id*. After sentencing, Judge Spencer refused to order the defendants' execution on the grounds that Congress neither authorized the means by which the death sentences were to be carried out nor authorized the Attorney General to implement regulations to that effect. *Id*.

All three defendants appealed their convictions and sentences and the government cross-appealed Judge Spencer's stay of execution of the death sentences. *Id*. The Fourth Circuit affirmed the defendants' convictions and sentences, with the exception of the Count One § 846 cocaine conspiracy, which it vacated as being a lesser included offense of the § 848 continuing criminal enterprise convictions. *Id*. at 891, 903. The Fourth Circuit also reversed Judge Spencer's refusal to execute the defendants' death sentences. *Id*. at 903.[1]

---

[1] The government recounts only the procedural history relevant to Tipton's motion to vacate. For the sake of completeness, following the Fourth Circuit's decision on direct appeal, *Tipton* sought relief from the district court under § 2255. The district court dismissed or denied all of Tipton's claims and he appealed. On appeal, Tipton raised about a dozen issues. The Fourth Circuit rejected them all. *See United States v. Roane*, 378 F.3d 382 396–407 (4th Cir. 2004). Tipton then made numerous unsuccessful attempts at receiving authorization to file successive habeas petitions. *See United States v. Tipton*, No. 13-8, ECF No. 14 (4th Cir. Oct. 29, 2013) (order granting Tipton's motion to dismiss appeal of district court's denial of successive habeas petition); *In re Richard Tipton*, No. 16-7, ECF No. 13 (4th Cir. June 6, 2016) (denying authorization to file successive petition); *In re Richard Tipton*, No. 19-2, ECF No. 9 (4th Cir. May 14, 2019) (same). In July 2020, Tipton filed a motion for a sentence modification under § 404(b) of the First Step Act. (ECF No. 24.) This Court denied the motion. (ECF No. 76.) Tipton's appeal is fully briefed and currently held in abeyance at the Fourth Circuit. *See United States v. Tipton*, No. 20-16, ECF No. 31 (4th Cir. Mar. 3, 2021).

**B.      Tipton's application for a successive petition under 28 U.S.C.
§ 2255**

On June 8, 2020, Tipton filed a motion for authorization to file a successive petition under

§ 2255 challenging his two § 924(c) convictions under *Davis*. The government opposed the

motion, and after multiple rounds of briefing and two orders holding the case in abeyance, the

Fourth Circuit granted the application by a 2-1 vote. *See in re Richard Tipton*, No. 20-10, ECF No.

42 (4th Cir. Jan. 24, 2022). On February 19, 2022, Tipton filed the present motion to vacate (ECF

No. 155.) Through this motion, Tipton renews his post-*Davis* challenge to Counts 20 and 26. For

the reasons that follow, Tipton's challenge fails for both procedural and substantive reasons.

**Argument**

**I.      Tipton's challenge to his § 924(c) convictions is procedurally defaulted.**

*Davis* is retroactive on collateral review. *See In re Thomas*, 988 F.3d 783, 790 (4th Cir.

2021). Even so, by not raising his constitutional attack on his firearm convictions before they

became final, Tipton procedurally defaulted such a challenge. *Bousley v. United States*, 523 U.S.

614, 621–22 (1998); *United States v. Fugit*, 703 F.3d 248, 253–54 (4th Cir. 2012); *see also*

*Marlowe v. Warden, FCI Hazelton*, 6 F.4th 562, 571 (4th Cir. 2021) ("Principles of procedural

default sharply limit a prisoner's ability to raise on collateral review claims not raised in his initial

criminal proceeding or on direct appeal."). That default "may be excused in two circumstances:

where a person attacking his conviction can establish (1) that he is 'actually innocent' or (2) 'cause'

for the default and 'prejudice resulting therefrom." *Fugit*, 703 F.3d at 253 (quoting *Bousley*, 523

U.S. at 621). Tipton cannot satisfy either standard. Nor has he even attempted to.

6

### A. Tipton cannot demonstrate actual innocence

Tipton is not actually innocent of violating § 924(c). "To establish actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623 (internal quotation marks omitted). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Id*. at 623–24 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)); *see also United States v. Courtade*, 929 F.3d 186, 191 (4th Cir. 2019) (same). Tipton cannot make this showing. Even assuming that several predicate offenses are no longer crimes of violence after *Davis*, the record clearly demonstrates that Tipton is factually guilty of Counts 20 and 26. In fact, Tipton did not even challenge the sufficiency of the evidence on those counts on appeal. Moreover, each count is predicated on an independent and still-valid drug trafficking offense.

To demonstrate actual innocence of the § 924(c) offenses, Tipton "would have to show that no reasonable juror would have concluded he [] possess[ed] a firearm in furtherance of any of the valid predicate offenses." *Granda v. United States*, 990 F.3d 1272, 1292 (11th Cir. 2021), *cert.denied*, 142 S. Ct. 1233 (2022). Tipton cannot make that showing. And again, he has not even attempted to do so. For these reasons, and as explained in greater detail *infra* Section II, Tipton is not actually innocent of Counts 20 and 26 so as to excuse his procedural default.

### B. Tipton cannot show cause for his default.

Nor can Tipton demonstrate cause for his default. A defendant may alternately overcome the procedural default of a claim if he shows "cause" and "actual prejudice" resulting from the default. *Bousley*, 523 U.S. at 622; *see also Murray v. Carrier*, 477 U.S. 478, 485–86 (1986). Tipton cannot establish either prong.

7

To establish "cause sufficient to excuse a procedural default" Tipton must make "a showing of some external impediment preventing counsel from constructing or raising the claim." *United States v. Herrera-Pagoada*, 14 F.4th 311, 319 (4th Cir. 2021) (quoting *Murray v. Carrier*, 477 U.S. 478, 492 (1986)). The Supreme Court has explained that "cause" may exist where a claim "is so novel that its legal basis is not reasonably available to counsel." *Reed v. Ross*, 468 U.S. 1, 16 (1984). "The question is not whether subsequent legal developments have made counsel's task [in raising a particular claim] easier, but whether at the time of the default the claim was 'available' at all." *Smith v. Murray*, 477 U.S. 527, 537 (1986). To answer that question, the Supreme Court has considered whether, at the time of the default, other litigants were raising similar claims; if such claims were repeatedly raised, then "it simply is not open to argument that the legal basis of the claim petitioner now presses on federal habeas was unavailable to counsel at the time." *Id.*; *see Bousley*, 523 U.S. at 622–23 (rejecting a novelty-based "cause" argument in part because the "Federal Reporters were replete with cases" considering the purportedly "novel" claim "at the time" petitioner should have raised it).

This analysis is fatal to any "cause" argument Tipton might make. Tipton was convicted in 1993 and the Fourth Circuit decided his direct appeal in 1996. Both before and during that timeframe, defendants were challenging various aspects of § 924 on vagueness grounds.[2] During

---

[2] *See United States v. Meyer*, 803 F.2d 246, 248 (6th Cir. 1986) (vagueness challenge to § 924(c); unclear which clause); *United States v. Chaidez*, 916 F.2d 563, 564 (9th Cir. 1990) (vagueness challenge to § 924(c)(2)'s definition of "drug trafficking crime"); *United States v. Pettit*, 933 F.2d 1017, 1991 WL 83902, at *1 n.1 (9th Cir. 1991) (vagueness challenge to § 924(c)'s "during and in relation to" and "uses or carries a firearm" language); *United States v. Kuffel*, 1 F.3d 1247 (9th Cir. 1993) (vagueness challenge to § 924(c)'s "second or subsequent conviction" language); *United States v. Magee*, 21 F.3d 1108 (5th Cir. 1994) (vagueness challenge to § 924(c)(1)); *United States v. Maloy*, 37 F.3d 632 (5th Cir. 1994) (vagueness challenge to § 924(c)(1)); *United States v. Santos*, 64 F.3d 41, 47 (2d Cir. 1995) (vagueness challenge to § 924(c)'s "firearm silencer and firearm muffler" language); *United States v. Rodriguez*, 53 F.3d 545 (2d Cir. 1995) (vagueness challenge to § 924(c)'s phrase "equipped").

that same period, defendants were also lodging vagueness challenges to the Armed Career Criminal Act (ACCA).[3] Courts have required the categorical approach to § 924(c)(3)(B) for decades, *see United States v. Simms*, 914 F.3d 229, 249 (4th Cir. 2019) (en banc), including at the time of Tipton's trial and appeal. *See id*. n.13 (citing, in part, circuit-level decisions from 1994 and 1995); *see also United States v. Adkins*, 937 F.2d 947, 950 n.2 (4th Cir. 1991) (the question whether an offense is a crime of violence is a legal one); *United States v. Johnson*, 953 F.2d 110, 114 (4th Cir. 1991) (mandating categorical approach to U.S.S.G. § 4B1.2); *United States v. Aragon*, 983 F.2d 1306, 1313 (4th Cir. 1993) (same as to § 16(b)). In fact, courts have been applying the categorical approach even before *Taylor v. United States*, 495 U.S. 575 (1990), effectively settled the issue. *See United States v. Thompson*, 891 F.2d 507, 509 (4th Cir. 1989); *United States v. Springfield*, 829 F.2d 860, 862–63 (9th Cir. 1987) (using categorical, rather than circumstantial, test in determining whether involuntary manslaughter is a "crime of violence" under § 924(c)(3)); *United States v. Sherbondy*, 865 F.2d 996, 1009–10 (9th Cir.1988) (categorical approach required in deciding whether witness intimidation was "violent felony" under § 924(e)).

Had Tipton wanted to challenge Counts 20 and 26 on vagueness grounds, he could easily have done so. Again, the relevant inquiry is not "whether subsequent legal developments have made counsel's task easier, but whether at the time of the default the claim was 'available' at all." *Smith*, 477 U.S. 527 at 537. And a claim is not so novel to excuse a default where the tools clearly existed to raise such a claim. *Engle v. Isaac*, 456 U.S. 107, 133 (1982) ("In light of this activity, we cannot say that respondents lacked the tools to construct their constitutional claim."); *United*

---

[3] *See United States v. Sorenson*, 914 F.2d 173, 175 (9th Cir. 1990); *United States v. Argo*, 925 F.2d 1133, 1134–35 (9th Cir. 1991); *United States v. Vance*, 961 F.2d 217 (9th Cir. 1992); United States v. Powell, 967 F.2d 595, 1992 WL 127038, at *3 (9th Cir. 1992); *United States v. Castner*, 19 F.3d 1434 (6th Cir. 1994); *United States v. Presley*, 52 F.3d 64, 68 (4th Cir. 1995); *United States v. Veasey*, 73 F.3d 363, 1995 WL 758439, at *2 (6th Cir. 1995); *United States v. George*, 56 F.3d 1078, 1085 (9th Cir. 1995).

*States v. Bane*, 948 F.3d 1290, 1297 (11th Cir. 2020) (defendants' "claims are not novel in any sense of the word. As long as they had access to the United States Code and dictionaries—the tools the Supreme Court used in *Honeycutt*—they could have raised their claims on direct appeal."); *accord Dugger v. Adams*, 489 U.S. 401, 409–10 (1989) (concluding that a claim was not novel where "the legal basis for a challenge was plainly available"). Indeed, as Justice Gorsuch pointed out in *Dimaya*, the Supreme Court's prelude to *Davis*, courts have been striking down or refusing to apply criminal statutes on vagueness grounds since the early 1800s. *Sessions v. Dimaya*, 138 S. Ct. 1204, 1225–27 (2018) (Gorsuch, J., concurring). And the vagueness cases *Davis* itself cited, other than *Johnson* and *Dimaya*, were Supreme Court decisions from 1812, 1876, 1914, 1921, 1926, and 1983. *See Davis*, 139 S. Ct. at 2325. Clearly then, based on the conduct of other litigants and the *Davis* decision itself, the tools existed for Tipton to challenge his § 924(c) convictions. He simply chose not to and pursued a variety of other claims instead.[4] As the Eleventh Circuit has held, "[t]he tools existed to challenge myriad other portions of § 924(c) as vague; they existed to support a similar challenge to its residual clause." *Granda*, 990 F.3d at 1288. Thus, "[Tipton] cannot show cause to excuse his procedural default." *Id.*; *see also Turner v. Jabe*, 58 F.3d 924, 927–30 (4th Cir. 1995) (rejecting "cause" argument based on novelty where other litigants where making similar arguments in the years prior to decision that overturned prior precedent and where the "Eighth Amendment principles underlying [the] claim had been around even longer.").

Some courts have excused *Davis*-type challenges on futility grounds. Any such argument, however, would fail in this case. The theory underlying excusing defendants from making

---

[4] For example, Tipton lodged a vagueness challenge to 21 U.S.C. § 848(n)(8)'s use of the word "substantial" on direct appeal. *See Tipton*, 90 F.3d at 895. Interestingly, the phrase "substantial risk" was one of the key problematic phrases in *Dimaya*, and *Davis*, as was the phrase "serious potential risk" in *Johnson*. Tipton could easily have extended his vagueness challenge to cover other statutes of conviction.

*Johnson*- or *Davis*-type arguments is that *James v. United States*, 550 U.S. 192, 210 n.6 (2007), which *Johnson* later overruled, rejected the argument that the ACCA's residual clause was unconstitutionally vague. And so, the argument goes, any challenge to the ACCA or § 924(c) would have been futile. The First Circuit, for example, found cause to excuse a defaulted *Johnson* claim where the defendant's direct appeal occurred in 2013, when *James* was "still good law." *Lassend v. United States*, 898 F.3d 115, 122 (1st Cir. 2018).

*Lassend*, however, is incompatible with Supreme Court and Fourth Circuit precedent. *See Bousley*, 523 U.S. at 623 ("[F]utility cannot constitute cause if it means simply that a claim was 'unacceptable to that particular court at that particular time.'" (quoting *Engle*, 456 U.S. at 130 n.35)); *Engle*, 456 U.S. at 130 ("If a defendant perceives a constitutional claim and believes it may find favor in the federal courts, he may not bypass the state courts simply because he thinks they will be unsympathetic to the claim. Even a state court that has previously rejected a constitutional argument may decide, upon reflection, that the contention is valid."); *United States v. Sanders*, 247 F.3d 139, 147 n.5 (4th Cir. 2001) ("As *Bousley*[] and *Engle*[], indicate, in order to show cause, the defendant must raise any constitutional claims on direct review even if doing so may seem futile in light of existing precedent."); *see also Greer v. United States*, 141 S. Ct. 2090, 2099 (2021) (rejecting argument that "it would have been futile" to object prior to trial given the "uniform wall of [contrary] precedent").

Moreover, even if *Lassend* were compatible with binding precedent, it is unclear that *James* would have even precluded a challenge to § 924(c). As the Eleventh Circuit held in rejecting a similar argument, "*James* did not consider the § 924(c) residual clause at all. In fact, *James* indicated that at least three Justices were interested in entertaining vagueness challenges to the ACCA's residual clause, and perhaps to similar statutes." *Granda*, 990 F.3d at 1287. Moreover,

11

even after *James*, but before *Johnson*, defendants continued lodging vagueness challenges to the ACCA. *Id.* (collecting cases).

Finally, even if *Lassend*'s reasoning were both correct and applicable to § 924(c), it would still have no effect on this case. Tipton's trial and appeal both took place prior to the Supreme Court's 2007 *James* decision. Thus, Tipton cannot take refuge in a futility argument or *Reed*'s exception for instances when the Supreme Court overturns itself. 468 U.S. at 17. *See Gatewood v. United States*, 979 F.3d 391, 397 (6th Cir. 2020) ("[F]rom Gatewood's sentencing in 1997 to the conclusion of his direct appeal in 2002, the tools to construct his present vagueness claim existed, and no Supreme Court precedent foreclosed it. Gatewood therefore had a reasonable basis for raising a vagueness challenge to the residual clause of the three-strikes statute, § 3559(c)(2)(F)(ii). Because he did not raise such a challenge on direct appeal, procedural default bars him from doing so now on collateral review."), *cert. denied*, 141 S. Ct. 2798 (2021).

The Tenth Circuit has found cause for defendants whose convictions became final *before James* was decided, concluding that "no one . . . could reasonably have anticipated *Johnson*." *United States v. Snyder*, 871 F.3d 1122, 1127 (10th Cir. 2017). But, as the Sixth Circuit has observed, "*Snyder* did not offer a justification for this conclusion." *Gatewood*, 979 F.3d at 398. Still worse, *Snyder*'s unreasoned conclusion is historically inaccurate, as the three-Justice dissent in *James* demonstrates. Furthermore, *Snyder*'s application of *Reed* appears to take an overly granular approach to "cause" that is inconsistent with Fourth Circuit precedent, and in any event, inapplicable to the present case. *Snyder* relied on *Reed*'s exception for defaulted claims where the Supreme Court explicitly overrules prior precedent and articulates a previously unrecognized constitutional principle. *Snyder*, 871 F.3d at 1127 (citing *Reed*, 468 U.S. at 17). But *Reed*'s

12

exception was dicta, and even assuming its continued vitality after *Bousley*, *see United States v. Moss*, 252 F.3d 993, 1002–03 (8th Cir. 2001) (collecting cases), it still would not help Tipton.

First, *Reed*'s exception would not apply because the Supreme did *not* overrule itself *Davis*, like it did in *Johnson.* Nor did it articulate "a constitutional principle that had not been previously recognized." *Reed*, 468 U.S. at 17. As noted above, courts have been striking down statutes on vagueness grounds for centuries. *See Dimaya*, 138 S. Ct. at 1225–27 (Gorsuch, J., concurring). Finally, *Snyder*'s no-one-could-reasonably-have-anticipated-*Johnson* approach to procedural default is both overly myopic and in tension with Fourth Circuit precedent. The relevant inquiry is not whether a defendant's attorney could have foreseen some particular case *avant la lettre*, but whether he "lacked the tools to construct the[] constitutional claim." *Engle*, 456 U.S. at 133.  And these "tools," the Fourth Circuit has explained, are the "case law[] necessary to conceive and argue the claim[.]" *Poyner v. Murray*, 964 F.2d 1404, 1424 (4th Cir. 1992). But, as already explained, the vagueness cases on which *Davis* relied spanned from 1812 to 1983. Clearly, then, they existed in the 1990s when Tipton was litigating his case. Moreover, in determining whether "cause" exists to excuse a defaulted claim, the Fourth Circuit has looked not only at the landmark case itself, but at the constitutional backdrop that would have allowed a defendant to assert the claim. *See Jabe*, 58 F.3d at 927–30; *Poyner*, 964 F.2d at 1424–25. So conceived, it is impossible to claim that the tools to construct a vagueness challenge to § 924(c)(3)(B) did not exist prior to *Johnson*. If the defendant in *Johnson* possessed the tools prior to *Johnson*, then so did any other litigant.

Consistent with the authority discussed above, Tipton's failure to challenge § 924(c) earlier is not excusable on novelty or futility grounds. Collateral review is not "an all-purposive receptable for claims which in hindsight appear more promising than they did at the time of trial." *Sanders*,

13

247 F.3d at 146. Tipton's claim is defaulted, and he cannot demonstrate cause to excuse that default.[5]

## II.   Tipton cannot demonstrate any prejudice from the inclusion of assumedly invalid predicates.

### A.   Counts 20 and 26 are unaffected by *Davis*.

Counts 20 and 26 rely entirely on valid crime-of-violence and drug-trafficking predicates.

First, *Davis* did not invalidate the definition of a "drug trafficking crime," which includes "any felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.)[.]" 18 U.S.C. § 924(c)(2). *See United States v. Eldridge*, 2 F.4th 27, 36 n.9 (2d Cir. 2021) ("*Davis* interpreted only the definition of a crime of violence, and thus had no effect on the scope of drug offenses that may also serve as predicates for § 924(c) convictions, *see* 18 U.S.C. § 924(c)(2)."); *United States v. Cannon*, 987 F.3d 924, 946 (11th Cir. 2021) ("*Davis* did not, however, affect the definition of a drug trafficking crime, which includes 'any felony punishable under the Controlled Substances Act.'"); *see also United States v. Hare*, 820 F.3d 93, 106 (4th Cir. 2016). Indeed, in declaring § 924(c)(3)(B) unconstitutionally vague prior to *Davis*, the Fourth Circuit noted that it "le[ft] intact

---

[5] In a single undeveloped footnote, the Fourth Circuit recently rejected a post-*Davis* procedural default argument. *See United States v. Jackson*, — F.4th —, 2022 WL 1160391, at *2 n.3 (4th Cir. Apr. 20, 2022). But *Jackson*'s one-line rejection misses the point. Whether *Davis* established a "new rule" for purposes of 28 U.S.C. § 2255(h)(2) is not the same as whether a claim was "available" to a defendant. *See Murray*, 477 U.S. at 537. A new decision's outcome can be *both* not dictated by prior precedent—the relevant inquiry under *Teague v. Lane*, 489 U.S. 288 (1989)—but still "available" in the sense contemplated by *Murray*. *Jackson* could not overrule prior precedent, including Supreme Court precedent, on procedural default. Moreover, the government is making a much more developed, and distinct, argument than was before the Fourth Circuit in *Jackson*. *See United States v. Jackson*, No. 20-9, ECF No. 39 at 8-9 (4th Cir. Dec. 2, 2021) (government's response brief). *Jackson* could not be treated as deciding the issue here. *See, e.g., United States v. Norman*, 935 F.3d 232, 240–41 (4th Cir. 2019). Not "everything said in a panel opinion binds future panels." *United States v. Buster*, 26 F.4th 627, 633 (4th Cir. 2022) (citation omitted). In any event, the government makes a procedural default argument here to preserve its ability to vindicate that doctrine and avoid a waiver of procedural default. *See United States v. Harris*, 991 F.3d 552, 558 (4th Cir. 2021).

. . . the entirety of the definition of 'drug trafficking crime in § 924(c)." *United States v. Simms*, 914 F.3d 229, 252 (4th Cir. 2019) (en banc). Thus, the drug conspiracy predicate (Count 1) and the drug-related murder predicates (Counts 17-19, 24-25) remain unaffected by *Davis*.

*Second*, the drug-related murder convictions (Counts 17-19, 24-25) are also crimes of violence under § 924(c)(3)(A). Under § 848(e)(1)(A), the government must prove that the defendant intentionally killed a person. Although § 848(e)(1)(A) has three distinct ways in which a connection is drawn between the killing and the drug trafficking, *see United States v. Hager*, 721 F.3d 167, 179–80 (4th Cir. 2013), the government must still prove an intentional killing for every violation of § 848(e)(1)(A). Such proof satisfies § 924(c)(3)(A).

The Fourth Circuit has repeatedly held that an offense that requires proof of a murder satisfies § 924(c)(3)(A). *See, e.g.*, *United States v. Jackson*, — F.4th —, 2022 WL 1160391 (4th Cir. Apr. 20, 2022) (premeditated first-degree murder under 18 U.S.C. § 1111 satisfies § 924(c)(3)(A); *United States v. Roof*, 10 F.4th 314, 400–02 (4th Cir. 2021) (death-resulting offense under 18 U.S.C. § 249 (a)(1) satisfies § 924(c)(3)(A); *United States v. Mathis*, 932 F.3d 242, 264–65 (4th Cir. 2019) (VICAR murder satisfies § 924(c)(3)(A)); *In re Irby*, 858 F.3d 231, 236–38 (4th Cir. 2017) (second-degree retaliatory murder is a crime of violence under § 924(c)(3)(A)); *cf. United States v. Allred*, 942 F.3d 641 (4th Cir. 2019) (knowingly engaging in conduct that causes bodily injury in violation of witness retaliation statute satisfies ACCA's elements clause); *United States v. Battle*, 927 F.3d 160, 167 (4th Cir. 2019) (Maryland conviction for assault with intent to murder satisfies ACCA's elements clause "because the offense contemplates an intentional causation of bodily injury").

Insofar as Tipton argues that § 848(e)(1)(A) could be violated by a bare omission, the Fourth Circuit has rejected such arguments. *See United States v. Rumley*, 952 F.3d 538, 551 (4th

15

Cir. 2020). The Fourth Circuit and the Supreme Court have recognized that crimes of violence and violent felonies encompass crimes "characterized by extreme physical force, such as murder, forcible rape, and assault and battery with a dangerous weapon." *United States v. Bryant*, 949 F.3d 168, 181 (4th Cir. 2020) (quoting *In re Irby*, 858 F.3d at 236; *Johnson v. United States*, 559 U.S. 133, 140–41 (2010)). Indeed, given that "the force necessary to overcome a victim's physical resistance is inherently 'violent' in the sense contemplated by *Johnson*," *Stokeling v. United States*, 139 S. Ct. 544, 553 (2019), it follows that the force need to kill a person suffices.

Tipton makes a series of arguments about why his murder offenses are not crimes of violence. He contends that felony murder knocks out murder offenses. But the jury unanimously found before imposing the death sentence that the murders at issue here were "the result of substantial planning and premeditation." *United States v. Tipton*, 90 F.3d 861, 894 (4th Cir. 1996). This was not a felony-murder case, and as the Fourth Circuit's recent ruling in *Jackson* illustrates, as a matter of federal law, felony murder is divisible under § 1111. And in *Mathis*, the Fourth Circuit ruled that first-degree murder under Virginia law, as used in the VICAR statute, satisfies § 924(c)(3)(A). Moreover, Tipton fails to identify how § 848(e) creates liability on a felony-murder theory.

Defendant also contends that depraved-heart murder creates a version of recklessness that falls outside § 924(c)(3)(A) after *Borden v. United States*, 141 S. Ct. 1817 (2021). But the First Circuit has correctly rejected that argument, and the Supreme Court denied certiorari in that case after *Borden* was decided. *See United States v. Baez-Martinez*, 950 F.3d 119 (1st Cir. 2020), *cert. denied*, 141 S. Ct. 2805 (2021). The Ninth Circuit reached the contrary result about extreme recklessness but has vacated that decision on rehearing en banc. *United States v. Begay*, 15 F.4th 1254 (9th Cir. 2021) (order granting rehearing en banc). The oral argument was held this past

January, and the court does not appear to have taken the case en banc to endorse the panel majority's reasoning that second-degree murder is not a crime of violence.[6] To the extent § 848(e) is read as reaching extreme recklessness, notwithstanding the plain language of § 848(e), because of the capital sentencing gateway factors, *see United States v. Alvarez*, 266 F.3d 587 (6th Cir. 2001), the gateway factors are elements that must be unanimously found by the jury, making them divisible, and again, the jury found that the murders here were "the result of substantial planning and premeditation." *Tipton*, 90 F.3d at 894.

*Third*, VICAR murders (Counts 21-23, 27-28) and maiming (Counts 29-30) are crimes of violence under § 924(c)(3)(A). As to the VICAR murders under § 1959(a)(1), the Fourth Circuit has already held that the murder offenses like those here satisfy § 924(c)(3)(A). *See Mathis*, 932 F.3d at 264–65. That conclusion is further reinforced by *United States v. Keene* 955 F.3d 391 (4th Cir. 2020). In *Keene* the Fourth Circuit described the relationship between a particular VICAR enumerated offense—there, assault with a dangerous weapon—and the state law referenced in the VICAR statute. As *Keene* explained, under the VICAR statute in § 1959, "the statutory language at issue requires only that the defendant's conduct, presently before the court, constitute one of the enumerated federal offenses as well as the charged state crime." *Id*. at 393. Under this approach, a defendant's VICAR offense can be no broader than the enumerated federal offense, and every instance of Tipton's VICAR murder satisfies § 924(c)(3)(A), as *In re Irby* illustrates.

VICAR maiming also satisfies § 924(c)(3)(A), although, as explained below, this Court need not reach the question here. If contrary to *Keene*, the Court requires a state predicate crime satisfy § 924(c)(3)(A), then here that requirement is met. Virginia malicious wounding falls within

---

[6] And as an aside, at the en banc argument, the Assistant Federal Public Defender conceded that felony-murder under § 1111 is divisible.

17

the elements clause. *United States v. Hardy*, 999 F.3d 250, 257 n.4 (4th Cir. 2021) (citing *Rumley*, 952 F.3d at 550). And under any federal generic definition of maiming, the same precedent that establishes that Virginia malicious wounding qualifies would also suffice, as further illustrated by precedent like *Allred* and *Battle*.

And *Borden* does not affect the analysis of the VICAR offense for an additional reason. Under § 1959(a), the government must prove that the defendant's purpose in committing the predicate crime "was to maintain or increase his position in the enterprise." *United States v. Fiel*, 35 F.3d 997, 1003 (4th Cir. 1997) (citing *United States v. Concepcion*, 983 F.2d 369, 381 (2d Cir. 1992)); *Tipton*, 90 F.3d at 891 (same). Just as the specific intent required for attempted murder narrows the *mens rea* for murder, *see, e.g., Braxton v. United States*, 500 U.S. 344, 351 n.* (1991) ("Although a murder may be committed without an intent to kill, an attempt to commit murder requires a specific intent to kill."), so too the purpose requirement for VICAR makes the commission of the predicate crime deliberate. True, the purpose required under § 1959(a) need not be the sole or even primary purpose, *United States v. Chavez*, 894 F.3d 593, 603–04 (4th Cir. 2018), but it must be a purpose that a defendant has in undertaking the crime.

Finally, Tipton's contrary citation to *United States v. Torres-Miguel*, 701 F.3d 165 (4th Cir. 2012), is misplaced. (Def. Mot. 35) In at least five cases, the Fourth Circuit has recognized that *Torres-Miguel*'s indirect-force holding is no longer viable after *United States v. Castleman*, 572 U.S. 157 (2014). *See United States v. Allred*, 942 F.3d 641, 653 (4th Cir. 2019); *United States v. Covington*, 880 F.3d 129, 134 (4th Cir. 2018); *United States v. Reid*, 861 F.3d 523, 529 (4th Cir. 2017); *In re Irby*, 858 F.3d 231, 237–38 (4th Cir. 2017); *United States v. Burns–Johnson*, 864 F.3d 313, 318 (4th Cir. 2017). Moreover, *United States v. Rumley*, 952 F.3d 538, 549 (4th Cir. 2020), and *Moreno-Osorio v. Garland*, 2 F.4th 245, 253 (4th Cir. 2021), foreclose Tipton's proposition

18

that a statute cannot satisfy § 924(c)(3)(A) through an omission. *See also United States v. Scott*, 990 F.3d 94, 100-01 & n.5 (2d Cir. 2021) (en banc) (collecting cases)

Thus, *Davis* had no effect on Tipton's firearm convictions. The § 848(e)(1)(A) predicates underpinning Counts 20 and 26 are drug trafficking predicates that remain completely unaffected by *Davis*. This Court can deny Tipton's motion on that basis alone. Moreover, the VICAR murder and maiming predicates remain valid crimes of violence under § 924(c)(3)(A), even after *Davis*.

> **B.      Even if *Davis* invalidated a predicate for Counts 20 and 26, Tipton still cannot demonstrate any prejudice.**

> **1.      General habeas principles**

Once direct review is completed, "a presumption of finality and legality attaches to the conviction and sentence," *Brecht v. Abrahamson*, 507 U.S. 619, 633 (1993) (citation omitted), and courts are "entitled to presume" that the defendant's conviction and sentence are lawful, *United States v. Frady*, 456 U.S. 152, 164 (1982). That "presumption of regularity . . . makes it appropriate to assign a proof burden to the defendant" on collateral review. *Parke v. Raley*, 506 U.S. 20, 31 (1992); *see also Hawk v. Olson*, 326 U.S. 271, 279 (1945) (explaining that a prisoner necessarily "carries the burden in a collateral attack on a judgment"). Because, as the Fourth Circuit has put it, "[o]n collateral review . . . the calculus changes." *Bauberger v. Haynes*, 632 F.3d 100, 104 (4th Cir. 2011). Thus, on collateral review, the defendant carries the burden of showing a constitutional violation. *See, e.g.*, *United States v. Pettiford*, 612 F.3d 270, 277 (4th Cir. 2010).

Under governing precedent, however, the mere fact of an invalid predicate offense under § 924(c) does not result in the automatic vacatur of those convictions. There are many circumstances in which a conviction will rest on multiple theories of liability, only for it to subsequently become clear that one of them is invalid. In such circumstances, courts do not automatically vacate the problematic count. Instead, courts assess the error for harmlessness to

19

determine whether the count survives on any still-valid theories of conviction.  The Supreme Court mandates this approach. *See Hedgpeth v. Pulido*, 555 U.S. 57, 60–61 (2008) (per curiam); *Skilling v. United States*, 561 U.S. 358, 414 n.46 (2010). And the Fourth Circuit has repeatedly applied it in a variety of contexts. *See United States v. Moriello*, 980 F.3d 924, 936–37 (4th Cir. 2020) (direct appeal); *Bereano v. United States*, 706 F.3d 568, 577 (4th Cir. 2013) (collateral review); *United States v. Jefferson*, 674 F.3d 332, 361 (4th Cir. 2012) (direct appeal). Under *Hedgpeth*, "[a]n instructional error arising in the context of multiple theories of guilt no more vitiates all the jury's findings than does omission or misstatement of an element of the offense when only one theory is submitted." 555 U.S. at 61.

In cases where a defendant forfeits an alternative-theory claim by failing to raise it below, as did Tipton, he "must show not only that he *could* have been convicted under the erroneous [theory], but also that he *was not* convicted under the properly-instructed" theory. *United States v. Robinson*, 627 F.3d 941, 955 (4th Cir. 2010); *see also United States v. Banks*, — F.4th — 2022 WL 815862, at *9 (4th Cir. Mar. 18, 2022). And on collateral review, the standard becomes stricter still.  In evaluating a habeas claim, the examination of whether an alternative-theory error is harmless is further evaluated through the lens of *Brecht v. Abrahamson*, 507 U.S. 619 (1993). Under *Brecht*, a habeas petitioner must show that a purported error resulted in "actual prejudice." *Id.* at 637. Thus, an error is harmless on collateral review unless it had a "substantial and injurious effect" on the defendant's conviction. *United States v. Smith*, 723 F.3d 510, 517 (4th Cir. 2013); *accord Barnes v. Thomas*, 938 F.3d 526, 533 n.3 (4th Cir. 2019) (explaining that the *Brecht* standard is a "'less onerous harmless-error standard' than the requirement on direct appeal that an error be proven 'harmless beyond a reasonable doubt'" (quoting *Brecht*, 507 U.S. at 623)); *cf. Davis v. Ayala*, 135 S. Ct. 2187, 2197 (2015).

### 2.    Fourth Circuit precedent governing multi-predicate § 924(c) convictions.

The Fourth Circuit has repeatedly reiterated the principle that a § 924(c) conviction need only rest on one valid predicate to itself be valid. For example, after *Johnson v. United States*, 576 U.S. 591 (2015), the Fourth Circuit held that when a § 924(c) conviction has two predicate offenses—one crime of violence and one drug-trafficking crime—the validity of the drug-trafficking predicate is sufficient to sustain the conviction, even if the crime of violence is invalid. *United States v. Hare*, 820 F.3d 93, 105–06 (4th Cir. 2016). After *Davis*, the Fourth Circuit has repeatedly reaffirmed *Hare*'s principle, in both the trial and guilty plea context. *See United States v. Gillespie*, 27 F.4th 934 (4th Cir. 2022) ("In the context of a § 924(c) conviction, the verdict stands even if the jury was instructed on an invalid predicate, so long as the jury relied on a valid basis for conviction."); *United States v. Crawley*, 2 F.4th 257, 263 (4th Cir. 2021) ("We reaffirm our holding in *Hare* that a § 924(c) conviction based on one valid and one invalid predicate offense remains sound following *Johnson* and its progeny, and we extend that holding to cases in which the defendant pleads guilty to a § 924(c) offense expressly based on the valid and invalid predicate.").

In *United States v. Ali*, 991 F.3d 561 (4th Cir. 2021), the Fourth Circuit extended its decision in *United States v. Robinson*, 627 F.3d 941 (4th Cir. 2010), to the context of a dual-predicate § 924(c) conviction, applying plain-error review to affirm a defendant's conviction after a trial involving a general jury verdict. *Ali* held that the inclusion of an invalid predicate (Hobbs Act conspiracy) was a plain error but that the valid, factually supported predicate (aiding or abetting Hobbs Act robbery) established that the error did not affect the defendant's substantial rights. *Ali* further held that "a showing of uncertainty as to 'whether the verdict returned by the jury rested solely on the mis-instruction' does not meet the defendant's burden of establishing

21

actual prejudice under the third *Olano* prong." *Id*. at 474–75 (citation omitted). And it was irrelevant that the Court "d[id] not know for certain which theory of guilt the jury accepted" because "that [type of] ambiguity is insufficient under plain error review." *Id*. at 575.

Recently, in *United States v. Said*, 26 F.4th 653 (4th Cir. 2022), the Fourth Circuit applied *Ali* and reversed a district court's grant of habeas relief to a defendant convicted of § 924(c) and § 924(o) offenses, each of which was premised on multiple predicates, some of which were invalid after *Davis*. Consistent with prior precedent, *Said* first confirmed, that "a § 924(c) conviction may stand even if the jury based its verdict on an invalid predicate, so long as the jury also relied on a valid predicate." *Id*. at 659.

*Said* then rejected the rationale offered by the district court for granting the defendant habeas relief. The district court in *Said* concluded that the defendant could show a substantial and injurious effect from the inclusion of now-invalid predicates because it could not tell on which predicate offense the jury relied, there was a more than reasonable probability that the jury would not have convicted the defendant absent the inclusion of now-invalid predicates, and "because there is no evidence in the record showing that the jury relied on either an invalid or valid predicate offense to convict[.]" *Id*. at 661.

But, the Fourth Circuit held, that sort of ambiguity "is not enough." *Id*. As *Said* explained, the Fourth Circuit has "repeatedly held, even under the plain-error standard, the defendant bears the burden of showing that the erroneous instruction given resulted in his conviction, *not merely that it was impossible to tell under which prong the jury convicted*." *Id*. (citing *Ali*, 991 F.3d at 575; *Robinson*, 627 F.3d at 954) (internal quotation marks omitted). In other words "'ambiguity is insufficient to 'establish[ ] actual prejudice' even under plain-error review." *Id*. (quoting *Ali*, 991 F.3d at 575). "Instead, the defendant 'must show not only that he *could* have been convicted under

22

the erroneous . . . instruction, but also that he *was not* convicted under the' proper instruction." *Id*. (quoting *Robinson*, 627 F.3d at 955). "[M]ere uncertainty as to which . . . predicate or predicates the jury relied on when it found the defendant guilty of the § 924(c) counts does not suffice to demonstrate plain error, let alone the sort of substantial and injurious error required for habeas relief." *Id*. (cleaned up). Thus, "to meet his burden, Said must show 'more than a reasonable possibility' that the jury *only* found him guilty on Counts 4 and 10 because it improperly considered" the now invalid predicates. *Id*. at 662.

And under that standard, the defendant could not succeed. As the Fourth Circuit explained, "common sense supports that a jury that found Said guilty of several substantive crimes of violence, the evidence for all of which showed to involve the use of firearms[.]" *Id*. Moreover, the jury convicted the defendant on all the underlying predicates thus removing a level of supposed ambiguity from the case. *Id*. at 663.[7]

### 3.    Tipton's § 2255 motion fails under Fourth Circuit precedent.

Governing Fourth Circuit precedent forecloses Tipton's challenge to Counts 20 and 26.

As a preliminary matter, Tipton's reliance on the modified categorical approach is both misplaced and contrary to Fourth Circuit precedent. Tipton repeatedly attempts to enlist the modified categorical approach as a lens through which to determine on which predicate offense the jury relied. (*See* Def. Mot. 16, 18, 25.) But Tipton's proposed approach to assessing the

---

[7] The Fourth Circuit granted Tipton authorization to file a successive petition before it decided *Said*. Since then, the Fourth Circuit has denied similar requests to defendants seeking permission to challenge multi-predicate § 924(c) convictions under *Davis*. *See In re Abdi Osman*, No. 21-263, ECF No. 12 (4th Cir. Mar. 16, 2022). The Fourth Circuit has also denied certificates of appealability (COA) to defendants who filed *authorized* successive petitions only to be denied relief in the district court. *See United States v. Ali*, No. 19-7352, 2022 WL 794959 (4th Cir. Mar. 15, 2022) (consolidated appeal denying COA to three defendants seeking to appeal Chief Judge Davis' § 2255 denial, one of whom received authorization to file successive petition); *United States v. Beyle*, No. 21-7511, 2022 WL 989350 (4th Cir. Apr. 1, 2022) (same for defendant seeking to appeal Judge Smith's § 2255 denial of authorized successive petition).

viability of multi-predicate § 924(c) offenses has already twice been rejected by the Fourth Circuit. In *Ali*, the defendant argued that, because the court could not definitively know on which predicate the jury relied (due to the general verdict), it should vacate the firearms convictions under the modified categorical approach. But the Fourth Circuit held that the defendant's suggestion "fundamentally misunderstands what the categorical approach accomplishes and the nature of our inquiry under plain error review. The purpose of the categorical (and modified categorical) approach is not to determine what the predicate was–a factual question-but rather whether a particular predicate meets the requirements of a "crime of violence"–a purely legal question." *Ali*, 991 F.3d at 574. Similarly, the district court in *Said* did exactly what Tipton proposes here. But the Fourth Circuit, relying on *Ali*, reversed. *See Said*, 26 F.4th at 661 n.13 (citing *Ali*, 991 F.3d at 574). Other courts of appeals are in accord. *See Granda*, 990 F.3d at 1295.

The correct framework through which to assess Tipton's challenge was recently articulated by the Fourth Circuit in *Said*. And under *Said*, Tipton's challenge easily fails.

*Said* instructs that a defendant seeking to challenge a multi-predicate § 924(c) conviction on collateral review must show more than a reasonable possibility that the jury *only* found him guilty on based on the invalid predicates. *Said*, 26 F.4th at 662. Ambiguity, *Said* repeatedly stressed, is simply not enough.  Tipton has never attempted such a showing, and the record in this case would make any attempt to do so futile.[8]

Tipton, like the *Said* defendant, was convicted of every count underlying his convictions on Counts 20 and 26. And even assuming the invalidity of one or more crime-of-violence

---

[8] Tipton repeatedly stressed before the Fourth Circuit that all he had to show to obtain authorization to file a successive petition was a "prima facie" case. But while that is technically true, here, Tipton has not advanced beyond that showing in any meaningful way. As was the case at the successive stage, Tipton does not contend with the facts of this case or make any attempt at showing prejudice beyond mere reliance on ambiguity.

predicates, it is impossible that the jury did not find that Tipton used a firearm in furtherance of the undisputedly valid drug-related murders charged under § 848(e) (Counts 17, 18, 19, 24, and 25). As noted above, § 848(e) is a valid drug-trafficking predicate and is enough—on its own—to support the § 924(c) convictions charged in Counts 20 and 26. The Fourth Circuit explained on direct appeal, that the murders that formed the basis of the § 924(c) convictions were "all in relation to [the defendants'] drug-trafficking operation," and occurred "because their victims were suspected of treachery or other misfeasance, or because they were competitors in the drug trade, or because they had personally offended one of the 'partners.'" *Tipton*, 90 F.3d at 868. Both of Tipton's § 924(c) convictions had drug-trafficking and murder predicates that controlling precedent establish are valid; the jury separately convicted Tipton of each of those predicate offenses, removing any doubt that the jury unanimously found each predicate proven; and each of those predicates was furthered through a firearm given that the murders were all drug-related and accomplished with a gun.

Indeed, each murder for which Tipton was found guilty, including even the murder that was not a § 924(c) predicate, was committed to advance the organization's drug trafficking. As the Fourth Circuit explained, "[t]he Government's evidence expressly linked each of the nine § 848(e) murders of which the appellants were severally convicted to a furtherance of the CCE's purposes: either silencing potential informants or witnesses, eliminating supposed drug trafficking rivals, or punishing underlings for various drug-trafficking misfeasances." *Tipton*, 90 F.3d at 887.

In the first murder, which did not serve as a § 924(c) predicate, Tipton stabbed Douglas Talley 84 times in an attack that lasted three to five minutes because Talley mishandled a drug deal. *Tipton*, 90 F.3d at 868. Tipton committed this murder, the jury found, "in an especially heinous, cruel, or depraved manner involving serious physical abuse." *Id*. at 894.

25

The next murder, which did serve as a § 924(c) predicate, was likewise committed to advance the drug trafficking. Dorothy Mae Armstrong was shot to death on February 1, 1992, because she owed a drug debt and was thought to be a threat to the drug organization. *Id*. at 869. When Tipton, Cory Johnson, and Jerry Gaiters found Armstrong at her brother's house, Johnson killed not only her, but also Bobby Long and Anthony Carter to prevent them from being witnesses. PSR ¶ 88.

Linwood Chiles was murdered on February 19, 1992, because he was believed to be cooperating with police. *Id*. at 869. With Tipton standing by, Johnson ordered Chiles to put his head on a steering wheel and shot him to death.  Curtis Thorne, who was shot to death with Chiles, owed a drug debt (PSR ¶ 93), and Priscilla and Gwendolyn Greene were shot and seriously and permanently injured because they happened to be present in the car with Chiles and Thorne.

For the murders of Armstrong, Carter, and Long, the Fourth Circuit explained that Tipton "was instrumental in planning the murders and directly aided their execution by driving Cory Johnson, the designated executioner, to the scene, awaiting accomplishment of the deed in a getaway car, then driving the executioner from the scene." *Tipton*, 90 F.3d at 890. As to the later murders of Chiles and Thorne, the Fourth Circuit noted that "Tipton and Johnson planned the executions of both victims for suspected treachery (Chiles) and thievery (Thorne) in relation to the drug-trafficking enterprise, and … Tipton was present at the scene as an active participant in seeing that the executions were carried out and that those responsible escaped detection." *Id*.[9]

No reasonable jury could have concluded that Tipton used a firearm in furtherance of the assumedly invalid predicate offenses, but not the valid drug-trafficking murder predicates charged in Counts 17, 18, 19, 24, and 25. *See Said*, 26 F.4th at 662–63. Under *Said*, it is irrelevant that the

---

[9] *Ali* and *Said* also establish that it is irrelevant for present purposes whether Tipton was held liable as an aider and abettor for a murder. *See Said*, 26 F.4th at 659 n.9; *Ali*, 991 F.3d at 573–74.

26

"record does not indicate which predicates the jury relied on[.]" *Id.* at 662. It is Tipton's burden to show that the jury relied *only* on the invalid predicates, and much like the *Said* defendant "[t]his he cannot do." *Id.* Tipton has offered no reason to think "that the jury reached the commonsense-defying conclusion of relying *only* on those [invalid] predicates[.]" *Id.* Put differently, Tipton has not "pointed to any reason why the jury would not have convicted him on Counts [20] and [26] based on at least one of the valid predicates—let alone any evidence that they did not do so." *Id.* Indeed, "the fact that [Tipton] can point to nothing more than ambiguity is enough to resolve this case[.]" *Id.* at 662 n.15.

As explained above, even after *Davis*, Tipton's § 924(c) convictions are still supported by, at the very least, valid drug-trafficking crimes and VICAR murder predicates. Given this reality—as well as Tipton's repeated failure to even attempt to demonstrate some form of prejudice from the assumedly no-longer valid predicate offenses—he cannot demonstrate that any error had a "substantial and injurious effect" on his convictions. *Smith*, 723 F.3d at 517.

Because Tipton has failed to demonstrate any prejudice, his challenge to Counts 20 and 26 must be rejected.

Respectfully submitted,

Jessica D. Aber
United States Attorney

By:         /s/
                 Richard D. Cooke
                 Joseph Attias
                 Assistant United States Attorneys
                 U.S. Attorney's Office
                 Eastern District of Virginia
                 919 East Main Street, Suite 1900
                 SunTrust Building
                 Richmond, Virginia 23219
                 (804) 819-5471

## Certificate of Service

I certify that on April 27, 2022, I filed electronically the foregoing with the Clerk of Court using the CM/ECF system, which will serve all counsel of record.

/s/
_____

Joseph Attias
Assistant United States Attorney
